IC

**EVAN J CRONIN**
211 W Wacker Drive STE 120 #2217
Chicago, IL 60606
legal@cronintaxservices.com
(312) 725-9960
Plaintiff Pro Se



**FILED**

MAR 23 2026  GmC

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **EVAN J CRONIN,**<br>Plaintiff,<br><br>v.<br><br>**UPWORK INC.;**<br>**UPWORK GLOBAL LLC;**<br>**TERMA PROJECT, INC.;**<br>**FRACTIONAL TAX, INC.,**<br>**FRACTIONAL TAX USA, LLC,**<br>**CHANDLER MURPHY;**<br>**NISHCHAL BASNYAT,**<br>Defendants. | **1:26-cv-03220**<br>**Judge Sara L. Ellis**<br>**Magistrate Judge Laura K. McNally**<br>**RANDOM / Cat 2**<br><br>Magistrate Judge: _____<br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT FOR DECLARATORY
### AND INJUNCTIVE RELIEF, AND DAMAGES

Plaintiff, Evan J Cronin ("Plaintiff"), appearing pro se and bringing this action

solely in his individual capacity, states as follows:

## I.   NATURE OF THE ACTION

1. This action arises from the alleged unauthorized use of Plaintiff Evan J Cronin's

   name, identity, CPA credentials, and professional background in connection with

   client-facing tax and accounting solicitations conducted through an Upwork

— 1 —

agency account associated with the Fractional Tax Defendants, defined in paragraph 21.

2. Plaintiff alleges that, during the parties' relationship, client-facing proposals, messages, and related representations were prepared, transmitted, or displayed in a manner that represented or implied that Plaintiff had authored, reviewed, approved, endorsed, or was professionally responsible for them when Plaintiff had not done so.

3. Plaintiff alleges that those uses were commercially significant because they were made in connection with the marketing and offering of tax and accounting services tied to Plaintiff's professional identity and credentials.

4. Plaintiff further alleges that the Upwork Defendants, defined in paragraph 19, through platform-based agency and profile-attribution features, displayed, maintained, or failed fully to correct client-facing materials that associated Plaintiff with communications Plaintiff disputes having authored or approved.

5. Plaintiff alleges that the challenged conduct harmed Plaintiff's professional reputation, identity-based goodwill, client-facing credibility, and control over the use and presentation of Plaintiff's professional identity.

6. Plaintiff also alleges a present dispute with the relevant Fractional Tax Defendants concerning the nature of Plaintiff's working relationship, the degree of control exercised over Plaintiff's work, and compensation Plaintiff alleges was earned but not fully paid.

7. Plaintiff seeks damages, declaratory relief, and injunctive and corrective relief directed to ongoing or unresolved identity-linked attributions and related client-facing confusion, together with such other relief as the Court deems just and proper.

8. Plaintiff appears pro se. Plaintiff respectfully requests that this Complaint be construed liberally and held to less stringent standards than formal pleadings drafted by counsel. Liberal construction is requested as to form only; Plaintiff does not request that the Court supply facts not alleged or advocate on Plaintiff's behalf.

## II. PARTIES

9. Plaintiff Evan J Cronin ("Plaintiff") is a natural person and resident of Cook County, Illinois.

10. Plaintiff is a licensed Certified Public Accountant whose name, CPA credential, professional biography, and professional reputation are used in connection with his business practice.

11. Plaintiff conducts his practice under the name Evan J Cronin CPA & Tax Services, sometimes also referred to as Cronin Tax Services, which is Plaintiff's sole proprietorship and not a separate incorporated or limited-liability entity.

12. Defendant Upwork Inc. ("Upwork Inc.") is a Delaware corporation with its principal executive offices in Palo Alto, California. Upon information and belief, Upwork Inc. participates in the ownership, governance, and operation of the

online freelance marketplace commonly known as "Upwork." Upwork Inc. has publicly represented that it has offices in Chicago, Illinois within this District.

13. Defendant Upwork Global LLC ("Upwork Global LLC") is a California limited liability company affiliated with the Upwork enterprise and the successor entity by statutory conversion to Upwork Global Inc., which converted to Upwork Global LLC on or around July 16, 2025. During the periods relevant to Plaintiff's claims, Upwork Global Inc. was identified in the Upwork User Agreement as a contracting Upwork entity associated with the Upwork marketplace and related platform services. Upwork Global LLC continues that role as part of the Upwork enterprise. Upwork Global LLC is registered to conduct business in Illinois as a foreign limited liability company and maintains a registered agent for service of process in Illinois.

14. Defendant Terma Project, Inc. ("Terma") is a Delaware corporation. Terma was involved in Plaintiff's recruitment, onboarding, and day-to-day operational coordination through Terma-branded systems and personnel, including communications conducted through the Slack workspace titled "Termaproject." Terma personnel and contractors participated in workflow coordination and proposal-related communications associated with the Fractional Tax, Inc. Upwork agency account.

15. Defendant Fractional Tax, Inc. ("FTINC") is a Delaware corporation with a principal business address at 14 Wall Street, 20th Floor, New York, New York 10005. FTINC was the formal counterparty to Plaintiff's written service contract

and operated the Upwork agency account through which proposals and other client communications were sent using Plaintiff's professional identity and CPA credentials.

16. Defendant Fractional Tax USA, LLC ("FTUSA") is, upon information and belief, a Delaware limited liability company. The public-facing Fractional Tax website at fractionaltax.com identifies FTUSA in its footer as the operating entity and lists the same mailing address as FTINC. The MyTax client portal used for client management during Plaintiff's engagement operated at fractionaltax.knack.com, a subdomain of fractionaltax.com. Upon information and belief, FTUSA was associated with or operated that website and client portal, shared branding, infrastructure, and operational tools with FTINC and Terma during the relevant period, and functioned as the client-facing entity through which the Fractional Tax enterprise conducted client relationships. FTUSA was never disclosed to Plaintiff during recruitment, onboarding, or contracting, and Plaintiff provided no authorization of any kind to FTUSA for use of Plaintiff's identity, credentials, or work product.

17. Defendant Chandler Murphy ("Murphy") is a natural person who, at all relevant times, served as Director of Operations for Terma. Murphy acted as a principal operational liaison with Plaintiff and communicated with Plaintiff through both Terma-branded and Fractional Tax-branded channels, including fractionaltax.com email accounts and the Termaproject Slack workspace.

18. Defendant Nishchal Basnyat ("Basnyat") is a natural person who, at all relevant times, served as Chief Executive Officer of Terma and FTINC. Basnyat made the original recruitment post on Upwork through which Plaintiff was recruited, signed Plaintiff's service contract on behalf of FTINC, and participated in communications and decisions relating to the entity structure and conduct challenged in this action.

19. "Upwork Defendants" refers collectively to Upwork Inc. and Upwork Global LLC. Where this Complaint refers to "Upwork" without further specification, that reference describes how those entities presented their platform and services to the public under the "Upwork" brand and does not necessarily attribute all conduct to a single legal entity.

20. "Fractional Tax Entity Defendants" refers collectively to Terma, FTINC, and FTUSA. Where this Complaint refers to "Fractional Tax" without further specification, that reference describes how those entities presented their services to the public under the "Fractional Tax" brand and does not necessarily attribute all conduct to a single legal entity.

21. "Fractional Tax Defendants" refers collectively to the Fractional Tax Entity Defendants together with individual Defendants Murphy and Basnyat.

22. Upon information and belief, the Fractional Tax Defendants acted jointly and/or through agents and instrumentalities in connection with the conduct challenged in this Complaint, operating through overlapping branding, infrastructure, personnel, communications systems, and client-facing channels.

23. The precise internal allocation of responsibility among the Upwork Defendants and among the Fractional Tax Defendants is presently unknown to Plaintiff.

## III. JURISDICTION AND VENUE

24. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States, including Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

25. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's state-law claims because those claims are so related to Plaintiff's federal claim that they form part of the same case or controversy under Article III.

26. This Court has personal jurisdiction over the Upwork Defendants because they purposefully directed business activity toward Illinois and toward Plaintiff in Illinois through the Upwork platform, including the operation of the platform through which the Fractional Tax Defendants recruited Plaintiff, agency-profile display, proposal transmission, platform communications, and Upwork's handling of Plaintiff's support-case submissions and subsequent failure to meaningfully remediate the challenged conduct. Plaintiff's claims arise directly out of that Illinois-directed conduct. Illinois's long-arm statute extends to the limits of federal and Illinois due process. Defendant Upwork Inc. has publicly represented that it has offices in Chicago, Illinois, further supporting its purposeful presence in this District.

27. This Court has personal jurisdiction over the Fractional Tax Defendants because they purposefully directed business activity toward Illinois by recruiting Plaintiff, an Illinois resident, through Upwork; entering into and carrying out a business relationship with Plaintiff in Illinois; communicating repeatedly with Plaintiff in Illinois through Upwork, email, Slack, and related systems; using Plaintiff's professional identity in commercial solicitations affecting Illinois; and causing injury to Plaintiff in Illinois. Illinois's long-arm statute extends to the limits of federal and Illinois due process.

28. In particular, Murphy personally directed communications, onboarding instructions, operational directives, and termination-related notices to Plaintiff in Illinois; Basnyat personally recruited Plaintiff through Upwork targeting Illinois, executed the January 7, 2025 contract, and participated in termination-related communications directed at Plaintiff in Illinois.

29. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to these claims occurred in this District, including Plaintiff's recruitment and work from this District, Defendants' communications directed to Plaintiff in this District, Plaintiff's discovery in this District of the challenged conduct, and the resulting harm to Plaintiff's professional reputation and business interests in this District.

30. Plaintiff resides in this District and, at all relevant times, conducted his professional work from this District.

## IV.   FACTUAL ALLEGATIONS

31. This action arises from the alleged client-facing use of Plaintiff's name, CPA credential, professional background, and related professional identifiers in Upwork proposals and related communications that Plaintiff did not author, review, or approve.

32. The challenged proposals were transmitted through Upwork's internet-based platform to prospective clients located in multiple U.S. states and abroad, constituting use in interstate and foreign commerce.

33. During the relevant period, agency-side users associated with the Fractional Tax Defendants submitted proposals and related communications through the Fractional Tax, Inc. Upwork agency account in a manner that presented them to clients under Plaintiff's visible professional identity.

34. In the representative client threads alleged below, those proposals appeared under Plaintiff's name and profile image, making them appear to prospective clients as communications sent by Plaintiff.

35. Plaintiff did not authorize agency-side users to submit client-facing proposals under Plaintiff's displayed identity without Plaintiff's prior review or approval, and Plaintiff lacked full visibility into proposal activity conducted under Plaintiff's name.

36. Plaintiff further alleges, on information and belief, that one or more challenged proposals may have been drafted, assisted, or refined using artificial intelligence or similar automated drafting tools, a matter Plaintiff previously raised with

Defendants and for which relevant records remain within Defendants' possession, custody, or control.

37. Where allegations are stated on information and belief, Plaintiff believes such allegations are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. Allegations stated without qualification are based on Plaintiff's personal knowledge, direct observation, or review of documents within Plaintiff's possession.

38. The challenged solicitations were made under the public-facing business name "Fractional Tax" through an operational structure involving FTINC and Terma.

39. Upwork's agency structure permitted agency-side users to submit proposals and manage contracts under an agency member's profile while clients encountered those solicitations through the displayed freelancer identity.

## A. Plaintiff's Professional Identity, Practice, and Use of Upwork

40. Plaintiff is a licensed CPA who held active licenses in Illinois and Pennsylvania during the relevant period and became licensed in California on August 14, 2025. Plaintiff operates an independent tax practice focusing on U.S. tax compliance and advisory, including international and cross-border tax matters, and uses his name, photograph, CPA credential, professional biography, and related identifiers in commerce in connection with the marketing of his services.

41. During the relevant period, Plaintiff used Upwork as part of the business development and marketing of his practice. Plaintiff's Upwork profile reflected his CPA credential, tax-focused experience, and professional background.

Because that profile conveyed Plaintiff's identity and credentials, attribution under Plaintiff's name was, and remains, materially significant. (Ex. I-2.)

**B. Recruitment Through Terma and Entry into the Fractional Tax Structure**

42. On December 20, 2024, Plaintiff responded through Upwork to a job posting titled "Great CPA / EA needed for a growing Tax Firm," presented through an Upwork account identified as "Nishchal Basnyat, Terma Project." The posting described a part-time tax-season role involving consultations, return review, e-filing, and preparation of complex tax forms. Basnyat responded the same day and the parties held an initial Zoom meeting. (Exs. A-1, A-2.)

43. Between December 21 and 23, 2024, day-to-day coordination shifted to Defendant Murphy, who communicated from a @termaproject.com email address. Murphy outlined onboarding steps including submission of Plaintiff's CPA licenses and PTIN, platform onboarding, security training, and Fractional Tax email setup. The opportunity was presented as a tax-services operation with an internal team, without disclosure of how responsibilities were divided among FTINC, Terma, and FTUSA. (Exs. A-2, B-1(a), B-1(b).)

**C. Contract Formation, Relationship Structure, and Operational Control**

44. On January 7, 2025, Plaintiff executed a suite of onboarding agreements with FTINC as a single engagement package: a Service Contract, a Non-Disclosure Agreement, a Non-Solicitation Agreement, and a Content Assignment & Use of Name Approval Agreement. FTINC was the formal contractual counterparty.

The Service Contract identified Plaintiff's sole proprietorship, Evan J Cronin CPA & Tax Services, as the service provider and FTINC as the company. As alleged in paragraph 10, Plaintiff's sole proprietorship is not a separate incorporated or limited-liability entity; Plaintiff is the sole proprietor and brings this action in his individual capacity. (Exs. B-2(f), B-2(g).)

45. At no point during recruitment, onboarding, or contracting was Plaintiff informed that FTUSA existed or had any role in the Fractional Tax operation. Plaintiff's written agreements were exclusively with FTINC.

46. The Service Contract stated an effective date of January 1, 2025 and a term ending December 31, 2025 unless earlier terminated. It described services including tax return preparation and review, client consultations, representation before taxing authorities, bookkeeping, technical tax research, training of team members, and oversight of client engagements. The contract also stated that FTINC was not, and did not operate as, a licensed CPA firm, and that no services should be provided to clients in a manner suggesting otherwise. (Ex. B-2(f).)

47. The Content Assignment & Use of Name Approval Agreement addressed "Deliverables" and "Company Content" created by Plaintiff for the benefit of the company. During the contract-review process, Plaintiff requested that any use of his name and likeness be tied to content Plaintiff actually authored and that post-termination use be limited to pre-existing content. Murphy confirmed that FTINC accepted that revision. Plaintiff entered the relationship with the

understanding that client-facing use of his identity would be limited to work or content Plaintiff actually created, reviewed, or approved. (Exs. B-2(b), B-2(c), B-2(f), B-2(g).)

48. The Service Contract expressly set the January 1–December 31, 2025 term, specified compensation, and established termination procedures, including termination without cause on thirty days' written notice. The Non-Disclosure Agreement and Non-Solicitation Agreement, executed as part of the same package, addressed confidentiality and restrictive covenants, and at least one contains different language concerning the duration of Plaintiff's engagement.

49. Plaintiff alleges that Defendants nevertheless treated the Service Contract as the operative agreement for termination purposes, as evidenced by Murphy's March 28, 2025 termination notice, which invoked a thirty-day notice period and stated that Plaintiff's contract would terminate on April 28, 2025.

50. Operational coordination proceeded through overlapping Terma-branded and Fractional Tax-branded infrastructure, including @termaproject.com and @fractionaltax.com communications and the Termaproject Slack workspace. Internal workflows directed how work was assigned, how client communications were handled, and how Upwork-originated engagements were migrated off-platform. Those company-controlled systems and workflows shaped who possessed the records, permissions, and operational control necessary to monitor or reconstruct client-facing activity conducted under Plaintiff's identity. (Exs. B-1(d), B-3.)

— 13 —

51. Client data, engagement records, and work administration operated through the MyTax client portal at fractionaltax.knack.com and the @fractionaltax.com email infrastructure. Upon information and belief, those systems were associated with FTUSA or used by FTUSA as the client-facing service-delivery entity within the broader Fractional Tax enterprise.

52. Plaintiff further alleges, upon information and belief, that client engagement letters or related client-facing service documents were issued in the name of Fractional Tax USA, LLC for at least some client matters routed through those systems. Upwork-originated client relationships obtained or advanced through proposals submitted under Plaintiff's displayed identity were routed into those systems for ongoing service delivery, connecting the proposal activity conducted under Plaintiff's identity on Upwork to records and infrastructure within the Fractional Tax enterprise.

**D. Upwork's Agency System and Unauthorized Proposals Using Plaintiff's Identity**

53. On February 27, 2025, Plaintiff became associated with and was publicly listed on the Fractional Tax, Inc. Upwork agency account. Under Upwork's agency architecture, proposals submitted through the agency were presented to prospective clients under the assigned member's visible name and profile photograph and appeared in the client-facing interface as communications from that member. Because Plaintiff was the sole publicly listed agency member during the relevant period, all agency proposal activity was channeled through

Plaintiff's displayed identity, compounding the scope and impact of the unauthorized attributions. (Ex. C-1.)

54. Upwork's agency system allows a business manager to submit proposals on behalf of agency members, permits more than one person to act for the agency, and collects agency earnings at the agency level. Upwork's own agency materials stated that business managers could submit proposals on behalf of any agency member, that Connects could not be assigned or restricted to specific agency members, and that monitoring team activity was the agency's responsibility. Plaintiff did not understand and did not authorize agency-side users to submit client-facing proposals under his displayed identity without his prior review or approval, and Plaintiff lacked full visibility into such proposal activity. (Exs. C-2(a)–C-2(d).)

55. Beginning no later than February 28, 2025, client-facing proposals were submitted under Plaintiff's identity containing first-person language and firm-level representations that made Plaintiff appear to be the operator, spokesperson, or professionally responsible representative of Fractional Tax. Representative examples include:

a. On February 28, 2025, a proposal stated in substance that Plaintiff "run[s]" Fractional Tax and described the firm as having more than 50 years of combined experience and hundreds of clients. Plaintiff did not author, review, or approve that proposal. (Ex. D-2.)

b. On March 3, 2025, a proposal to a client seeking audit-related services stated in substance that Plaintiff "run[s]" Fractional Tax and that the firm specialized in financial auditing. Plaintiff did not author, review, or approve that proposal, did not practice audit services, and did not hold himself out as offering audit services. (Exs. D-1(a), D-1(b).)

c. Additional proposals consistent with this same pattern were identified by Plaintiff, including a further February 28, 2025 proposal and a March 26, 2025 proposal involving a Form 5500-related engagement. (Exs. D-4, D-5.)

56. The March 3, 2025 audit-related proposal created professional and regulatory risk for Plaintiff because, although Plaintiff held an individual CPA license, neither Plaintiff nor his sole proprietorship held a CPA firm license for audit or attest work. The Service Contract further stated that FTINC was not a licensed CPA firm. In internal Slack communications, Murphy confirmed in substance that FTINC did not provide audit or attest services. (Exs. B-2(f), D-1(c).)

57. On March 11, 2025, Murphy circulated internal workflow instructions stating that only Plaintiff, Murphy, and a Terma-side assistant were involved on Upwork, with the assistant not participating "besides just proposing for the jobs," and with communications expected to move off Upwork once a contract issued.

58. Additionally, upon information and belief, one or more of the challenged proposals may have been drafted, assisted, or refined using artificial-intelligence or generative-AI tools, without disclosure to Plaintiff.

— 16 —

**E. Internal Objections and Escalating Notice to Fractional Tax**

59. On March 4, 2025, after discovering the March 3 audit-related proposal, Plaintiff raised the issue internally in Slack and confirmed with Murphy that FTINC was not a licensed CPA firm and did not provide audit or attest services. (Ex. D-1(c).)

60. On March 12, 2025, Plaintiff sent Murphy a written internal objection addressing the use of his name on Upwork proposals, stating that proposals had been submitted under his name containing misstatements regarding services, firm background, or other client-facing claims, and requesting a more thorough process if proposals were to continue being submitted under his identity. (Ex. E-1.)

61. On March 26, 2025, Plaintiff sent a further written objection using a Form 5500-related matter as an example of an engagement proposed under Plaintiff's identity before Plaintiff had reviewed, priced, or approved it, and proposed a structural clarification to protect Plaintiff's professional independence. (Ex. E-2.)

62. No meaningful internal corrective structure was implemented in response to Plaintiff's March 12 and March 26, 2025 written objections.

**F. Formal Notice to Fractional Tax and Escalation to Upwork**

63. On March 28, 2025, after repeated internal objections failed to stop the conduct, Plaintiff sent Murphy a formal written notice titled "Formal and Final Notice Regarding Use of Name, Likeness, and Client-Facing Representation." In that notice, Plaintiff stated that proposals had been submitted under his full name, likeness, and identity without his knowledge, consent, review, or approval;

identified false or inaccurate client-facing representations including statements that Plaintiff ran or owned Fractional Tax, claims regarding firm experience and client volume, and service descriptions involving audit-related work; and demanded immediate cessation of proposal activity, correction of prior misrepresentations, and disclosure of all proposals submitted using Plaintiff's name. (Ex. F-1.)

64. Murphy responded the same day by asking Plaintiff to join a live call. Plaintiff declined and requested that the matter continue in writing. Later that evening, Murphy sent a termination email, copied Basnyat and legal counsel, disputed Plaintiff's characterization, stated that active proposals had been withdrawn, and gave formal notice of termination effective April 28, 2025. (Ex. F-2.)

65. On April 7, 2025, FTINC's counsel sent Plaintiff a letter characterizing Plaintiff's claims as "frivolous," stating that Plaintiff's conduct in asserting his rights "may be construed by courts and law enforcement as extortion," and threatening to report Plaintiff to law enforcement if Plaintiff continued. That letter was sent after Plaintiff had raised documented internal objections, after Plaintiff had opened Upwork Support Case ID 51489662, and after Upwork had acknowledged that Plaintiff did not appear to be the person who submitted the proposals. (Ex. F-3.)

G. Escalation to Upwork and Platform Response

66. Also on March 28, 2025, Plaintiff escalated the matter to Upwork through Support Case ID 51489662, reporting that his name and CPA credentials were

— 18 —

being used by another Upwork user or agency in client proposals without his consent. Plaintiff submitted a formal statement identifying representative examples of unauthorized proposal activity, attached supporting screenshots, and requested a full accounting of how Plaintiff's identity had been used through the FTINC agency account. (Ex. G-1.)

67. On March 29, 2025, Upwork acknowledged Plaintiff's report, stated it was reviewing the matter, and explained that business managers may submit proposals on behalf of agency members. Upwork initially stated that, after consulting with its team, it did not consider the reported conduct a violation, and advised Plaintiff that he could leave the agency. (Ex. G-2.)

68. Later on March 29, 2025, after additional written exchanges, Upwork stated in writing that it was "collating all of this information to establish the violation" and that, based on the screenshots Plaintiff had provided, "it appears that you were not the one who sent these services to clients." That communication constituted Upwork's written acknowledgment that the proposals at issue appeared not to have been authored or transmitted by Plaintiff. (Ex. G-3.)

69. Between March 29 and April 1, 2025, Plaintiff submitted additional documentation and repeated requests for removal of unauthorized materials, disassociation of Plaintiff's identity from the agency account, and disclosure of proposal logs, authorship metadata, and submission records.

70. On April 1, 2025, Plaintiff also forwarded the matter to Upwork Legal through legalnotices@upwork.com as a formal legal notice. Upwork Legal acknowledged

receipt that same day and stated that, if Plaintiff was providing notice required under Upwork's Terms of Service, the email would serve as proof of receipt. (Ex. G-5.)

71. Despite repeated written notice and Upwork's own written acknowledgment, Upwork did not provide the substantive remediation Plaintiff requested, including full authorship transparency, complete proposal logs, meaningful disassociation of Plaintiff's identity from agency materials, or equivalent corrective relief.

## H. Termination, Lockout, and Immediate Aftermath

72. Murphy's March 28, 2025 termination notice stated that Plaintiff's contractual duties would continue through April 28, 2025 and that FTINC would send further instructions outlining next steps for final work and platform access. (Ex. F-2.)

73. Despite that stated April 28 termination date and promised transition process, Plaintiff's access to the Termaproject Slack workspace and the MyTax client portal was revoked by March 29, 2025, and Plaintiff's Fractional Tax email account (evan@fractionaltax.com) was disabled on March 31, 2025. No meaningful transition instructions were provided before or after these lockouts. (Exs. H-1, H-2.)

74. Those access revocations deprived Plaintiff of internal communications, client files, engagement records, billing-related information, delegation history, and other materials needed to confirm assignments, preserve evidence, complete

work, and invoice accurately—even while FTINC continued to treat Plaintiff as contract-bound through April 28, 2025. (Ex. F-2, F-3.)

## I. Continued Client-Facing Misattribution and Failure to Remediate

75. On April 2, 2025, Murphy ended at least two agency-side Upwork contracts associated with Plaintiff's displayed identity, including contracts in the Danielle Daou and Zephrina Cazaubon matters, by informing each client that the agency was closing the contract, providing a direct link to Plaintiff's individual Upwork profile, and stating the client was welcome to work with Plaintiff directly. Murphy took those actions without Plaintiff's involvement or advance notice.

76. After those closures, public-facing materials continued to associate Plaintiff with the FTINC agency account. A contract reflected in the FTINC agency's public work history showed $269 in earnings for tax-related work Plaintiff actually performed. A public review associated with that contract expressly referred to "Evan and his team" and remained displayed on the FTINC agency profile. Plaintiff did not control how that review was displayed and had no platform-side mechanism to remove or clearly dissociate himself from it. (Ex. I-2)

77. On April 21, 2025, nineteen days after Murphy closed the relevant contract, Zephrina Cazaubon returned to the original agency contract thread on Upwork to ask how to contact Plaintiff for an update on pending work, and also contacted Plaintiff's individual profile directly—demonstrating that the misattribution persisted in the platform's thread architecture.

78. Plaintiff does not know the full number or contents of all proposals and related client-facing communications submitted under his identity during the relevant period. Murphy's March 28, 2025 response confirmed that at least one proposal Plaintiff had associated with a late-March client thread actually reflected a proposal submitted on February 27, 2025, establishing that proposal activity under Plaintiff's identity predated and extended beyond what was known to Plaintiff in real time. Despite Plaintiff's written demand for a complete list of all proposals submitted under his name, Defendants did not provide the requested disclosure. The full scope of client-facing materials submitted under Plaintiff's identity remains unknown to Plaintiff and within Defendants' possession, custody, or control. (Ex. F-2)

79. Upwork later marked Support Case ID 51489662 as "solved" without providing the requested information or relief. (Ex. G-6.)

## J. Corporate Status, Entity Records, and Overlapping Structure

80. Plaintiff alleges the following entity-status and structure facts to the extent they help explain control, overlap, and allocation-of-responsibility issues relevant to the challenged conduct.

81. FTINC was the formal contractual counterparty and the entity identified on the Upwork agency profile. Terma was involved in recruitment, onboarding, and operational coordination. FTUSA was associated with the public-facing website and MyTax client portal through which client relationships were maintained and serviced. All three entities operated under the single "Fractional Tax" brand,

shared the same mailing address (14 Wall Street, 20th Floor, New York, NY 10005), and used overlapping personnel and infrastructure, without disclosing the internal allocation of legal obligations to Plaintiff or, on information and belief, to clients. (Ex. C-1)

82. Murphy's March 11, 2025 internal workflow email directed that all clients must sign FTINC's engagement letter and accept a quote in the MyTax system, and that communications must move off Upwork once a contract issued. That directive established a deliberate pipeline from Upwork-originated client acquisition under Plaintiff's identity to the MyTax platform operating under FTUSA's domain.

83. Plaintiff later learned from public entity records that FTINC's Delaware charter had been forfeited as of March 9, 2025 and was reinstated on April 8, 2025, and that Terma remained active but delinquent during the relevant period. (Exs. J-1, J-2, J-3.)

## K. Counsel Engagement and Demand Letter to Upwork

84. After repeated written escalations to Upwork failed to produce meaningful remediation, Plaintiff submitted a Professional Statement to Upwork on April 16, 2025, and thereafter retained Pullman & Comley LLP for a limited-scope engagement to correspond with Upwork concerning the unauthorized use of Plaintiff's identity and the failure to remediate.

85. On April 29, 2025, Pullman & Comley sent Upwork a formal demand through Upwork's Legal Notices channel. Upwork confirmed receipt that same day. On

May 9, 2025, Upwork stated that, under the arbitration provisions it contended were applicable, it had 60 days from receipt of the demand to provide a response. By July 7, 2025, more than 60 days had elapsed from Upwork's receipt of that demand and Upwork still had not provided a substantive response. (Exs. K-1, K-2.)

## L. Resulting Professional, Reputational, Economic, and Functional Harm

86. As a direct and proximate result of Defendants' conduct, Plaintiff suffered and continues to suffer professional, reputational, economic, and functional harm, including: diversion of substantial time away from paid client work and business development to investigate proposals, preserve records, respond to client confusion, communicate with Upwork, and pursue corrective action; reputational risk from client-facing statements made under Plaintiff's name and CPA credentials suggesting authorship, endorsement, or service capability Plaintiff had not approved, including audit-related services; the need to clarify, correct, or distance himself from statements clients had reason to believe came from Plaintiff; and continuing reputational risk from public and historical traces that remained associated with the FTINC agency profile.

87. The lockout from Slack, MyTax, and Plaintiff's Fractional Tax email account compounded that harm by depriving Plaintiff of access to communications, client files, workflow history, and billing-related information needed to preserve evidence and perform administrative tasks. (Exs. H-1, H-2.)

88. As a result of Defendants' conduct, Plaintiff experienced significant stress, disruption to his ability to perform client-service and administrative tasks, and incurred out-of-pocket and unreimbursed expenses.

## M. Separate Fractional Tax Compensation and Work-Relationship Facts

89. Although the January 7, 2025 Service Contract labeled Plaintiff an independent contractor, FTINC defined the services broadly and integrated Plaintiff into its ordinary tax-service operations using company-supplied systems and internal procedures, including MyTax, Slack, Fractional Tax email, internal workflow rules, and company-directed onboarding and training. (Exs. B-2(f), B-3.)

90. Internal workflow documents reflected centralized control over how work was assigned, staged, and completed. A February 7, 2025 "Tax Season Workflow" email assigned defined roles such as account manager, service professional, and reviewer; instructed personnel regarding kickoff, signatures, e-filing, follow-up timing, and escalation; and specifically stated that if Plaintiff was the reviewer, secondary review would be coordinated by FTINC's Head of Tax.

91. The Service Contract established compensation at either an hourly rate of $85 for calls and meetings or 45% of the final service cost for completed services, with twice-monthly invoicing and payment due within 10 business days. (Ex. B-2(f).)

92. On March 24, 2025, Murphy raised a timesheet issue and stated that MyTax reflected zero hours for the prior two weeks, while also stating her belief that Plaintiff had performed correspondence work during that period and asking that

the timesheet be updated so accrued time could be accurately reflected and prepared for invoicing. Plaintiff responded on March 26, 2025 that Plaintiff had been maintaining a separate log of hours but had hesitated to submit them because certain categories of work—including proposal development, fact-pattern triage, onboarding support, and other pre-engagement tasks—had not been clearly structured as billable hourly work or fixed-fee work. Defendants thereafter revoked Plaintiff's access to the systems and records needed to reconcile, validate, and invoice that accrued time. (Ex. E-2.)

93. At minimum, Plaintiff identifies one specific unresolved compensation item of $269 in Upwork earnings associated with work Plaintiff actually performed, consisting of $149 for an EIN application, $100 for a Form 7004 extension mailed on March 10, 2025, and $20 for mailing costs. Additional compensation beyond that specific item may remain due for other work performed during the relationship, but could not be fully validated or invoiced because Defendants revoked Plaintiff's access to the systems and records needed to reconcile, validate, and invoice all earned compensation.

94. Plaintiff was therefore left contract-bound, subject to asserted transition and confidentiality obligations, and yet deprived of the access necessary to validate work performed, complete assigned deliverables, preserve records, and submit invoices.

**N. Protected Disclosures, Refusal to Participate, and Retaliatory Conduct**

95. Between March 4 and March 28, 2025, Plaintiff repeatedly objected in writing to the use of his name, likeness, CPA designation, and professional identity in client-facing proposals and communications that he had not reviewed or approved. (Exs. E-1, E-2.)

96. On March 28, 2025, Plaintiff sent a formal written notice to Murphy demanding that Defendants stop submitting proposals under his name without his prior written review and approval, correct prior misrepresentations, and disclose the proposals that had already been submitted using his identity. (Ex. F-1)

97. In that March 28 notice, Plaintiff stated that if confirmation was not received, he would proceed with formal cease-and-desist action, report the matter to relevant regulatory bodies, and preserve communications for legal enforcement. (Ex. F-1)

98. Plaintiff also refused to permit further use of his name, CPA credential, or professional identity in proposals or other client-facing representations without his prior written review and approval, and refused to endorse representations that he had not reviewed and could not verify.

99. Later on March 28, 2025, Murphy sent Plaintiff a termination notice stating that Plaintiff's contract would end on April 28, 2025, that his duties would continue until then, and that follow-up instructions regarding deliverables, communication, and platform access would be provided the following Monday. (Ex. F-2.)

100. No such follow-up instructions were provided. By March 29, 2025, Plaintiff's access to Slack and MyTax had been revoked. On March 31, 2025, Plaintiff's FTINC email account was disabled. (Exs. H-1, H-2.)

101. On April 2, 2025, Plaintiff made disclosures concerning the conduct described above to the Illinois Department of Financial and Professional Regulation, the Pennsylvania Department of State, Bureau of Enforcement & Investigation, and the California Board of Accountancy.

102. On April 7, 2025, FTINC's counsel sent Plaintiff a letter stating that the company considered his claims meritless, directing him not to contact the company except through counsel, and stating that the company would not respond further. (Ex. F-3.)

103. On April 9, 2025, Plaintiff attempted to submit his preliminary memorandum to the Internal Revenue Service Office of Professional Responsibility by email, but the transmission failed because the message exceeded the recipient's size limit. Plaintiff then successfully submitted the memorandum to the IRS Office of Professional Responsibility by fax on April 10, 2025.

104. As a result of Defendants' actions, Plaintiff lost access to systems needed to perform work, document work performed, communicate through company channels, and support invoicing during the stated notice period.

105. By filing this Complaint, Plaintiff hereby demands that all Defendants preserve any and all documents, data, communications, records, metadata, logs, and other information that may be relevant to the claims and defenses in this

action, including but not limited to all materials identified in the Prayer for Relief below. This demand supplements and does not replace the preservation requests in the Prayer for Relief.

## V. CAUSES OF ACTION

106. Plaintiff pleads some Counts in the alternative as permitted by Federal Rule of Civil Procedure 8(d). Allegations made in one Count are not admissions in any other Count. Where Counts are pleaded in the alternative, Plaintiff does not waive any claim or theory by asserting another.

### COUNT I

Illinois Right of Publicity Act,
765 ILCS 1075/30, /40, /50
(Against All Defendants)

107. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

108. Plaintiff is a living individual within the meaning of the Illinois Right of Publicity Act.

109. Plaintiff's identity, as used in the conduct alleged in this Complaint, included Plaintiff's name, photograph, image, likeness, biography, CPA credential, and other professional identifiers and attributes that served to identify Plaintiff to ordinary, reasonable viewers.

110. The challenged uses were for commercial purposes because Defendants used Plaintiff's identity in connection with the offering for sale, promotion, marketing, and solicitation of tax, accounting, and related professional services.

111. Plaintiff did not provide previous written consent for the specific client-facing uses alleged in this Complaint. The January 7, 2025 Content Assignment & Use of Name Approval Agreement authorized FTINC to use Plaintiff's name, biodata, picture, and video in defined categories of Company Content and work products or contributions created by Plaintiff. That agreement did not authorize third parties to submit third-party-authored, first-person client-facing proposals under Plaintiff's displayed identity without Plaintiff's authorship, review, or approval; did not authorize false statements that Plaintiff ran or owned Fractional Tax; and did not authorize audit-related service claims submitted under Plaintiff's CPA-credentialed identity.

112. The Fractional Tax Defendants caused Plaintiff's identity to be used in proposals and related communications sent to prospective clients without Plaintiff's knowledge, authorship, or approval. Murphy and Basnyat personally directed, authorized, participated in, or ratified the challenged uses.

113. As to the Upwork Defendants, Upwork's agency architecture and attribution mechanics affirmatively displayed and attributed Plaintiff's identity in connection with commercial solicitations. After Plaintiff provided repeated written notice and Upwork acknowledged that Plaintiff appeared not to be the person who sent the proposals, the Upwork Defendants continued to maintain and attribute those uses.

114. The challenged uses were not exempt noncommercial, news, public-affairs, or otherwise protected uses within the meaning of the Act.

115. By reason of the foregoing, Defendants violated 765 ILCS 1075/30. Plaintiff suffered and continues to suffer damages including reputational harm, professional and regulatory exposure, diversion of time and labor, and economic injury.

116. The conduct of one or more Defendants was willful, knowing, or undertaken with conscious disregard of Plaintiff's rights, thereby supporting punitive damages to the extent permitted by law.

117. WHEREFORE, Plaintiff respectfully requests judgment in Plaintiff's favor and against the relevant Defendants under this Count, including all relief authorized by 765 ILCS 1075 and the Prayer for Relief.

**COUNT II**

Lanham Act, False Endorsement / False Association, 15 U.S.C. § 1125(a)
(Direct Liability Against the Fractional Tax Defendants;
Contributory Liability Against the Upwork Defendants)

118. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

119. Plaintiff's name, profile image, biography, and CPA credential operate as commercial identifiers in the market for tax and accounting services that communicate Plaintiff's authorship, approval, affiliation, and professional responsibility.

120. The challenged proposals were transmitted in interstate and foreign commerce. The Fractional Tax Defendants used Plaintiff's identity in connection with the promotion and solicitation of professional services through proposals

— 31 —

presented under Plaintiff's name, photograph, and CPA credential, using first-person language that made them appear to originate from Plaintiff personally.

121. Upwork's platform presented the challenged proposals through Plaintiff's displayed profile without clearly disclosing to recipients that an undisclosed third party, rather than Plaintiff, had authored the solicitation.

122. The likelihood of confusion was concrete. A prospective client responded to "Evan" by name, scheduled a meeting, engaged the thread as though the solicitation originated from Plaintiff, and later returned to the thread and contacted Plaintiff's individual profile directly after the agency contract was closed—reflecting that the misattribution persisted in the platform's architecture.

123. By this conduct, the Fractional Tax Defendants caused or were likely to cause confusion as to Plaintiff's affiliation, connection, or association with the offered services, and as to whether Plaintiff personally authored, approved, or was professionally responsible for the solicitations.

124. As to the Upwork Defendants, Plaintiff proceeds under a contributory liability theory. After Plaintiff provided written notice and Upwork acknowledged that Plaintiff appeared not to be the sender, the Upwork Defendants continued to provide and maintain the platform services through which the misattributed solicitations were displayed.

125. By reason of the foregoing, the Fractional Tax Defendants directly violated 15 U.S.C. § 1125(a)(1)(A), and the Upwork Defendants are liable for contributory false endorsement.

126. WHEREFORE, Plaintiff respectfully requests judgment in his favor and against the relevant Defendants under this Count, including all relief authorized by the Lanham Act and the Prayer for Relief.

**COUNT III**

Illinois Uniform Deceptive Trade Practices Act,
815 ILCS 510/2 and 510/3
(Against All Defendants)

127. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

128. The Fractional Tax Defendants engaged in deceptive trade practices by using Plaintiff's identity in client-facing solicitations not authored or approved by Plaintiff, thereby creating a likelihood of confusion that Plaintiff authored, endorsed, or was professionally responsible for the services being offered, and conveying that Plaintiff had a status, affiliation, or connection he did not have.

129. The Upwork Defendants, through their agency mechanics and attribution features, permitted such proposals to be presented under Plaintiff's displayed identity without meaningful client-facing authorship transparency, and after notice continued to maintain or leave unremedied marketplace-facing attributions.

130. Plaintiff is likely to be damaged because client-facing materials remained publicly associated with Plaintiff after his disassociation from the agency, including a public review referring to "Evan and his team" that remained on the FTINC agency profile, and because a client returned to the original agency contract thread on April 21, 2025 to seek Plaintiff's involvement and separately contacted Plaintiff's individual profile—demonstrating that the deceptive attributions continued to generate confusion weeks after the agency relationship ended. The challenged conduct is capable of continuing to mislead absent injunctive relief.

131. On information and belief, the Fractional Tax Defendants acted willfully or with conscious disregard, supporting costs and reasonable attorney's fees to the extent permitted by 815 ILCS 510/3.

132. WHEREFORE, Plaintiff requests injunctive relief, costs, reasonable attorney's fees to the extent authorized by law, and such other relief as the Court deems proper.

**COUNT IV**

Illinois Consumer Fraud and Deceptive Business Practices Act,
815 ILCS 505/2 and 10a
(Against Upwork Defendants)

133. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

134. At all relevant times, the Upwork Defendants were engaged in trade or commerce within the meaning of the Act, including the design, advertising, sale,

subscription, operation, and monetization of an online labor marketplace through which freelancers and agencies seek work, submit proposals, obtain profile visibility, purchase Connects and related features, and enter client engagements.

135. Plaintiff is a direct paying subscriber and purchaser of Upwork platform services. Plaintiff purchased Upwork's Freelancer Plus subscription on November 11, 2024 for $27.00; separately purchased 150 Connects on November 21, 2024 for $24.53; and purchased an annual Freelancer Plus membership on December 16, 2024 for $228.89.

136. The Upwork Defendants marketed and operated paid freelancer-side services, including Freelancer Plus and Connects, as tools to help users obtain visibility, compete for work, and participate in Upwork's proposal and client-acquisition system. The Upwork Defendants also marketed and operated an agency architecture under which business managers could submit proposals on behalf of agency members using those members' displayed names, profiles, photographs, biographies, and credentials, while agency proposal activity drew from the agency's collective Connects balance.

137. The Upwork Defendants represented through their platform rules, help materials, and account-governance materials that users were required to provide truthful profile information and that misleading conduct—including misrepresentation of identity, qualifications, business affiliation, authorship, or who would actually perform the work—was prohibited.

138. Notwithstanding those stated rules, the Upwork Defendants designed, maintained, and monetized a platform structure that permitted agency business managers to submit client-facing proposals through an individual member's displayed freelancer identity without meaningful per-proposal consent, without real-time notice to the affected member, without client-facing authorship transparency, and without member-level controls allowing the affected member to restrict such submissions. The Upwork Defendants' own agency materials stated that business managers could submit proposals on behalf of any agency member, that Connects could not be assigned or restricted to specific members, and that monitoring team activity was the agency's responsibility.

139. Plaintiff was not a business manager, did not have access to the internal agency proposal system, and did not have a platform-side mechanism that allowed Plaintiff to require pre-submission approval, restrict agency Connect usage by member, block business managers from submitting proposals under Plaintiff's displayed identity, or independently obtain a complete audit trail of all uses of Plaintiff's identity within the agency proposal system.

140. On March 28, 2025, Plaintiff provided written notice to Upwork that Plaintiff's name, likeness, and CPA credentials had been used in client-facing proposals without Plaintiff's knowledge, review, or consent. On March 29, 2025, Upwork responded by explaining that business managers could submit proposals on behalf of agency members, stating that the reported conduct did not constitute a violation, and advising Plaintiff that Plaintiff could leave the

agency. After notice, the Upwork Defendants did not provide complete proposal logs, full authorship transparency, meaningful disassociation of Plaintiff's identity from agency-linked materials, or equivalent structural remediation.

141. The Upwork Defendants' conduct was unfair because Upwork sold paid freelancer-side services into the same marketplace in which it retained an agency architecture that permitted undisclosed business managers to deploy a regulated professional's visible identity and CPA credential in client-facing solicitations without per-proposal approval or real-time notice; because after written notice Upwork told the affected member to leave rather than providing logs, disassociation, or meaningful corrective controls; and because that practice offended public policy reflected in Illinois professional-licensing law, including the public policy protecting against misleading use of CPA identity, CPA title, and CPA-firm status in client-facing commercial solicitations.

142. Separately and in the alternative, the Upwork Defendants engaged in deceptive acts or practices by omitting, concealing, or failing to disclose in a fair and non-misleading manner, in connection with the sale and continuation of paid freelancer-side services to Plaintiff, material facts concerning the practical operation of the agency system, including that agency business managers could commercially deploy Plaintiff's displayed identity and professional credentials in client-facing proposals without Plaintiff's per-proposal approval and without meaningful platform-side protective controls. Had the practical operation of the agency architecture and the absence of meaningful member-level controls been

fairly disclosed, Plaintiff would not have purchased and maintained paid Upwork platform services on the same terms and would not have permitted Plaintiff's profile to remain associated with the agency structure as it operated in practice.

143. As a direct and proximate result of the Upwork Defendants' violations of 815 ILCS 505/2, Plaintiff suffered actual damage, including but not limited to at least $280.42 paid directly to Upwork for subscriptions and Connects, diversion of substantial professional time to investigation and remediation, out-of-pocket costs incurred in addressing the misuse of Plaintiff's identity and credentials, and commercial injury flowing from the platform-based misuse and continued attribution of Plaintiff's identity.

144. Pursuant to 815 ILCS 505/10a(d), Plaintiff will mail a copy of the complaint or other initial pleading to the Office of the Illinois Attorney General upon commencement of this action.

145. WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and against the Upwork Defendants under this Count; award actual damages, injunctive relief, costs, and reasonable attorney's fees as permitted by law; and grant such further relief as the Court deems proper.

**COUNT V**

Common-Law Unfair Competition / Passing Off
(Against Fractional Tax Defendants)

146. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

147. Plaintiff's identity, professional reputation, and CPA credential signaling carry commercial value in the marketplace for tax and accounting services because they communicate to prospective clients that Plaintiff personally stands behind, approves, authors, endorses, or is professionally responsible for the services presented under his identity.

148. The Fractional Tax Defendants used Plaintiff's identity in commerce in client-facing solicitations to market, solicit, and obtain paid tax and accounting work. By using Plaintiff's name, profile image, biography, and CPA credential in those solicitations without Plaintiff's authorship, review, or approval, they passed off services as Plaintiff's own and created a likelihood of confusion as to source, affiliation, endorsement, and professional responsibility.

149. On information and belief, the Fractional Tax Defendants used Plaintiff's professional identity to obtain commercial advantage, increase client trust, and secure engagements while retaining operational and financial control.

150. As a direct and proximate result, Plaintiff suffered commercial, reputational, professional, and economic harm.

151. WHEREFORE, Plaintiff requests judgment in his favor and against the Fractional Tax Defendants, including all relief available under Illinois law and the Prayer for Relief.

**COUNT VI**

Breach of Contract
(Against FTINC, and Terma in the Alternative Based on Agency,
Instrumentality, or Integrated-Enterprise Liability)

152. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

153. On January 7, 2025, Plaintiff and FTINC entered into a written Service Contract and a separate Content Assignment & Use of Name Approval Agreement. From January through March 2025, Plaintiff performed substantial obligations under those agreements. To the extent any further performance, transition cooperation, or invoicing was required, Plaintiff was ready, willing, and able to perform but was hindered and prevented by FTINC's own acts and omissions, as alleged below.

154. The Service Contract provided that FTINC was not and did not operate as a licensed CPA firm and that no services should be provided to clients suggesting otherwise. The Content Assignment agreement addressed use of Plaintiff's name in connection with work products or contributions Plaintiff created.

155. FTINC materially breached the Service Contract by causing client-facing proposals under Plaintiff's identity that suggested FTINC was a licensed CPA firm and that FTINC offered audit-related services despite the contractual limitation.

156. FTINC materially breached the Content Assignment agreement by using Plaintiff's name and CPA credential in client-facing proposals that were not

Plaintiff's work products, including solicitations falsely stating Plaintiff ran or owned FTINC.

157. FTINC further materially breached by revoking Plaintiff's access to Slack, MyTax, and email during the contractual notice period, despite representing that duties would continue through April 28, 2025 and that transition instructions would follow.

158. FTINC further failed to pay at least $269 in compensation due under the agreement. Additional compensation also remained due, as reflected in Murphy's March 24, 2025 timesheet inquiry identifying accrued but unlogged work, Plaintiff's March 26, 2025 response identifying categories of unresolved work, and Defendants' subsequent revocation of the systems and records needed to reconcile and invoice that accrued compensation.

159. FTINC may not rely on any alleged nonperformance of transition, validation, or invoicing obligations where FTINC's own access revocations—carried out during the contractual notice period and before the stated termination date—prevented that performance.

160. Although FTINC was the formal signatory, the relationship was recruited, negotiated, onboarded, and administered through Terma Project channels and personnel. Plaintiff was recruited through the "Terma Project" Upwork identity used by Basnyat, onboarded and contract-negotiated through @termaproject.com communications by Murphy in Murphy's role as Director of Operations at Terma, and integrated into Terma-managed systems including the Termaproject

Slack workspace. On information and belief, FTINC functioned as Terma's agent in an integrated business operation under shared executive control by Basnyat, and Terma is therefore liable as principal for FTINC's contractual obligations.

161. WHEREFORE, Plaintiff respectfully requests judgment in Plaintiff's favor and against FTINC, and against Terma in the alternative, for direct and consequential damages, costs, and such other relief as the Court deems just and proper.

## COUNT VII

**Common-Law Fraud / Fraudulent Inducement / Fraudulent Concealment (Against FTINC and Murphy; and against Terma and Basnyat to the extent alleged below)**

162. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

163. This Count is pleaded on two related theories: fraudulent inducement and fraudulent concealment.

**Fraudulent Inducement**

164. On January 6, 2025, during contract review, Plaintiff proposed a revision clarifying that use of Plaintiff's name and likeness would be limited to content Plaintiff actually created and, after termination, to pre-existing content.

165. On January 7, 2025, Murphy, writing from a @termaproject.com email address in her capacity as Terma's Director of Operations and as the operational representative conducting FTINC's contract negotiations with Plaintiff, stated that FTINC had "generally agreed and accepted most of [Plaintiff's] points" and specifically stated: "Use of Name and Likeness: Approved." Murphy then

confirmed that Plaintiff's final minor comments would be incorporated before the agreements were resent for execution. (Exs. B-2(b), B-2(c).)

166.    That January 7, 2025 representation was materially false or misleading when made because Defendants did not intend to limit client-facing use of Plaintiff's identity to content Plaintiff actually created, reviewed, or approved. By no later than February 28, 2025, agency-side personnel were submitting first-person client-facing proposals under Plaintiff's displayed identity without Plaintiff's review or approval. On March 11, 2025, Murphy confirmed internally that a Terma-side assistant was involved "besides just proposing for the jobs." That later-confirmed practice supports the inference that, when Murphy made the January 7 representation, Defendants were already implementing, planning, or contemplating a contrary proposal-submission practice.

167.    Murphy made the January 7, 2025 representation with intent to induce Plaintiff to execute the agreements and enter the relationship. FTINC adopted and benefited from that representation by entering into the agreements with Plaintiff the same day. Basnyat, as FTINC's signatory and Chief Executive Officer, executed the resulting contractual relationship after Murphy negotiated and transmitted the final documents. Terma participated in and benefited from the same transaction through Murphy's use of Terma Project channels and Terma-managed onboarding and workflow systems.

168.    Plaintiff justifiably relied on the January 7, 2025 representation by executing the agreements, providing credentials and onboarding information, joining the

agency structure, permitting Plaintiff's professional identity to be associated with the Fractional Tax operation, and performing work under that structure. Had Plaintiff known that agency-side personnel would submit first-person proposals under Plaintiff's displayed identity without Plaintiff's prior review or approval, Plaintiff would not have entered the relationship on those terms, would not have provided credentials in the same manner, and would not have permitted Plaintiff's profile to be associated with the agency in that manner.

**Fraudulent Concealment**

169.    After Plaintiff entered the relationship, Defendants intentionally concealed the ongoing proposal-submission practice. Because Plaintiff had specifically negotiated limits on the use of Plaintiff's name and likeness, and Murphy had expressly represented on FTINC's behalf that those limits were approved, Defendants had a duty not to speak partially or misleadingly on that subject while retaining exclusive control over the agency proposal workflow, authorship visibility, and internal records. Defendants were the only parties with access to the full proposal history, agency-side permissions, and authorship metadata.

170.    Defendants nevertheless failed to disclose that agency-side personnel were submitting first-person proposals under Plaintiff's displayed identity without Plaintiff's prior review or approval, continued that concealment until Plaintiff discovered representative instances and raised objections beginning March 4, 2025, and provided no meaningful disclosure or remediation even after Plaintiff's formal written demand on March 28, 2025.

171. Murphy knew, or acted with reckless disregard for the truth, because she negotiated the January 7 approval language, directed operational workflow, and later acknowledged the Terma-side assistant's role in proposal activity. FTINC knew, or acted with reckless disregard for the truth, because the proposal-submission practice was carried out within its client-acquisition and agency workflow and continued after Plaintiff's objections. Basnyat knew, or acted with reckless disregard for the truth, because he executed the agreements on FTINC's behalf, served as chief executive of FTINC, and was copied on termination-related communications after Plaintiff raised the challenged conduct. Terma knew, or acted with reckless disregard for the truth, through Murphy acting as its Director of Operations, through use of Terma Project channels and systems in the same transaction, and through Murphy's March 11 acknowledgment that a Terma-side assistant was involved in proposal activity.

172. As a direct and proximate result of Defendants' fraudulent inducement and fraudulent concealment, Plaintiff suffered damages including diversion of professional time, reputational and regulatory injury, out-of-pocket costs, regulatory exposure, and lost business opportunity.

173. Defendants' conduct was willful or undertaken with conscious disregard of Plaintiff's rights, supporting punitive damages to the extent permitted by law.

174. WHEREFORE, Plaintiff requests judgment against FTINC, Murphy, Terma, and Basnyat under this Count, including actual damages, punitive damages to

the extent permitted by law, costs, and such further relief as the Court deems proper.

**COUNT VIII**

Unjust Enrichment
(Against Fractional Tax Entity Defendants)

175. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

176. This Count is pleaded in the alternative and does not incorporate or rely on any allegation that the contracts described in Count VI were valid, enforceable, or fully governed the benefits at issue.

177. The existence, enforceability, and scope of any such contract are disputed to the extent necessary for this alternative count. If the Court determines that no enforceable contract governs some or all of the challenged conduct, or that one or more of the challenged benefits retained by Defendants falls outside the scope of any enforceable contract, Plaintiff pleads unjust enrichment as to those matters.

178. Plaintiff conferred benefits on FTINC, Terma, and FTUSA, including Plaintiff's name, CPA credential, professional reputation, proposal credibility, prospect-conversion value, and substantive tax work. Those Defendants knowingly accepted, used, and retained those benefits.

179. On information and belief, FTUSA also received benefit from the challenged conduct because FTUSA was associated with the Fractional Tax website and MyTax client portal through which client relationships obtained or advanced using Plaintiff's identity were maintained, serviced, or monetized.

180. The retention of those benefits is unjust because they were obtained through unauthorized use of Plaintiff's identity, misleading representations, nonpayment of compensation, premature access revocation, and refusal to provide transparency and remediation.

181. WHEREFORE, Plaintiff requests judgment against FTINC, Terma, and FTUSA for restitution, disgorgement, and such other relief as the Court deems proper.

## COUNT IX

Illinois Wage Payment and Collection Act, 820 ILCS 115
(Against FTINC, Terma, and Murphy)

182. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

183. During the relationship, FTINC and Terma supplied the platforms and software Plaintiff was required to use, dictated workflow and client-handling procedures through internal workflow documents including the February 7, 2025 Tax Season Workflow email, controlled access permissions to MyTax, Slack, and Fractional Tax email, required timekeeping and transition compliance, directed how work was assigned, staged, and completed, and integrated Plaintiff's work into their ordinary tax and accounting operations. The work relationship was recruited through Terma, onboarded through Terma-branded channels and personnel, and operationally managed through overlapping Terma and FTINC infrastructure. On information and belief, FTINC and Terma jointly exercised control over the manner, means, systems, and continuation of Plaintiff's work.

184. Notwithstanding the independent-contractor label used in the written agreement, Plaintiff was an employee within the meaning of the Illinois Wage Payment and Collection Act, 820 ILCS 115/2, because of the degree of control described above.

185. Pursuant to the parties' agreement and course of dealing, Plaintiff earned compensation for work Plaintiff actually performed. At the time of separation, at least one specific compensation item remained unresolved, including approximately $269 tied to work Plaintiff actually performed. Additional compensation also remained due, as reflected in Murphy's March 24, 2025 identification of accrued but unlogged correspondence work, Murphy's request that Plaintiff update the timesheet so accrued time could be reflected and invoicing prepared, Plaintiff's separate log of hours, and Defendants' subsequent revocation of the systems and records needed to reconcile, validate, and invoice all earned compensation.

186. FTINC and Terma failed to pay all compensation earned and owing at separation.

187. Murphy is an employer within the meaning of 820 ILCS 115/2 and 115/13, having exercised direct operational authority over Plaintiff's work relationship, access, timesheet handling, transition process, and compensation-related administration, and having knowingly permitted the nonpayment alleged herein by raising timesheet reconciliation issues concerning accrued work, maintaining that Plaintiff's contractual duties would continue through April 28, 2025, and

then participating in or permitting the March 29–31, 2025 access revocations that prevented validation and invoicing.

188. WHEREFORE, Plaintiff requests judgment against FTINC, Terma, and Murphy, including recovery of all unpaid wages or final compensation, statutory damages, costs, reasonable attorney's fees actually incurred through independent counsel to the extent authorized by law, and all other relief set forth in the Prayer for Relief.

**COUNT X**

Illinois Whistleblower Act, 740 ILCS 174/15 and 20
(Against FTINC)

189. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

190. At all relevant times, Plaintiff was an employee within the meaning of 740 ILCS 174/5 because FTINC directed Plaintiff's work through company systems, internal workflow rules, assigned client matters, and control over access, communications, and offboarding, notwithstanding the independent-contractor label in the written agreement.

191. Plaintiff disclosed, and threatened to disclose, conduct that he reasonably believed violated state or federal law to supervisors and persons acting on behalf of FTINC, and to public bodies, government agencies, and regulatory authorities, including the Illinois Department of Financial and Professional Regulation, the Pennsylvania Department of State, Bureau of Enforcement & Investigation, the California Board of Accountancy, and the Internal Revenue Service Office of

Professional Responsibility. The conduct Plaintiff reasonably believed unlawful included, among other things, misleading use of CPA credentials and regulated service representations in violation of Illinois public-accountancy law, 225 ILCS 450 et seq., and Plaintiff's practitioner obligations under Treasury Department Circular 230, 31 C.F.R. Part 10.

192. Plaintiff further refused to participate in conduct that he reasonably believed would violate state or federal law, including the use of his name, CPA credential, and professional identity in client-facing representations that he had not reviewed or approved.

193. FTINC terminated Plaintiff and revoked his access to company systems and communications because of those disclosures, threatened disclosures, and refusals.

194. As a direct and proximate result, Plaintiff suffered lost compensation, professional harm, and other damages, and seeks all relief available under 740 ILCS 174/30.

**COUNT XI**

Common-Law Retaliatory Discharge (Pled in the Alternative)
(Against FTINC)

195. Plaintiff realleges and incorporates by reference paragraphs 1 through 105 as if fully set forth herein.

196. This Count is pleaded in the alternative under Rule 8(d). Plaintiff does not allege a simple nonrenewal at the end of a completed contract term. Plaintiff alleges an early retaliatory termination during an existing contractual period,

with months remaining, followed by immediate system lockout that prevented performance despite Defendants' stated notice period. If the Court determines that Plaintiff's relationship with FTINC is one to which Illinois common-law retaliatory-discharge principles apply, Plaintiff alleges as follows.

197. Plaintiff objected to and refused to participate in the use of his name, CPA credential, and professional identity in client-facing representations he had not reviewed or approved and that he reasonably believed violated Illinois and federal law and regulation.

198. Plaintiff also reported, and threatened to report, that conduct internally and to regulatory authorities.

199. FTINC discharged Plaintiff because of that conduct.

200. The discharge violated a clear mandate of public policy reflected in Illinois and federal law governing truthful regulated professional representations, including the Illinois Public Accounting Act and applicable practitioner-duty regulations, because Plaintiff objected to, reported, and refused to participate in unauthorized or misleading client-facing use of his CPA identity and credential.

201. As a direct and proximate result, Plaintiff suffered damages.

202. Plaintiff seeks all relief available at law for retaliatory discharge.

## VI. PRAYER FOR RELIEF

203. Plaintiff seeks one satisfaction for each category of injury and does not seek duplicative recovery across overlapping Counts. To the extent multiple Counts

address the same injury, Plaintiff requests that the Court award damages under the Count or theory that provides the most complete relief, without duplication.

204.   WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against the relevant Defendants, as identified in the Counts above, and award the following relief:

**Declaratory Relief**

205.   Declare that Plaintiff did not author, review, approve, or authorize the specific client-facing proposals, messages, and service representations alleged in this Complaint.

206.   Declare that Plaintiff's listing as an agency member, or Plaintiff's association with an agency account, did not by itself authorize attribution to Plaintiff of client-facing proposals, messages, or service representations that Plaintiff did not author, review, or approve.

207.   Declare that the FTINC Content Assignment & Use of Name Approval Agreement, any generalized platform permissions, and any internal delegation or intermediary authorship did not authorize the specific client-facing commercial uses of Plaintiff's identity alleged in this Complaint.

208.   Declare that, after Plaintiff gave notice disputing authorship and consent, any continued attribution to Plaintiff of the challenged client-facing communications or related materials was unauthorized to the extent Plaintiff had not authored, reviewed, approved, or otherwise expressly authorized such use.

209. Declare whether Plaintiff is entitled to compensation or final compensation arising from Plaintiff's work relationship with the relevant Fractional Tax Defendants, notwithstanding any independent-contractor label or intermediary entity structure.

**Injunctive and Corrective Relief**

210. Enter permanent injunctive relief requiring the Upwork Defendants to remove, disable, correct, or clearly disassociate Plaintiff from any active, accessible, or historically displayed client-facing materials that attribute to Plaintiff communications or representations Plaintiff did not author, review, approve, or authorize.

211. Enter permanent injunctive relief prohibiting the Fractional Tax Defendants, including FTINC, Terma, FTUSA, Murphy, and Basnyat, from any future use, reuse, republication, transmission, or commercial exploitation of Plaintiff's name, likeness, photograph, biography, CPA credential, or other professional identifiers without Plaintiff's prior affirmative written approval.

212. Order the relevant Defendants, to the extent necessary to cure ongoing confusion established in this action, to provide narrowly tailored corrective notice to affected clients or prospective clients concerning Plaintiff's authorship, endorsement, affiliation, or performance of service.

**Preservation and Ancillary Equitable Relief**

213. Order FTINC, Terma Project, Inc., and all persons acting in concert with them to preserve and maintain all records sufficient to identify the authorship,

preparation, drafting, editing, revision, approval, transmission, withdrawal, deletion, and recipient history of each proposal, message, or other client-facing communication submitted using Plaintiff's identity, including records sufficient to determine whether any such content was generated, assisted, revised, or refined using artificial intelligence or generative artificial intelligence, together with any related prompts, outputs, metadata, audit logs, internal communications, drafting history, and user-access records.

214. Order the Upwork Defendants to preserve and maintain all relevant evidence, including internal case notes, audit logs, proposal records, agency-action logs, authorship metadata, transmission records, account-control logs, and records sufficient to identify each proposal, message, or representation in which Plaintiff's identity was used in connection with the relevant agency account.

**Monetary Relief**

215. Award Plaintiff an accounting and disgorgement of the Fractional Tax Entity Defendants' profits and, where recoverable, the Upwork Defendants' profits attributable to the unauthorized use of Plaintiff's identity, false endorsement, unfair competition, deceptive practices, and other challenged conduct.

216. Award Plaintiff the remedies available under the Illinois Right of Publicity Act, 765 ILCS 1075/40, including the greater of actual damages and profits or the applicable statutory minimum, as allowed by law.

217. Award Plaintiff any enhanced damages permitted by law, including any enhancement available under 15 U.S.C. § 1117, to the extent supported by the proof and the principles of equity.

218. Award Plaintiff punitive damages against the relevant Defendants to the extent authorized by law and supported by proof, including for willful, malicious, oppressive, intentional, or reckless conduct.

219. Award Plaintiff any unpaid wages, final compensation, statutory damages, penalties, fees, costs, and related relief recoverable under the Illinois Wage Payment and Collection Act against FTINC, Terma, and Murphy, to the extent permitted by law.

220. Award Plaintiff all relief available under the Illinois Whistleblower Act, 740 ILCS 174/30, including back pay, front pay, liquidated damages, the civil penalty payable to Plaintiff, costs, and reasonable attorney's fees to the extent permitted by law.

221. Award Plaintiff all relief available at law for retaliatory discharge, to the extent Count XI is sustained.

222. Award Plaintiff his actual damages in an amount to be determined at trial, including economic, professional, reputational, and other compensable harm proven at trial.

**Fees, Costs, and Interest**

223. Award Plaintiff his costs of suit.

224. Award Plaintiff reasonable attorney's fees actually incurred through independent counsel, to the extent authorized by applicable law.

225. Award pre-judgment and post-judgment interest as allowed by law.

**Other Relief**

226. Grant such other and further relief as the Court deems just, proper, and necessary.

## VII. RESERVATION OF RIGHTS

227. Plaintiff disputes the applicability, formation, scope, delegation, and enforceability of any arbitration provision, delegation clause, class-action waiver, or related contractual restriction that any Defendant may assert in response to this Complaint. Plaintiff reserves the right to oppose any motion to compel arbitration on all available grounds.

228. Plaintiff reserves the right to seek leave to amend this Complaint upon discovery of additional facts, including facts presently within Defendants' exclusive possession, custody, or control, and upon further investigation of the entity structure, proposal history, and related conduct alleged herein.

## VIII. JURY DEMAND

229. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

**Evan J Cronin**
211 W Wacker Drive STE 120 #2217
Chicago, IL 60606
legal@cronintaxservices.com
(312) 725-9960


Dated: March 23, 2026


_Evan Cronin_

**Evan J Cronin,**
Plaintiff pro se

## TABLE OF CONTENTS

**Exhibit A — Recruitment** ........................................................................... 1

   A-1 — Job Post on Upwork ..................................................................... 2
   A-2 — Nishchal Messages ...................................................................... 5

**Exhibit B — Onboarding and Agreements** ........................................... 11

   B-1(a) — Dec. 23 Next Steps ................................................................ 14
   B-1(b) — Dec. 30 Agreement / Training Update ................................. 16
   B-1(c) — Jan. 3 Access Protocol Email ................................................ 18
   B-1(d) — Jan. 9 Post-Contract Setup ................................................... 20
   B-2(a) — Contract Delivery .................................................................. 22
   B-2(b) — Plaintiff Proposed Revisions ................................................ 24
   B-2(c) — Company Redline Response ................................................... 26
   B-2(d) — Final Minor Comments .......................................................... 28
   B-2(e) — Final Acceptance of Minor Comments ................................. 30
   B-2(f) — Executed Service Contract ..................................................... 32
   B-2(g) — Executed Related Agreements ............................................... 38
   B-3 — Slack Access .............................................................................. 50

**Exhibit C — Agency Structure** ............................................................. 52

   C-1 — Agency Profile ........................................................................... 54
   C-2(a) — Upwork Agency Proposals and Offers ................................. 62
   C-2(b) — Upwork Agency Contracts .................................................... 65
   C-2(c) — Upwork Agency Finances ...................................................... 67
   C-2(d) — Upwork Agency Settings and Permissions .......................... 69

**Exhibit D — Proposal Episodes** ........................................................... 71

   D-1(a) — Financial Audit Proposal (Mario) ....................................... 73
   D-1(b) — Financial Audit Job Posting ................................................. 75
   D-1(c) — Audit Slack Message ............................................................ 77
   D-2 — Tax Strategy Proposal (Eric) .................................................... 79
   D-3 — U.S. Accounting Proposal (Jerome) .......................................... 81
   D-4 — Form 5500 Proposal (Zephrina) ................................................ 83
   D-5 — International / Withholding Tax Proposal (Leslie) ................... 85

**Exhibit E — Prior Objections** ............................................................... 87

   E-1 — March 12 Objection ................................................................... 88
   E-2 — March 26 Objection ................................................................... 90

# TABLE OF CONTENTS

**Exhibit F — Formal Notice to FTINC** .................................................... 94

    F-1 — March 28 Notice ............................................................... 95

    F-2 — FTINC Response ............................................................... 98

    F-3 — Potomac Letter ............................................................... 100

**Exhibit G — Notice to Upwork** ......................................................... 103

    G-1 — Support Case Submission ................................................. 105

    G-2 — Initial Upwork Response ................................................. 110

    G-3 — Upwork Acknowledgment ................................................. 113

    G-4 — Additional Upwork Documentation Request ....................... 115

    G-5 — Legal Notice Receipt ....................................................... 117

    G-6 — Solved Status ............................................................... 120

**Exhibit H — Lockout** ..................................................................... 122

    H-1 — MyTax Lockout ............................................................. 123

    H-2 — Email Disabled ............................................................. 125

**Exhibit I — Continued Misattribution** ............................................. 127

    I-1 — Client Contract on Upwork ............................................... 128

    I-2 — Public Review on Upwork ................................................. 133

**Exhibit J — Entity Records** ........................................................... 136

    J-1 — FTINC Forfeiture ........................................................... 137

    J-2 — FTINC Reinstatement ..................................................... 139

    J-3 — Terma Status ............................................................... 141

    J-4 — FTUSA Status ............................................................... 143

**Exhibit K — Counsel Notice to Upwork** ........................................... 145

    K-1 — Demand Receipt ........................................................... 146

    K-2 — 60-Day Response ........................................................... 148

# Exhibit A — Recruitment

## A-1 — Job Post on Upwork

*Pages 2 — 4*

Upwork job posting seeking a CPA/EA for a growing tax firm.

## A-2 — Nishchal Messages

*Pages 5 — 10*

Upwork message thread between Plaintiff and Nishchal Basnyat regarding interview scheduling and the proposed role.

# Exhibit A-1

## Job Post on Upwork

Upwork job posting seeking a CPA/EA for a growing tax firm.

 **upwork**

 We removed your Credly certifications on January 14, 2026. You can still manually add certifications to your profile. ✕

⚠ This job is no longer available.

 # This job is no longer available.

Browse Other - Accounting & Consulting Jobs to find jobs just like this one!

# Great CPA / EA needed for a growing Tax Firm

Posted 2 years ago

 Only freelancers located in the U.S. may apply. ⑦

## About the client

✓ Payment method verified

★★★★★ 4.9
4.93 of 118 reviews

United States
New York 8:03 AM

216 jobs posted
70% hire rate, 4 open jobs

263 hires, 110 active

29,958 hours

Member since Oct 10, 2022

## Summary

We are looking for a new CPA/EA to join our team part-time through the tax season. While we are looking immediately for the tax season, this opening has large potential to continue past tax season to become a full-time, year-round opportunity for the right candidate. The main job of this role would be to meet with prospects and existing clients, showcase knowledge and value as well as be able to talk through simple or complex tax law, application, structure, etc. Our company is a fully remote tax and accounting firm based out of New York.

## Job link

https://www.upwork.com/jobs/

Copy link

— 3 —

Layout of Responsibilities:

- Consultations with Prospects (with prospects wanting either personal or business-related tax and accounting services)

- Annual Meetings with Existing Clients to leverage add-on service opportunities and value-adds

- Understand and communicate tax laws and application for Foreign Owners of US Businesses

- Review tax returns from our preparers to check for inaccuracies, incorrect items, additional value adds and deductions applicable before filings

- E-File Tax Returns once final review has been approved

- Prepare and File Complex Tax Returns and Forms including but not limited to 5472, 5471, 1065, K-1s, 1040NR/1040s, 1120S, 1120.

We are looking for someone who can devote around 10-15 hours a week starting next week/first week of December so that we can ramp up marketing and train the new candidate. This role has the opportunity to become a full-time role and has opportunities for large growth. This rate is slightly flexible for the right person and experience.

🕐 Featured Job

🕐 More than 30 hrs/week
Hourly

6+ months
Duration

Expert
Experience
Level

— 4 —

# Exhibit A-2

## Nishchal Messages on Upwork

Upwork message thread between Plaintiff and Nishchal Basnyat regarding interview scheduling and the proposed role.

# Nishchal Basnyat, Terma Project



Great CPA / EA needed for a growing Tax Firm

Friday, Dec 20 2024

**Evan Cronin** 9:14 AM

Hi.

My name is Evan, and I'm a licensed CPA with 8 years of experience in public accounting, including 5 years specializing in international tax at PwC.

I have extensive expertise with international compliance forms such as Forms 5471, 8858, and 5472 and general business and personal tax filings like Forms 1120, 1065, and 1040.

I'd be happy to discuss how I can support your team this tax season, and I am available to start at your convenience.

Let's connect and get started!

Best regards,
Evan

**View details**

Evan+J+Cronin%2C+CPA%2C+MT+Professional+Summary.pdf ⌄

 **Evan+J+Cronin%2C+CPA%2C+...**
1.0 kB

 **Nishchal Basnyat** 9:14 AM

Thanks, Evan.

Do you have time for a quick chat today? Thanks.

— 6 —

 **Evan Cronin** 11:28 AM

Hi Nishchal, yes, happy to connect today. My afternoon is pretty open so let me know what works best for you.

# Nishchal Basnyat, Terma Project

Great CPA / EA needed for a growing Tax Firm

 **Evan Cronin** 11:28 AM
Hi Nishchal, yes, happy to connect today. My afternoon is pretty open so let me know what works best for you.

 **Nishchal Basnyat** 11:38 AM
Great.

How about 2:00p.m. EST? Thanks.

 Evan Cronin wants to schedule a 30-minute meeting 11:40 AM

Waiting for Nishchal to pick a date and time. Preview what your booking page looks like.

Preview booking page

Evan Cronin scheduled a meeting 11:41 AM

Date: Dec 20, 2024

Time: 01:00 PM - 01:30 PM CST (UTC-06:00)

Cancel | Reschedule | Add to calendar

2pm ET works great

 Zoom meeting starts in 29 minutes  12:30 PM

— 7 —

Date: Dec 20, 2024

Time: 01:00 PM - 01:30 PM CST (UTC-06:00)

Join meeting

# Nishchal Basnyat, Terma Project

🗄 Great CPA / EA needed for a growing Tax Firm

 Zoom meeting starts in 29 minutes `APP` 12:30 PM

Date: Dec 20, 2024

Time: 01:00 PM - 01:30 PM CST (UTC-06:00)

Join meeting

 Nishchal Basnyat 12:54 PM

Still on a call, let's push 2:10p.m. EST.

Thanks.

 Evan Cronin 12:56 PM

sure, not a problem

 Zoom meeting starts in 1 minute `APP` 12:59 PM

Date: Dec 20, 2024

Time: 01:00 PM - 01:30 PM CST (UTC-06:00)

Join meeting

 Evan Cronin created a Zoom meeting 1:06 PM

📞 The meeting ended (Duration: 01:04:06)

Share feedback about the call quality

— 8 —

 Nishchal Basnyat 1:11 PM

I'm on.

# Nishchal Basnyat, Terma Project

🖃 Great CPA / EA needed for a growing Tax Firm

 Evan Cronin created a Zoom meeting 1:06 PM

⬆ The meeting ended (Duration: 01:04:06)

Share feedback about the call quality

 Nishchal Basnyat 1:11 PM

I'm on.

You're muted.

Saturday, Dec 21, 2024

 Nishchal Basnyat 7:06 PM

Hi Evan.

Hope all is well.

Are you available Monday to meet Chris, our Head of Tax? If so, let me know what times work. Thank you.

 Evan Cronin 8:10 PM

Hi Nischal, is Chris available to meet at 8:30 or 9am ET? I'll be traveling on Monday so it will be difficult to do anything later. Thanks!

Sunday, Dec 22, 2024

 Nishchal Basnyat 10:00 AM

Let me ask Chris and get back to you.

Thanks.

 Nishchal Basnyat 4:54 PM

Great.

— 9 —

# Nishchal Basnyat, Terma Project

 Great CPA / EA needed for a growing Tax Firm

 Nishchal Basnyat 7:06 PM

Hi Evan,

Hope all is well.

Are you available Monday to meet Chris, our Head of Tax? If so, let me know what times work. Thank you.

 Evan Cronin 8:10 PM

Hi Nischal, is Chris available to meet at 8:30 or 9am ET? I'll be traveling on Monday so it will be difficult to do anything later. Thanks!

Sunday, Dec 22, 2024

 Nishchal Basnyat 10:00 AM

Let me ask Chris and get back to you.

Thanks.

 Nishchal Basnyat 4:54 PM

Great.

Chris can do 9:00a.m. EST tomorrow morning. Do you mind sending me a quick note to: nishchal (at) termaproject (dot) com so I can send an invite to everyone? Thank you.

 Evan Cronin 5:14 PM

Sounds good. I'll send over a message now.

 Nishchal Basnyat 5:22 PM

Great.

— 10 —

 Nishchal Basnyat 5:22 PM

Got your note. Talk tomorrow! Thanks.

# Exhibit B — Onboarding and Agreements

## B-1(a) — Dec. 23 Next Steps

*Pages 14 — 15*

Email outlining planned agreements, FT email issuance, platform onboarding, security training, and credential collection.

## B-1(b) — Dec. 30 Agreement / Training Update

*Pages 16 — 17*

Email stating NDAs had been sent, the contract was under legal review, and training was being scheduled.

## B-1(c) — Jan. 3 Access Protocol Email

*Pages 18 — 19*

Email stating no additional access would be given until the contract was signed and business information was provided.

## B-1(d) — Jan. 9 Post-Contract Setup

*Pages 20 — 21*

Email stating the contract was signed and executed and listing Slack, MyTax, Calendly, OLT Pro, and FT email onboarding.

## B-2(a) — Contract Delivery

*Pages 22 — 23*

Email stating the contract would be sent shortly and onboarding would continue once signed.

# Exhibit B — Onboarding and Agreements (cont.)

## B-2(b) — Plaintiff Proposed Revisions

*Pages 24 — 25*

Email proposing revisions to termination, payment terms, non-solicitation, use of name and likeness, NDA duration, and business email.

## B-2(c) — Company Redline Response

*Pages 26 — 27*

Email stating most proposed revisions were accepted, including payment terms, non-solicitation, use of name and likeness, and NDA terms, with additional for-cause termination language.

## B-2(d) — Final Minor Comments

*Pages 28 — 29*

Email requesting final edits to business email and payment-period wording.

## B-2(e) — Final Acceptance of Minor Comments

*Pages 30 — 31*

Email agreeing to change the business email and payment wording before resending through DocuSign.

# Exhibit B — Onboarding and Agreements (cont.)

## B-2(f) — Executed Service Contract

*Pages 32 — 37*

Executed service contract between Plaintiff and FTINC.

## B-2(g) — Executed Related Agreements

*Pages 38 — 49*

Executed non-solicitation, nondisclosure, and content-assignment / use-of-name agreements.

## B-3 — Slack Access

*Pages 50 — 51*

Record reflecting Plaintiff's access to the Termaproject Slack workspace.

# Exhibit B-1(a)

## Dec. 23 Next Steps

Email outlining planned agreements, FT email issuance, platform onboarding, security training, and credential collection.

 Gmail

Evan Cronin ████████████

## Meeting Summary/Next Steps - Fractional Tax

**Chandler Murphy** <chandler.murphy@termaproject.com>   Mon, Dec 23, 2024 at 4:42 PM
To: ████████████████
Cc: Christopher Lee <christopher_lee@fractionaltax.com>, Nishchal Basnyat <nishchal@termaproject.com>

Hi again, Evan.

Thanks for your time this morning. We are excited to see what we can do with you on our team.

Here is an outline of the next steps so we are all on the same page:

- Contractor Agreement Sent and Signed (We will prepare that this week to get over to you before EOW)
- NDA and Assignment Agreement Sent and Signed (EOW)
- Get you a Fractional Tax email address and onboard you to our platforms  (Next Week/Post Agreement Signed)
- You'll complete a short security protocol training (Next Week)
- Schedule two, partial days of training where you and I will sit down and walk through our current processes (Next Week/first full week of January)
- Gather credentials and PTIN to keep on your file with us

Timeline we are aiming for you to be set up would be the end of next week. We'd like to have you on all of our platforms and ready to go, as well as our Calendly by then. The first full week of January we will schedule our official training together, if not sooner as applicable.

We will send over your agreements before the end of the week and discuss further logistics if needed.

Looking forward to working with you, Evan!

--

 **Terma**

**Chandler Murphy** | *Director of Operations*
*"We build and scale digital brands of the future."*

— 15 —

# Exhibit B-1(b)

## Dec. 30 Agreement / Training Update

Email stating NDAs had been sent, the contract was under legal review, and training was being scheduled.

 Gmail

Evan Cronin ▓▓▓▓▓▓▓▓▓

## Meeting Summary/Next Steps - Fractional Tax

**Chandler Murphy** <chandler.murphy@termaproject.com>         Mon, Dec 30, 2024 at 11:38 AM
To: Evan Cronin ▓▓▓▓▓▓▓▓▓

Good morning, Evan!

Looking forward to it! You should have gotten a few NDAs and equivalents to sign.

Your contact is in review on our end from legal, then we can get that sent out to you. Excited to get everything started.

Does Thursday afternoon/Friday morning work for you for initial training?

We will aim to get those items and agreements done before New Years day so we can have those signed before training.

Let me know what works best!

[Quoted text hidden]

— 17 —

# Exhibit B-1(c)

## Jan. 3 Access Protocol Email

Email stating no additional access would be given until the contract was signed and business information was provided.

 Gmail

Evan Cronin ████████████

## Business Information Needed

**Chandler Murphy** <chandler.murphy@termaproject.com>
To: Evan Cronin ████████████

Fri, Jan 3, 2025 at 10:23 PM

Hi, Evan.

I didn't receive your business information after our meeting, however legal did confirm that we could use that in the contract, so please send that over ASAP so we can edit the contract appropriately.

Once done, I can give you access again to MyTax and start setups elsewhere. Until that's signed, I can't give anymore access just due to normal protocol.

Send that over and we'll continue getting you set up! Let's aim to have that information sent by Monday morning and signed by EOD on Monday.

Thank you!

--

 **Terma**

**Chandler Murphy** | *Director of Operations*
*"We build and scale digital brands of the future."*

— 19 —

# Exhibit B-1(d)

## Jan. 9 Post-Contract Setup

Email stating the contract was signed and executed and listing Slack, MyTax, Calendly, OLT Pro, and FT email onboarding.

3/20/26, 4:21 AM

Gmail - Next Steps - Onboarding

 Gmail

Evan Cronin ███████████

## Next Steps - Onboarding

**Chandler Murphy** <chandler.murphy@termaproject.com>           Thu, Jan 9, 2025 at 8:12 AM
To: evan@fractionaltax.com, Evan Cronin ██████████ Sharon Morara <sharon@termaproject.com>

Evan,

Now that your contract is signed and executed, let's finish getting you set up.

All emails moving forward will be sent to your Fractional Tax email or messages will be sent on the Slack invitation we will send to your FT email. We use both email and Slack as a team.

You will get invites to the following today:

1. Slack
2. Access again to MyTax to look over if you feel you need to review it
3. Calendly - Please connect your FT calendar with it once the invite is accepted and I'll add you to our routing meeting. Please keep as much time open on this as possible so that if someone needs a meeting within working hours, at least one member of the team will be able to take it.
4. OltPro - Chris will invite you directly and send over credentials to log in

Once the tax season starts, we will additional add you to our DocuSign as well.

Appreciate it, Evan!

--

 Terma

**Chandler Murphy** | *Director of Operations*
*"We build and scale digital brands of the future."*

— 21 —

# Exhibit B-2(a)

## Contract Delivery

Email stating the contract would be sent shortly and onboarding would continue once signed.

 Gmail                                                    Evan Cronin ▇▇▇▇▇▇▇▇▇

## Business Information Needed

**Chandler Murphy** <chandler.murphy@termaproject.com>                Mon, Jan 6, 2025 at 7:55 AM
To: Evan Cronin ▇▇▇▇▇▇▇▇▇▇▇
Cc: Sharon Morara <sharon@termaproject.com>

Awesome, Evan. Appreciate it!

You'll receive your contract shortly if you can aim to execute by EOD. Once signed, I'll continue your onboarding process and you, Chris and I can sit down this week to talk about what the next few months will look like, processes on the tax side, etc.

Thank you!
[Quoted text hidden]

— 23 —

# Exhibit B-2(b)

## Plaintiff Proposed Revisions

Email proposing revisions to termination, payment terms, non-solicitation, use of name and likeness, NDA duration, and business email.

 Gmail         Evan Cronin ▮▮▮▮▮▮▮▮▮▮

## Business Information Needed

**Evan Cronin** ▮▮▮▮▮▮▮▮▮▮      Mon, Jan 6, 2025 at 4:27 PM
To: Chandler Murphy <chandler.murphy@termaproject.com>
Cc: Sharon Morara <sharon@termaproject.com>, Evan Cronin ▮▮▮▮▮▮▮▮▮▮

Hi Chandler,

Thank you for sending over the service agreement. After reviewing the terms, I wanted to suggest a few revisions to ensure clarity and alignment for both parties:

1. **Termination Notice Period:**
   I noticed that FTINC may terminate the agreement immediately, while I am required to provide a 30-day notice. Would you consider applying a 15- or 30-day notice period to both parties to promote mutual fairness? This would help ensure smooth transitions if needed.

2. **Payment Terms:**
   To streamline operations, I propose invoicing twice monthly (on the 1st and 15th), with payment made within 10 business days of receiving each invoice. This would help me manage cash flow more effectively and keep things running smoothly.

3. **Non-Solicitation Period:**
   I completely understand and respect the importance of protecting your client relationships. However, I'd appreciate your consideration in reducing the non-solicitation period to 24 months for simplicity and to avoid overly long obligations.

4. **Use of Name and Likeness:**
   I understand the need to use my name and likeness in the content I create. However, I'd appreciate it if you clarified that such use would be limited after the termination of our agreement unless it directly relates to pre-existing content.

5. **Non-Disclosure Agreement:**
   I understand the importance of maintaining confidentiality regarding FTINC's business and clients. To ensure clarity, would you consider setting a confidentiality period of 36 months post-termination? This would align with standard practice and ensure we have clear expectations.

I hope these suggestions help ensure clarity and alignment. Please let me know your thoughts, and I'd be happy to discuss any of the points further.

Also, for the email listed in the contract, could we please use my business email—▮▮▮▮▮▮▮▮▮▮— instead of my personal one? I've cc'd it here for your reference.

Best regards,

Evan


Evan J Cronin
▮▮▮▮▮▮▮▮▮▮

[Quoted text hidden]

— 25 —

# Exhibit B-2(c)

## Company Redline Response

Email stating most proposed revisions were accepted, including payment terms, non-solicitation, use of name and likeness, and NDA terms, with additional for-cause termination language.

 Gmail

Evan Cronin ████████████████

## Business Information Needed

**Chandler Murphy** <chandler.murphy@termaproject.com>                    Tue, Jan 7, 2025 at 11:00 AM
To: Evan Cronin ████████████████████
Cc: Sharon Morara <sharon@termaproject.com>, Evan Cronin ████████████████

Good morning, Evan!

Please see the attached documents with our redlines. We have generally agreed and accepted most of your points with some added nuance to protect the Company. For reference:

1. **Termination Notice Period:** We have changed the termination notice to a 30-day period without cause. However, to protect the Company, we have also added a "for cause" provision whereby the Company has the right to terminate immediately for misconduct, criminal activity, dereliction of duty and so on.
2. **Payment Terms:** Approved.
3. **Non-Solicitation Period:** Approved.
4. **Use of Name and Likeness:** Approved.
5. **Non-Disclosure Agreement:** Approved.

Hope that helps. Let me know if you have any questions.
[Quoted text hidden]

📄 **Evan_Service_Contract_v22.docx**
35K

— 27 —

# Exhibit B-2(d)

## Final Minor Comments

Email requesting final edits to business email and payment-period wording.

3/20/26, 4:20 AM                                    Gmail - Business Information Needed

 Gmail                                         Evan Cronin ███████████████████

## Business Information Needed

**Evan Cronin** ███████████████████                          Tue, Jan 7, 2025 at 1:32 PM
To: Chandler Murphy <chandler.murphy@termaproject.com>
Cc: Evan Cronin ███████████████████          Sharon Morara <sharon@termaproject.com>

Hi Chandler,

Thanks for sending over the revised contract. I have two minor comments; otherwise, everything looks good.

1. Email listed under my business name on page 1
   ○ can we please use my business email here: ███████████████████
2. Payment terms
   ○ Where it states "for the prior month's total hours and services" can we update this to "for the prior period's total hours and services" so it is more aligned with the change to bimonthly invoicing.

Other than that, everything looks good to me. If you have no issues with these two suggestions, feel free to send the revised contract via DocuSign, and I will execute it.

Thanks,
Evan

[Quoted text hidden]

— 29 —

# Exhibit B-2(e)

## Final Acceptance of Minor Comments

Email agreeing to change the business email and payment wording before resending through DocuSign.

 Gmail

## Business Information Needed

**Chandler Murphy** <chandler.murphy@termaproject.com>          Tue, Jan 7, 2025 at 1:33 PM
To: Evan Cronin ██████████████████████████
Cc: Evan Cronin ██████████████████     Sharon Morara <sharon@termaproject.com>

Yes, the email will be changed once submitted into DocuSign, and yes on the verbiage change.

I'll adjust and resend through DocuSign for you!
[Quoted text hidden]

— 31 —

# Exhibit B-2(f)

## Executed Service Contract

Executed service contract between Plaintiff and FTINC.

# FRACTIONAL TAX, INC.

## SERVICE CONTRACT

## I. PARTIES

This Service Contract ("Agreement") effective January 1, 2025, is by and between:

Evan J Cronin CPA & Tax Services ("Service Provider")



and:

Fractional Tax, Inc. ("FTINC")
14 Wall Street, 20th Floor,
New York City, NY 10005

Service Provider and FTINC are each referred to herein as a "Party" and, collectively, as the "Parties."

NOW, THEREFORE, FOR AND IN CONSIDERATION of the mutual promises and agreements contained herein, FTINC hires the Service Provider to work under the terms and conditions hereby agreed upon by the Parties.

## II. TERM

The term of this Agreement shall commence on **January 1, 2025**, and terminate on December 31, 2025.

**Termination without Cause**

FTINC may terminate this agreement, without cause, with thirty (30) days' written notice to the Service Provider.

**Termination for Cause**

The Company reserves the right to terminate this Agreement immediately, without prior notice, for cause. For purposes of this Agreement, "cause" shall include, but not be limited to:

1. **Failure to Perform:** Dereliction of duty, failure to perform the agreed-upon services, or repeated instances of substandard performance.

2. **Misconduct:** Any form of misbehavior, including but not limited to harassment, dishonesty, fraud, or other conduct deemed unprofessional or harmful to the Company or its reputation.

3. **Criminal Activity:** Involvement in any criminal activity, whether or not directly related to the services provided under this Agreement.

4. **Violation of Obligations:** Breach of any material term of this Agreement, including confidentiality, intellectual property, or compliance obligations.

5. **Failure to Meet Deadlines:** Persistent failure to meet deadlines or complete deliverables as agreed.

6. **Incapacity:** Inability, whether due to illness, injury, or other circumstances, to perform the services required under this Agreement.

7. **Disruption of Business:** Actions that disrupt or interfere with the normal operations of the Company.

Upon termination for cause, the Company shall have no further obligations to the Service Provider other than payment for services satisfactorily performed up to the termination date. The Service Provider shall immediately return all Company property, including confidential information, work products, and any other materials provided by the Company during the course of this Agreement.

This provision shall not limit the Company's right to pursue any additional remedies available under applicable law.

**Notice Requirement:** The Service Provider shall provide FTINC with no less than thirty (30) days' written notice prior to the termination of services under this Agreement. Failure to provide such notice shall be deemed a material breach of this Agreement.

**Good Faith Transition:** Upon termination of services, the Service Provider agrees to participate in a good faith transition to ensure the FTINC's continued operations are not disrupted. This includes, but is not limited to, providing necessary documentation, access to data, and cooperation with the Client and FTINC delegate or any successor provider during the transition period. The Service Provider is held accountable for their obligations while protecting FTINC from unnecessary disruptions or financial losses due to noncompliance.

**Recourse for Non-Compliance:**

- If the Service Provider fails to provide the required thirty (30) days' notice, FTINC shall have the right to:
  - Withhold final payment until notice is provided or an equitable resolution is agreed upon.
  - Seek reimbursement for any costs incurred due to the lack of notice, including but not limited to emergency replacement services or personnel or additional administrative costs.
- If the Service Provider fails to participate in a good faith transition, FTINC shall have the right to:
  - Seek damages equal to the costs incurred as a direct result of the Service Provider's non-compliance, including reasonable attorney's fees.
  - Pursue injunctive relief compelling the Service Provider to fulfill its transition obligations under this Agreement.

**Survival:** This provision shall survive termination of the Agreement and remain enforceable until the transition obligations are fully satisfied.

## III. SERVICES

Docusign Envelope ID: 9E7B7D8C-9EVT-4534-8FA2-0A7382TTE7DV3

The Service Provider agrees to provide services, including but not limited to:

- FTINC client tax return preparation,
- FTINC client tax return and documentation review,
- FTINC client and prospective client tax and financial consultations (email/written, video conferencing, phone calls, live chat etc.)
- FTINC client representation before taxing authorities,
- FTINC client bookkeeping/write-up and review services, upon request,
- Training and development of FTINC team members, as appropriate,
- Research and draft tax technical memoranda on various tax issues, as necessary, for FTINC clients, and
- Oversee FTINC client engagements, projects and services as appropriate to ensure compliance and timely completion

Hereinafter known as the "Services." The Service Provider, while performing the Services, the Service Provider shall comply with all local, State, and Federal laws and to the best of his abilities and communicate with FTINC if there is something prohibiting him from performing these duties in accordance with all local, State, and Federal laws.

All platforms and applicable software for services above are to be provided by FTINC.

All services provided are tax and business consulting related and within the appropriate scope of practice for a Certified Public Accountant in the United States. No advice should be construed as general legal advice or advice regarding any specific financial security. Such advice should be obtained from an appropriately licensed attorney or SEC/FINRA registered investment adviser. FTINC is not, and does not operate as, a licensed CPA firm and no services should be provided to clients that would suggest to the client that FTINC is a licensed CPA firm.

## IV. PAYMENT

FTINC agrees to pay the Service Provider the following:

- Hourly rate of $85 for every hour of phone calls, clients calls or meetings Service Provider provides to Clients or FTINC and/or

- Fixed Rate of either (i) 45% of the final service cost of every service completed by the Service Provider for FTINC Clients or (ii) an agreed upon payment between the Service Provider and the Company, agreed upon in writing. An example of the 45% fixed rate would be if the final service price is $1000, Service Provider would be compensated $450 for completing that service.

Hereinafter known as the "Payment Amount."

## V. PAYMENT METHOD

FTINC shall pay the Payment Amount **through direct EFT/ACH within 10 business days after invoicing**, which will be presented twice per month on or around the 1st and 15th of every month for the prior period's total hours and services completed by Service Provider.

Invoices should be submitted by the Service Provider to payments@fractionaltax.com. The 15 business days will start after a complete and final invoice is submitted to FTINC.

— 35 —

## VI. CONFIDENTIALITY

Service Provider acknowledges and agrees that all financial and accounting records, lists of property owned by FTINC, including amounts paid, therefore, client and customer lists, and any other data and information related to the FTINC's business is confidential ("Confidential Information"). Therefore, except for disclosures required to be made to advance the business of the FTINC and information which is a matter of public record, Service Provider shall not, during the term of this Agreement or after its termination, disclose any Confidential Information for the benefit of the Service Provider or any other person, except with the prior written consent of the FTINC.

A) **Return of Documents.** Service Provider acknowledges and agrees that all originals and copies of records, reports, documents, lists, plans, memoranda, notes, and other documentation related to the business of the FTINC containing Confidential Information shall be the sole and exclusive property of the FTINC and shall be returned to the FTINC upon termination of this Agreement or upon written request of FTINC.

B) **No Release.** Service Provider agrees that the termination of this Agreement shall not release him/her/they from the obligations in this Section.

## VII. INDEPENDENT CONTRACTOR STATUS
Service Provider acknowledges that he is an independent contractor and is responsible for any and all taxes and other payments due on Payment Amount.

## VIII. SUCCESSORS AND ASSIGN

The provisions of this Agreement **shall not be binding upon or inured to** the benefit of heirs, personal representatives, successors, and assigns of the Parties. Any provision hereof which imposes upon the Service Provider or FTINC an obligation after termination or expiration of this Agreement **shall survive termination or expiration** hereof and be binding upon the Service Provider or FTINC.

## IX. DEFAULT

All services are provided solely by and through Evan Cronin. FTINC agrees no recourse can be pursued with any other affiliates, known or unknown, of Evan Cronin, and all recourse related to Services is limited to the amount of fees billed for such services.

## X. NO WAIVER

No waiver of any provision of this Agreement shall be deemed or shall constitute a continuing waiver, and no waiver shall be binding unless executed in writing by the Party making the waiver.

## XI. ARBITRATION

In the event a dispute shall arise between the Parties to this Agreement, it is hereby agreed that the dispute shall be referred to United States Arbitration & Mediation for arbitration in accordance with United States Arbitration & Mediation Rules of Arbitration. The arbitrator's decision shall be final and binding and judgment may be entered thereon. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with arbitrator's award, the other party is entitled to recovery of costs of suit including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.

— 36 —

Docusign Envelope ID: ...

## XII. SEVERABILITY

If any term, covenant, condition, or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

## XIII. OWNERSHIP AND CONTROL; DELEGATION OF WORK

The Service Provider hereby represents and warrants that it is and shall remain at all times fully owned and controlled by Evan Cronin. In the event that Evan Cronin delegates any portion of the Services to other individuals or entities within the Service Provider's structure, the Service Provider shall provide prior written notice to the Company, specifying the nature of the delegated work, the identity of the delegatee, and the expected duration of such delegation. Notwithstanding any delegation, Evan Cronin shall retain ultimate responsibility for the performance of the Services under this Agreement and shall ensure that all work performed by any delegatee complies fully with the terms and standards set forth herein."

**FTINC's Signature** _Nishchal Basnyat_    **Date** 1/7/2025

Print Name Nishchal Basnyat

**Service Provider's Signature** _Evan J Cronin_    **Date** 1/7/2025

Print Name Evan J Cronin

# Exhibit B-2(g)

## Executed Related Agreements

Executed non-solicitation, nondisclosure, and content-assignment / use-of-name agreements.

# FRACTIONAL TAX, INC

## FORM OF NON-SOLICITATION AGREEMENT

THIS NON-SOLICITATION AGREEMENT (the "Non-Solicitation Agreement") is entered into by and between Fractional Tax, Inc. (henceforth, "Fractional Tax"), incorporated in the state of Delaware, and Evan J Cronin CPA & Tax Services to protect the valuable competitive information and business relationships of Fractional Tax.

**1. Acknowledgements.** I acknowledge and agree that:

a. In the course and scope of my engagement with Fractional Tax, I have developed or will develop unique relationships with Fractional Tax's clients, employees, contractors, partners, affiliates, customers, and suppliers.

b. I acknowledge that all work assigned to me by Fractional Tax will be conducted by me, personally, and will never, without exception, be assigned, delegated, or outsourced to any other individual, firm, corporation, or entity.

c. I am entering into this Non-Solicitation Agreement in conjunction with my participation and engagement with work relating to Fractional Tax and that this provides adequate and significant consideration for my willingness to enter into this Non-Solicitation Agreement.

**2. Non-Solicitation of Fractional Tax Employees and Contractors.**

During the term of my engagement with Fractional Tax and for twenty-four (24) months following the termination of my engagement for any reason (the "Non-Solicitation Period"), I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, hire, solicit, retain, or encourage to leave the employ or contractor of Fractional Tax (or assist any other person or entity in hiring, soliciting, retaining or encouraging) any person who is then or was a contractor or employee of Fractional Tax.

**3. Non-Solicitation of Fractional Tax Clients.** During the term of my engagement—whether as a contractor, employee, or in any other capacity—at Fractional Tax and for twenty-four (24) months following the termination of my engagement for any reason (the "Client Non-Solicitation Period"), I agree that I will not, either on my own behalf or on behalf of any other person or entity, directly or indirectly, solicit any current or former clients of Fractional Tax with the intension of providing similar services to the client or with the intension of taking any business away from Fractional Tax. I acknowledge that Fractional Tax's relationships with its clients are extremely valuable to it and that the protection of Fractional Tax's relationship with its clients is essential.

**4. Survival.** The obligations contained in Paragraphs 2, 3 and 4 shall survive the termination of this Non-Solicitation Agreement. In addition, the termination of this Non-Solicitation Agreement shall not affect any of the rights or obligations of either party arising prior to or at the time of

termination of this Non-Solicitation Agreement, or which may arise by any event causing the termination of this Non-Solicitation Agreement.

**5. Waiver of Rights.** If on one or more instances either party fails to insist that the other party perform any of the terms of this Non-Solicitation Agreement, such failure shall not be construed as a waiver by such party of any past, present, or future right granted under this Non-Solicitation Agreement; and the obligations of both parties under this Non-Solicitation Agreement shall continue in full force and effect. Fractional Tax's waiver, for whatever reason, of the terms of a non-solicitation agreement between Fractional Tax and any other employee or contractor shall not operate as a waiver or release of my obligations under the Non-Solicitation Agreement and may not be used as evidence of Fractional Tax's intent to waive any of the terms of this Non-Solicitation Agreement.

**6. Remedies.** I acknowledge and agree that compliance with Paragraphs 2, 3 and 4 of this Non-Solicitation Agreement is necessary to protect the business and goodwill of Fractional Tax; and that a breach of Paragraphs 2, 3 or 4 will irreparably and continually damage Fractional Tax, for which money damages may not be adequate.

    a. I agree that, in the event that I breach or threaten to breach any of these covenants, Fractional Tax shall be entitled to (i) a preliminary or permanent injunction in order to prevent the continuation of such harm; (ii) money damages insofar as they can be determined; and (iii) any other damages permitted by applicable law. Nothing in this Non-Solicitation Agreement, however, shall be construed to prohibit Fractional Tax from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative.

    b. In addition to any money damages for the period of time during which I violate these covenants, Fractional Tax shall be entitled also to recover the amount of any fees, compensation, or other remuneration earned by me as a result of any such breach, as well as recovery of the consideration provided to me for entering into this Non-Solicitation Agreement.

**7. Attorneys' Fees.** In the event of any dispute or controversy arising under this Non-Solicitation Agreement, the prevailing party in any litigation or arbitration shall be entitled to recover from the other party the costs and expenses, including attorney's fees, incurred by the prevailing party related solely to the dispute or controversy.

**8. No Defense.** A claim by me against Fractional Tax shall not constitute a defense to Fractional Tax's enforcement of the restrictive covenants of this Non-Solicitation Agreement.

**9. Severability.** I acknowledge and agree that the parties have attempted to limit my right to solicit only to the extent necessary to protect the legitimate interests of Fractional Tax. If any provision or clause of this Non-Solicitation Agreement, or portion thereof, shall be held by any court of competent jurisdiction to be illegal, void or unenforceable in such jurisdiction, the remainder of such provisions shall not thereby be affected and shall be given full effect, without regard to the invalid portion. It is the intention of the parties and I agree, that if any court construes any provision or clause of this Non-Solicitation Agreement, or any portion thereof, to

— 40 —

Docusign Envelope ID: DE7B7B5C-9EA1-4534-BFA2-0A7952fE7D75

be illegal, void or unenforceable because of the duration of such provision or the area or matter covered thereby, such court shall reduce the duration, area or matter of such provision and, in its reduced form, such provision shall then be enforceable and shall be enforced.

**10. Governing Law/Jurisdiction.** This Non-Solicitation Agreement shall be subject to and governed by the laws of the State of Delaware, without regard to its laws or regulations relating to conflict of laws. I hereby consent to the jurisdiction of, and agree that any claim arising out of or relating to this Non-Solicitation Agreement may be brought in any federal court or any state court of Delaware that has jurisdiction over such matters.

**11. Assignment.** This Non-Solicitation Agreement and any rights thereunder may be assigned by Fractional Tax and if so assigned shall operate to protect the Confidential Information and relationships of Fractional Tax as well as such information and relationships of the assignee.

**12. Applicability.** This Non-Solicitation Agreement shall be binding upon and shall inure to the benefit of the parties and their successors, assigns, executors, administrators, and personal representatives.

{Signature Page – Next Page}

**IN WITNESS WHEREOF,** the parties have caused this Non-Solicitation Agreement to be executed and delivered, effective as of the date signed below by a duly authorized officer of Fractional Tax.

Dated: 1/7/2025 _____

Signature: Evan J Cronin

Typed Name: Evan J Cronin

Address: ███████████████

Fractional Tax, Inc.

Signature: Nishchal Basnyat

Typed Name: Nishchal Basnyat

Address: 14 Wall Street, Fl 20
New York, New York 10005

# FRACTIONAL TAX, INC.

## NON-DISCLOSURE AGREEMENT

This Non-Disclosure Agreement (hereinafter the "Agreement") is made and entered into on __1/7/2025_____ by and between the Affiliated Companies, which included but are not limited to, Fractional Tax, Inc, incorporated in the state of Delaware (hereinafter the "Company"), and _Evan J Cronin CPA & Tax Services_ (hereinafter "Counterparty").

FOR GOOD CONSIDERATION, and in consideration of Counterparty's engagement or continued engagement with the Company, Counterparty hereby agrees and acknowledges:

1. That during the course of my engagement, contract, and/or engagement with the Company, there may be disclosed to me certain trade secrets, confidential and/or proprietary business information of or regarding the Company; consisting of but not necessarily limited to:

a. Technical information: Sensitive financial and legal data of clients, estimates and/or projections. methods, processes, formulae, compositions. systems, techniques, inventions, machines, computer programs, research projects and experimental or developmental work, relating to any project or organization.

b. Business information: Business and development plans, investor and customer lists, social security information, EIN numbers, private client tax and accounting information, pricing data, sources of supply, financial data, marketing, production, and merchandising systems or plans and operation plans, investor transactions, stock and/or warrant ownership.

2. As used in this Agreement, the term "Confidential Information" means all Technical and/or Business information described in paragraphs 1(a) and (b) above, and any other trade secrets and/or confidential and/or proprietary business information of or regarding the Company (including information created or developed, in whole or in part, by Counterparty), which is not generally known about the Company or about its business. Confidential Information includes not only the information itself, but also all documents containing such information, and any and all such information maintained in electronic or other form. For purposes of this Agreement, Confidential Information shall not include any information which Counterparty can establish was (i) was publicly known or (ii) becomes publicly known and made generally available after disclosure to Counterparty by the Company, through means other than Counterparty's breach of his/her obligations under this Agreement.

3. Counterparty agrees that, except as necessary in performing the duties of his/her engagement with the Company, Counterparty shall not use in any manner, directly or indirectly, any Confidential Information. Counterparty agrees that he/she will never use any Confidential Information for his/her own benefit or for the benefit of any person or entity other than the Company, and will not permit or allow any Confidential Information to be used in competition with the Company. Counterparty acknowledges and agrees that all Confidential Information is the exclusive property of the Company, and Counterparty has no independent or individual claim

— 43 —

Docusign Envelope ID: DE7B7B5C-9EA1-4534-BFA2-0A1952FE7D75

to such Confidential Information for any purpose. During his/her engagement with the Company and at all times thereafter, Counterparty shall take all reasonable steps to prevent any unauthorized disclosure or use of any and all Confidential Information. Counterparty further agrees to notify the Company immediately in the event that he/she becomes aware of any unauthorized use or disclosure of Confidential Information.

4. Counterparty understands and agrees that he/she is being engaged for an indefinite term, and the engagement with the Company can be terminated by either Counterparty or the Company at any time, for any reason, or for no reason at all, with or without advance notice.

5. All questions with regard to the interpretation and enforcement of any provision of this Agreement shall be determined in accordance with the laws of the State of Delaware.

6. I agree that upon the termination of my engagement from Company:

a. I shall return to Company all documents and property of Company, even if not marked "confidential" or "proprietary," including but not necessarily limited to: drawings, blueprints, reports, manuals, correspondence, customer and/or investor lists, computer programs, and all other materials and all copies thereof relating in any way to Company's business, or in any way obtained by me during the course of engagement. I further agree that I shall not retain copies. notes or abstracts of the foregoing.

b. The Company may notify any future or prospective employer or third party of the existence of this Agreement. The Company shall be entitled to injunctive relief for any or threatened breach of this Agreement, in addition to all other available remedies, including the recovery of monetary damages.

c. This Agreement shall be binding upon me and my personal representatives and successors-in-interest, and shall inure to the benefit of Company, its successors and assigns.

## Confidentiality and Intellectual Property

This Non-Disclosure Agreement (NDA) shall remain in full force and effect throughout the period during which the Service Provider provides services to the Company and for a period of thirty-six (36) months following the termination of such services, regardless of the reason for termination. During this time, the Service Provider shall not disclose, use, or exploit any confidential information obtained during the course of their engagement with the Company for any purpose other than as expressly authorized in writing by the Company.

Any invention, discovery, design, development, improvement, concept, or work product (collectively, "Inventions") conceived, created, developed, or reduced to practice solely by the Company, or jointly by the Service Provider and the Company, during the term of the Service Provider's engagement, shall be the sole and exclusive property of the Company. The Service Provider agrees to assign and transfer all rights, title, and interest in such Inventions to the Company and shall execute any documents or take further actions reasonably requested by the Company to effectuate or protect the Company's ownership rights.

This provision does not limit the Company's rights to protect its trade secrets or other confidential information under applicable law, which may extend beyond the 36-month period where such information continues to meet the legal definition of a trade secret.

*Nishchal Basnyat*
_____
Authorized Company Signature

*Evan J Cronin*
_____
Counterparty Signature

Nishchal Basnyat
_____
Printed Name

Evan J Cronin
_____
Printed Name

1/7/2025
_____
Date

1/7/2025
_____
Date

**FRACTIONAL TAX, INC**

**CONTENT ASSIGNMENT AND**

**USE OF NAME APPROVAL AGREEMENT**

As a condition and requirement of engaging in work for Fractional Tax, Inc, a Delaware corporation, and its assets (namely fractionaltax.com, and its various social media channels) and any of its current or future subsidiaries (whether or not wholly-owned), affiliates, successors, or assigns (collectively, the "Company"), and in consideration of the privilege of providing services to the Company and my receipt of compensation, if any, now and hereafter paid to me by the Company, I hereby agree to the following:

**(a) Work-for Hire**

(i) To the extent that I create, either before or after the date of this Agreement, recipes, texts, images, designs or other items of a nature that I provide to the Company pursuant to this Agreement, the foregoing shall be collectively referred to herein as "Deliverables."

(ii) The Company is and shall be the sole and exclusive owner of all right, title and interest throughout the world in and to the Deliverables and the results and proceeds thereof, including all patents, copyrights, trademarks, trade secrets and other intellectual property rights (collectively, "Intellectual Property Rights") therein. Deliverables are and shall be "works made for hire" to the greatest extent permitted by applicable law, as defined in Section 101 of the Copyright Act (title 17 of the U.S. Code), and for which I am adequately compensated herein.

**(b) Assignment of Created Content**

(i) If, for any reason, any of the Deliverables do not constitute a work made for hire, I hereby irrevocably assign and transfer to the Company (and its successors    and assigns) all of my right, title and interest throughout the world in and to any and all Company Content, including any content created by me or my team for the benefit of or to be used for fractionaltax.com, its various social media channels, or any other related online publications (collectively, "Company Content").

(ii) I hereby irrevocably assign all patent, copyright, trademark, trade secret, database rights, and other intellectual property rights and other proprietary rights therein, including without limitation all granted patents, written content, and all patent applications relating to any such Company creations and all divisions, continuations, continuations-in-part, reissues and extensions of such content or such applications, and the right to claim for such patent or patent applications the full benefits and priority rights under the International Patent Cooperation Treaty, as amended, the Paris Convention for the Protection of Industrial Property, as amended, and any and all other international agreements, treaties or conventions to which the United States adheres and any other applicable international treaty or applicable law, all in each case recognized in the United States, any foreign jurisdiction or under any international treaty regime.

— 46 —

(iii) I hereby waive and irrevocably quitclaim to the Company (and its successors and assigns) any and all claims, of any nature whatsoever, that I now have or may hereafter have for infringement of any and all rights in or to the Company Content.

(iv) I hereby allow the Company to use and exploit, in any manner it deems appropriate, content created by me or my team for any purpose including but not limited to online publication, software and/or technological applications, physical publication in the form of books, booklets, or in any other way it deems appropriate.

## (c) Use of Name, Picture and Video

(i) I hereby irrevocably assign and allow the Company to use, in its sole discretion, my name, biodata, picture, and/or video in connection with the Intellectual Property and Company Content on any "by line," heading, or on the 'About Us' page. This includes, but is not limited to, the use of my name, biodata, picture, and/or video in related websites, social media channels, newsletters, and email communications or future applications ("apps") or other technologies related to the business of the Company. Notwithstanding the foregoing, the Company is not obligated to credit me with any of the Intellectual Property and Company Content.

(ii) I agree that upon termination of this Agreement, the Company may retain and continue to use my name in work products or contributions I created during my engagement, including but not limited to articles, videos, or other deliverables, as part of the Company's intellectual property. However, I understand that the Company will remove my name, biodata, and references to my association with the Company from the team page, "About Us" section, or similar materials on its websites and presentation documents. If I discover that my name or biodata remains on the "About Us" page or team page of the Company on any materials or platforms following termination, with the exception of aforementioned deliverables like blog articles or videos made for the Company, I agree to notify the Company in writing and allow the Company thirty (30) business days from the date of notice to investigate and, where appropriate, remove such references.

(d) I represent and warrant to the Company that:

> (i) I have the right to enter into this Agreement, to grant the rights granted herein and to perform fully all of my obligations in this Agreement;

> (ii) no other party is required to authorize or consent to my being bound by the terms and conditions hereof;

> (iii) my entering into this Agreement with Company and my performance hereunder do not and will not conflict with or result in any breach or default under any other agreement to which I am subject;

> (iv) there are no circumstances in which this Agreement and my association with the Company would tend to have a materially adverse effect on the reputation and image of the Company; and

— 47 —

Docusign Envelope ID: 0E7B7B3C-92A1-4654-9FA29A5932AE7D75

(v) all Intellectual Property rights in and to the Site, the Courses, Mentorships and Company Project Materials belong solely to Company, including ideas, suggestions or contributions thereto which shall be deemed works-for-hire with no requirement of additional consideration or credit.

(e) Company represents and warrants that:

(i) it has the right to enter into this Agreement, to grant the rights granted herein and to perform fully all of its obligations in this Agreement;

(ii) no other party is required to authorize or consent to their being bound by the terms and conditions hereof; and

(iii) entering into this Agreement and performance of Company's obligations do not and will not conflict with or result in any breach or default under any other agreement to which they are each subject.

The parties have executed this Content Assignment and Use of Name Approval Agreement on the respective dates set forth below, to be effective as of the Effective Date first above written.

**{Signature Page – Next Page}**

**The Company:**

**Fractional Tax, Inc.**

By:

**Name:** Nishchal Basnyat

**Title:** Authorized Signatory

**Address:**

14 Wall Steet, Fl 20
New York, New York 10005

**Date:** 1/7/2025

**Counterparty / Officer:**

**Evan J Cronin CPA & Tax Services**

By: Evan J Cronin

**Name:** Evan J Cronin

**Title:** Owner

**Address:**

**Date:** 1/7/2025

# Exhibit B-3

## Slack Access

Record reflecting Plaintiff's access to the Termaproject Slack workspace.

## Two-Factor Authentication Backup Codes

(!) If you lose access to your authentication device, you can use one of these backup codes to login to your account. Each code may be used only once. Make a copy of these codes, and store it somewhere safe.

| | |
|---|---|
| 903263305 | 641170083 |
| 994590673 | 799836495 |
| 583402250 | 443550552 |
| 540466295 | 922857408 |
| 210691700 | 113173073 |

— 51 —

# Exhibit C — Agency Structure

## C-1 — Agency Profile

*Pages 54 — 61*

Upwork Help Center article explaining that agency managers can submit proposals on behalf of agency members, that proposals are binding on the agency, and that multiple individuals within the agency may act on behalf of others in client-facing communications.

## C-2(a) — Upwork Agency Proposals and Offers

*Pages 62 — 64*

Upwork help page describing agency proposal submission and management by business managers.

## C-2(b) — Upwork Agency Contracts

*Pages 65 — 66*

Upwork Help Center article describing agency contract structure, including that agency managers and members may perform work under contracts and that payments are routed through the agency account.

## C-2(c) — Upwork Agency Finances

*Pages 67 — 68*

Upwork Help Center article describing agency-level control over contract payments, earnings distribution, and responsibility for compensating agency members.

# Exhibit C — Agency Structure (cont.)

## C-2(d) — Upwork Agency Settings and Permissions

*Pages 69 — 70*

Upwork Help Center article describing agency roles and permissions, including authority to submit proposals, manage contracts, and communicate within the agency structure.

# Exhibit C-1

## Agency Profile

Fractional Tax, Inc. agency profile showing Plaintiff's public association with the agency.

(!) Starting May 1, 2025, Freelancer Service Fees for new contracts will switch from a fixed 10% to a variable fee based on factors such as client demand for certain work. The fee will remain fixed for the life of the contract. Learn more.  



# Fractional Tax, Inc.

Big Firm Capability. Small Firm Personality. Serving Businesses Like Yours.

⊖ Copy Profile Link

## Overview



Welcome to our new agency account! We are excited to expand into serving more clients through Upwork!

Our expert team at Fractional Tax collectively has over 50+ years of experience across tax and accounting services. This allows us to take on your business with ease and without headaches. We believe in partnering and visibility and we aim to serve our clients in the best way possible. If you're not a business owner, no problem! We are passionate about serving all clients when we can!

Some services we provide include:
- Tax Filings (Business and Personal)
- Accounting & Bookkeeping
- Entity Formation and EIN applications
- ITIN applications
- BOI Reporting
- Bank Account Setup
- Trade Name application
- Payroll
- Sales Tax and many more!

We have competitive pricing for the value we provide because we want to make quality accessible to all business owners, whether you need help creating your business or a seasoned owner. We offer a handful of discounts as well that are listed on our website!

We've created a secure portal and app called MyTax.Today which allows all clients to access their sensitive documents, privately message our team, upload any documents needed, and view progress on open projects.

We'd love to talk about what you need so we can build you a specific quote and set that up in your Upwork profile for you!

Read less ⌃

# Services

## Accounting & Bookkeeping ⌃



- Tax Filings (Business and Personal) - Accounting & Bookkeeping - Entity Formation and EIN applications - ITIN applications - BOI Reporting - Bank Account Setup - Trade Name application - Payroll - Sales Tax and many more!

Showcase: Over 300+ Entities Served Within The Last Year!

# Skills

Bookkeeping      QuickBooks Online      Intuit QuickBooks      Accounting Software

Wave Accounting      Accounting Tools Setup      Upwork      Accounting

Accounting Report      Finance & Accounting      Finance      Tax Accounting

Business Development                — 57 —

# Portfolio



**Client Testimonials**

Providing complete US tax and compliance solutions for US and non-US businesses, ensuring ease and peace of mind

United Arab Emirates, Dubai          United States, Melbourne

Over 300+ Entities Served Within The
Last Year!

# Work history

## USA Accounting/Bookkeeping

★★★★★  5  Jul 22, 2024 - Oct 31, 2024

$912.50                    $75.00 / hr                    12 hours

## Annual Benefit Plan Form 5500 Filing for IRS

Mar 25, 2025 - Present

Fixed Price

## Urgent Tax Filing Assistance for USA Form 1065

Mar 3, 2025 - Present

$269.00                    Fixed Price

See more work history

— 58 —

# Business managers



Doris M.

👑 100% Job Success

## Agency members



Evan C.

## Upwork activity ⊙

Hourly rate
$75.00 - $175.00

Total earned
$2K+

Total hours
24

Total jobs
3

Member since
Apr 22, 2024

— 59 —

# Office locations

⊙ **New York, United States**
4:15 pm CDT Primary location

# Company information

Agency size ⊙
**11-50 workers**

Client focus
**Large business**
**Medium business**
**Very small business**
**Small business**

# Languages

**English:** Fluent

**Italian:** Fluent

**Spanish:** Fluent

About Us

Feedback

Trust, Safety &
Security

Help & Support

Upwork Foundation

Terms of Service

Privacy Policy

CA Notice at
Collection

Cookie Settings

Accessibility

Desktop App

Cookie Policy

Enterprise Solutions





## Exhibit C-2(a)

### Upwork Agency Proposals and Offers

Upwork Help Center article explaining that agency managers can submit proposals on behalf of agency members, that proposals are binding on the agency, and that multiple individuals within the agency may act on behalf of others in client-facing communications.

| Help
Center | Getting
Started | ˅ Work | ˅ Payment | ˅ Account
safety | ˅ Learning
& growth | ˅ Contact
Support | ˅ Back to
upwork.com | 🔍 Search articles |

# Agency proposals and offers

To help keep agency workflows centralized and running smoothly, business managers can submit a proposal on behalf of any agency member. They can also edit or withdraw all agency proposals, as well as accept or decline all offers. Agency members can also submit proposals themselves, which will be binding on the agency. All proposals will draw from the agency's collective Connects balance.

In order to do hourly contracts, you need to have a profile for each freelancer you assign to the project. For fixed-price contracts, you can submit your proposal with the Business Manager's profile and then assign freelancers to work on the project as needed. Some clients prefer for you to let them know your agency members will be doing the work and to give them some information on the freelancer(s) that will be doing the work.

### Note:

As of August 2024, you must have an active Agency Plus membership to submit proposals and accept offers, except for direct offers and invitations from Enterprise clients.

**In this article**

**Articles in this section**

Agency Contracts

Agency Finances

Agency settings and p...

Close an agency

Manage Agency Rost...

**Recently viewed articles**

## Frequently Asked Questions

### Who is able to respond to project invites?

Agencies generally have a number of team member accounts, so more than one person can take actions on behalf of the agency. Agency members with Business Manager permissions are able to respond to project invites or contracts.

### Why does a project invite or contract come to a freelancer account?

Contracts with the agency are created at the individual freelancer profile level, even while agency contract earnings roll up to the agency.

Upwork uses third-party cookies for personalized content, analytics, and advertising. Please enable cookies so you can access all areas of Upwork. Learn more here.

## What if there's not enough information to price a project when submitting a proposal?

Submitting a proposal is simply the start of a dialogue. You can request additional details from the client. You should speak with the client and work out the details before accepting a contract. You may even want to include some of the pertinent questions you have in the proposal itself to initiate the conversation (and state any assumptions you've made in creating your bid).

## Was this article helpful?

Upwork Help

## Do you need additional help?

Contact Support



| Upwork Dashboard | Learning Hub | Terms of Service | Desktop App |
| About Us | Trust, Safety & Security | Privacy Policy | Cookie Policy |
| | Upwork Foundation | Accessibility | Enterprise Solutions |
| Follow Us | | | Mobile app |

© 2015 - 2025 Upwork Global Inc.

— 64 —

Upwork uses third-party cookies for personalized content, analytics, and advertising. Please enable cookies so you can access all areas of Upwork. Learn more here.

# Exhibit C-2(b)

## Upwork Agency Contracts

Upwork Help Center article describing agency contract structure, including that agency managers and members may perform work under contracts and that payments are routed through the agency account.

| Help Center | Getting Started | ⌄ Work | ⌄ Payment | ⌄ Account safety | ⌄ Learning & growth | ⌄ Contact Support | ⌄ Back to upwork.com | | 🔍 Search articles |  |

⌂    Build Your Agency

# Agency Contracts

Agency contracts work much the same as freelancer contracts. An agency's business managers can both edit the terms of contracts and end them. Both the contracted agency member (the agency member actively working on the contract) and all business managers can submit milestones on fixed-price contracts. All contracts are paid into the agency's collective financial account balance.

## Feedback

The feedback from clients on all of your agency's contracts, combined with all of your agency's team members, create your agency Job Success Score. If your team members are working exclusively for your agency, the agency JSS will display on their freelancer profile. If a team member leaves the agency, their work history and feedback remain accessible on your agency profile.

**In this article** ⌃

| Feedback

**Articles in this section** ⌃

Agency Finances

Agency proposals an…

Agency settings and p…

Close an agency

Manage Agency Rost…

**Recently viewed articles** ⌄

## Was this article helpful?

 

**Upwork Help**

## Do you need additional help?

Contact Support



— 66 —

# Exhibit C-2(c)

## Upwork Agency Finances

Upwork Help Center article describing agency-level control over contract payments, earnings distribution, and responsibility for compensating agency members.

| Help Center | Getting Started | Work ⌄ | Payment ⌄ | Account ⌄ safety | Learning ⌄ & growth | Contact ⌄ Support | Back to upwork.com |

🔍 Search articles

⌂    Build Your Agency

# Agency Finances

All agency contracts are paid to the agency's account. Your agency's balance will be sent to you on a schedule you set, or you can access your funds at any time by going to Settings › Get Paid. The options are all the same as for individual freelancers. How you manage your agency's earnings from there is up to you.

- The agency (not clients) is responsible for paying agency members. Payments from agencies to agency members are not protected or facilitated by Upwork.

- How much the agency members are to be paid is determined by the agency and the agency members.

- Agencies are responsible for maintaining proper tax records and worker classification. Agency members may be classified as either freelancers or employees of their agency. Please also see the Upwork User Agreement.

## Payment Terms

Payment terms for agencies are the same as for independent freelancers. There are service fees which vary by client. Hourly payments follow a weekly billing cycle. Bonuses and fixed-price payments are available to you 5 days after the client submits payment. As earnings accrue to your agency account they may be withdrawn on-demand, or they'll be sent automatically on a predetermined schedule.

**In this article** ⌄

**Articles in this section** ⌃

Agency Contracts

Agency proposals an...

Agency settings and p...

Close an agency

Manage Agency Rost...

**Recently viewed articles** ⌄

## Was this article helpful?

  

**Upwork Help**
## Do you need additional help?

Contact Support

— 68 —

.

# Exhibit C-2(d)

## Upwork Agency Settings and Permissions

Upwork Help Center article describing agency-level control over contract payments, earnings distribution, and responsibility for compensating agency members.

 **Help Center** | Getting Started | Work ⌄ | Payment ⌄ | Account safety ⌄ | Learning & growth ⌄ | Contact Support ⌄ | Back to upwork.com | 🔍 Search articles

⌂   Build Your Agency

# Agency settings and permissions

To help you organize and manage the freelancers in your agency, we offer a range of different roles and permissions that you can assign.

Agency owners and admins can edit agency members' roles and permissions by going to Settings › Members & Permissions.

## Member roles

- **Owner** — This person is ultimately responsible for the agency. Only the owner can create additional teams within an agency. The owner is always an admin.
- **Admin** — Can add, remove, and update agency members permissions. Admins also have full financial access and can buy more Connects.
- **Financial** — Full access to the agency's financial account, including payment methods, billing methods, and reports.
- **Business Manager** — Can submit and manage team proposals and contracts for all your team members, as well as adjust exclusive freelancer profile rates and profile visibility. Can see agency time-based reports, including Weekly Summary.
- **Agency Freelancer** — Does work on behalf of the agency. Can submit proposals, but can't accept/decline offers. Can see reports about their own work, but can't see their rates on their reports or contracts. Can see their profile rates unless a manager hides them via the roster settings.
  - **Exclusive** — Can only work on agency contracts.
  - **Non-Exclusive** — Can do work both for the agency and independently. The agency can only access their agency proposals and contracts.

## Permissions

- **Work Diary Access** — Work Diaries are used to bill time on hourly contracts. Only the agency member hired can bill time to that contract through the Work Diary.
  - **Full** — View access to the Work Diaries for all agency contracts. Time-logging and Work Diary editing for their own contracts. Can see agency reports.
  - **None** — Can't see any agency Work Diaries or reports (unless their role gives additional reports access).
- **Chat Access** — Clients can always contact their hired agency freelancers via messages. You can choose chat access levels within your agency.
  - **No One** — Can't send messages (via the website, desktop app, or mobile app) to anyone in the agency unless they've received a message from that person first.
  - **Team Members** — Can see and chat with anyone on the same team.
  - **Company Members** — Can see and chat with everyone in the agency, across all teams.

### In this article                    ⌄

### Articles in this section       ⌃

Agency Contracts

Agency Finances

Agency proposals and offers

Close an agency

Manage Agency Roster and Visib…

### Recently viewed articles ⌄

## Was this article helpful?

  



**Upwork Help**

## Do you need additional help?

— 70 —

Contact Support

# Exhibit D — Proposal Episodes

## D-1(a) — Financial Audit Proposal (Mario)

*Pages 73 — 74*

Proposal sent under Plaintiff's identity offering audit-related services to Mario Cvetic.

## D-1(b) — Financial Audit Job Posting

*Pages 75 — 76*

Underlying Upwork job posting seeking CPA financial audit services.

## D-1(c) — Audit Slack Message

*Pages 77 — 78*

Internal Slack message stating FTINC was not a licensed CPA firm and did not provide audit or attest services.

## D-2 — Tax Strategy Proposal (Eric)

*Pages 79 — 80*

Proposal sent under Plaintiff's identity to Eric Gaines / RVEEDOM.

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 131 of 208 PageID #:131

# Exhibit D — Proposal Episodes (cont.)

## D-3 — U.S. Accounting Proposal (Jerome)

*Pages 81 — 82*

Proposal sent under Plaintiff's identity to Jerome Rappel / Digital Network Acquisition.

## D-4 — Form 5500 Proposal (Zephrina)

*Pages 83 — 84*

Proposal sent under Plaintiff's identity concerning Form 5500 or retirement-plan related services.

## D-5 — International / Withholding Tax Proposal (Leslie)

*Pages 85 — 86*

Proposal sent under Plaintiff's identity to Leslie Viviani / NVLS International SL.

— 72 —

# Exhibit D-1(a)

## Financial Audit Proposal (Mario)

Proposal sent under Plaintiff's identity offering audit-related services to Mario Cvetic.

**Mario Cvetic**   CPA Financial audit

Monday, Mar 03

 **Evan Cronin** 11:53 AM

Hi there, I run a tax and accounting firm, Fracttional Tax, where we specialize in international tax compliance and financial auditing, working with businesses across different jurisdictions, including the U.S. Our agency is registered in the USA, currently managing books for over 400 clients internationally, we ensure the whole cross-border tax filing process is refined for you. If I may ask, will the audit need to follow Generally Accepted Accounting Principles (GAAP) or another specific reporting standard required by the grant provider?

Let me know if you're available for a quick call to go over this and to answer any questions you may be having.
Best.
Evan.

View details

 **Mario Cvetic** 11:53 AM

Hi Evan,
I hope you are doing well.
We seek a certified CPA to audit our company's financial statements for the past three fiscal years as part of a Canadian artist grant application. Our business is a single-member LLC based in Florida.
The owner is a 100% shareholder. We have one bank account and three credit cards.
Could you please estimate the number of hours needed to complete this task?
Please feel free to reach out if you require any further information to respond accurately.
Kind regards,
Mario

— 74 —

Doris Mutembei added Chandler Murphy to the room

Tuesday, Mar 04

# Exhibit D-1(b)

## Financial Audit Job Posting

Underlying Upwork job posting seeking CPA financial audit services.

⚠ Starting May 1, 2025, Freelancer Service Fees for new contracts will switch from a fixed 10% to a variable fee based on factors such as client de remain fixed for the life of the contract. Learn more.

## CPA Financial audit

Posted 3 weeks ago    📍 Worldwide

📢 Specialized profiles can help you better highlight your expertise when submitting proposals to jobs like these. Create a specialized profile.

We are looking for a certified CPA to audit our company's financial statements for the past three fiscal years as part of a grant application. Our business is a single-member LLC based in Florida.

🕐 **Less than 30 hrs/week**
Hourly

◱ **Less than 1 month**
Project Length

💲 **Intermediate**
I am looking for a mix of experience and value

Project Type: One-time project

## Skills and Expertise

Accounting Deliverables

Financial Audit

Other

CPA

## Preferred qualifications

Location: United States ✓

— 76 —

## Activity on this job

Proposals: ⑦ 5 to 10

Last viewed by client: ⑦ 3 weeks ago

Interviewing: 1

# Exhibit D-1(c)

## Audit Slack Message

Internal Slack message stating FTINC was not a licensed CPA firm and did not provide audit or attest services.

11:56

**projects-evan**
4 members • 3 tabs ⌄

Thanks (edited)

**Evan** 8:41 AM
@Doris Mutembei @Chandler M. please correct me if I am wrong but we do not provide audit/attest services correct? Audit services are an entirely different category of accounting services so it was my understanding we do not provide them

**Chandler M.** 8:41 AM
Correct! Since we aren't a licensed CPA firm, we do not1

👍 2  😊⁺

Appreciate you asking!

👍 1  😊⁺

**Evan** 11:01 AM
@Chandler M. @Doris Mutembei I haven't done anything with this one bc the reply seemed fishy but let me know if you are more familiar/want me to proceed



+  Message projects-evan  🎤

🏠 Home      DMs  — 78 —  Activity      More

# Exhibit D-2

## Tax Strategy Proposal (Eric)

Proposal sent under Plaintiff's identity to Eric Gaines / RVEEDOM.

**Eric Gaines, RVEEDOM**   💼 Tax Strategist & Accounting Master | QuickBooks Pro | Partnership Opportunity          📹   📞

Friday, Feb 28



**Evan Cronin**  11:09 AM

Hi Eric, I run Fractional Tax, a firm specializing in U.S. tax compliance, bookkeeping, and financial management, particularly for property management and vehicle rental businesses. Our expert accounting team, including professionals with Master's in Taxation and accounting certifications, has over 50 years of combined experience handling tax filings, bookkeeping, and financial analysis with 400+ clients.

We would help refine section 179 benefits to maximize depreciation, strategic tax planning to reduce liabilities and increase savings, smart capital expenditure management to support growth, guidi business structuring and tax efficiencies, just to mention a few.

I'd love to learn more about your specific needs and see how we can work together. Would you be open to a quick call to discuss?
Best,
Evan.

— 80 —

**View details**

# Exhibit D-3

## U.S. Accounting Proposal (Jerome)

Proposal sent under Plaintiff's identity to Jerome Rappel / Digital Network Acquisition.

**Jerome Rappel, DIGITAL NETWORK ACQUISITION**   ✉ Experienced USA Accountant Needed

Thursday, Mar 27



Evan Cronin  2:29 AM

Hi Jerome, I run Fractional Tax, a firm specializing in U.S. tax compliance, bookkeeping, and financial management. Our expert accounting team, including professionals with Masters in Taxation and accounting certifications, has over 50 years of combined experience handling tax filings, bookkeeping, and financial analysis with 400+ international clients.

I would love to have a conversation at your convenience, to discuss how we can handle your project efficiently. Would you be open to a quick call to discuss how we can meet your accounting needs?

Best,
Evan.

View details

— 82 —



Jerome Rappel  2:29 AM

Hello. I am intersted in your services for our US companies. When is a good time to chat?

# Exhibit D-4

## Form 5500 Proposal (Zephrina)

Proposal sent under Plaintiff's identity concerning Form 5500 or retirement-plan related services.



**Evan Cronin**

Hi ZMC operations and recruiting team, I run a tax and accounting firm, Fractional Tax, where we specialize in helping our clients with IRS compliance and have extensive experience managing complex filings, including Form 5500 for both cash balance and 401k plans. Our team has an extensive accounting department with Masters in Taxation, accounting certified, and we manage books for over 400 clients. For such a situation as yours, we are happy to offer you help through our expertise in IRS regulations and benefit plan requirements to ensure your filing is fully compliant.

May I ask if there are any specific deadlines or recent updates to your cash balance or 401k plan structures that might affect the filing process? Secondly, could you clarify if there are any additional documentation requirements specifically related to the annuity account assets that we should consider?

I would be delighted to discuss your specific needs in a quick call and outline how we can provide efficient filing process for your organization.
Best,
Evan.

— 84 —

View details

# Exhibit D-5

## International / Withholding Tax Proposal (Leslie)

Proposal sent under Plaintiff's identity to Leslie Viviani / NVLS International SL.

## Leslie Viviani, NVLS INTERNATIONAL SL  Tax specialist to answer a US tax question

Friday, Feb 28

 **Evan Cronin** 12:59 PM

Hi Leslie, I run a tax and accounting firm, Fracttional Tax, where we specialize in international tax compliance, and we have successfully assisted foreign businesses, including LSPs, in resolving similar withholding tax disputes. We have an extensive accounting department with a Master's in Taxation and an accounting certification. For your case, we can help analyze the withholding issue and identify resolution options, ensure compliance with U.S. tax regulations for non-U.S. entities and craft a strategic response to dispute or rectify the withholding with your client.

Since this is a time-sensitive matter, I'd love to connect as soon as possible to discuss the best course of action. Let me know a convenient time for a quick call.

Best.
Evan.

86

# Exhibit E — Prior Objections

## E-1 — March 12 Objection

*Pages 88 —89*

Internal email raising concerns regarding proposal activity under Plaintiff's

identity.

## E-2 — March 26 Objection

*Pages 90 — 93*

Internal email raising concerns regarding proposal activity, scope, billing,

and role structure.

# Exhibit E-1

## March 12 Objection

Internal email raising concerns regarding proposal activity under Plaintiff's identity.

 Gmail

Evan Cronin <evan@fractionaltax.com>

---

## Upwork Proposals

3 messages

---

**Evan Cronin** <evan@fractionaltax.com>                                    Wed, Mar 12 at 7:58 PM
To: Chandler Murphy <chandler_murphy@fractionaltax.com>

Hi Chandler,

I wanted to address our approach to applying for projects on Upwork. I've noticed multiple instances where our Fractional account has submitted proposals under my name that misrepresent our services or include inaccurate claims.

I'd appreciate it if we could establish a more thorough process for selecting jobs and ensuring proposals accurately reflect our services and track record, especially if they continue to be submitted in my name. It's difficult for me to respond to proposals that appear to come from me when I then need to correct or walk back certain statements.

I appreciate your consideration and would be happy to discuss further.

Best,
Evan



[Quoted text hidden]

---

**Chandler Murphy** <chandler.murphy@termaproject.com>                      Wed, Mar 12 at 8:05 PM
To: Evan Cronin <evan@fractionaltax.com>

Evan,

You bet.

Lets chat tomorrow at some point and discuss further.
[Quoted text hidden]

---

**Evan Cronin** <evan@fractionaltax.com>                                    Fri, Mar 28 at 9:23 AM
To: Evan Cronin ███████████████████████

[Quoted text hidden]

.

# Exhibit E-2

## March 26 Objection

Internal email raising concerns regarding proposal activity, scope, billing, and role structure.

 **Gmail**

Evan Cronin <evan@fractionaltax.com>

---

## Timesheet Discrepancy

4 messages

---

**Chandler Murphy** <chandler_murphy@fractionaltax.com>                    Mon, Mar 24 at 9:49 AM
To: Evan Cronin <evan@fractionaltax.com>
Cc: Christopher Lee <christopher_lee@fractionaltax.com>

Good morning, Evan.

Hope your weekend went well.

While auditing, it looks like the last two weeks in MyTax it looks like you have logged 0 hours. I believe that you have done correspondence work during that time - Can you please get your timesheet updated today so that we can accurately see accrued time in the system and prep for invoicing?

Also a side question - How much time will we be able to expect weekly from you moving forward so we can plan accordingly?

Appreciate it!
[Quoted text hidden]

---

**Evan Cronin** <evan@fractionaltax.com>                    Wed, Mar 26 at 5:02 PM
To: Chandler Murphy <chandler_murphy@fractionaltax.com>
Cc: Christopher Lee <christopher_lee@fractionaltax.com>

Hi Chandler,

Thanks for flagging the timesheet concern—you're right to raise it. I've been maintaining a log of my hours, but I've hesitated to submit them because I've been struggling with how to properly classify the time I've spent—particularly where responsibilities haven't been clearly scoped, or where the work I've done falls outside what I'd consider straightforward preparation or hourly support.

This has brought up a larger pattern I've been tracking, and I'd like to use this opportunity to revisit the structure of how I'm contributing and propose an adjustment that I believe would benefit both sides.

### Current Role & Structural Misalignment

Over the past few months, I've found myself operating across multiple roles:

- Preparing returns

- Developing and reviewing proposals

- Supporting onboarding and client communications

- Receiving team communications that imply review responsibilities—even though I've previously flagged capacity concerns and aligned on a focus solely on preparation

A good example of the kind of structural gap I'm referring to is the Zephrina case. A proposal for a Form 5500 was submitted under my name—before I'd had a chance to review or approve it. I had never prepared a 5500 before, so I had to quickly research whether it was even an appropriate engagement to take on. That meant digging into ERISA thresholds, audit exemptions, DFVCP eligibility, and plan-level compliance considerations to determine if we could actually deliver. I also had to figure out how to price it without any internal precedent. While I was able to get us up to

speed and help win the engagement, none of that time was scoped or clearly billable—and I had no mechanism for understanding whether it was in-scope for hourly or flat-fee. I've encountered similar situations with other clients, especially those coming through Upwork, where I've had to triage complex fact patterns before the project even formally starts.

This isn't about any one task but about the structure itself. The current model mirrors the demands of an internal team lead—without the infrastructure, authority, or predictability that comes with that kind of role. It makes planning and prioritization difficult, and it increases the likelihood that I'm either overcommitting or underreporting.

## Working Style & Practice Alignment

I've built my firm around a more intentional approach to client service—particularly for complex tax work. I spend time digging into fact patterns others might overlook, because that's where real value is created. Higher-value clients don't just expect quick turnaround—they expect clarity, defensibility, and well-reasoned outcomes. These are long-term relationships built on trust, and they're not served well by a volume-based model focused on pushing returns out the door. That kind of pressure often doesn't reflect how those clients operate—or how I deliver my best work.

The model that works best for me is one where I'm engaged to handle full projects from start to finish. I don't work efficiently when pieces are reassigned midstream or passed along without structure—it introduces friction, slows down delivery, and impacts the overall quality. As an independent practitioner, I also don't work based on fixed hour commitments. I plan my availability around clearly scoped workstreams with defined deliverables. That's what allows me to stay focused, maintain a high standard, and consistently deliver value where it matters most.

## Clarifying Contractor vs. Team Role

To be clear, none of this is about pushing back on contractual scope—I understand that the agreement leaves room for flexibility. The challenge is more about how work is currently flowing. I'm often cc'd on review chains, asked to weigh in on prep I haven't been brought into, or looped into general team threads without clear ownership. These dynamics create ambiguity around what I'm responsible for and when I'm expected to act.

That type of reactive, all-hands approach may work in a salaried environment with centralized workflows. But as a contractor managing my own practice in parallel, I rely on project-level clarity to plan and deliver effectively. I want to remain collaborative and responsive—but I also need a structure that supports sustainable, high-quality work without eroding the independence that defines how I operate.

## Proposed Adjustment: Retainer + Project-Based Model

What I'm proposing is a shift toward a **retainer plus scoped project model**, where:

- A modest monthly retainer covers:
    - Proposal development and review
    - Client onboarding support
    - Pipeline consultation and fact-pattern triage
    - General availability for high-value judgment calls
- Prep and review work is scoped separately with clear deliverables and timelines
- I'm engaged for full client projects—minimizing handoffs, maximizing clarity, and improving delivery

This isn't about salary or control. It's about creating a structure that supports predictable delivery, protects my independence, and allows Fractional to continue leveraging my expertise efficiently and sustainably.

## Next Steps

Happy to discuss further or help define a structure that integrates well with Fractional's internal systems. I'll continue tracking my time and can provide a breakdown if needed—but wanted to raise this first to ensure alignment before doing so.

Thanks again for the collaboration and for taking the time to consider this.

Best,
Evan

[Quoted text hidden]

---

**Evan Cronin** <evan@fractionaltax.com>                                    Wed, Mar 26 at 5:37 PM
To: Chandler Murphy <chandler_murphy@fractionaltax.com>
Cc: Christopher Lee <christopher_lee@fractionaltax.com>

Hi Chandler,

One quick follow-up to my note from earlier: I realized I didn't highlight my background in U.S. international tax, which is a core part of my practice. I have deep experience with complex compliance, including Forms 5471, 8865, and other foreign informational reporting. These types of filings are often tied to high-net-worth individuals, cross-border businesses, or founders with international structures—and the planning opportunities tend to extend well beyond a single-year return.

From a value perspective, international tax engagements like these can command $2,000–$6,000+ per return depending on complexity. And unlike typical tax prep, many of these clients operate on a longer timeline—either because of foreign document delays, extended deadlines (e.g., for taxpayers abroad), or the year-round planning nature of their structures. That makes this work a good complement to seasonal prep and review, and a potential revenue driver outside the core filing calendar.

If there's interest in sourcing or focusing more intentionally on international work, I'd be glad to support.

Best,
Evan
[Quoted text hidden]

---

**Evan Cronin** <evan@fractionaltax.com>                                    Fri, Mar 28 at 9:24 AM
To: Evan Cronin ▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[Quoted text hidden]

# Exhibit F — Formal Notice to FTINC

## F-1 — March 28 Notice

*Pages 95 — 97*

Plaintiff's written notice objecting to use of his name, likeness, and credentials in client-facing representations.

## F-2 — FTINC Response

*Pages 98 — 99*

March 28, 2025 email response from Chandler Murphy addressing the notice, withdrawal of proposals, and termination.

## F-3 — Potomac Letter

*Pages 100 — 102*

April 7, 2025 letter from Gregory Giammittorio on behalf of Fractional Tax.

# Exhibit F-1

## March 28 Notice

Plaintiff's written notice objecting to use of his name, likeness, and credentials in client-facing representations.

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 155 of 208 PageID #:155

3/20/26, 5:41 AM    Evan J Cronin CPA & Tax Services Mail - Formal and Final Notice Regarding Use of Name, Likeness, and Client-Facing Represent...



**Evan J Cronin**
CPA & Tax Services

Evan Cronin ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

## Formal and Final Notice Regarding Use of Name, Likeness, and Client-Facing Representation

**Evan Cronin** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮                                    Fri, Mar 28, 2025 at 8:28 AM
To: chandler_murphy@fractionaltax.com
Cc: Chandler Murphy <chandler.murphy@termaproject.com>, Evan Cronin <evan@fractionaltax.com>

Chandler,

This message serves as a **formal and final notice** regarding repeated and ongoing violations of professional, contractual, and legal boundaries that materially affect my business, reputation, and ability to perform in good faith as an independent contractor.

On **March 12**, I formally raised concerns that proposals had been submitted under my name without my review or approval, containing statements I could not ethically stand behind. I reiterated this concern on **March 26**, following yet another set of instances of proposals misrepresenting both my role and the firm's qualifications.

Despite these clear written notices, on **March 27**, a new proposal was submitted in my name (Jerome Rappel thread), once again claiming I "run Fractional Tax," and falsely asserting that the company has "50+ years of combined experience" and "400+ international clients." **These statements are demonstrably false**—Fractional Tax, Inc. was incorporated in Delaware on October 10, 2023, per the public record, and only 254 clients in total are listed in MyTax as of the writing of this message. Attaching my name and CPA license to these misrepresentations directly undermines my professional standing and violates both legal and ethical standards.

To be absolutely clear: proposals continue to be submitted using my full name, likeness, and identity—without my knowledge, consent, or review—and routinely contain fabricated statements about my role, experience, and the firm's qualifications. These include:

- **False statements** that I "run" or "own" Fractional Tax (I do not);
- **Fabricated claims** about the firm's operating history and client base;
- **Inaccurate service descriptions** (including audit work and 5500 engagements I was never scoped for);
- **Improper use of my CPA credentials** in promotional material I did not approve.

Additionally, **much of the content in these proposals appears to be AI-generated**, submitted without professional vetting and presented as if written by me. These messages often reuse exaggerated claims, vague service language, and inconsistent firm history across multiple submissions. Associating my name with AI-generated representations—particularly ones I did not write, review, or authorize—violates ethical expectations and places both myself and Fractional at serious professional risk.

These actions represent a material breach and create multipoint legal exposure:

- **Material breach of contract** – Nowhere in our independent contractor agreement is authority granted to submit proposals, make representations, or use my name, likeness, or CPA designation without my prior review and consent. This conduct violates the terms under which I agreed to engage with Fractional Tax.
- **Violation of the Illinois Right of Publicity Act (765 ILCS 1075)** – The unauthorized commercial use of my name, identity, likeness, and professional credentials in marketing, client proposals, and AI-generated communications—particularly those I did not write or approve—constitutes a violation of my publicity rights under Illinois law, where I reside and operate.
- **Violation of New York General Business Law § 349 and § 350** – Use of deceptive marketing practices and false advertising, including inflated client counts and exaggerated years of experience attributed to Fractional Tax, may expose the company to liability under New York's consumer protection laws, especially if such representations are used to induce prospective engagements.
- **Violation of Delaware Law on Misrepresentation (DGCL and DE Consumer Protection Act, 6 Del. C. § 2513)** – Fractional Tax, Inc., incorporated in Delaware on October 10, 2023 (DE File #2467907), cannot ethically represent that it has "50+ years" of experience or "400+ clients." Submitting such demonstrably false statements under my name may constitute corporate misrepresentation and consumer deception under Delaware law.
- **Violation of Upwork's Terms of Service and Professional Conduct Policy** – Submitting proposals under my name that contain false or unverified claims regarding experience, credentials, or scope of services breaches Upwork's user terms and can trigger account sanctions. These actions risk permanent damage to my Upwork visibility, response rate, and credibility as a verified professional operating under my own account.

This conduct also harms my professional interests. I maintain my own Upwork presence. Proposals submitted under my name without coordination interfere with my metrics, mislead clients, and create reputational confusion—especially when prospective clients reply expecting to speak directly with me and are instead engaged by others.

I request written confirmation of the following by end of day today (March 28):

1. That no further proposals will be submitted under my name, likeness, or license without my prior written review and approval;
2. That no further false or misleading statements will be made about my relationship to Fractional Tax or about the firm's history, client base, or credentials;
3. I am requesting that a complete and itemized list of all proposals submitted under my name to date—including those not responded to—be provided to me in full. This includes:
   - The full text and content of each proposal message submitted;
   - The date and time of submission;

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 156 of 208 PageID #:156

3/20/26, 5:41 AM    Evan J Cronin CPA & Tax Services Mail - Formal and Final Notice Regarding Use of Name, Likeness, and Client-Facing Represent…

- The recipient name or Upwork client profile;
- Whether the proposal was drafted manually or generated using AI;
- The identity of the individual who submitted or authorized submission of each proposal;
- Any replies or follow-up correspondence associated with that thread.

**This request is made pursuant to my rights under the Illinois Right of Publicity Act (765 ILCS 1075/1 et seq.), which prohibits the unauthorized commercial use of an individual's identity—including their name and professional persona— without written consent.** The use of my name, CPA designation, or affiliated firm references in proposals submitted without my review or approval constitutes a commercial use of identity under Illinois law. As such, I am entitled to know the full extent of how my identity has been used or represented.

Additionally, these submissions violate Upwork's Terms of Use and Freelancer Code of Conduct, which prohibit false identity claims, misrepresenting qualifications, and submitting proposals on behalf of others without authorization. Misuse of my profile interferes with platform visibility, damages trust with potential clients, and imposes long-term reputational consequences.

The requested disclosure is necessary for audit, documentation, and reputational risk mitigation purposes, and failure to provide this information in full may constitute continued violation of the Act and contractual obligations.

As I have already provided formal notice (on March 12 and March 26), you now have an affirmative duty to correct all such misrepresentations. Any further use of my name or credentials after these dates may be considered **knowing misrepresentation**, not just administrative oversight.

If I do not receive confirmation, I will proceed with formal cease-and-desist action, report to relevant regulatory bodies, and preserve all communications for legal enforcement.

Respectfully,

Evan J Cronin, CPA
Principal, Evan J Cronin CPA & Tax Services
Licensed CPA – IL, PA, CA (pending)
Independent Contractor to Fractional Tax, Inc.



Evan J Cronin, CPA, MT

*Tax & Accounting Made Simple with Big-Firm Expertise, Tailored for You*

✉ ▓▓▓▓▓▓▓▓▓▓▓ | ☎ +1 (312) 725-9960

🌐 cronintaxservices.com

— 97 —

# Exhibit F-2

## FTINC Response

March 28, 2025 email response from Chandler Murphy addressing the notice, withdrawal of proposals, and termination.



**Evan J Cronin**
CPA & Tax Services

Evan Cronin ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

## Formal and Final Notice Regarding Use of Name, Likeness, and Client-Facing Representation

**Chandler Murphy** <chandler_murphy@fractionaltax.com>            Fri, Mar 28, 2025 at 7:04 PM
To: Evan Cronin ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉
Cc: Gregory Giammittorio <ggiammittorio@potomaclaw.com>, Nishchal Basnyat <nishchal@termaproject.com>

Evan,

I am copying Nishchal and our legal counsel, Greg Giammittorio.

We disagree with your characterization of events and we disagree with your claims. Even if there were any inaccuracies in what you describe, they would have been inadvertent clerical matters, which we are happy to review.

We would also like to notify you of the following:

- No proposals have been sent since March 12, 2025, when the proposal effort was ceased completely. The example you referenced was a proposal submitted on February 27, 2025, not March 27, 2025. The client may have sent an unsolicited response on March 27 triggering a message thread to be created automatically. [Proposal Date Included Below]

  Initiated Feb 27, 2025       **Experienced USA Accountant Needed**
  4 weeks ago

- No future discussions with prospects moving forward will happen with your name included on Upwork or through our standard onboarding process. This is despite the 'Content Assignment and Use of Name Approval Agreement' that you signed.

- All submitted and active proposals in Upwork have officially been withdrawn. This was done to avoid any unsolicited messages from prospects on proposals that were previously sent before we stopped the initiative, such as the example used in your email. If a prospect who has already contacted you messages again, we are fine to directly send a short and formal message cordially ending the communication moving forward with that prospect and all future messages can be disregarded from that point on.

This email will serve as our formal 30 day notice of termination of your contract. We hope to part ways on good terms to avoid any further concerns or conflicts. Your agreement will officially terminate on April 28, 2025.

Your duties under the contract will continue until April 28, 2025 and, as a reminder, under the agreement you are obligated to abide by the provisions, including but not limited to, the need to maintain client confidentiality, non-solicitation provisions, among others.

- We will have you fully focused on completing the deliverables for Argent Court and GroceMedia, before your contract termination date, since they have already been assigned to you. We will provide clear expectations, timelines, and responsibilities in a separate email thread for each of those clients for sake of clarification.
- We will manage and work together to facilitate a transition in Upwork before your contract ends, specifically with regard to the active offers under your name in Upwork but associated with Fractional Tax.
- We will then remove you from the Fractional Tax agency account in order to not disrupt your personal account or our brand account.

You'll be sent an email on Monday with outlined next steps for the final work/deliverables as well as how we will proceed with communication/access to platforms.

We wish you the best in your career.

[Quoted text hidden]

— 99 —

# Exhibit F-3

## Potomac Letter

April 7, 2025 letter from Gregory Giammittorio on behalf of Fractional Tax.

**Potomac Law Group, PLLC**
1717 Pennsylvania Avenue NW, Suite 1025 | Washington, DC 20006
T 202.558.5557 | F 202.318.7707 | www.potomaclaw.com

April 7, 2025

**VIA E-MAIL**

Evan J Cronin CPA & Tax Services

█████████████████████

Mr. Cronin,

We represent Fractional Tax, Inc. ("Fractional Tax" or the "Company").

In response to your emails dated 03/31/2025 and 03/28/2025, the Company would like to notify you that it disagrees with your characterizations and analysis. The Company will no longer provide responses to your communications. We have concluded your claims are frivolous.

As evident in the agreement you signed with the Company dated 01/07/2025, you had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc.

Furthermore, the Illinois Right of Publicity Act (765 ILCS 1075) ("IRPA") does not entitle you to internal Company records or information outside of formal legal proceedings.

Your recent correspondence contains improper and unfounded demands for Company information, as well as repeated threats of legal action and regulatory reporting. You have been demanding that the Company provide you with sensitive information according to your deadline(s), with threats of reporting the Company to regulatory authorities **if** the Company does not fulfill your demands.

**Please note:** Your conduct may be construed by courts and law enforcement as extortion, which is an abuse of process under applicable state and federal law that could subject you to substantial legal jeopardy. If you continue with your threats, the Company will be forced to report your actions to applicable law enforcement authorities.

\*\*\*

**Notice of Termination:** The Company has provided you with notice that your contract is terminated, which is effective on April 28, 2025, as previously communicated to you.

— 101 —

The Company has closed all activities involving you on Upwork and removed you from the Company agency account. The Company has communicated with the clients, allowing them an opportunity to engage you directly if they choose. Any communication to clients through the closed contract message thread should cease immediately. Besides the two clients—Danielle Daou of The High Healer and Zephrina Cazaubon of ZMC & Associates—you are prohibited from communicating with any other clients of the Company. All legal obligations you have entered into with the Company, including, but not limited to, the non-solicitation provisions and non-disclosure agreements, remain in full force.

Should the Company require any further assistance from you, the Company will reach out to you through counsel. Any attempt to contact the Company's clients, partners, affiliates, or staff members, or any attempt to solicit current or former clients, with the exception of Danielle Daou of The High Healer and Zephrina Cazaubon of ZMC & Associates, will be considered a violation of your legal agreements.

***

We strongly advise that you cease any further actions that could be construed as libelous, defamatory, harassing, extortionate, or retaliatory toward the Company, its affiliates, or its staff members.

This letter is sent with full reservation of all rights, claims, defenses, and remedies, whether legal, equitable, contractual, or statutory, that are or may be available to the Company, all of which are hereby expressly persevered.

Sincerely,

*Gregory M. Giammittorio*

Gregory M. Giammittorio

cc: Nishchal Basnyat
Chandler Murphy

# Exhibit G — Notice to Upwork

## G-1 — Support Case Submission

*Pages 105 — 109*

Plaintiff's initial Upwork support submission reporting identity misuse.

## G-2 — Initial Upwork Response

*Pages 110 — 112*

Upwork support response stating business managers may submit proposals on behalf of agency members.

## G-3 — Upwork Acknowledgment

*Pages 113 — 114*

Upwork Trust & Safety message stating it appeared Plaintiff was not the person who sent the proposals.

## G-4 — Additional Upwork Documentation Request

*Pages 115 — 116*

Upwork Trust & Safety requests additional screenshots and supporting documentation.

# Exhibit G — Notice to Upwork (cont.)

## G-5 — Legal Notice Receipt

*Pages 117 — 119*

Upwork Legal acknowledgment of receipt of Plaintiff's April 1 legal notice.

## G-6 — Solved Status

*Pages 120 — 121*

Screenshot showing support case No. 51489662 marked "Solved."

# Exhibit G-1

## Support Case Submission

Plaintiff's initial Upwork support submission reporting identity misuse.

# Evan Cronin

**Formal Statement to Upwork Trust & Safety: Unauthorized Use of Identity and Professional Credential by Fractional Tax**

To Whom It May Concern,

I am submitting this statement to formally report a serious violation of Upwork's Terms of Service by the agency account **Fractional Tax**. I am a licensed CPA who was subcontracted by this agency to support technical tax preparation and compliance work. However, I have since discovered that my name, image, and professional credentials have been **used without my full authorization** in client-facing proposals, communications, and representations of services—falsely implying authorship, control, and responsibility for work I had no opportunity to review or approve.

The following four examples, which I am uploading alongside this statement, clearly demonstrate this pattern of **identity misuse, credential abuse, and reputational exploitation:**

# Example 1: Eric Gaines – "I run Fractional Tax"

*Screenshot: Upwork_Eric_(02.28.2025).png*

In this message, sent without my knowledge or consent, the text states:

> "Hi Eric, I run Fractional Tax…"

This falsely presents me as the owner or operator of the agency. My name, image, and license were used to pitch services I did not authorize, using misleading language that directly violates Upwork's standards on accurate representation.

# Example 2: Jerome Rappel – Repeated Misrepresentation + Client Engagement

*Screenshot: Upwork_Jerome_(03.27.2025).png*

This message is especially egregious because it was sent **after I had already issued two separate warnings** to Fractional Tax about the unauthorized use of my name and credentials. Despite those warnings, they submitted yet another proposal using my identity—again stating that I "run" the agency and misrepresenting my role.

— 106 —

Not only does this message contain the same false statements as prior examples, but the client responded, clearly believing they were engaging me directly. At this point, the issue can no longer be described as a misunderstanding—it reflects **deliberate and continued misuse** of my name, in **willful disregard** of my prior communications.

## Example 3: Mario Cvetic – Unauthorized Representation of Attest Services Under My CPA Credential

*Screenshot: Upwork_Mario_(03.03.2025_Audit Ex).png*

*Supporting Slack Proof: IMG_0304.PNG*

This proposal falsely presents me as the author of a message claiming that I run a firm "specializing in international tax compliance and financial auditing." Not only did I not approve or send this message—but I had already raised this exact concern internally.

I explicitly asked whether Fractional Tax offers audit or attest services and was told **on record** by the internal team:

> "Correct! Since we aren't a licensed CPA firm, we do not."

This Slack exchange confirms that I was **acting in full professional compliance**, seeking to clarify that these services were outside scope. Despite that, my name and CPA license were still used to pitch audit-related services to a client, potentially exposing me to:

- **State Board of Accountancy disciplinary action**

- **Violation of professional standards (AICPA SSTS, Circular 230)**

- **Regulatory exposure for offering attest services without licensure**

- **Civil malpractice liability** if the client relied on a misrepresented CPA engagement

This isn't a misunderstanding. It's a **clear instance of credential misuse after internal confirmation that such services were impermissible**—and I was **not the author** of the message sent under my name.

## Example 4: Zephrina / ZMC – Proposal Submitted Under My Name Before Review, With Risk-Laden Scope

*Screenshot: Upwork_Zephrina_(03.04.2025).png*

— 107 —

This Upwork proposal offered complex tax compliance support for **Form 5500 and retirement plan filings** under my **full name, photo, and CPA credential—before I had**

**reviewed the client's facts or confirmed the scope.** These filings are governed by IRS and DOL rules and may trigger **audit or ERISA reporting thresholds**, depending on the structure of the plan.

At the time the proposal was submitted:

- I had **not reviewed the engagement**

- I had **not confirmed whether an audit would be required**

- I had **not approved or authorized the messaging**

- Yet, the proposal was submitted **under my name**, giving the client the impression that I had scoped, reviewed, or endorsed it

What's important for Upwork to understand is that **this was committed through the Fractional Tax agency account.** I do not hold the contractual relationship with the client on Upwork, nor do I have control over what is submitted on my behalf. I am expected to provide scoping guidance, but I do **not have platform-level approval rights** to stop or revise proposals submitted under my name.

This situation highlights a serious concern for how my identity has been used on the platform. I was presented to the client as the responsible CPA, yet I had **no ability to review or approve the proposal submitted under my name**. Although I later confirmed that no audit was required the **initial proposal occurred without my knowledge or consent**.

I am reaching out to request a full accounting of how my identity has been used on the Fractional Tax agency account. My goal is to prevent further misuse and to ensure there is a complete audit trail of proposals and messages submitted under my name, particularly in engagements involving regulated or high-risk services. Based on my visibility, I believe I have only seen the instances where a client responded, meaning other proposals may have been submitted using my identity without my knowledge, of which I am still unaware. As a licensed CPA, I am subject to strict ethical and regulatory obligations, and the continued use of my name and credential without review or approval places my license and professional standing at risk.

**Accordingly, I am formally requesting a record of every instance in which my name, photo, or CPA credential was used in connection with a proposal, message, or deliverable submitted through the Fractional Tax agency account. This request is made in good faith pursuant to the Illinois Right of Publicity Act (765 ILCS 1075/1 et seq.), which prohibits the unauthorized commercial use of an individual's** — 108 — **identity—including their name, likeness, and professional persona—without written consent. I reside in Illinois, and the unauthorized use of my professional**

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 168 of 208 PageID #:168

3/20/26, 6:03 AM Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre…

**identity has resulted in reputational and regulatory exposure within the state, triggering protection under Illinois law as well as applicable CPA licensing and ethical standards.**

Attachment(s)

Upwork_Eric_(02.28.2025).png

Upwork_Jerome_(03.27.2025).png

Upwork_Mario_(03.03.2025_Audit Ex).png

IMG_0304.PNG

**Evan Cronin**

Mar 28, 2025, 2:37 PM CDT

Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being used by another Upwork user in client proposals and communications without my consent.

I am a licensed CPA (Evan J Cronin), and I was subcontracted by another freelancer or agency account. However, they submitted work and proposals under my name and presented deliverables as if I had signed off on them—before I had reviewed or agreed.

I have documentation showing this behavior and can provide screenshots and client records. This misrepresentation is harming my professional reputation and may violate Upwork's policies on false representation and identity misuse.

Please escalate this for internal review. I need a case opened and confirmation that this is being addressed.

655 Montgomery ST STE 490, DPT 17022 San Francisco, CA 94111-2676
© 2025 Upwork® Inc.

Upwork Learning Hub     Upwork Help Center     Upwork Resource Center

— 109 —

# Exhibit G-2

## Initial Upwork Response

Upwork support response stating business managers may submit proposals on behalf of agency members.

3/20/26, 6:03 AM      Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre...

 **Gmail**

Evan Cronin ████████████████

# [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

**Upwork** <support@upwork.com>              Sat, Mar 29, 2025 at 4:22 PM
Reply-To: Upwork <support@upwork.com>
To: Evan Cronin ████████████████

**upwork**

Your request (#51489662) has been updated. You may reply directly to this email or by opening the link below:
https://support.upwork.com/hc/requests/51489662

**Ahmad W** (Upwork Help)

Mar 29, 2025, 4:22 PM CDT

Hello Evan,

Thank you for contacting Upwork Support!

I understand you would like to report a serious violation of Upwork Terms of Service by an agency you're a part of, please allow me to assist.

I'm really sorry to hear you're going through this frustrating situation; it must be incredibly stressful. I can imagine how upsetting this situation would be, and I'm here to assist you to alleviate some of that frustration.

I would like to provide you more information on how working under an agency is like:

To help keep agency workflows centralized and running smoothly, business managers can submit a proposal on behalf of any agency member. They can also edit or withdraw all agency proposals, as well as accept or decline all offers. Agency members can also

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 171 of 208 PageID #:171

3/20/26, 6:03 AM      Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre…

submit proposals themselves, which will be binding on the agency. All proposals will draw from the agency's collective Connects balance. When you are working under an agency, you are considered a team.

Similarly, an agency's business managers can both edit the terms of contracts and end them. Both the contracted agency member (the agency member actively working on the contract) and all business managers can submit milestones on fixed-price contracts. All contracts are paid into the agency's collective financial account balance.

After consulting with our team, we are able to confirm that this does not constitute a violation. You have the option to leave the agency if you feel that your team is using your name and CPA credentials without your consent or if the business managers are submitting proposals on your behalf.

You can read these helpful articles I've shared with you to learn more about how an agency operates.

- Agency proposals and offers
- Agency Contracts
- Work for an agency
- Leave an Agency

I hope this helps. If you have any questions or need more help, please don't hesitate to get in touch. Thanks for using Upwork!

*It was such a pleasure helping you today! Just a quick note before I let you go… In a couple of hours you'll receive an email asking about my service to you today. I truly hope I can count on you to leave me honest feedback. This helps us to ensure we're meeting customer expectations and improving your experience.*

Best Regards,

**Ahmad**

**upwork** | Customer Support Team
Help Center: https://support.upwork.com



*Help Us Help You! Shortly after this message, you'll receive an email asking if I was able to solve your issue. Your feedback will be appreciated as this helps us to provide the best service possible.*

# Exhibit G-3

## Upwork Acknowledgement

Upwork Trust & Safety message stating it appeared Plaintiff was not the person
who sent the proposals.

3/20/26, 6:06 AM                Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre…

 Gmail                                                                    Evan Cronin ███████████████████

## [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

**Upwork** <support@upwork.com>                                        Sat, Mar 29, 2025 at 10:48 PM
Reply-To: Upwork <support@upwork.com>
To: Evan Cronin ████████████████████

# upwork

Your request (#51489662) has been updated. You may reply directly to this email or by opening the link below:
https://support.upwork.com/hc/requests/51489662

**Travis** (Upwork Help)

Mar 29, 2025, 10:48 PM CDT

Hi Evan,

I trust you are safe and well.

Thank you for the important information that you shared. I can understand the urgency of this issue to get straightened out.

We are collating all of this information to establish the violation.

We need additional clarification as we build solid evidence to use as a basis of our action.

On the screenshots, that you have shared, it appears that you were not the one who sent these services to clients. Does this mean that your credentials are shared with your agency?

Looking forward to your response.

Best,
Travis
Upwork Trust & Safety

— 114 —

# Exhibit G-4

## Additional Upwork Document Request

Upwork Trust & Safety requests additional screenshots and supporting documentation.

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 175 of 208 PageID #:175

3/20/26, 6:07 AM          Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre...

 Gmail

Evan Cronin ██████████████

## [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

**Upwork** <support@upwork.com>                                    Tue, Apr 1, 2025 at 5:50 PM
Reply-To: Upwork <support@upwork.com>
To: Evan Cronin ████████████████████

**upwork**

Your request (#51489662) has been updated. You may reply directly to this email or by opening the link below:
https://support.upwork.com/hc/requests/51489662

**Liam C.** (Upwork Help)

Apr 1, 2025, 5:50 PM CDT

Hi Evan,

Thank you for your reply and for providing the above information.

To move forward with our investigation, we would request the following information:
-screenshots showing the Agency sent proposals using your credentials that you did not approve
-screenshots of contracts where your credentials were used but did not involve you as the direct freelancer working with the client
-screenshots of any additional information showing the violation

Thank you for your patience and we hope to hear from you again.

Best,

Liam

Upwork Trust & Safety

— 116 —

# Exhibit G-5

## Legal Notice Receipt

Upwork Legal acknowledgment of receipt of Plaintiff's April 1 legal notice.

 **Gmail**

Evan Cronin

## [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

**Evan Cronin**                               Tue, Apr 1, 2025 at 6:30 PM
To: legalnotices@upwork.com

*This message is submitted as a formal continuation of my statutory rights assertion under the Illinois Right of Publicity Act (765 ILCS 1075) and related professional licensing laws. It serves as my FOURTH FORMAL REQUEST for action and documentation concerning the unauthorized use of my name, CPA license, and professional identity on the Upwork platform.*

Dear Upwork Legal,

Please find below the full correspondence chain regarding the unauthorized use of my name, CPA license, and professional identity on the Upwork platform by the agency operating under the name "Fractional Tax, Inc."

This thread contains:

- **Four prior formal submissions** invoking my rights under the **Illinois Right of Publicity Act (765 ILCS 1075)**;

- **Written acknowledgment from Upwork personnel** (March 29, 2025) that I was **not the individual** submitting proposals to clients;

- Documentation that the agency in question, **Fractional Tax, Inc., has had its corporate charter revoked** and is therefore operating unlawfully;

- A clear deadline for action: **7:00 PM UTC on April 3, 2025.**

I am submitting this message as a **final legal notice**. Continued failure to act will result in enforcement proceedings and formal legal service as outlined.

Please **confirm receipt and acknowledgment** of the invocation of my **legally protected rights under Illinois State Law** and direct all further legal correspondence accordingly.

Sincerely,
**Evan J Cronin, CPA**


Evan J Cronin

[Quoted text hidden]

— 118 —

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 178 of 208 PageID #:178

3/20/26, 6:10 AM                Gmail - [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA cre...

 Gmail

Evan Cronin ███████████████

## [Upwork Help] Re: Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

**LegalNotices** <legalnotices+noreply@upwork.com>                     Tue, Apr 1, 2025 at 6:30 PM
To: ██████████████████

Hello,

Thank you for emailing Upwork Inc. Legal Notices.  If you are providing notice required under our Terms of Service, this email will serve as your proof of receipt.  Please note we do not waive any legal service of process requirements.

If you are a user of Upwork.com, for a quicker response, please direct any questions on using the website, including questions on closing your account, to our customer service team at https://support.upwork.com.  You can find more information on closing your account in this helpful article: https://support.upwork.com/hc/en-us/articles/211067588-Close-my-account

Thank you,

Upwork Legal Team

— 119 —

# Exhibit G-6

## Support Case Solved Status

Screenshot showing support case No. 51489662 marked "Solved."

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 180 of 208 PageID #:180

3/20/26, 6:01 AM     Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use... – ...

| Help Center | Getting started ⌄ | Work ⌄ | Payment ⌄ | Account safety ⌄ | Learning & growth ⌄ | Contact support ⌄ | 🔍 Search articles |  |

⌂     Requests

# Freelancer - Other - Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being use...

 **Evan Cronin**
March 28, 2025 at 2:37 PM

Hi, I need to report a violation of Upwork's Terms of Service. My name and CPA credentials are being used by another Upwork user in client proposals and communications without my consent.

I am a licensed CPA (Evan J Cronin), and I was subcontracted by another freelancer or agency account. However, they submitted work and proposals under my name and presented deliverables as if I had signed off on them—before I had reviewed or agreed.

I have documentation showing this behavior and can provide screenshots and client records. This misrepresentation is harming my professional reputation and may violate Upwork's policies on false representation and identity misuse.

Please escalate this for internal review. I need a case opened and confirmation that this is being addressed.

 **Evan Cronin**
March 28, 2025 at 3:43 PM

Formal Statement to Upwork Trust & Safety: Unauthorized Use of Identity and Professional Credential by Fractional Tax

To Whom It May Concern,

I am submitting this statement to formally report a serious violation of Upwork's Terms of Service by the agency account Fractional Tax. I am a licensed CPA who was subcontracted by this agency to support technical tax preparation and compliance work. However, I have since discovered that my name, image, and professional credentials have been used without my full authorization in client-facing proposals, communications, and representations of services—falsely implying authorship, control, and responsibility for work I had no opportunity to review or approve.

| Id | #51489662 |
|---|---|
| Status | Solved |
| Created | March 28, 2025 at 2:37 PM |
| Last activity | June 2, 2025 at 6:06 PM |
| Requester | Evan Cronin |
| CCs | Noel Yosef Mahmood Anastasiia Dryha |

## Attachments

Upwork_Eric_(02.28.2025).png
(60 KB)
Upwork_Jerome_(03.27.2025).png
(60 KB)
Upwork_Mario_(03.03.2025_Audi
Ex).png
(90 KB)
IMG_0304.PNG
(500 KB)
Upwork Agency
Profile.pdf
(900 KB)

121

# Exhibit H — Lockout

## H-1 — MyTax Lockout

*Pages 123 — 124*

Screenshot showing Plaintiff's MyTax account was inactive or inaccessible.

## H-2 — Email Disabled

*Pages 125 — 126*

Screenshot showing Plaintiff's Fractional Tax Google Workspace account was disabled.

# Exhibit H-1

## MyTax Lockout

Screenshot showing Plaintiff's MyTax account was inactive or inaccessible.



— 124 —

# Exhibit H-2

## Email Disabled

Screenshot showing Plaintiff's Fractional Tax Google Workspace account was disabled.



# Your account has been disabled


evan@fractionaltax.com ▾


Your Google Account was disabled by your Google Workspace administrator. Contact your administrator for help.

**This account became unavailable on Mar 31, 2025.**

— 126 —

English (United States) ▾

Help     Privacy     Terms

# Exhibit I — Continued Misattribution

## I-1 — Continued Misattribution

*Pages 128 — 132*

Upwork contract page reflecting the Danielle Daou / USA Form 1065 engagement tied to the agency.

## I-2 — Public Review on Upwork

*Pages 133 — 135*

Public review referring to "Evan and his team" on the agency-linked work history.

# Exhibit I-1

## Client Contract on Upwork

Upwork contract page reflecting the Danielle Daou / USA Form 1065 engagement tied to the agency.

upwork      Q

**Completed on Apr 2** ★★★★★ 5.0

# Urgent Tax Filing Assistance for USA Form 1065



Danielle Daou
United Arab Emirates · Sat 12:23 AM

Overview      Messages      **Contract details**

## Description

I am seeking an experienced tax professional to assist with the urgent filing of USA tax Form 1065. As a non-US citizen, I require guidance on the entire process, including necessary documentation and compliance. Your expertise in navigating the complexities of US tax regulations will be invaluable. Please only apply if you are familiar with the requirements for non-resident entities and can provide timely support. Thank you for your assistance!

View original offer
View original proposal
View original job posting

## Summary

| Contract type | Fixed-price |
|---|---|
| Start date | Mar 3, 2025 |

— 129 —

## Details

| | |
|---|---|
| Verified name | Evan CRONIN |
| Contract ID | 39923778 |

Show less

## Agency

 Fractional Tax, Inc.

## Client's feedback to you

★ ★ ★ ★ ★  5.0

I am looking forward to be working with Evan and his team again. the work process was not only smooth but time efficient, clear and honest. can't recommend Evan enough. He clarified so many aspects of tax filling processes and returns with solid background and with no exaggeration saved me from falling into the loop of paying penalties when my business has not even made any income yet. Thank you for being reliable and so quick in taking actions that saved my partners and myself substantial amounts of penalties.

Respond to this feedback

Enable client to change feedback

## Your feedback to client

★ ★ ★ ★ ★  5.0

— 130 —

Great and responsive client!

# Recent activity

| Date | Description |
|---|---|
| Apr 4 | **Danielle Daou gave you feedback**<br>★★★★★ 5.0<br>I am looking forward to be working with Evan and his team again. the work process was not only smooth but time efficient, clear and honest. can't recommend Evan enough. He clarified so many aspects of tax filling processes and returns with solid background and with no exaggeration saved me from falling into the loop of paying penalties when my business has not even made any income yet. Thank you for being reliable and so quick in taking actions that saved my partners and myself substantial amounts of penalties. |
| Apr 2 | **You gave Danielle Daou feedback**<br>★★★★★ 5.0<br>Great and responsive client! |
| Apr 2 | Chandler Murphy ended the contract |
| Mar 21 | Danielle Daou approved milestone mailing |
| Mar 21 | Danielle Daou activated milestone mailing |
| Mar 21 | Danielle Daou changed milestone Preparation |
| Mar 21 | Danielle Daou changed milestone mailing |
| Mar 21 | Danielle Daou changed milestone final stage |
| Mar 21 | Danielle Daou changed milestone Preparation |

| Mar 21 | Danielle Daou created milestone <u>mailing</u> due Mar 21 |
| Mar 4 | Danielle Daou approved milestone <u>extension filing</u> |
| Mar 3 | Danielle Daou activated milestone <u>extension filing</u> |
| Mar 3 | You accepted Danielle Daou's offer |

About Us

Feedback

Trust, Safety & Security

Help & Support

Upwork Foundation

Terms of Service

Privacy Policy

CA Notice at Collection

Cookie Settings

Accessibility

Desktop App

Cookie Policy

Enterprise Solutions

Follow Us

Mobile app

© 2015 - 2025 Upwork® Global Inc.

— 132 —

# Exhibit I-2

## Public Review on Upwork

Public review referring to "Evan and his team" on the agency-linked work history.



upwork

 We removed your Credly certifications on January 14, 2026. You can still **manually add certifications to your profile.**          ✕

 # Evan C.            (...)

⊙ Chicago, IL, USA
– 6:18 am local time

 100% Job Success          Share ⬆

| 7 | 1 | **CPA | U.S. Domestic &** | **$200.00/hr** |
| Total jobs | Total hours | **International Tax Specialist** | |

## Hours per week

As Needed - Open to Offers

## Avg. response

12-24 hours

## Languages

English: Native or Bilingual

## Verifications

ID: Verified ✓

Phone number: Verified ✓

## Licenses

Certified Public Accountant
California Board of Accountancy
Show details

Certified Public Accountant
Illinois (IDFPR)
Show details

## Education

I am a licensed CPA in Illinois and California with nearly a decade of experience in U.S. tax compliance and advisory. Over the past 8+ years, my focus has been on U.S. international and complex tax matters for both individuals and businesses.

I worked at PwC in their international tax practice. Throughout my career in public accounting, I have worked with clients ranging from start-ups and high-net-worth individuals to multinational companies. I have also gained significant experience preparing U.S. individual returns that involve cross-border income, foreign accounts, and treaty considerations.

Today, I provide federal and multi-state return preparation for individuals, corporations, and partnerships. My work continues to focus on U.S. international tax compliance, including expats living abroad who must file U.S. income tax returns, U.S. businesses

less

## Work history

### Insights from completed jobs

— 134 —

( Clear Communicator 2 )    ( Collaborative 1 )

Case: 1:26-cv-03220 Document #: 1 Filed: 03/23/26 Page 194 of 208 PageID #:194

3/20/26, 6:18 AM
Evan C. - CPA | U.S. Domestic & International Tax Specialist - Upwork Freelancer from Chicago, United States

Villanova University
Master's degree, Taxation
2019-2022

University of Pittsburgh
Bachelor of Business
Administration (BBA),
Accounting, Finance
2013-2017

University of Pittsburgh
Bachelor of Science (BS),
Economics
2013-2017

## Associated with

 Evan J Cronin CPA &
Tax Services

| Committed to Quality 1 | Detail Oriented 1 | Reliable 1 |

| Solution Oriented 1 |

## Completed jobs (5)     In progress (2)

### Experienced CPA Needed for Corporate Tax Returns and IRS Liaison

Dec 20, 2024 - Jun 8, 2025

No feedback given

Private earnings

### Urgent Tax Filing Assistance for USA Form 1065

★★★★★ 5.0     |     Mar 3, 2025 - Apr 2, 2025

*"I am looking forward to be working with Evan and his team again. the work process was not only smooth but time efficient, clear and honest. can't recommend Evan enough...."* See more

| Clear Communicator | Solution Oriented | Reliable | Collaborative |

Private earnings

### Form 8802 Preparation & Filing for IRS Residency

Mar 2, 2025 - Mar 21, 2025

No feedback given

Private earnings

### Tax Professional Needed - First-Year S-Corp Loss Filing & Penalty Abatement (1120-S)

★★★★★ 5.0     |     Dec 19, 2024 - Feb 6, 2025

*"Evan did an outstanding job handling my S-Corp tax return and penalty abatement request. His expertise was evident from start to finish—he managed the late filing with precision and kept me updated every step of the way. He even reviewed my personal tax*

# Exhibit J — Entity Records

## J-1 — FTINC Forfeiture

*Pages 137 — 138*

Delaware status record showing FTINC forfeiture as of March 9, 2025.

## J-2 — FTINC Reinstatement

*Pages 139 — 140*

Delaware status record showing FTINC reinstatement as of April 8, 2025.

## J-3 — Terma Status

*Pages 141 — 142*

Delaware status record for Terma Project, Inc.

## J-4 — FTUSA Status

*Pages 143 — 144*

Delaware status record for Fractional Tax USA, LLC.

# Exhibit J-1

## FTINC Forfeiture

Delaware status record showing FTINC forfeiture as of March 9, 2025.

# State Of Delaware

**\*\*THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS\*\***

Date Retrieved: 3/31/2025  5:14:17PM

File Number: 2467907

Incorporation Date / Formation Date: 10/10/2023

Entity Name: FRACTIONAL TAX, INC

Entity Kind: Corporation

Entity Type: General

Residency: Domestic

State: DELAWARE

Status: Forfeited, Failure to appoint a R/A

Status as of: 3/9/2025

**Registered Agent Information**

Name: UNASSIGNED AGENT

Address:

City:

Country:

State: NullValue

Postal Code: 95050

Phone:

**Tax Information**

Last AnnualReport Filed: 2023

Tax Due: $ 380.63

Annual Tax Assessment: $175

Total Authorized Shares: 1000

**Filing History (Last 5 Filings)**

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | Agent Resignation w/o Apt<BR>9020245 - HARVARD BUSINESS SERVICES, INC. | 1 | 20250207 | 132200 | 20250207 |
| 2 | Stock Corporation | 1 | 20231010 | 133900 | 20231010 |

— 138 —

**\*\*THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS\*\***

# Exhibit J-2

## FTINC Reinstatement

Delaware status record showing FTINC reinstatement as of April 8, 2025.

# State Of Delaware

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

Date Retrieved: 4/9/2025 12:27:21AM

File Number: 2467907      Incorporation Date / Formation Date: 10/10/2023

Entity Name: FRACTIONAL TAX, INC

Entity Kind: Corporation      Entity Type: General

Residency: Domestic      State: DELAWARE

Status: Good Standing      Status as of: 4/8/2025

## Registered Agent Information

Name: CORPORATION SERVICE COMPANY

Address: 251 LITTLE FALLS DRIVE

City: WILMINGTON      Country:

State: DE      Postal Code: 19808

Phone: 302-636-5401

## Tax Information

Last AnnualReport Filed: 2024      Tax Due: $ 0

Annual Tax Assessment: $175      Total Authorized Shares: 1000

## Filing History (Last 5 Filings)

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|-----|-------------|-------------|------------------------|-------------|---------------------------|
| 1 | Renewal for Forfeiture/No Agent<BR>1 | 1 | 20250408 | 141000 | 20250408 |
| 2 | Agent Resignation w/o Apt<BR>9020245 - HARVARD BUSINESS SERVICES, INC. | 1 | 20250207 | 132200 | 20250207 |
| 3 | Stock Corporation | 1 | 20231010 | 133900 | 20231010 |

— 140 —

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

# Exhibit J-3

## Terma Status

Delaware status record for Terma Project, Inc.

# State Of Delaware

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

Date Retrieved: 4/6/2025  6:25:58PM

File Number: 6134032

Entity Name: TERMA PROJECT, INC.

Entity Kind: Corporation

Residency: Domestic

Status: AR Delinquent, Tax Due

Incorporation Date / Formation Date: 8/2/2021

Entity Type: General

State: DELAWARE

Status as of: 3/2/2025

## Registered Agent Information

Name: CORPORATION SERVICE COMPANY

Address: 251 LITTLE FALLS DRIVE

City: WILMINGTON

State: DE

Phone: 302-636-5401

Country:

Postal Code: 19808

## Tax Information

Last AnnualReport Filed: 2023

Annual Tax Assessment: $85165

Tax Due: $ 87925.96

Total Authorized Shares: 10000000

## Filing History (Last 5 Filings)

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | Stock Corporation | 3 | 20210802 | 113000 | 20210802 |

— 142 —

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

# Exhibit J-4

## FTUSA Status

Delaware status record for Fractional Tax USA, LLC.

# *State Of Delaware*

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

Date Retrieved: 4/6/2025  6:36:31PM

| | |
|---|---|
| File Number: 7354283 | Incorporation Date / Formation Date: 3/16/2023 |
| Entity Name: FRACTIONAL TAX USA, LLC | |
| Entity Kind: Limited Liability Company | Entity Type: General |
| Residency: Domestic | State: DELAWARE |
| Status: Good Standing | Status as of: 3/16/2023 |

**Registered Agent Information**

| | |
|---|---|
| Name: CORPORATION SERVICE COMPANY | |
| Address: 251 LITTLE FALLS DRIVE | |
| City: WILMINGTON | Country: |
| State: DE | Postal Code: 19808 |
| Phone: 302-636-5401 | |

**Tax Information**

| | |
|---|---|
| Last AnnualReport Filed: 0 | Tax Due: $ 0 |
| Annual Tax Assessment: $300 | Total Authorized Shares: |

**Filing History (Last 5 Filings)**

| Seq | Description | No of Pages | Filing Date mm/dd/yyyy | Filing Time | Effective Date mm/dd/yyyy |
|---|---|---|---|---|---|
| 1 | Amendment Name<BR>FRACTIONAL TAX INCORPORATED, LLC | 1 | 20230606 | 102600 | 20230606 |
| 2 | LLC | 1 | 20230316 | 154600 | 20230316 |

— 144 —

**THIS IS NOT AN OFFICAL CERTIFICATE OF STATUS**

# Exhibit K — Counsel Notice to Upwork

## K-1 — Demand Receipt

*Pages 146 — 147*

Upwork Legal email confirming receipt of Pullman & Comley's April 29, 2025 demand letter.

## K-2 — 60-Day Response

*Pages 148 — 149*

Upwork's May 9, 2025 email asserting a 60-day response period.

# Exhibit K-1

## Demand Receipt

Upwork Legal email confirming receipt of Pullman & Comley's April 29, 2025 demand letter.

On Tue, Apr 29, 2025 at 10:39 AM LegalNotices <legalnotices@upwork.com> wrote:

To Whom It May Concern,

This is to confirm receipt of your Demand Letter. Our team is currently reviewing the matter, and we acknowledge the timeline outlined in your message.

We are working toward a constructive resolution and will be in touch soon.

Best regards,
Upwork Legal

On Tue, Apr 29, 2025 at 8:04 AM 'Lane, Jill' via LegalNotices <legalnotices@upwork.com> wrote:

Good morning,


Please see the attached correspondence on behalf of Attorney Russell Anderson.


Best regards,

Jill

_____

**Jill Lane**
Paralegal

**Pullman & Comley LLC**
253 Post Road West  P.O. Box 3179
Westport, CT 06880-8180
T 203 330 2273 • F 203 576 8888
jlane@pullcom.com • www.pullcom.com

**V-card • Directions**

**PULLMAN**
**& COMLEY**

BRIDGEPORT  HARTFORD  SPRINGFIELD  STAMFORD  WATERBURY  WESTPORT  WHITE PLAINS

_____


**Please consider the environment before printing this message.**

THIS MESSAGE AND ANY OF ITS ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE DESIGNATED RECIPIENT, OR THE RECIPIENT'S DESIGNEE, AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL OR PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE (1) IMMEDIATELY NOTIFY PULLMAN & COMLEY ABOUT THE RECEIPT BY TELEPHONING (203) 330-2000; (2) DELETE ALL COPIES OF THE MESSAGE AND ANY ATTACHMENTS; AND (3) DO NOT DISSEMINATE OR MAKE ANY USE OF ANY OF THEIR CONTENTS.

---

**Anastasiia Dryha | Legal Assistant - Policy, Litigation & Privacy**

Upwork | San Francisco, California (UTC -7)

The world's work marketplace

Find us on LinkedIn | Twitter | Facebook | Instagram

— 147 —

# Exhibit K-2

## 60-Day Response

Upwork's May 9, 2025 email asserting a 60-day response period.



*Evan J Cronin*
CPA & Tax Services

Evan Cronin ▬▬▬▬▬▬▬

## Fw: [LegalNotices] Demand Letter

**Schaitkin, Ryan** <RSchaitkin@pullcom.com>      Mon, May 12, 2025 at 6:48 AM
To: Evan J Cronin ▬▬▬▬▬▬▬▬▬▬▬

Hi Evan,

Please see below for the preliminary response that we received from Upwork in response to the demand letter. Please let me know if you have any questions.

Thanks,
Ryan

**Ryan Schaitkin, Attorney**

**Pullman & Comley LLC**

90 State House Square
Hartford, CT 06103-3702
T 860 424 4351 • F 860 424 4370
rschaitkin@pullcom.com • www.pullcom.com

**Directions**

## PULLMAN &COMLEY

BRIDGEPORT   HARTFORD   SPRINGFIELD   WAKEFIELD   WATERBURY   WESTPORT   WHITE PLAINS

---

**Please consider the environment before printing this message.**

THIS MESSAGE AND ANY OF ITS ATTACHMENTS ARE INTENDED ONLY FOR THE USE OF THE DESIGNATED RECIPIENT, OR THE RECIPIENT'S DESIGNEE, AND MAY CONTAIN INFORMATION THAT IS CONFIDENTIAL OR PRIVILEGED. IF YOU ARE NOT THE INTENDED RECIPIENT, PLEASE (1) IMMEDIATELY NOTIFY PULLMAN & COMLEY ABOUT THE RECEIPT BY TELEPHONING (203) 330-2000; (2) DELETE ALL COPIES OF THE MESSAGE AND ANY ATTACHMENTS; AND (3) DO NOT DISSEMINATE OR MAKE ANY USE OF ANY OF THEIR CONTENTS.

---

**From:** Anastasiia Dryha <anastasiiadryha@cloud.upwork.com>
**Sent:** Friday, May 9, 2025 5:41:34 PM
**To:** Lane, Jill <jlane@pullcom.com>
**Cc:** Anderson, Russell F. <RAnderson@pullcom.com>; Schaitkin, Ryan <RSchaitkin@pullcom.com>
**Subject:** Re: [LegalNotices] Demand Letter

To Whom It May Concern,

We are reaching out to inform you that we are currently working on this response and expect to provide it shortly. Please note that, according to the arbitration provisions applicable to this matter, we have 60 days from the receipt of your demand to provide our response. We will ensure that our formal response is provided within this period.

— 149 —

If you have any questions or need further clarification, please feel free to contact us.

Best regards,