**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>        Plaintiff,<br><br>   v.<br><br>UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>        Defendants. | Case No. 1:26-cv-03220<br><br>Judge Sara L. Ellis<br>Magistrate Judge Laura K. McNally |

**DEFENDANTS TERMA PROJECT, INC.; FRACTIONAL TAX, INC.;
FRACTIONAL TAX USA, LLC; CHANDLER MURPHY;
AND NISHCHAL BASNYAT'S MOTION TO COMPEL ARBITRATION**

Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat (collectively the "Fractional Tax Defendants"), by and through their attorneys, Goldberg Segalla LLP, state as follows in support of their Motion to Compel Arbitration:

**INTRODUCTION**

Plaintiff's lawsuit arises out of or otherwise relates to work that was performed in connection with a services contract, which included a binding arbitration clause. As set forth in detail, below, all of Plaintiff's claims against the Fractional Tax Defendants are subject to arbitration. Plaintiff has not agreed to submit this matter to arbitration. Accordingly, the Fractional Tax Defendants are seeking to compel arbitration.

1

**STATEMENT OF FACTS**

On January 7, 2025, Plaintiff and Defendant Fractional Tax, Inc. ("FTINC")[1] entered into an agreement pursuant to which Plaintiff would provide various tax-related services, including, client tax return preparation; client tax return and document review; client and prospective client tax and financial consultations; client representation before taxing authorities; client bookkeeping and review services; training and development of FTINC team members; researching and drafting memoranda regarding various tax issues for clients; and overseeing client engagements, projects, and services (see Art. III at 3 of the "Service Contract", attached as "Exhibit A").[2] On January 7, 2025, FTINC and Plaintiff also executed a Content Assignment and Use of Name Approval Agreement ("Content Agreement") in which Plaintiff acknowledged certain agreements:

> As a condition and requirement of engaging in work for Fractional Tax, Inc., a Delaware corporation, and its assets (namely fractionaltax.com, and its various social media channels) and any of its current or future subsidiaries (whether or not wholly-owned), affiliates, successors, or assigns (collectively, the "Company"), and in consideration of the privilege of providing services to the Company and my receipt of compensation, if any, now and hereafter paid to me by the Company. . . .

(*See* Preamble of the Content Agreement, attached as "Exhibit B"). In other words, from the outset, Plaintiff acknowledged that he would conceivably perform work for affiliates, successors, and assigns of FTINC.

Importantly, the Service Contract includes a mandatory arbitration provision:

> In the event a dispute shall arise between the Parties to this Agreement, it is hereby agreed, that the dispute shall be referred to

---

[1] FTINC is a wholly owned subsidiary of Defendant Fractional Tax USA, LLC ("FTUSA") which, in turn, is a wholly owned subsidiary of Terma Project, Inc. ("Terma"). Nischchal Basnyat ("Basnyat") is the CEO of Terma and Chandler Murphy ("Murphy") is employed by Terma.

[2] Relevantly, in the course of negotiating the contract with Plaintiff via email, Defendants Basnyat and Murphy used Terma Project, Inc. ("Terma") domain emails (i.e., @termaproject.com) that contained Terma's name and logo in their signature blocks.

2

> United States Arbitration & Mediation for arbitration in accordance with United States Arbitration & Mediation Rules of Arbitration. The arbitrator's decision shall be final and binding and judgment may be entered thereon. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with arbitrator's award, the other party is entitled to recovery of costs of suit including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.

(Art. XI at 4 of Service Contract, Ex. A).

On March 23, 2026, Plaintiff filed the instant lawsuit. (Compl. for Decl. and Inj. Relief, and Damages, Dkt. No. 1 ("Compl.")). Plaintiff's lawsuit asserts several claims against the Fractional Tax Defendants including claims based on the Illinois Right of Publicity Act (Count I); Lanham Act, False Endorsement/False Association (Count II); Illinois Uniform Deceptive Trade and Practices Act (Count III); Common-Law Unfair Competition/Passing Off (Count V); Breach of Contract (Count VI); Common-Law Fraud/Fraudulent Inducement/Fraudulent Concealment (Count VII); Unjust Enrichment (Count VIII); Illinois Wage Payment and Collection Act (Count IX); Illinois Whistleblower Act (Count X); and Common Law Retaliatory Discharge (Count XI) (See Doc.#1 generally). Naturally, the Fractional Tax Defendants deny all liability to Plaintiff.

Importantly, all of Plaintiff's claims arise out of the work that is described in or otherwise related to the Service Contract, which mandates arbitration to resolve disputes between the parties. Despite the Fractional Tax Defendants' requests, the Plaintiff has not consented to refer this dispute to arbitration. Accordingly, the Fractional Tax Defendants have filed this motion.

## ARGUMENT

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, mandates enforcement of valid, written arbitration agreements and authorizes the court to compel arbitration as provided in and agreement between the parties. 9 U.S.C. § 1-4.; *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 733 (7th Cir. 2002). "Under the [FAA], arbitration may be compelled if the following three

3

elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005); *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019 (7th Cir. 2024)). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91, 121 S. Ct. 513 (2000).

All three of these elements are met here. Accordingly, this Honorable Court should compel Plaintiff to arbitrate his claims.

I. **THE PARTIES EXECUTED A BINDING LEGAL AGREEMENT THAT REQUIRES ARBITRATION.**

A. **The Service Agreement Includes A Legally Enforceable Arbitration Clause.**

Plaintiff executed the Service Agreement, which includes a legally valid and binding arbitration clause. Illinois law[3] provides that if an offer, acceptance, and consideration are present, an arbitration agreement is enforceable. *Melena v. Anheuser-Busch, Inc.*, 219 Ill.2d 135, 151 (2006). In determining the validity of a written agreement under Illinois law, the focus is on the intent of the parties. *Lynge v. Kunstmann,* 94 Ill. App. 3d 689, 694 (2d Dist. 1981).

Here, the parties to the Service Contract executed that agreement on January 7, 2025. (Ex. A at 5). Indeed, the Plaintiff himself signed that Service Contract, thereby manifesting his intention to be bound by its terms, including the arbitration clause. By signing the Service Contract, Plaintiff accepted the offer to submit disputes to binding arbitration. (*Id.* and Art. XI at 4 of Ex. A). *See Gupta v. Morgan Stanley Smith Barney*, *LLC*, 17 C 8375, 2018 WL 2130434, at *2 (N.D. Ill. May

---

[3] Plaintiff resides in Illinois and the relevant events occurred in Illinois. Accordingly, the contract law of Illinois governs this case. *Koveleskie v. SBC Cap. Mkts.*, 167 F.3d 361, 366-67 (7th Cir. 1999). *See also Agha v. SoFi Lending Corp.*, 2024 U.S. Dist. LEXIS 47605, *7 (N.D. Ill. 2024) (explaining that a court will "apply ordinary state-law principles that govern the formation of contracts" when deciding whether or not parties agreed to arbitration) (citation omitted).

9, 2018) (reasonable "to construe silence as acceptance" in circumstances where offeree does not opt out of arbitration); *Winters v. AT&T Mobility Servs., LLC*, No. 4:17-cv-04053-SLD-JEH, 2017 U.S. Dist. LEXIS 105804, at \*13 (C.D. Ill. July 10, 2017) (noting that an "opt out" provision is "no impediment to the creation of a valid contract, even though it is plainly crafted to channel more employees into arbitration.") (collecting cases).

In short, because Plaintiff executed the Service Contract, he is legally obligated to arbitrate his disputes.

**B.      The Arbitration Clause Applies To Plaintiff's Claims Against All Of The Fractional Tax Defendants.**

The Fractional Tax Defendants acknowledge that only Plaintiff and FTINC are signatories to the Service Contract and the Content Agreement. For the reasons discussed above, there is no question that Plaintiff himself is bound by the arbitration clause included in the Service Contract. In other words, the Plaintiff cannot himself disclaim his obligation to arbitrate disputes. Moreover, all of the Fractional Tax Defendants consent to arbitrate all of Plaintiff's claims. Under the law, this Honorable Court should therefore compel arbitration.

The Seventh Circuit has recognized that "[a] nonparty will be bound by a forum selection clause if the nonparty is 'closely related' to the dispute 'such that it becomes foreseeable that [the nonparty will be bound." *Coatney v. Ancestry.Com DNA*, 93 F.4th 1014, 1022 (7th Cir. 2024) (citations omitted). Moreover, "[w]here there is a sufficiently close relationship between the non-signatory and the dispute and the parties, it does not defy the non-signatory's reasonable expectations that it would be bound." *Id.* (citations omitted). Notably, in *Coatney*, the Seventh Circuit recognized that the president and chairmen of a corporate parent and its subsidiary "were essentially one." *Id.* (citing *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

5

The Seventh Circuit and Illinois Courts have recognized that arbitration clauses can be enforced against non-signatories "if the party seeking to compel arbitration can show that an exception to this general rule applies." *Fuller v. Frontline Asset Strategies, LLC*, No. 17 C 7901, 2018 U.S. Dist. LEXIS 61015, at \*2-3 (N.D. Ill. Apr. 11, 2018) (quoting *A.D. v. Credit One Bank N.A.*, No. 17-1486, 885 F.3d 1054, 1060 (7th Cir. 2018) (acknowledging that "the Federal Arbitration Act evinces a 'national policy favoring arbitration'") (citations omitted)); *Coatney*, 93 F.4th at 1022 ("Where there is a sufficiently close relationship between the non-signatory and the dispute and the parties, it does not defy the non-signatory's reasonable expectations that it would be bound.") (quoting *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171, 187 (1st Dist. 2014)); *Adams v. Raintree Vacation Exch., LLC*, 702 F.3d 436, 440 (7th Cir. 2012) ("Having agreed to arbitrate certain issues, a company shouldn't be allowed, by the facile device of suing an affiliate of the other signatory of the arbitration agreement, to litigate them instead.")

Importantly, the Complaint asserts numerous allegations collectively against the Fractional Tax Defendants, a term which – by Plaintiff's own definition – refers to Terma, FTINC, and FTUSA as well as the individual Defendants Murphy and Basnyat. (Compl. ¶¶ 20 - 21.)

- "Plaintiff also alleges a present dispute with the relevant *Fractional Tax Defendants* concerning the nature of Plaintiff's working relationship, the degree of control exercised over Plaintiff's work, and compensation Plaintiff alleges was earned but not fully paid." (Compl. ¶ 6.) (emphasis added.)

- "During the relevant period, agency-side users associated with the *Fractional Tax Defendants* submitted proposals and related communications through the Fractional Tax, Inc. Upwork agency account in a manner that presented them to clients under Plaintiff's visible professional identify." (Compl. ¶ 33.) (emphasis added.)

- "FTINC was the formal contractual counterparty and the entity identified on the Upwork agency profile. Terma was involved in recruitment, onboarding, and operational coordination. FTUSA was associated with the public-facing website and MyTax client portal through which client relationships were maintained and serviced. All three entities operated under the single "Fractional Tax" brand, shared the same address (14 Wall Street,

6

20th Floor, New York, NY 10005), and used overlapping personnel and infrastructure . . . ." (Compl. ¶ 81.)

- "The *Fractional Tax Defendants* caused Plaintiff's identity to be used in proposals and related communications sent to prospective clients without Plaintiff's knowledge, authorship, or approval. Murphy and Basnyat personally directed, authorized, participated in, or ratified the challenged uses." (Compl. ¶ 112.) (emphasis added.)

- "The *Fractional Tax Defendants* used Plaintiff's identity in connection with the promotion and solicitation of professional services through proposals presented under Plaintiff's name, and CPA credential, using first-person language that made them appear to originate from Plaintiff personally." (Compl. ¶ 120.) (emphasis added.)

- "By this conduct, the *Fractional Tax Defendants* caused or were likely to cause confusion as to Plaintiff's affiliation, connection, or association with the offered services, and as to whether Plaintiff personally authored, approved, or was professionally responsible for solicitation." (Compl. ¶ 123.) (emphasis added.)

- "The *Fractional Tax Defendants* engaged in deceptive trade practices by using Plaintiff's identity in client-facing solicitations not authored or approved by Plaintiff. . . ." (Compl. ¶ 128.) (emphasis added.)

- "The *Fractional Tax Defendants* used Plaintiff's identity in commerce in client-facing solicitations to market, solicit, and obtain paid tax and accounting work." (Compl. ¶ 148.) (emphasis added.)

- "On information and belief, the *Fractional Tax Defendants* used Plaintiff's professional identity to obtain commercial advantage, increase client trust, and secure engagements while retaining operational and financial control." (Compl. ¶ 149.) (emphasis added.)

There are two circumstances under which a non-signatory is a closely related party to an agreement and thus foreseeably bound by its terms. The first circumstance occurs where the non-signatory's identity is "so intertwined with the identity of the signatory that the two cannot be distinguished" and the second occurs where the non-signatory is "deeply involved in the negotiation of the contractual terms." *Coatney*, 93 F.4th at 1023.

In its 2024 opinion in *Coatney*, *supra*, the Seventh Circuit discussed its 1993 opinion in *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 207 (7th Cir. 1993). In *Hugel*, a company, its subsidiary, and their president and chairman—Hugel—sued another company, Lloyd's, over a business

7

dispute. *Id.* at 207. Lloyd's sought to enforce a forum selection clause fixing the forum for all claims in England. *Id.* The plaintiffs argued that the clause applied only to Hugel, who executed the agreement, and not to the company or subsidiary. *Id.* The Seventh Circuit held that the district court did not err in holding that the company and subsidiary were so closely related to the dispute between Hugel and Lloyd's as to subject them to the forum selection clause because Hugel was president and chairman of both companies and owned 99 percent of the parent company's stock, which, in turn, owned 100 percent of the subsidiary's stock. *Id.; see also Adams*, 702 F.3d at 440 (likening arbitration clauses to forum selection clauses and holding that "the parent should be allowed to invoke the [arbitration] clause and thus insist that the suit be litigated in the same [forum] in which, pursuant to the clause, its subsidiary is being sued."); *Solargenix*, 17 N.E.3d at 177-189 (affirming exercise of jurisdiction over Spanish parent companies of American subsidiaries where the parents "were heavily involved in negotiating and approving" the agreements at issue, demonstrating that they were closely related to the dispute).

Here, Terma, Fractional Tax USA LLC ("FTUSA"), Basnyat, and Murphy are closely related parties to the Service Contract and the Content Agreement. As Plaintiff concedes in the Complaint:

> Although FTINC was the formal signatory, the relationship was recruited, negotiated, onboarded, and administered through Terma Project channels and personnel. Plaintiff was recruited through the "Terma Project" Upwork identity used by Basnyat, onboarded and contract-negotiated through @termaproject.com communications by Murphy in Murphy's role as Director of Operations at Terma, and integrated into Terma-managed systems including the Termaproject Slack workspace. On information and belief, FTINC functioned as Terma's agent in an integrated business operation under shared executive control by Basnyat, and Terma is therefore liable as principal for FTINC's contractual obligations.

(Compl. ¶ 20). The same can be said about FTUSA, which is FTINC's parent and a wholly owned subsidiary of Terma and whose sole Director is also Nishchal Basnyat. *See Adams*, 702 F.3d at 440 (holding that a parent should be permitted to enforce a forum selection clause in a contract executed by its subsidiary where the other party also sues the parent under the contract such that the parent may litigate the claims in the same forum as its subsidiary). The arbitration clause should therefore apply to both Terma and FTUSA.

Likewise, Plaintiff's claims against Basnyat and Murphy stem from their purported acts or omissions in their capacities as employees and/or agents of Terma, FTUSA, and FTINC—from negotiating and executing the relevant agreements, to onboarding Plaintiff, to communicating with Plaintiff about his concerns—and are directly and intimately related to the parties' Service Contract and current dispute. Accordingly, the arbitration clause should likewise apply to Basnyat and Murphy. *Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 U.S. Dist. LEXIS 41713, at *15-16 (N.D. Ill. May 14, 2009) (explaining that, pursuant to the doctrine of equitable estoppel, a non-signatory to an arbitration agreement can enforce an arbitration provision if, for example, a lawsuit includes allegations of "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract.") (citations omitted); *American Int'l Radio, Inc. v. Rohill Eng'g, BV*, No. 6 C 1300, 2007 U.S. Dist. LEXIS 33056, at *5 (N.D. Ill. May 2, 2007) (explaining that "naming parties who are not signatories to the Agreement does not frustrate the enforcement of an arbitration clause.")

Here, the Fractional Tax Defendants *consent* to arbitration of the claims against them.

**C.      All Of Plaintiff's Claims Fall Within The Scope Of The Arbitration Clause.**

If parties execute a legally valid arbitration agreement, a dispute is presumably subject to arbitration "unless it may be said with positive assurance that the arbitration clause is not

susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986) (citation omitted)*; see also Agha v. SoFi Lending Corp.*, Case No. 23-cv-01935, 2024 U.S. Dist. LEXIS 47605, at *7 (N.D. Ill. Mar. 19, 2024) (explaining that "any doubt" regarding the scope of a valid arbitration clause "is resolved in favor of arbitration as a matter of federal law.") (citations omitted). Notably, "the Seventh Circuit reads provisions requiring arbitration of disputes 'arising out of and relating to' a contract to be "extremely broad and capable of an expansive reach." *Leibowitz v. Schindler*, No. 16 CV 07092, 2017 U.S. Dist. LEXIS 126288, at *4-5 (N.D. Ill. Aug. 9, 2017) (quoting *Gore v. Alltel Communs., LLC*, 666 F.3d 1027, 1033 – 34 (7th Cir. 2012).

One case from the Northern District is instructive here. In *Dime Group*, liquor importer ("DGI") had a contract with Souyuz Victan LTD ("SV") (a Ukrainian liquor distiller) for the exclusive right to import and distribute SV's vodka. *Dime Group Int'l, Inc. v. Soyuz-Victan USA, LLC*, No. 07 C 4178, 2008 U.S. Dist. LEXIS 11488, at *2 (N.D. Ill. Feb. 13, 2008). Their agreement included an arbitration provision. *Id*. at *3-4. Soyuz-Victan USA, LLC ("SV-USA"), a subsidiary of SV, was created for the purpose of importing, marketing and distributing the vodka. *Id*. at *2.

DGI sued SV for breach of contract and both SV and SV-USA for intentional interference with business relationships. *Id*. at *4. Defendants sought to dismiss or stay plaintiff's action entirely in favor of arbitration. *Id*. at *5. The court ruled in favor of the defendants, finding that:

> both tortious interference and declaratory judgment claims . . . are based on DGI's alleged rights (pursuant to the agreement) to the exclusive purchase and sale of SV products. Furthermore, allowing DGI to proceed against SV-USA, while ordering arbitration between DGI and SV with regard to the same agreement, could result in inconsistent judgments. Therefore, because DGI seeks to claim benefits under its agreement with SV and to enforce those

> benefits as against SV-USA, DGI is estopped from avoiding arbitration with SV-USA.

*Id*. at *12.

Here, all of Plaintiff's claims against the Fractional Tax Defendants arise out or are otherwise connected to the work that the parties were performing pursuant to the Service Contract. For example, Plaintiff alleges false designation of origin under common law and the Lanham Act, as well as a violation of his right of publicity and the Uniform Deceptive Trade Practices Act under Illinois Law. (Compl. ¶¶ 118-32, 146-51). Plaintiff bases these claims on the purported misuse of his name, image, likeness, biography, CPA credentials, and other professional identifiers in connection with the parties' performance of the Service Contract. (Compl. ¶¶ 2, 31-35, 76, 109-12, 119-20, 128, 148.)

Plaintiff further alleges breach of contract against FTINC and, in the alternative, Terma, claiming a material breach caused by the aforementioned proposals being sent without his authorization and a non-payment of a portion of his fees. (Compl. ¶¶ 152-61.) Plaintiff alleges fraudulent inducement and concealment against FTINC, Terma, Murphy, and Basnyat, on the basis that these Defendants purportedly fraudulently induced him to enter into a contract with FTINC by, in essence, failing to include the revisions he purportedly proposed into the Service Contract and the Content Agreement and failing to disclose that proposals would be sent on his behalf – again in connection with the parties performance under the Service Contract. (Compl. ¶¶ 162-74.)

Additionally, Plaintiff makes unjust enrichment and violation of the Illinois Wage Payment Collection Act claims, claiming that the Fractional Tax Defendants unjustly benefited from Plaintiff's name, reputation, credentials, and tax work, and that the Fractional Tax Defendants failed to pay him for the services rendered. (Compl. ¶¶ 175-88.) Finally, Plaintiff alleges retaliatory discharge and violations of the Illinois Whistleblower Act in Counts X through XI, alleging that

11

he was fired because he threatened to disclose the Fractional Tax Defendants' allegedly unlawful conduct. (Compl. ¶¶ 189-202.)

Here, the arbitration clause is broad in scope and, under the law, any doubt should be resolved in favor of arbitration. Notably, the arbitration clause applies to any dispute "between the Parties" to the Service Contract and all of Plaintiff's claims arise out of or are otherwise connected to performance under that Service Contract. (Art. XI at 4 of Service Contract, Ex. A). The fact that some of Plaintiff's claims sound in tort does not preclude arbitration in the Seventh Circuit, which has routinely held that a party cannot avoid the enforcement of an arbitration clause merely by "casting its complaint in tort." *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) ("a broad arbitration clause 'does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between parties having a significant relationship to the contract regardless of the label attached to the dispute") (quoting *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1998)).

Given the nature of Plaintiff's claims, all of the Fractional Tax Defendants are indispensable to those claims that are subject to arbitration. *Leibowitz v. Schindler*, No. 16 CV 07092, 2017 U.S. Dist. LEXIS 126288, at *4-5 (N.D. Ill. Aug. 9, 2017) ("[W]hen each of a signatory's claims against a nonsignatory 'makes reference to' or 'presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement and arbitration is appropriate." (citation omitted)); *Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 U.S. Dist. LEXIS 41713, at *15-16 (N.D. Ill. May 14, 2009) ("the Seventh Circuit specifically found that estoppel applied to claims that were 'intimately founded in and intertwined with' the underlying contractual obligations."); *American Int'l Radio, Inc. v. Rohill Eng'g, BV*, No. 6 C 1300, 2007 U.S. Dist. LEXIS 33056, at *5 (N.D. Ill. May 2, 2007) ("A plaintiff may not

12

avoid an otherwise valid arbitration provision merely by 'casting its complaint in tort.' The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause."); *Board of Trs. v. Linder*, No. 02 C 50132, 2002 U.S. Dist. LEXIS 17403 (N.D. Ill. Sep. 16, 2002) ("Where non-signatory defendants consent to arbitration, and plaintiffs' allegations are the same against all defendants, it is appropriate to compel arbitration of the claims against all defendants."); *Kiefer Specialty Flooring*, 174 F.3d at 910 (explaining that "[w]e have routinely held that a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'") (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l, Ltd.,* 1 F.3d 639, 643 (7th Cir. 1993) (citations omitted)).

Accordingly, all of Plaintiff's claims against the Fractional Tax Defendants are subject to arbitration. *American Int'l Radio*, 2007 U.S. Dist. LEXIS 33056, at *5 (explaining that "[t]his arbitration clause requires each of Plaintiff's claims to be resolved by the arbitration, as each claim is connected to the parties' execution of the Agreement.")

## II. THE COURT SHOULD DISMISS PLAINTIFF'S LAWSUIT OR, IN THE ALTERNATIVE, STAY PROCEEDINGS IN THE U.S. DISTRICT COURT.

Given that Plaintiff's claims against the Fractional Tax Defendants are subject to arbitration, the law provides that the claims against those Defendants should be dismissed. *Agha v. SoFi Lending Corp.*, 2024 U.S. Dist. LEXIS 47605, *11-12 (explaining that the "'general approach' of staying a case in favor of arbitration 'has given way in cases where the entire dispute clearly will be decided in arbitration and thus there is no reason to hold on to the case.'") (quoting *Wallace v. GrubHub Holdings Inc.*, No. 18 C 4538, 2019 U.S. Dist. LEXIS 52629, 2019 WL 1399986, at *6 (N.D. Ill. Mar. 28, 2019) (Chang, J.), *aff'd*, 970 F.3d 798 (7th Cir. 2020)). Alternatively, it would be appropriate for this Honorable Court to stay proceedings pending the outcome of arbitration. 9 U.S.C. § 3; *Tinder,* 305 F.3d at 733.

**III.    THE FRACTIONAL TAX DEFENDANTS' "MEET AND CONFER" EFFORTS.**

On May 15, 2026, counsel for the Fractional Tax Defendants conferred via telephone with Plaintiff and requested the referral of this matter to arbitration. Thereafter, the parties exchanged written correspondence addressing this issue. Further, on June 11, 2026, the Fractional Tax Defendants provided Plaintiff with a draft of its Motion to Compel Arbitration. On June 15, 2026, the parties conducted another telephonic "meet and confer" following which the parties "agreed to disagree" regarding the arguments raised in the Fractional Tax Defendants' instant motion.

**IV.    THE COURT SHOULD AWARD THE FRACTIONAL TAX DEFENDANTS THEIR LEGAL FEES AND COSTS INCURRED IN PREPARING THE MOTION TO COMPEL ARBITRATION.**

Despite the fact that the Fractional Tax Defendants provided Plaintiff will compelling authority for arbitrating this matter, Plaintiff has refused to proceed to arbitration. As a consequence, the Fractional Tax Defendants filed this motion.

Given the circumstances, the Fractional Tax Defendants are entitled to recover the legal fees and costs incurred in connection with the Motion to Compel Arbitration. (Art. XI at 4 of Ex. A, Service Contract) ("[i]n the event a party fails to proceed with arbitration, . . . the other party is entitled to recovery of costs of suit including a reasonable attorneys' fee for having to compel arbitration[.]"); *Brne v. Inspired eLearning*, Case No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943, at *11-12 (N.D. Ill. Sept. 26, 2017) ("'Parties are generally free to contract for attorney's fees as they see fit,' and thus provisions [for or] against fee-shifting are not per se unconscionable.") (internal citation omitted). The Fractional Tax Defendants respectfully request that this Honorable Court award them the fees and costs incurred in connection with this motion.

14

**CONCLUSION**

WHEREFORE, Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat (collectively the "Fractional Tax Defendants") respectfully request that this Honorable Court enter an order as follows:

(i)    granting this motion and ordering Plaintiff to submit his claims against the Fractional Tax Defendants to arbitration;

(ii)    dismissing Plaintiff's Complaint or, in the alternative, staying this action pending the outcome of arbitration;

(iii)    awarding the Fractional Tax Defendants the legal fees and costs incurred in connection with filing this Motion to Compel Arbitration;

(iv)    granting the Fractional Tax Defendants leave to file a fee petition for recovery of their legal fees and costs; and

(v)    providing for any other just and proper relief.

Dated: June 15, 2026

Respectfully submitted,

GOLDBERG SEGALLA LLP

By:  */s/ Chad J. Layton*

Attorneys for Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat
Chad J. Layton, ARDC No. 6243339
Patrycia Piaskowski, ARDC No. 6346239
Goldberg Segalla LLP
222 West Adams Street, Suite 2250
Chicago, Illinois 60606
(312) 572-8400
clayton@goldbergsegalla.com
ppiaskowski@goldbergsegalla.com

15

## CERTIFICATE OF SERVICE

The undersigned states that a copy of the foregoing **Defendants Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat, Motion to Compel Arbitration** was filed with the United States District Court, Northern District of Illinois, Eastern Division using the CM/ECF system on June 15, 2026, which will send notification of such filings to all parties of record.

Evan J Cronin
211 W Wacker Drive STE 120 #2217
Chicago, IL 60606
legal@cronintaxservices.com
*Attorney for Plaintiff*

Gabrielle Ganze
Harrison Maxwell Brown
Blank Rome LLP
444 W. Lake Street
16th Floor
Chicago, IL 60606
gabrielle.ganze@blankrome.com
harrison.brown@blankrome.com
courtmail@blankrome.com
*Attorney for Defendants Upwork Inc.*
*and Upwork Global LLC*

/s/  Chad J. Layton
*Attorney for Defendants Terma Project, Inc.,*
*Fractional Tax, Inc., Fractional Tax USA, LLC,*
*Chandler Murphy, and Nishchal Basnyat,*

16