**EXHIBIT A**
**Service Contract**

# FRACTIONAL TAX, INC.

## SERVICE CONTRACT

## I. PARTIES

This Service Contract ("Agreement") effective January 1, 2025, is by and between:

Evan J Cronin CPA & Tax Services ("Service Provider")



and:

Fractional Tax, Inc. ("FTINC")
14 Wall Street, 20th Floor,
New York City, NY 10005

Service Provider and FTINC are each referred to herein as a "Party" and, collectively, as the "Parties."

NOW, THEREFORE, FOR AND IN CONSIDERATION of the mutual promises and agreements contained herein, FTINC hires the Service Provider to work under the terms and conditions hereby agreed upon by the Parties.

## II. TERM

The term of this Agreement shall commence on **January 1, 2025**, and terminate on December 31, 2025.

**Termination without Cause**

FTINC may terminate this agreement, without cause, with thirty (30) days' written notice to the Service Provider.

**Termination for Cause**

The Company reserves the right to terminate this Agreement immediately, without prior notice, for cause. For purposes of this Agreement, "cause" shall include, but not be limited to:

1. **Failure to Perform:** Dereliction of duty, failure to perform the agreed-upon services, or repeated instances of substandard performance.

2. **Misconduct:** Any form of misbehavior, including but not limited to harassment, dishonesty, fraud, or other conduct deemed unprofessional or harmful to the Company or its reputation.

3. **Criminal Activity:** Involvement in any criminal activity, whether or not directly related to the services provided under this Agreement.

Docusign Envelope ID: DE7B7D3C-9E41-4534-BFA2-0A7982AE7D73

4. **Violation of Obligations:** Breach of any material term of this Agreement, including confidentiality, intellectual property, or compliance obligations.

5. **Failure to Meet Deadlines:** Persistent failure to meet deadlines or complete deliverables as agreed.

6. **Incapacity:** Inability, whether due to illness, injury, or other circumstances, to perform the services required under this Agreement.

7. **Disruption of Business:** Actions that disrupt or interfere with the normal operations of the Company.

Upon termination for cause, the Company shall have no further obligations to the Service Provider other than payment for services satisfactorily performed up to the termination date. The Service Provider shall immediately return all Company property, including confidential information, work products, and any other materials provided by the Company during the course of this Agreement.

This provision shall not limit the Company's right to pursue any additional remedies available under applicable law.

**Notice Requirement:** The Service Provider shall provide FTINC with no less than thirty (30) days' written notice prior to the termination of services under this Agreement. Failure to provide such notice shall be deemed a material breach of this Agreement.

**Good Faith Transition:** Upon termination of services, the Service Provider agrees to participate in a good faith transition to ensure the FTINC's continued operations are not disrupted. This includes, but is not limited to, providing necessary documentation, access to data, and cooperation with the Client and FTINC delegate or any successor provider during the transition period. The Service Provider is held accountable for their obligations while protecting FTINC from unnecessary disruptions or financial losses due to noncompliance.

**Recourse for Non-Compliance:**

- If the Service Provider fails to provide the required thirty (30) days' notice, FTINC shall have the right to:
  - Withhold final payment until notice is provided or an equitable resolution is agreed upon.
  - Seek reimbursement for any costs incurred due to the lack of notice, including but not limited to emergency replacement services or personnel or additional administrative costs.
- If the Service Provider fails to participate in a good faith transition, FTINC shall have the right to:
  - Seek damages equal to the costs incurred as a direct result of the Service Provider's non-compliance, including reasonable attorney's fees.
  - Pursue injunctive relief compelling the Service Provider to fulfill its transition obligations under this Agreement.

**Survival:** This provision shall survive termination of the Agreement and remain enforceable until the transition obligations are fully satisfied.

## III. SERVICES

— 34 —

The Service Provider agrees to provide services, including but not limited to:

- FTINC client tax return preparation,
- FTINC client tax return and documentation review,
- FTINC client and prospective client tax and financial consultations (email/written, video conferencing, phone calls, live chat etc.)
- FTINC client representation before taxing authorities,
- FTINC client bookkeeping/write-up and review services, upon request,
- Training and development of FTINC team members, as appropriate,
- Research and draft tax technical memoranda on various tax issues, as necessary, for FTINC clients, and
- Oversee FTINC client engagements, projects and services as appropriate to ensure compliance and timely completion

Hereinafter known as the "Services." The Service Provider, while performing the Services, the Service Provider shall comply with all local, State, and Federal laws and to the best of his abilities and communicate with FTINC if there is something prohibiting him from performing these duties in accordance with all local, State, and Federal laws.

All platforms and applicable software for services above are to be provided by FTINC.

All services provided are tax and business consulting related and within the appropriate scope of practice for a Certified Public Accountant in the United States. No advice should be construed as general legal advice or advice regarding any specific financial security. Such advice should be obtained from an appropriately licensed attorney or SEC/FINRA registered investment adviser. FTINC is not, and does not operate as, a licensed CPA firm and no services should be provided to clients that would suggest to the client that FTINC is a licensed CPA firm.

## IV. PAYMENT

FTINC agrees to pay the Service Provider the following:

- Hourly rate of $85 for every hour of phone calls, clients calls or meetings Service Provider provides to Clients or FTINC and/or

- Fixed Rate of either (i) 45% of the final service cost of every service completed by the Service Provider for FTINC Clients or (ii) an agreed upon payment between the Service Provider and the Company, agreed upon in writing. An example of the 45% fixed rate would be if the final service price is $1000, Service Provider would be compensated $450 for completing that service.

Hereinafter known as the "Payment Amount."

## V. PAYMENT METHOD

FTINC shall pay the Payment Amount **through direct EFT/ACH within 10 business days after invoicing**, which will be presented twice per month on or around the 1st and 15th of every month for the prior period's total hours and services completed by Service Provider.

Invoices should be submitted by the Service Provider to payments@fractionaltax.com. The 15 business days will start after a complete and final invoice is submitted to FTINC.

## VI. CONFIDENTIALITY

Service Provider acknowledges and agrees that all financial and accounting records, lists of property owned by FTINC, including amounts paid, therefore, client and customer lists, and any other data and information related to the FTINC's business is confidential ("Confidential Information"). Therefore, except for disclosures required to be made to advance the business of the FTINC and information which is a matter of public record, Service Provider shall not, during the term of this Agreement or after its termination, disclose any Confidential Information for the benefit of the Service Provider or any other person, except with the prior written consent of the FTINC.

A) **Return of Documents.** Service Provider acknowledges and agrees that all originals and copies of records, reports, documents, lists, plans, memoranda, notes, and other documentation related to the business of the FTINC containing Confidential Information shall be the sole and exclusive property of the FTINC and shall be returned to the FTINC upon termination of this Agreement or upon written request of FTINC.

B) **No Release.** Service Provider agrees that the termination of this Agreement shall not release him/her/they from the obligations in this Section.

## VII. INDEPENDENT CONTRACTOR STATUS
Service Provider acknowledges that he is an independent contractor and is responsible for any and all taxes and other payments due on Payment Amount.

## VIII. SUCCESSORS AND ASSIGN

The provisions of this Agreement **shall not be binding upon or inured to** the benefit of heirs, personal representatives, successors, and assigns of the Parties. Any provision hereof which imposes upon the Service Provider or FTINC an obligation after termination or expiration of this Agreement **shall survive termination or expiration** hereof and be binding upon the Service Provider or FTINC.

## IX. DEFAULT

All services are provided solely by and through Evan Cronin. FTINC agrees no recourse can be pursued with any other affiliates, known or unknown, of Evan Cronin, and all recourse related to Services is limited to the amount of fees billed for such services.

## X. NO WAIVER

No waiver of any provision of this Agreement shall be deemed or shall constitute a continuing waiver, and no waiver shall be binding unless executed in writing by the Party making the waiver.

## XI. ARBITRATION

In the event a dispute shall arise between the Parties to this Agreement, it is hereby agreed that the dispute shall be referred to United States Arbitration & Mediation for arbitration in accordance with United States Arbitration & Mediation Rules of Arbitration. The arbitrator's decision shall be final and binding and judgment may be entered thereon. In the event a party fails to proceed with arbitration, unsuccessfully challenges the arbitrator's award, or fails to comply with arbitrator's award, the other party is entitled to recovery of costs of suit including a reasonable attorney's fee for having to compel arbitration or defend or enforce the award.

Docusign Envelope ID: 8C7B7D23-9EA7-4537-24A2-D94392TEnb9

## XII. SEVERABILITY

If any term, covenant, condition, or provision of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable, the remainder of the provisions shall remain in full force and effect and shall in no way be affected, impaired, or invalidated.

## XIII. OWNERSHIP AND CONTROL; DELEGATION OF WORK

The Service Provider hereby represents and warrants that it is and shall remain at all times fully owned and controlled by Evan Cronin. In the event that Evan Cronin delegates any portion of the Services to other individuals or entities within the Service Provider's structure, the Service Provider shall provide prior written notice to the Company, specifying the nature of the delegated work, the identity of the delegatee, and the expected duration of such delegation. Notwithstanding any delegation, Evan Cronin shall retain ultimate responsibility for the performance of the Services under this Agreement and shall ensure that all work performed by any delegatee complies fully with the terms and standards set forth herein."

**FTINC's Signature** _Nishchal Basnyat_ **Date** 1/7/2025

Print Name _Nishchal Basnyat_

**Service Provider's Signature** _Evan J Cronin_ **Date** 1/7/2025

Print Name _Evan J Cronin_