**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN, <br><br> Plaintiff, <br><br> v. <br><br> UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT, <br><br> Defendants. | Case No. 1:26-cv-03220 <br><br> Hon. Sara L. Ellis <br><br> Magistrate Judge Laura K. McNally |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO
DECLARE THE UPWORK DEFENDANTS IN DEFAULT UNDER 9 U.S.C. § 3 AND TO
ENJOIN ENFORCEMENT OF THE CLASS ACTION/JURY TRIAL WAIVER**

**INTRODUCTION**

This Motion presents a threshold question the Court must resolve before compelling arbitration or entering any stay: whether a party that invoked the mandatory informal-resolution process in its own arbitration provision, and defined in writing the performance it would provide within that process, may abandon both and still demand arbitration.

The process is Upwork's and is described in Upwork's own words. Upwork drafted Section 14 and wrote the plain-language summary that introduces it, which describes a bilateral, sequential process: the parties "will both first try to resolve any dispute informally," and arbitration follows only "if we can't resolve the dispute informally." (Ex. 1, § 14.)

Section 14.3 makes that informal step mandatory. Before any arbitration demand, the parties must notify each other and "seek informal voluntary resolution" of the Claim — a mutual obligation of effort, not outcome: the parties "will seek" resolution, but the resolution itself stays

Page 1 of 15

voluntary. (Ex. 1, § 14.3.) Plaintiff performed the notice step on April 1, 2025. (Ex. 5.) Upwork's legal department acknowledged the dispute, invoked "the arbitration provisions applicable to this matter," and — though not required to resolve the Claim — defined in writing the performance it would provide: "We will ensure that our formal response is provided within this period." (Ex. 10.) Upwork then performed none of what it promised. It provided no formal response, proposed no resolution, requested no conference, identified no forum, and served no demand; it let the sixty-day period expire and marked the matter "Solved." (Ex. 4C; Decl. ¶ 28.) Upwork thus abandoned both the process its Agreement required and the performance it defined for itself.

Two independent consequences follow, and the Court can decide both now on the present record. Under 9 U.S.C. § 3, a party in default in proceeding with arbitration is ineligible for a stay, and Upwork's nonperformance of the informal-resolution process required by its own Arbitration Provision is such a default. Independently, under the California law the Agreement selects, Upwork's antecedent material breach discharged Plaintiff's reciprocal obligations under that mechanism, including any asserted duty to initiate arbitration. And because the Provision's delegation clause and its Class Action/Jury Trial Waiver are themselves terms of that discharged framework, neither survives: the delegation clause cannot refer these questions to an arbitrator, and the Waiver cannot stand as a freestanding restriction on this litigation.

If the Court concludes that the present record is insufficient to resolve those threshold issues now, Plaintiff alternatively requests a narrow schedule under Rules 16 and 56 limited to the issues of arbitration default, discharge, delegation, and waiver enforceability. That schedule would permit targeted threshold discovery, if needed, followed by focused summary-judgment briefing before any arbitration stay or referral is considered.

**PROCEDURAL POSTURE**

Plaintiff filed this action on March 23, 2026. (Dkt. 1.) The present motion arises from the Court-directed arbitration posture. On May 19, 2026, the Court ordered the parties to file a revised initial joint status report and include their respective positions on arbitration. (Dkt. 20.) In the parties' Revised Joint Initial Status Report, Upwork stated that Plaintiff's claims against the Upwork Defendants are subject to individual JAMS arbitration under Upwork's User Agreement and that threshold arbitrability issues are delegated to the JAMS arbitrator; Plaintiff disputed arbitration default, the operative User Agreement, forum, delegation, and the Class Action/Jury Trial Waiver. (Dkt. 34.) On June 17, 2026, the Court set Defendants' responsive pleadings for July 1, 2026, reset the status conference to July 9, 2026, and ordered the parties to file an updated status report addressing the pending motion to compel arbitration. (Dkt. 35.) This Motion presents Plaintiff's threshold position before any stay, referral, or compelled arbitration is considered. Plaintiff also satisfied the Court's meet-and-confer requirement; the parties conferred and were unable to resolve the Motion, and Upwork identified no fact or authority it contended would defeat it. (LR 37.2 Certificate, Dkt. 36-4; Exs. 12, 13A–13B; Decl. ¶¶ 25-27.)

**STATEMENT OF FACTS**

The facts material to this Motion are established by the contemporaneous documentary record, authenticated in the accompanying Declaration, and appear in chronological sequence below.

- **December 17, 2024** — User Agreement Version 6-8 took effect on December 17, 2024 and remained in force throughout the events that followed. In that version, Upwork Global Inc.—the entity that later converted into Upwork Global LLC—is the contracting Upwork party. The Agreement selects California law, and the Federal Arbitration Act governs its Arbitration

Provision. (Ex. 1, § 14.2; Decl. ¶ 5.) Section 14.1 states that Claims are resolved "through binding arbitration on an individual basis in accordance with this Section 14." (Ex. 1, § 14.1.) Section 14.3 requires notice before any arbitration demand and states that the parties "will seek informal voluntary resolution" during a sixty-day period:

> Before serving a demand for arbitration of a Claim, you and Upwork agree to first notify each other of the Claim. . . . You and Upwork then will seek informal voluntary resolution of the Claim. . . . Both you and Upwork will have 60 days from the date of the receipt of the Notice to informally resolve the other party's Claim and avoid the need for further action.

(Ex. 1, § 14.3.) Section 14.4 states that arbitration follows "[i]n the unlikely event the parties are unable to resolve a Claim within 60 days of the receipt of the applicable Notice." (Ex. 1, § 14.4.) Section 14.4 is captioned "Binding Arbitration and Class Action/Jury Trial Waiver," and Section 14.4.3 states that disputes over the Class Action Waiver are to be decided by "a civil court of competent jurisdiction and not . . . an arbitrator." (Ex. 1, §§ 14.4, 14.4.3.)

- **March 28-31, 2025** — Plaintiff reports the underlying conduct to Upwork Support, opening Case No. 51489662, in which Upwork acknowledges that Plaintiff was "not the one who sent these services to clients." (Ex. 3; Ex. 4A; Decl. ¶ 10.)

- **April 1, 2025** — Plaintiff transmits written Notice of the dispute to legalnotices@upwork.com — the address Section 14.3 designates — starting the sixty-day informal-resolution period; Upwork's automated reply confirms the email "will serve as your proof of receipt." (Ex. 5; Decl. ¶ 13.)

- **April 2, 2025** — Upwork's legal function is engaged: as of the case's last activity at 5:55 PM, its carbon-copy list includes Yosef Mahmood, Upwork's Counsel for Policy, Privacy, and Litigation, and Anastasiia Dryha, a Certified Paralegal of Upwork's legal team for Policy, Litigation, and Privacy. (Ex. 4A; Exs. 8A–8B; Decl. ¶¶ 10, 20–21.)

- **April 16, 2025** — Plaintiff continues to seek informal resolution, submitting a formal Professional Statement through both channels — uploading it to Case No. 51489662 and emailing it to legalnotices@upwork.com — the email enclosing the complete, SignNow-authenticated archive of the case and placing the full record before the Section 14.3 channel. (Exs. 4A–4B, 6A–6B; Decl. ¶¶ 10–11, 14–15.)

- **April 16–17, 2025** — The case's support interface records "Last activity" at 8:08 AM, 5:01 PM, and 9:32 PM on April 16 and 2:35 PM on April 17 — none corresponding to any communication from Upwork to Plaintiff. Visible activity then ceases. (Exs. 7A–7C; Decl. ¶¶ 17–19.)

- **April 29, 2025** — Plaintiff's then-counsel, Pullman & Comley, sends a demand to legalnotices@upwork.com setting a May 8 resolution date; Upwork replies the same day that it "acknowledge[s] the timeline" and is "working toward a constructive resolution." (Exs. 9–10; Decl. ¶¶ 22–23.)

- **May 9, 2025** — One day after the May 8 date Upwork had acknowledged, Upwork — through Anastasiia Dryha of its legal department — states that Upwork is "currently working on this response" and "expect[s] to provide it shortly." The same email then cites "the arbitration provisions applicable to this matter," states that Upwork has "60 days from the receipt of your demand to provide our response," and commits that Upwork's "formal response" will be provided within that period:

  > We are reaching out to inform you that we are currently working on this response and expect to provide it shortly. Please note that, according to the arbitration provisions applicable to this matter, we have 60 days from the receipt of your demand to provide our response. We will ensure that our formal response is provided within this period.

  (Exs. 8B, 10; Decl. ¶¶ 21, 23.) Upwork never retracts, modifies, or qualifies that commitment. (Decl. ¶¶ 23, 28.)

- **June 2, 2025** — Applying California's time-computation rules, the sixty-day period measured from Plaintiff's April 1, 2025 Notice expired on Monday, June 2, 2025: the notice date is excluded, the sixtieth day fell on Saturday, May 31, 2025, and the period extended to the next non-holiday. *See* Cal. Code Civ. Proc. §§ 12, 13, 135 (excluding the first day, including the last day unless it is a holiday, and extending the period to the next non-holiday when the last day falls on a holiday, including Saturday). On June 2, Upwork marked Case No. 51489662 "Solved" — without providing any substantive response, proposing terms, requesting a conference, identifying JAMS or any other forum, or serving a demand for arbitration. (Ex. 4C; Decl. ¶ 28.)

- **June 6, 2025** — Plaintiff's then-counsel sends a follow-up and cure letter to legalnotices@upwork.com, demanding the promised formal response by June 11, 2025. (Ex. 11; Decl. ¶ 24.)

- **June 11, 2025** — The cure deadline passes without response. (Ex. 11; Decl. ¶ 28.)

- **July 16, 2025** — Upwork Global Inc. — the contracting party under Version 6-8 — converts to Upwork Global LLC by Articles of Organization–Conversion filed with the California Secretary of State. (Ex. 2A; Decl. ¶ 6.)

- **September 10, 2025; December 4, 2025; January 8, 2026** — After the dispute and the conversion, Upwork published successive User Agreement versions (7-0, 8-0, and 8-1) that revised Section 14, including provisions concerning pre-arbitration procedures. Plaintiff did not agree that those later versions would govern this dispute or the claims already noticed under Version 6-8. (Exs. 2B–2C; Decl. ¶¶ 7–8.)

- **March 23, 2026** — Plaintiff files this action, still without any substantive response from Upwork. (Dkt. 1; Decl. ¶ 28.)

## ARGUMENT

### I. The Court — Not an Arbitrator — Decides This Motion.

#### A. FAA Section 3 default and Section 4 non-performance are questions for the Court.

Section 3 of the Federal Arbitration Act conditions a stay on the applicant's "not [being] in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 4 likewise confirms that threshold nonperformance issues are judicial: the court "shall hear the parties," and if "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue," the court "shall proceed summarily to the trial thereof." *Id.* § 4. Default and nonperformance are therefore statutory predicates the Court must resolve before granting FAA relief; they are not contract terms that a movant may route to an arbitrator through delegation language. The Seventh Circuit treats waiver of arbitration rights, including default through conduct inconsistent with arbitration, as a judicial question. *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025); *see* also *Kawasaki Heavy Indus., Ltd. v. Bombardier Recreational Prods., Inc.*, 660 F.3d 988 (7th Cir. 2011). Other circuits likewise hold that § 3 default is for the court to determine and may bar further FAA relief. *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287 (10th Cir. 2015); *Sink v. Aden Enters.*, Inc., 352 F.3d 1197, 1202 (9th Cir. 2003).

#### B. Howsam does not commit the question to an arbitrator.

*Howsam* presumes that whether a claimant satisfied a procedural precondition to arbitration is for the arbitrator. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84–85 (2002). That presumption does not reach this Motion. Plaintiff does not ask whether he satisfied a procedural precondition to arbitration; he asks whether Upwork remains eligible for FAA relief after abandoning the pre-arbitration framework it invoked. Treating that statutory eligibility question as a procedural issue for the arbitrator would allow a party seeking FAA relief to bypass the Court's threshold duty under §§ 3 and 4.

**C. The delegation clause does not clearly and unmistakably reach the Section 3 question.**

A delegation of gateway questions binds only if "clear and unmistakable." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Section 14.4.2 commits to the arbitrator disputes over the "interpretation, enforcement, or application" of the Arbitration Provision, "including the enforceability, revocability, scope, breach, or validity" of it. (Ex. 1, § 14.4.2.) That language allocates *contract* disputes about the Provision; it does not, and cannot, transfer the *statutory* determination § 3 directs to the court where suit is pending. A private clause cannot oblige a court to enter a stay the statute forbids. To the extent Upwork reads the word "breach" in Section 14.4.2 to delegate this Motion to JAMS, Plaintiff specifically challenges that reading of the delegation clause. *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010). At minimum, the clause does not clearly and unmistakably delegate statutory default, discharge, or court-reserved waiver issues; any ambiguity must be construed against Upwork, which drafted the Provision. Cal. Civ. Code § 1654; *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 247–48 (2016). In all events, the discharge question (Part IV) must be decided first: a delegation clause housed within the Arbitration Provision cannot survive the breach that discharged the Provision, nor be invoked to refer the question of its own survival. *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024).

**D. Section 14.4.3 reserves the Class Action Waiver questions to a civil court.**

The Agreement removes the Class Action Waiver from the arbitrator: disputes over its "enforceability, revocability, scope, validity, or breach" may be resolved "only by a civil court of competent jurisdiction and not by an arbitrator." (Ex. 1, § 14.4.3.)

**II. Version 6-8 Governs This Dispute.**

**A. Plaintiff's claims accrued and were noticed under Version 6-8.**

Which contract governs is for the Court. *Coinbase*, 602 U.S. 143. Plaintiff's claims accrued, and his Notice and his counsel's demand were served, while Version 6-8 was in effect;

Upwork Global Inc. was then the contracting party. (Exs. 1, 2A; Decl. ¶¶ 5, 6, 13.) Upwork's own legal department confirmed the governing terms on May 9, 2025, invoking "the arbitration provisions applicable to this matter." (Ex. 10.)

### B. Post-dispute amendments cannot apply retroactively to accrued, noticed claims.

Only after the dispute arose, after Plaintiff served Notice, and after Upwork Global Inc. converted to Upwork Global LLC did Upwork publish Versions 7-0, 8-0, and 8-1, each revising Section 14's pre-arbitration procedures. Plaintiff did not agree that those later versions would govern this dispute or the claims already accrued and noticed under Version 6-8. (Exs. 2A–2C; Decl. ¶¶ 6–8.) Because Version 6-8 selects California law, California contract principles govern whether later unilateral amendments may be applied to this dispute. They may not. Under California law, a unilateral amendment to an arbitration agreement cannot retroactively impair accrued or known claims absent agreement to that retroactive application. *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1432–33, 1465 (2012); *Cobb v. Ironwood Country Club*, 233 Cal. App. 4th 960, 963, 966–67 (2015).

## III. Upwork Is in Default in Proceeding with Arbitration Under 9 U.S.C. § 3.

### A. Default is objective non-performance, judged on equal footing.

Whether a drafter's abandonment of the mandatory first tier of its own arbitration mechanism is a § 3 default appears to be a question of first impression in this Circuit, but it requires no new doctrine. Default under § 3 is the objective failure to perform the steps the agreement makes part of proceeding with arbitration. The inquiry proceeds on equal footing with ordinary contract enforcement, without any arbitration-specific presumption and without a prejudice requirement. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–18 (2022).

**B. Section 14.3 is the first mandatory step of "such arbitration."**

Section 14.3 is not a collateral policy; it is the first step of the arbitration mechanism, and Upwork's own materials say so. At the front of the Agreement, Upwork explains that the summaries it placed at the head of certain sections provide "a simple summary" written "to help you get a quick overview" of "what you're agreeing to." (Ex. 1 at 3.) Upwork's summary of Section 14 then describes a sequential, bilateral process: the parties "will both first try to resolve any dispute informally," and agree to arbitration only "if we can't resolve the dispute informally." (Ex. 1, § 14.) The section's terms track that summary: Section 14.3 applies "[b]efore serving a demand for arbitration"; Section 14.1 resolves Claims "in accordance with this Section 14"; and Section 14.4 reaches arbitration only "[i]n the unlikely event the parties are unable to resolve a Claim within 60 days." (Ex. 1, §§ 14.1, 14.3, 14.4.) The sixty-day informal tier is thus the first mandatory step of the Arbitration Provision itself, and failing to perform it is failing to proceed with the arbitration mechanism. Courts addressing analogous pre-arbitration conditions have denied FAA relief where the movant failed to perform the contractual step required to activate arbitration. *Kemiron Atl., Inc. v. Aguakem Int'l, Inc.*, 290 F.3d 1287, 1291 (11th Cir. 2002); *HIM Portland, LLC v. DeVito Builders, Inc.*, 317 F.3d 41, 44 (1st Cir. 2003).

**C. Upwork's duty was to perform the effort, by its own stated measure.**

Section 14.3 obligates effort, not outcome: the parties "will seek" informal voluntary resolution of the Claim. Upwork invoked that mandatory first-tier process on May 9, 2025, expressly referencing "the arbitration provisions applicable to this matter," and then defined the performance it would provide within the sixty-day period: "We will ensure that our formal response is provided within this period." (Ex. 10.) The Court therefore need not determine the full outer limits of Section 14.3's required participation. Upwork committed to provide a formal response within the contractual period and then provided none.

### D. Application.

The record establishes wholesale non-performance. Plaintiff noticed the Claim; Upwork acknowledged it, invoked the Arbitration Provision, and promised a formal response within the period; it then provided no response, proposed no terms, requested no conference, identified no forum, and served no demand, marking the matter "Solved" as the period expired and ignoring a written cure demand. (SOF, April 1 – June 11, 2025; Exs. 4C, 11; Decl. ¶ 28.) That is non-performance of the only pre-demand step of the Arbitration Provision, measured against Upwork's own commitment. Upwork is therefore "in default in proceeding with such arbitration" and ineligible for a § 3 stay. 9 U.S.C. § 3. For the same reason, Upwork cannot invoke § 4 as an "aggrieved" party based on Plaintiff's decision not to initiate arbitration after Upwork's antecedent default; § 4 enforces arbitration only "in the manner provided for" in the agreement, and the manner Upwork drafted began with the first-tier process it abandoned. 9 U.S.C. § 4; see *Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268, 1274–76 (11th Cir. 2025) (per curiam).

### E. The rule is narrow.

The rule reaches wholesale abandonment — the complete failure to perform a self-defined obligation — not the sufficiency of a good-faith attempt. Failing to resolve is not a default; declining to participate at all, after promising to, is. The rule is anchored in the movant's own conduct and carries a notice-and-cure safeguard that Upwork received and ignored. (Ex. 11.)

## IV. Independently, Upwork's Prior Material Breach Discharged Plaintiff's Reciprocal Obligations.

### A. Section 14.3 imposed mandatory, bilateral obligations of effort, which California enforces.

The Agreement is governed by California law. (Ex. 1, § 14.2.) Section 14.3 speaks in mandatory, bilateral terms: "you and Upwork agree to first notify each other," "will seek informal

voluntary resolution," and "[b]oth you and Upwork will have 60 days." (Ex. 1, § 14.3.) The provision separates effort from outcome — the seeking is required, the resolution voluntary — and California enforces such an agreement to attempt resolution, breached not by failing to agree but by failing to make the effort. *Copeland v. Baskin-Robbins U.S.A.*, 96 Cal. App. 4th 1251 (2002).

**B. Upwork's total non-performance was a material breach.**

The same nonperformance that defaults Upwork under § 3 is independently a material breach under California contract law. Upwork invoked the window, promised a response within it, and then performed none of the effort the provision required. (Ex. 10; Decl. ¶ 28.) Total non-performance of the bargained-for first tier defeats its essential purpose and is material, *Brown v. Grimes*, 192 Cal. App. 4th 265, 277–79 (2011), and breaches the implied covenant not to deprive Plaintiff of the benefit of that process, *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 372 (1992).

**C. The breach discharged Plaintiff's reciprocal obligations and answers the "no demand" point.**

A party released by the other side's material breach owes no further performance: Upwork's antecedent non-performance discharged any duty of Plaintiff's to advance to arbitration. The arbitration condition, moreover, never occurred — Section 14.4's gateway is the parties' inability to resolve "within 60 days," which presupposes the bilateral effort Upwork refused — and a party may not rely on the non-occurrence of a condition its own conduct prevented. Cal. Civ. Code § 1511(1). Plaintiff also reasonably relied on Upwork's written May 9 commitment — issued by Upwork's own legal department in response to a represented party's demand, and of a kind Upwork had reason to expect would be relied upon — by awaiting the promised response rather than initiating arbitration. *Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218 (2011); (Ex. 10).

### D. Discharge lies outside the delegation clause and collapses it.

Discharge is not a claim that the Provision is void or voidable; it concedes that the parties agreed to arbitrate and that the Provision was validly formed, and asserts only that Upwork's post-formation non-performance discharged it. It therefore falls outside what Section 14.4.2 delegates. And because the delegation clause is itself a term of the discharged Provision, it does not survive to refer the question of its own enforceability. *Coinbase*, 602 U.S. 143.

## V. The Waiver Does Not Survive as a Freestanding Restriction.

### A. The Waiver is conditioned on the arbitral forum and falls with it.

The Class Action/Jury Trial Waiver is internal to Section 14's arbitration mechanism, not a freestanding litigation term. It appears within Section 14.4, which operates only after the parties are "unable to resolve a Claim within 60 days" and proceed to "final and binding individual arbitration"; the Class Action Waiver is framed as an agreement to bring disputes "in arbitration on an individual basis only"; and the jury- and court-trial waiver arises only "[b]y agreeing to arbitrate disputes under this Agreement." (Ex. 1, §§ 14.1, 14.4, 14.4.3.) A waiver tied by its text to arbitration does not silently extend to court. It therefore falls under either ground above: a movant in § 3 default cannot enforce the concessions that presuppose the very forum it forfeited, and under California law the Waiver is part of the Section 14 bargain discharged by Upwork's material breach. *Brown*, 192 Cal. App. 4th at 277–79.

### B. The severability clauses do not preserve it.

Sections 14.4.2 and 14.4.5 provide that if a portion of the Arbitration Provision is unenforceable, the remainder stays enforceable. That language addresses partial unenforceability — a term held illegal or unconscionable — and rescues defective text; it does not transform a downstream, arbitration-only waiver into an independent restriction on litigation after the arbitration mechanism has been discharged or rendered unavailable by Upwork's own default. Nor

does it permit selective enforcement of an internal waiver whose forum the drafter failed to perform. The Section 14.4.2 clause is expressly subordinated to Section 14.4.3, and the Waiver's specific conditional language controls over the general severability boilerplate. Cal. Civ. Code §§ 1641, 1654.

### C. The relief is in-case preclusion.

Plaintiff seeks preclusion of the Waiver's enforcement in this action as an incident of the Court's § 3 and discharge determinations, and, to the extent any injunctive relief is necessary to give effect to that preclusion, it follows from those determinations and the same Upwork-authored record. Plaintiff does not ask the Court to declare the Class Action/Jury Trial Waiver substantively unenforceable on grounds he expressly reserves. (Part VII.)

## VI. Alternatively, the Court Should Set a Targeted Threshold Schedule Under Rules 16 and 56.

The record is documentary and almost entirely Upwork-authored — its contract, its acknowledgments, its May 9 commitment, its case record, and its silence — and the Court can decide the threshold questions now. If any material fact requires development, Plaintiff requests a targeted schedule under Rules 16 and 56, in the form the Court's procedures prescribe, limited to the default issue and confined to four subjects: the routing and handling of Case No. 51489662; the actor and mechanics of the June 2, 2025 closure; records identifying the governing Agreement version; and any conduct Upwork contends preserved its eligibility for FAA relief. Upwork's counsel has stated that the threshold items Plaintiff raised are "properly the subject of discovery." (Ex. 13A–13B.) Because § 3 eligibility is antecedent to any stay or order compelling arbitration, any such motion the Upwork Defendants may file should be consolidated with the briefing on this Motion.

**VII. Reservation of Rights.**

Plaintiff reserves all rights, claims, defenses, and objections not adjudicated on this Motion, including all objections to formation, assent, scope, delegation, enforceability, unconscionability, waiver, and severability of any version of the User Agreement. Nothing herein concedes that any claim is arbitrable or that any Defendant may enforce Section 14.

## CONCLUSION

For the reasons stated, Plaintiff respectfully requests that the Court enter an order: (1) declaring that the Upwork Defendants are in default in proceeding with arbitration within the meaning of 9 U.S.C. § 3; (2) denying or precluding, based on that default, any stay of this action or order compelling arbitration under 9 U.S.C. §§ 3 and 4; (3) declaring that Upwork's prior material breach discharged Plaintiff's reciprocal obligation to initiate or proceed with arbitration under Section 14; (4) precluding the Upwork Defendants from enforcing the Class Action/Jury Trial Waiver as a freestanding litigation restriction and, as necessary, enjoining its enforcement; (5) in the alternative, setting a targeted threshold schedule under Rules 16 and 56 with the narrow discovery identified above; and (6) granting such further relief as the Court deems just and proper.

Dated: June 30, 2026
Respectfully submitted,

*/s/ Evan J. Cronin*
Evan J. Cronin
Plaintiff, Pro Se
211 W. Wacker Drive, Suite 120 #2217
Chicago, Illinois 60606
Tel.: +1 (312) 725-9960
legal@cronintaxservices.com