# EXHIBIT A

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

EVAN J. CRONIN,

      Plaintiff,

    v.

UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,

      Defendants.

No. 1:26-cv-03220

Judge Sara L. Ellis
Magistrate Judge Laura K. McNally

**DEFENDANTS TERMA PROJECT, INC., FRACTIONAL TAX, INC., FRACTIONAL TAX USA, LLC, CHANDLER MURPHY, AND NISHCHAL BASNYAT'S FEDERAL RULE 12(b)(6) MOTION <u>TO DISMISS AND SUPPORTING MEMORANDUM OF LAW</u>**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

LEGAL STANDARD ..................................................................................................... 6

ARGUMENT .................................................................................................................. 7

I.     Plaintiff's Illinois Right of Publicity Act Claim Must Be Dismissed ................ 7

II.    Plaintiff's Lanham Act Claim Fails Because There Was Never Any Likelihood Of Confusion Between His Services And Those Of The Fractional Tax Defendants. .................................................................................. 9

III.    Plaintiff's Illinois Uniform Deceptive Trade Practices Act Claim Fails Because The Lanham Act Claim Fails. ....................................................... 12

IV.    Plaintiff's Common Law Unfair Competition/Passing Off Claim Fails Because There Was Never Any Likelihood Of Confusion Between His Services And Those Of The Fractional Tax Defendants. ...................................................................................................... 13

V.    Plaintiff's Breach Of Contract Claim Is Insufficiently Pled. ........................... 13

VI.    Plaintiff's Fraudulent Inducement/Fraudulent Concealment Claim Fails. ....................................................................................................... 16

        A.    *Plaintiff Has Failed To Sufficiently Plead A False Statement Of Material Fact Or Justifiable Reliance.* ............... *16*

        B.    *Plaintiff's Fraudulent Concealment Claim Fails Due To The Absence Of A Fiduciary Relationship Between the Parties.* ............................................................................................ *17*

VII.    Plaintiff's Unjust Enrichment Claim Is Insufficiently Pled. ............................ 18

VIII.    Plaintiff's Illinois Wage Payment And Collection Act Claim Is Legally Insufficient. ......................................................................................... 19

IX.    Plaintiff's Illinois Whistleblower Act Claim Fails Because He Was An Independent Contractor And Not An Employee. ........................................ 22

X.    Plaintiff's Retaliatory Discharge Claim Likewise Fails Because He Was An Independent Contractor. ................................................................... 22

CONCLUSION .............................................................................................................. 24

**TABLE OF AUTHORITIES**

CASES

*3M Co. v. Cont'l Diamond Tool Corp.*, Cause No. 1:21-cv-274-HAB, 2022 U.S. Dist. LEXIS 115780 (N.D. Ind. June 30, 2022) ................................................................ 10

*Abrams v. Echlin Corp.*, 174 Ill. App. 3d 434, 528 N.E.2d 429, 434 (1st Dist. 1988) ................. 23

*Antsy Labs, LLC v. Individuals*, No. 22 C 1801, 2022 U.S. Dist. LEXIS 218881 (N.D. Ill. Dec. 5, 2022) ........................................................................................................... 12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......................................................................................... 6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ......................................................................... 6

*Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323, 859 N.E.2d 1188 (2d Dist. 2006) ......... 7

*Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788 (N.D. Ill. 2016) ............................. 6

*Bo Turek v. Revolution Glob., LLC*, No. 25-cv-01842, 2026 U.S. Dist. LEXIS 52349 (N.D. Ill. Mar. 13, 2026) ....................................................................................................... 17

*Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6299, 2018 U.S. Dist. LEXIS 39404 (N.D. Ill. Mar. 9, 2018) .................................................................................................................. 9, 10

*Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647 (N.D. Ill. 2020) ........................................................ 20

*Carey v. Elec. Contracting, Inc. v. First Nat'l Bank*, 74 Ill. App. 3d 233 392 N.E.2d 759 (2d Dist. 1979) ......................................................................................................... 18

*Cent. States v. Miller*, No. 20-cv-00593, 2020 U.S. Dist. LEXIS 273184 (N.D. Ill. 2020) ..... 7, 20

*Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) ................................................... 19

*Connick v. Suzuki Motor Co.*, 675 N.E.2d 584 (Ill. 1996) ........................................................... 18

*Dinerstein v. Google*, LLC, 73 F.4th 502 (7th Cir. 2023) ............................................................ 15

*Energy Intel. Grp., Inc. v. Constellation Energy Generation, LLC*, No. 20-cv-3983, 2022 U.S. Dist. LEXIS 52020 (N.D. Ill. Mar. 23, 2022)...................................................................................... 16

*Fair Isacc Corp. v. TransUnion, LLC*, No. 17-cv-8318, 2019 U.S. Dist. LEXIS 51011 (N.D. Ill. Mar. 27, 2019)................................................................................................................................. 6

*Greater Rockford Airport Auth. v. Schenker, Inc.*, No. 3:24-cv-50398, 2025 U.S. Dist. LEXIS 44786 (N.D. Ill. Mar. 12, 2025) .................................................................................................... 14

*Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809 (N.D. Ill. 2016) .................................................... 9

*Herberger v. Vill. of Bourbonnais*, No. 25-cv-02045, 2025 U.S. Dist. LEXIS 202227, (C.D. Ill. Oct. 14, 2025) ................................................................................................................................ 23

*Herman v. Rock Gate Cap., LLC*, 2026 U.S. Dist. LEXIS 70439 (N.D. Ill. March 30, 2026)....... 1

*Hoseman v. Weinschneider*, 322 F.3d 468 (7th Cir. 2003)............................................................. 16

*In re Dealer Mgmt. Sys. Antitrust Litig., MDL 2817*, 680 F. Supp. 3d 1011 (N.D. Ill. 2023)...... 13

*Koveleskie v. SBC Cap. Mkts.*, 167 F.3d 361 (7th Cir. 1999)......................................................... 7

*Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2011 U.S. Dist. LEXIS 140446 (N.D. Ill. Dec. 7, 2011) ................................................................................................................... 9

*Mercis v. Individuals, Corps, Ltd. Liab. Cos., P'ships, & Unincorporated Assocs.*, No. 24 C 5853, 2025 U.S. Dist. LEXIS 29352 (N.D. Ill. Feb. 6, 2025) ........................................................... 13

*Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 762 N.E.2d 1 (1st Dist. 2001)............... 17

*Morse v. Donati*, 136 N.E.3d 1043 (2d Dist. 2019)....................................................................... 15

*Neuros Co. v. Kturbo, Inc.*, 698 F.3d 514 (7th Cir. 2012)............................................................ 12

*New Horizons Elecs. Mktg., Inc. v. Clarion Corp. of Am.*, 561 N.E.2d 283 (2d Dist. 1990) ....... 22

*Our Pet Project LLC v. Int'l Paper Co.*, No. 22-cv-1209, 2023 U.S. Dist. LEXIS 113279 (N.D. Ill. June 30, 2023)................................................................................................................................ 18

iii

*Ratchford v. Aeg Ventures*, No. 17 C 7368, 2019 U.S. Dist. LEXIS 233197 (N.D. Ill. Mar. 11, 2019) ............................................................................................................................ 9

*Rodriguez v. Progressive Treatment Sols., LLC*, No. 25-cv-1019, 2026 U.S. Dist. LEXIS 52346 (N.D. Ill. Mar. 13, 2026) ...................................................................................... 17

*Slowinski v. HP Hood LLC*, No. 23-cv-03207, 2026 U.S. Dist. LEXIS 69452 (N.D. Ill. Mar. 31, 2026) .............................................................................................................. 19

*Theys v. Dental Intel., Inc.*, No. 25-cv-02464, 2026 U.S. Dist. LEXIS 46654 (N.D. Ill. Mar. 6, 2026) ........................................................................................................ 18, 19

*Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494 (Ill. 2009) ................................................. 23

*Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 Ill. App. LEXIS 679, 196 N.E.3d 571 (1st Dist. 2021) .............................................................................................................. 8

*Weil v. Bayer Healthcare, LLC*, No. 15-cv-11519, 2016 U.S. Dist. LEXIS 206537 (N.D. Ill. Sep. 14, 2016) ....................................................................................................... 13

*Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012) ................................. 17

*Woodard v. Victory Recs., Inc.*, No. 11 C 7594, 2016 U.S. Dist. LEXIS 42863 (N.D. Ill. Mar. 31, 2016) ............................................................................................................... 9

**STATUTES**

15 U.S.C. § 1125 ............................................................................................................... 9

28 U.S.C. § 1332 ............................................................................................................. 15

740 ILCS 174 .................................................................................................................. 22

765 ILCS 1075 .................................................................................................................. 7

815 ILCS 510 .................................................................................................................. 12

820 ILCS 115 ............................................................................................................. 20, 22

**RULES AND REGULATIONS**

FED. R. CIV. P. 10 ................................................................................................................ 6, 20

FED. R. CIV. P. 9 .................................................................................................................... 14

**DEFENDANTS TERMA PROJECT, INC., FRACTIONAL
TAX, INC., FRACTIONAL TAX USA, LLC, CHANDLER MURPHY,
AND NISHCHAL BASNYAT'S FEDERAL RULE 12(b)(6) MOTION
TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat (collectively the "Fractional Tax Defendants"), through their attorneys, Goldberg Segalla LLP submit the following Motion to Dismiss Pursuant to Rule 12(b)(6) of the federal rules of civil procedure and supporting Memorandum of Law:[1]

## INTRODUCTION

Plaintiff – an independent contractor – entered into a contract with Fractional Tax, Inc. ("FTINC") to provide tax-related services for clients. As part of this agreement, Plaintiff expressly authorized FTINC's use of his name and likeness in promotional materials. FTINC terminated the contract after a short period time, as was its right. Plaintiff's current lawsuit followed.

The Complaint alleges violations under the Illinois Right of Publicity Act (Count I), false endorsement under the Lanham Act (Count II), deceptive trade practices under the Illinois Uniform Deceptive Trade Practices Act (Count III), common law unfair competition (Count V), breach of contract (Count VI), common law fraudulent inducement and concealment (Count VII), unjust enrichment (Count VIII), violations under the Illinois Wage Payment and Collection Act (Count IX), violations under the Illinois Whistleblower Act (Count X), and common law retaliatory discharge (Count XI) against the Fractional Tax Defendants. Critically, Plaintiff contractually agreed to allow the use of his name and likeness in promotional material, he was an independent contractor and not an employee of FTINC and otherwise fails to sufficiently allege facts that

---

[1] The Fractional Tax Defendants previously filed a Motion to Compel Arbitration. (Dkt. No. 26). By filing this Motion to Dismiss, these Defendants are not waiving their right to arbitration. *Herman v. Rock Gate Cap., LLC*, 2026 U.S. Dist. LEXIS 70439, *13 (N.D. Ill. March 30, 2026) (explaining that defendants did not waive right to arbitration by filing their motion to compel arbitration "concurrently" with their motion to dismiss).

1

support his entitlement to relief. Accordingly, as detailed below, the Court should dismiss all claims against the Fractional Tax Defendants.

## STATEMENT OF FACTS

On January 7, 2025, Plaintiff and Defendant Nishchal Basnyat ("Mr. Basnyat"), on behalf of FTINC, executed a Service Contract, along with three ancillary agreements (collectively, the "Agreements")—the Form of Non-Solicitation Agreement ("NSA"), the Non-Disclosure Agreement ("NDA"), and the Content Assignment and Use of Name Approval Agreement ("Content Agreement").[2] (*See* Ex. B-2(f) and Ex. B-2(g) to Compl. for Decl. and Inj. Relief, and Damages ("Compl.") at 91-108, Dkt. No. 1.) Pursuant to the Service Contract, Plaintiff agreed to provide various tax-related services for FTINC clients and prospects including reviewing and preparing tax returns; conducting tax and financial consultations; providing representation before taxing authorities; providing bookkeeping, write-up, and review services; researching and drafting memoranda on various tax issues; overseeing client engagements, projects, and services; as well as training and developing FTINC team members. (*See* Ex. B-2(f) to Compl. at 94.)

The Parties further agreed that Plaintiff was an independent contractor and negotiated an invoicing schedule wherein Plaintiff would provide FTINC with invoices for his services twice per month and FTINC would remit payment for such invoices within ten (10) days. (*See* Ex. B-2(b) to Ex. B-2(d) to Compl. at 84-88; Ex. B-2(f) to Compl. at 94-95; Ex. E-2 to Compl. at 151.) Plaintiff and FTINC agreed that "FTINC may terminate this agreement, without cause, with thirty (30) days' written notice" to Plaintiff. (Ex. B-2(f) to Compl. at 92.) The Agreements further provided that, upon termination, "[Plaintiff] agrees to participate in a good faith transition to ensure

---

[2] As an aside, Terma Project, Inc. ("Terma"), Fractional Tax USA LLC ("FTUSA"), and Chandler Murphy ("Ms. Murphy") were not signatories to these agreements. However, Terma and Ms. Murphy took part in recruiting Plaintiff and negotiating the Agreements. Terma is the parent company of FTUSA which, in turn, is the parent company of FTINC. Ms. Murphy is the Director of Operations for Terma.

the FTINC's continued operations are not disrupted" and that "[Plaintiff] is held accountable for [Plaintiff's] obligations while protecting FTINC from unnecessary disruptions or financial losses due to noncompliance."  (*Id.* at 93.)

Moreover, by executing the Content Agreement, Plaintiff expressly agreed as follows:

> (i) I hereby irrevocably assign and allow the Company to *use, in its sole discretion, my name, biodata, picture, and/or video* in connection with the Intellectual Property and Company Content on any "by line," heading, or on the 'About Us' page. This includes, but is not limited to, the *use of my name, biodata, picture, and/or video in related websites, social media channels, newsletters, and email communications or future applications ("apps") or other technologies related to the business of the Company*. Notwithstanding the foregoing, the Company is not obligated to credit me with any of the Intellectual property and Company Content.

> (ii)  I agree that *upon termination of this Agreement*, the Company may retain and continue to use *my name in work products or contributions I created during my engagement*, including but not limited to articles, videos, or other deliverables, as part of the Company's intellectual property. However, I understand that the Company will remove my name, biodata, and references to my association with the Company from the team page, "About Us" section, or similar materials on its websites and presentation documents. If I discover that my name or biodata remains on the "About Us" page or team page of the Company on any materials or platforms following termination, with the exception of aforementioned deliverables like blog articles or videos made for the Company, I agree to notify the Company in writing and allow the Company thirty (30) days from the date of notice to investigate and, where appropriate, remove such references.

(Ex. B-2(g) to Compl. at 106) (emphasis added).

Importantly, the term "Company Content" – which was available for use by FTINC – includes content created by Plaintiff or his team:

> I hereby allow the Company to use and exploit, in any manner it deems appropriate, content created by me or my team for any purpose including but not limited to online publication, software and/or technological applications, physical publication in the form

3

of books, booklets, or in any other way it deems appropriate.

(Ex. B-2(g) to Compl. at 105.)  Accordingly, the use of Plaintiff's identity is directly tied to Company Content and was freely available for use by FTINC.  (Ex. B-2(g) to Compl. at 105 - 06.)

As permitted by the Content Agreement, and with full participation of the Plaintiff, FTINC sought to apply to tax and tax related job proposals on Upwork. To facilitate the process, FTINC utilized Upwork's Agency Account functionality, which expressly permits team members to submit job proposals on behalf of fellow agency team members.  (Ex. C-2(a) to Compl, at pg. 121) ("To help keep agency workflows centralized and running smoothly, business managers can submit a proposal on behalf of *any* agency member") (emphasis added).  Plaintiff voluntarily accepted FTINC's invitation to join and become part of the FTINC Agency Account—a step that required Plaintiff's own acceptance through his personal Upwork account—and thereafter Plaintiff agreed to have job proposals submitted using his name, on behalf of the FTINC Agency Account. (Ex. B-1(a) to Compl. at 74; Ex. B-2(g) to Compl. at 106; Ex. C-1 to Compl. at 115.)

Between February 27, 2025 and March 12, 2025, FTINC sent several client proposals offering various tax services on behalf of Plaintiff on Upwork, utilizing his name and photograph, as permitted by the Content Agreement.  (Ex. B-2(g) to Compl. at 105 - 06.)  Throughout the relevant period, Plaintiff had full access to view proposals submitted in his name and did not object to the use of his name or to the submission of proposals on his behalf. (Ex. D-1(c) to Compl. at 78).  The exhibits to the Complaint demonstrate that he was actively reviewing proposals submitted in his name on Upwork, written by other team members, and coordinating with FTINC on how to respond. (Ex. D-1(c) to Compl. at 137) ("I haven't done anything with this one [because] the reply seemed fishy but let me know if you are more familiar/want me to proceed.")

On March 12, 2025, Plaintiff contacted Ms. Murphy to express his concern regarding the

4

purported accuracy of the proposals sent on his behalf, although he did not take issue with the fact that FTINC was sending those proposals on his behalf. (Ex. E-1 to Compl. at 148.) Plaintiff did not express any objection to the proposals being submitted on his behalf, provided that they were accurate. (*Id.*) ("I'd appreciate it if we could establish a more thorough process for selecting jobs and ensuring proposals accurately reflect our services and track record, *especially if they continue to be submitted in my name*.") (emphasis added). In response to Plaintiff's email, the proposal initiative was ceased completely on March 12, 2025, the same day Plaintiff first expressed any concern, at which point no further proposals were sent on Plaintiff's behalf. (Ex. F-2 to Compl. at 158.)

On March 26, 2025, Plaintiff contacted Ms. Murphy to propose modifications to the scope of services and payment terms outlined in the Service Contract. (Ex. E-2 to Compl. at 150-52.) Plaintiff did not present any objections to or seek clarification of the terms of the Content Agreement. (*Id.*) Two days later, Plaintiff sent an additional email to Ms. Murphy, wherein he, for the first time, explicitly expressed his objections to proposals being sent at FTINC's discretion, without his input, and outlining the purported "professional, contractual, and legal" violations he believed had occurred in connection with the proposals sent on his behalf. (Ex. F-1 to Compl. at 155-56.)

On March 28, 2025, Ms. Murphy responded to Plaintiff's correspondence, disagreeing with Plaintiff's characterization of the events that had allegedly transpired, and clarifying that any purported inaccuracies in the proposals were "inadvertent clerical matters". (Ex. F-2 to Compl. at 158.) Ms. Murphy advised Plaintiff that "[n]o proposals have been sent since March 12, 2025, when the proposal effort was ceased completely", that all submitted and active proposals on the Upwork platform had been withdrawn, and that no future discussions with prospects will occur in

his name, despite the Content Agreement. (Ex. F-2 to Compl. at 158.) Ms. Murphy also provided Plaintiff with a notice of termination of the Service Contract without cause, advising that the agreement would terminate on April 28, 2025, and that they had provided some clients on whose matters Plaintiff was working with the opportunity to engage Plaintiff directly if they so chose. (Ex. F-2 to Compl. at 158; Ex. F-3 to Compl. at 160-61.)

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, not the merits of the allegations." *Fair Isacc Corp. v. TransUnion, LLC*, No. 17-cv-8318, 2019 U.S. Dist. LEXIS 51011, at *3 (N.D. Ill. Mar. 27, 2019). "A district court's analysis under Rule 12(b)(6) 'rests on the complaint, and [the court] construe[s] it in the light most favorable to the plaintiffs, accepting as true all well-pleaded facts alleged and drawing all permissible inferences in their favor.'" *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 791 (N.D. Ill. 2016) (citation omitted).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 578 (2009), and raises the right to relief above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (explaining that "a formulaic recitation of the elements of a cause of action will not do.") Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citation omitted).

Importantly, "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). When exhibits contradict the factual

6

allegations of a complaint, those exhibits control "where those exhibits are attached to the complaint." *Cent. States v. Miller*, No. 20-cv-00593, 2020 U.S. Dist. LEXIS 273184, *10 (N.D. Ill. 2020) (*citing Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (explaining that, where the allegations of a complaint are contradicted by exhibits attached to the complaint, "the exhibits trump the allegations.")  As discussed below, all of Plaintiff's claims must be dismissed.[3]

## ARGUMENT

### I.     PLAINTIFF'S ILLINOIS RIGHT OF PUBLICITY ACT CLAIM MUST BE DISMISSED.

Plaintiff's Illinois Right of Publicity Act ("IRPA") claim must be dismissed for two reasons.  First, Illinois law applies a one-year statute of limitations to IRPA claims. *Blair v. Nev. Landing P'ship*, 369 Ill. App. 3d 318, 323, 859 N.E.2d 1188, 1192 (2d Dist. 2006).  To determine whether a plaintiff's claim has been filed outside of this statute of limitations, courts must first determine the date on which the cause of action accrued. *Id.*  Generally, a cause of action in tort accrues at the time when plaintiff's interest is invaded. *Id.*

Here, Plaintiff contends that the Fractional Tax Defendants violated IRPA by submitting proposals in his name, yet no proposals were submitted after March 12, 2025.  (Ex. F-2, Compl, at 158).  Plaintiff's belief that proposals were submitted after that date is contradicted by the Complaint's exhibits, which confirm that "[t]he example you referenced was a proposal submitted on February 27, 2025, not March 27, 2025." (*Id.*)  Plaintiff's IRPA claim is time-barred because the lawsuit was not filed until March 23, 2026.  (Dkt. No. 1).

Second, in Illinois, the right of publicity is a freely transferrable property right that can be used by another person for commercial purposes, provided that user obtains prior written consent. 765 ILCS 1075/30(a). *Watson v. Legacy Healthcare Fin. Servs., LLC*, 2021 Ill. App. LEXIS 679,

---

[3] Plaintiff resides in Illinois and the relevant events occurred in Illinois. Accordingly, the law of Illinois governs this case. *Koveleskie v. SBC Cap. Mkts.*, 167 F.3d 361, 366-67 (7th Cir. 1999).

at \*26, 196 N.E.3d 571, 583-84 (1st Dist. 2021) ("The Publicity Act provides that '[t]he rights under this Act are property rights that are freely transferable.'")

Here, by executing the Content Agreement, Plaintiff expressly agreed to the following:

> I hereby irrevocably assign and allow the Company to use, *in its sole discretion*, my name, biodata, picture, and/or video in connection with the Intellectual Property and Company Content on any "by line," heading, or on the "About Us" page. This includes, but is not limited to, the use of my name, biodata, picture, and/or video in any related websites, social medial channels, newsletters and email communications or future applications ("apps") or other technologies related to the business of the Company.

(Ex. B-2(g) to Compl. at 106) (emphasis added). Plaintiff alleges that he only authorized FTINC to use his name, biodata, picture, and video in company content, work product, and other contributions that he created and that he "did not authorize third parties to submit third-party-authored, first-person client-facing proposals under Plaintiff's identity without Plaintiff's authorship, review, or approval[.]" (Compl. ¶ 111.) However, the aforementioned contract language confirms that Plaintiff clearly consented to the use of his name and likeness for commercial purposes and at FTINC's sole discretion.

Finally, Plaintiff's own exhibits establish that, even after executing the Content Agreement, Plaintiff had full access to review the use of his name on Upwork and was coordinating with, reviewing, and actively participating in proposals submitted in his name by other team members. (Ex. D-1(c), Compl. at 137). Throughout this period, despite having full visibility into and actively participating in the use of his name, Plaintiff never objected to or complained about such use.

These facts demonstrate Plaintiff's unambiguous assignment of his publicity rights to be used by FTINC in the course of their contractual relationship. Again, an exhibit to the Complaint contradicts Plaintiff's allegations. Accordingly, Plaintiff's IRPA claim (Count I) fails and should be dismissed with prejudice.

8

**II.    PLAINTIFF'S LANHAM ACT CLAIM FAILS BECAUSE THERE WAS NEVER ANY LIKELIHOOD OF CONFUSION BETWEEN HIS SERVICES AND THOSE OF THE FRACTIONAL TAX DEFENDANTS.**

False endorsement (or association)[4] occurs when a person's identity is connected to a service in a way that causes the likelihood of consumer confusion about the person's sponsorship or approval of the service. *Hart v. Amazon.com, Inc.*, 191 F. Supp. 3d 809, 819 (N.D. Ill. 2016); 15 U.S.C. § 1125(a)(1)(A); *Ratchford v. Aeg Ventures*, No. 17 C 7368, 2019 U.S. Dist. LEXIS 233197, at *11-12 (N.D. Ill. Mar. 11, 2019) ("A false endorsement claim based on the unauthorized use of one's identity 'alleges the misuse of a trademark, . . . such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product") (citation omitted); *Woodard v. Victory Recs., Inc.*, No. 11 C 7594, 2016 U.S. Dist. LEXIS 42863, at *28 (N.D. Ill. Mar. 31, 2016) ("Importantly, the likelihood-of-confusion inquiry focuses on confusion by the customer.")

Under the law, Plaintiff must show a likelihood that consumers will be confused as to his affiliation to, or sponsorship or approval of, the Fractional Tax Defendants and/or their services. *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 6299, 2018 U.S. Dist. LEXIS 39404, at *16 (N.D. Ill. Mar. 9, 2018). Likelihood of confusion cannot be found, however, if the plaintiff was in fact associated with the defendant. *Id.* at *16-17.

In *Bovinett*, the plaintiff ("Bovinett")—a model and actor—appeared for and participated in a photoshoot for HomeAdvisor—the defendant—which was facilitated by his agent. *Id.* at *1. Thereafter, Bovinett's agent signed a consent and release form provided by HomeAdvisor on

---

[4] Courts have explained that a false endorsement claim is a type of false association claim because it alleges the misuse of a trademark in the form of "a symbol or device such as visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product." *Maremont v. Susan Fredman Design Grp., Ltd.*, No. 10 C 7811, 2011 U.S. Dist. LEXIS 140446, at *10 (N.D. Ill. Dec. 7, 2011).

Bovinett's behalf, which stated that Bovinett agreed to convey his rights in the photos to HomeAdvisor for use "in advertising, promotions, and any other use, and in any media, desired by HomeAdvisor in its sole discretion, including but not limited to display on the HomeAdvisor website, in television commercials, and on the Internet." *Id.* at *2. Bovinett alleged that HomeAdvisor's personnel assured his agent that, notwithstanding the language of the consent and release, HomeAdvisor would not use the photos in any video format. *Id.* Thereafter, HomeAdvisor used the photos in television commercials, Bovinett sued for, among other things, false endorsement, and HomeAdvisor moved to dismiss. *Id.*

The District Court granted HomeAdvisor's motion to dismiss this claim, reasoning that consumers are not likely to be confused as to the affiliation between Bovinett and HomeAdvisor because the two were, in fact, affiliated:

> Bovinett admits he agreed to pose as a model for HomeAdvisor's photoshoot with the knowledge that HomeAdvisor intended to use those photos in advertising. His qualm is thus not over whether he agreed to be affiliated with or signal his public approval for HomeAdvisor—he did both—he simply objects that HomeAdvisor unlawfully incorporated that affiliation into a video format. Put simply, the allegedly tortious commercials might well leave viewers with the impression that Bovinett endorses HomeAdvisor. *But that impression is accurate, at least as of the time Bovinett sold his rights in these photos, so the impression cannot confuse anyone.*

*Id.* at *16-17. (emphasis added); *see also 3M Co. v. Cont'l Diamond Tool Corp.*, Cause No. 1:21-cv-274-HAB, 2022 U.S. Dist. LEXIS 115780, at *15-16 (N.D. Ind. June 30, 2022) (dismissing Lanham Act claim by former employees because any attribution or endorsement made during employment "was true when made.")

Here, Plaintiff was clearly associated with FTINC and the Fractional Tax Defendants and had contractually authorized the use of his name and likeness for commercial purposes. To the extent that clients or prospects who received proposals were under the impression that Plaintiff

was associated with FTINC, that impression was accurate and authorized by Plaintiff himself. Moreover, the Fractional Tax Defendants cannot be subject to liability based on allegations concerning Upwork's conduct. (Compl. ¶ 124.)

Plaintiff contends that an April 4, 2025 customer review concerning services he performed *during* his contractual relationship with FTINC could cause confusion regarding the nature of the Parties' present affiliation. (Compl. ¶ 76; Ex. I-1 to Compl. at 190.) The review refers to "Evan and his team" and allegedly "remained publicly associated with Plaintiff after his disassociation from the agency[.]" (Compl. ¶ 76; Ex. I-2 to Compl. at 194.) However, Plaintiff concedes that he personally performed the services for this client while affiliated with FTINC. (*Id.*) The client's review—dated twenty-four (24) days before the Service Contract was scheduled to terminate—reflects that experience. As such, no confusion as to who performed the service can exist.

Plaintiff also points to several instances that he deems to be actual confusion, one of which is a situation where "[a] prospective client responded to "Evan" by name, scheduled a meeting, engaged the thread as though the solicitation originated from Plaintiff, and later returned to the thread and contacted Plaintiff's individual profile directly after the agency contract was closed." (Compl. ¶ 122.) This example, however, demonstrates the opposite of Plaintiff's argument because the prospective client was never confused about who they were contacting or whose services they were to receive.

When this prospective client responded to FTINC's proposal messages, these responses were routed to Plaintiff such that he could view and respond to the messages and provide his services. This was true of any of the other proposals sent on Plaintiff's behalf. (Ex. D-1(c) to Compl. at 136) (demonstrating Plaintiff's ability to read and reply to prospective clients' responses to proposals). Moreover, the prospective client then proceeded to contact Plaintiff directly when

11

he could not be reached following the termination of the Service Contract, further demonstrating that the prospect was not confused about Plaintiff's then present affiliation with FTINC. (Compl. ¶ 122.) The allegations of the Complaint are insufficient to state a claim.

Finally, Plaintiff references an additional example of alleged actual confusion, where, "nineteen days after Murphy closed the relevant contract, Zephrina Cazaubon returned to the original agency contract thread on Upwork to ask how to contact Plaintiff for an update on pending work, and also contacted Plaintiff's individual profile directly." (Compl. ¶ 77.) In other words, Ms. Cazaubon understood that Plaintiff may no longer be associated with FTINC and, when she could not contact him after the termination of the Service Contract, she sought him out and contacted him directly. This is the antithesis of confusion.

Accordingly, Plaintiff's Lanham Act claim fails and Count II should be dismissed with prejudice.

### III. PLAINTIFF'S ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT CLAIM FAILS BECAUSE THE LANHAM ACT CLAIM FAILS.

The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") states, in relevant part, that an entity engages in a deceptive trade practice when, in the course of doing its business, it passes off services as those of another or when it causes a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval of services or as to the affiliation, connection, or association with or certification by another. 815 ILCS 510/2(a)(1)-(3).

The IUDTPA is "a statute generally thought indistinguishable from the Lanham Act except of course in its geographical scope[.]" *Neuros Co. v. Kturbo, Inc.*, 698 F.3d 514, 523 (7th Cir. 2012); *see also Antsy Labs, LLC v. Individuals*, No. 22 C 1801, 2022 U.S. Dist. LEXIS 218881, at *10 (N.D. Ill. Dec. 5, 2022) ("Plaintiffs' false designation of origin and IUDTPA claims involve the same elements, and so the Court analyzes them together."); *see also Mercis v. Individuals,*

*Corps, Ltd. Liab. Cos., P'ships, & Unincorporated Assocs.*, No. 24 C 5853, 2025 U.S. Dist. LEXIS 29352, at *12 (N.D. Ill. Feb. 6, 2025) ("though the Moving Defendants do not move explicitly to dismiss the false designation of origin or deceptive trade practices claims, a plaintiff must show the same elements as the trademark infringement claim to prevail at the motion to dismiss stage, and so the Court analyzes the three claims together.")

Accordingly, for the reasons outlined in Section II above, Plaintiff's IUDTPA claim fails and Count III should be dismissed with prejudice.

## IV. PLAINTIFF'S COMMON LAW UNFAIR COMPETITION/PASSING OFF CLAIM FAILS BECAUSE THERE WAS NEVER ANY LIKELIHOOD OF CONFUSION BETWEEN HIS SERVICES AND THOSE OF THE FRACTIONAL TAX DEFENDANTS.

In Illinois, common law unfair competition has been codified by the IUDTPA, and such claims are analyzed together with Lanham Act claims. *Weil v. Bayer Healthcare, LLC*, No. 15-cv-11519, 2016 U.S. Dist. LEXIS 206537, at *8 (N.D. Ill. Sep. 14, 2016). Accordingly, for the same reasons discussed above, Plaintiff's common law and unfair competition claim fails and Count V should be dismissed with prejudice.

## V. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS INSUFFICIENTLY PLED.

To succeed on a breach of contract claim under Illinois law, "a plaintiff must plead and prove (1) the existence of a valid and enforceable contract, (2) substantial performance by the plaintiff, (3) breach by the defendant, and (4) damages caused by that breach." *In re Dealer Mgmt. Sys. Antitrust Litig., MDL 2817*, 680 F. Supp. 3d 1011, 1020 (N.D. Ill. 2023) (citation omitted).

Plaintiff has failed to sufficiently allege a breach of contract claim for several reasons. First, Plaintiff alleges that FTINC breached the contract by issuing proposals that "suggested FTINC was a licensed CPA firm and that FTINC offered audit-relates services despite the contractual limitation." (Compl. ¶ 156.) The contract provision on which Plaintiff relies relates

13

to limitations on services that *Plaintiff* would perform: ". . . no services should be provided to clients that would suggest that FTINC is a licensed CPA firm." (Ex. B-2(f) to Compl. at 94.) In other words, Plaintiff attempts – but fails – to state a breach of contract based on a purported misrepresentation.

Setting aside the fact that Plaintiff's allegations are untrue, Plaintiff cannot seek recovery based on the notion that FTINC purportedly made misrepresentations about itself – which it did not. Moreover, neither FTINC nor Terma breached any agreement by using Plaintiff's name and likeness in promotional materials given that this conduct was expressly authorized by contract. As discussed, Plaintiff freely assigned his rights to use his "name, biodata, picture, and/or video" in various content by FTINC at its sole discretion. (Ex. B-2(g) to Compl. at 106.) Accordingly, Plaintiff's breach of contract claim is insufficient because the Complaint fails to allege an actual breach of any contract term. *Greater Rockford Airport Auth. v. Schenker, Inc.*, No. 3:24-cv-50398, 2025 U.S. Dist. LEXIS 44786, at *5 (N.D. Ill. Mar. 12, 2025) ("Illinois observes the 'four-corner' rule, so if a contract's language is 'facially unambiguous,' courts interpret it as a matter of law, without relying on parol evidence") (citation omitted).

Further, Plaintiff has failed to allege any purported misrepresentation with the particularity required by federal law given that the Complaint does not specifically allege that the Fractional Tax Defendants expressly stated that Plaintiff was required to or capable of performing work as a licensed CPA. FED. R. CIV. P.. 9 (b) ("Fraud or Mistake; Conditions of Mind. In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.")

Second, Plaintiff alleges that FTINC and Terma breached the Service Contract by "revoking Plaintiff's access to Slack, MyTax, and email during the contractual notice period, despite representing that duties would continue through April 28, 2025, and that transition

14

instructions would follow." (Compl. at ¶ 157.) However, Plaintiff fails to identify any contract provision that was supposedly breached by the alleged conduct.

Third, Plaintiff claims that FTINC and Terma breached the Service Contract by failing to pay Plaintiff $269.00 for services rendered as well as purported past and present professional, reputational, economic, and functional harm as well as unspecified out-of-pocket unreimbursed expenses. (Compl. at ¶¶ 86, 88, 158.) However, Plaintiff cannot seek recovery for services or expenses that were never invoiced – which Plaintiff fails to allege. (Ex. B-2(f) at Compl. at 94 ) (requiring payment "**within 10 business days after invoicing**. . .") (emphasis in original). Nor can Plaintiff seek recovery for damages that are speculative, at best. *Morse v. Donati*, 136 N.E.3d 1043, 1049 (2d Dist. 2019) ("To recover damages in a breach-of-contract action, a plaintiff must establish an _actual_ loss resulting from the breach.") (emphasis added); *see also Dinerstein v. Google*, LLC, 73 F.4th 502, 515 (7th Cir. 2023) ("A plaintiff seeking money damages has standing to sue in federal court only for harms that have in fact materialized.")

Finally, as discussed herein, all of Plaintiff's claims should be dismissed. However, should this Honorable Court conclude that Plaintiff is entitled to pursue a breach of contract claim for $269.00, there is no basis for diversity jurisdiction and the lawsuit should dismissed.[5] Accordingly, Plaintiff's breach of contract claim fails and Count VI should be dismissed with prejudice.

---

[5] If the federal claims are dismissed and the sole basis for federal jurisdiction is diversity of citizenship, Plaintiff cannot satisfy the jurisdictional requirement for his breach of contract claim. 28 U.S.C. § 1332 (a) ("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . .")

15

VI.     **PLAINTIFF'S FRAUDULENT INDUCEMENT/FRAUDULENT CONCEALMENT CLAIM FAILS.**

A.     **Plaintiff Has Failed To Sufficiently Plead A False Statement Of Material Fact Or Justifiable Reliance.**

To establish fraudulent inducement, Plaintiff must allege: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Energy Intel. Grp., Inc. v. Constellation Energy Generation, LLC*, No. 20-cv-3983, 2022 U.S. Dist. LEXIS 52020, at *10-11 (N.D. Ill. Mar. 23, 2022); *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003).

The Content Agreement authorized the use of Plaintiff's name and likeness in company content.  Plaintiff's fraudulent inducement claim contends that he was purportedly misled into signing that agreement by Ms. Murphy's use of a single word – "approved" – in a pre-contract negotiation email.  However, Plaintiff voluntarily signed the Content Agreement and cannot now complain that the Fractional Tax Defendants engaged in conduct that was expressly authorized by that very Agreement.

Notably, an exhibit to the Complaint includes in email from Plaintiff concerning the draft of the contract that was revised prior to execution.  In that email, save for two comments that are irrelevant, here, the Plaintiff himself stated that "everything looks good" and separately that "everything looks good to me."  (Ex. B-2(d) to Compl. at 88.)  In other words, Plaintiff claims he was misled into signing a contract that included language which he himself reviewed and approved.  Plaintiff's formulaic allegation of justifiable reliance is contradicted by the express language of the Content Agreement that Plaintiff reviewed, approved, and signed.

Furthermore, even after reviewing and executing the Content Agreement, Plaintiff not only retained full access to review all uses of his name on Upwork, but Plaintiff's own exhibits confirm

16

that he actively reviewed, coordinated with, and participated in proposals submitted in his name by other team members. At no point during the relevant period did Plaintiff object to, question, or otherwise express any concern regarding the use of his name, despite having continuous visibility into and participating in the very conduct he now challenges. (Ex. D-1(c), Compl. at 137.) Accordingly, Plaintiff's fraudulent inducement claim is contradicted by Plaintiff's own words, is insufficiently pled, and must be dismissed.

### B. Plaintiff's Fraudulent Concealment Claim Fails Due To The Absence Of A Fiduciary Relationship Between the Parties.

"[T]o state a claim for common law fraudulent concealment, a plaintiff must allege that the defendant [intentionally] concealed a material fact when he was under a duty to disclose that fact to the plaintiff" and plead reliance on the intentionally withheld information. *Bo Turek v. Revolution Glob., LLC*, No. 25-cv-01842, 2026 U.S. Dist. LEXIS 52349, at *14, 16 (N.D. Ill. Mar. 13, 2026) (citations omitted)*; Miller v. William Chevrolet/Geo*, 326 Ill. App. 3d 642, 657, 762 N.E.2d 1, 13 (1st Dist. 2001) ("In order to establish a common law claim for fraudulent concealment, a plaintiff must prove that the defendant was under a duty to disclose the fact concealed.").

A duty to disclose arises where the plaintiff and defendant are in a fiduciary relationship or "where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996)). The standard for alleging a special trust relationship is "extremely similar to that of a fiduciary relationship" and "state and federal courts in Illinois have rarely found a special trust relationship to exist in the absence of a more formal fiduciary one." *Rodriguez v. Progressive Treatment Sols., LLC*, No. 25-cv-1019, 2026 U.S. Dist. LEXIS 52346, at *29-30 (N.D. Ill. Mar. 13, 2026).

17

Accordingly, "Illinois courts have consistently held that arms' length business transactions . . . generally do not give rise to a special relationship and concomitant duty to speak." *Our Pet Project LLC v. Int'l Paper Co.*, No. 22-cv-1209, 2023 U.S. Dist. LEXIS 113279, at *10 (N.D. Ill. June 30, 2023) (citation omitted).

Here, the Plaintiff was an independent contractor who dealt at arms' length with the Fractional Tax Defendants. There was never any fiduciary or otherwise special relationship between these parties and the fraudulent concealment claim fails. *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996) (finding that the plaintiffs did not sufficiently allege that they had a confidential or fiduciary relationship with the defendant or that defendant "was in a position of superiority over them" and holding that "[w]ithout such allegations, plaintiff's complaint did not allege a duty to disclose material facts which could give rise to a claim for common law fraudulent concealment."); *Carey v. Elec. Contracting, Inc. v. First Nat'l Bank*, 74 Ill. App. 3d 233, 238, 392 N.E.2d 759, 763-64 (2d Dist. 1979) (holding that no fiduciary or confidential relationship existed between parties who were businesses, "theoretically operating at arm's length, and their relationship [being] governed according to the contracts between them[,]" even where normal trust existed between the businesses and one of the parties had a slightly dominant business position over the other).

## VII.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM IS INSUFFICIENTLY PLED.

To state a claim of unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Theys v. Dental Intel., Inc.*, No. 25-cv-02464, 2026 U.S. Dist. LEXIS 46654, at *30 (N.D. Ill. Mar. 6, 2026) (citation omitted).

18

In this case, Plaintiff alleges that the unauthorized use of his name and likeness in company content was "unjust." Plaintiff's allegations are, yet again, contradicted by the exhibits to the Complaint, which confirm that Plaintiff himself authorized the use of his name and likeness during the relevant timeframe. Such authorized conduct is hardly "unjust".

Moreover, under Illinois law, unjust enrichment claims are treated as derivative of another valid underlying claim and must necessarily "'stand or fall' with the related claim." *Slowinski v. HP Hood LLC*, No. 23-cv-03207, 2026 U.S. Dist. LEXIS 69452, at \*13 (N.D. Ill. Mar. 31, 2026); *see also Theys*, 2026 U.S. Dist. LEXIS 46654, at \*31 (explaining that unjust enrichment is not a separate cause of action under Illinois law and will be tied to another claim based on the same improper conduct, standing or falling with the related claim). Accordingly, Plaintiff's unjust enrichment claim fails given that all other claims fail, as well.[6]

## VIII. PLAINTIFF'S ILLINOIS WAGE PAYMENT AND COLLECTION ACT CLAIM IS LEGALLY INSUFFICIENT.

Under the Illinois Wage Payment and Collection Act, employees are defined as "any individual permitted to work by an employer in an occupation", explicitly excluding any individual:

> (1) who has been and will continue to be free from control and direction over the performance of his work, both under his contract of service with his employer and in fact; and (2) who performs work which is either outside the usual course of business or is performed outside all of the places of business of the employer unless the employer is in the business of contracting with third parties for the placement of employees; and (3) who is an independently established trade, occupation, profession or business.

---

[6] The Fractional Tax Defendants recognize that the unjust enrichment count is pled in the alternative. However, the unjust enrichment claim is not legally valid given the existence of valid and enforceable agreements between the parties. *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 615 (7th Cir. 2013) (holding that where an express contract exists between the parties, "there is no room for an implied contract" and unjust enrichment will only be available "when there is no adequate remedy at law.")

19

820 ILCS 115/2.

Generally, courts may only consider the well-pleaded allegations in a plaintiff's complaint in deciding a defendant's motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bruger v. Olero, Inc.*, 434 F. Supp. 3d 647, 651 (N.D. Ill. 2020). However, documents that are "referred to in the plaintiff's complaint" may be considered where they are "central to his claim." *Id.* at 651 (quoting *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002)). Federal law provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." FED. R. CIV. P. 10(c). Moreover, when exhibits contradict the factual allegations of a complaint, those exhibits control "where those exhibits are attached to the complaint." *Cent. States*, 2020 U.S. Dist. LEXIS 273184, at *10 (N.D. Ill. 2020) (*citing Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (explaining that, where the allegations of a complaint are contradicted by exhibits attached to the complaint, "the exhibits trump the allegations.")

The Service Contract expressly defines Plaintiff as an independent contractor. (Ex. B-2(f) to Compl. at 95) ("[Plaintiff] acknowledges that he is an independent contractor and is responsible for any and all taxes and other payments due on Payment Amount."). Further, the Service Agreement identifies a non-exhaustive list of services Plaintiff agrees to provide in his capacity as an independent contractor. (Ex. B-2(f) to Compl. at 94.)

Plaintiff nevertheless claims—in the Complaint and in his email exchanges with Ms. Murphy—that tasks such as researching prospective client engagements or reviewing or weighing in on tax returns drafted by others—fell outside the scope of the Service Contract. Ex. (E-2 in Compl. at 150-51.) Yet, the scope of services defined by the Service Contract was intentionally broad—which is something to which Plaintiff had agreed in the negotiated Service Contract and

20

later acknowledged. (Ex. E-2 in Compl. at 151) ("none of this is about pushing back on contractual scope—I understand that the agreement leaves room for flexibility.") The Parties' Service Contract and Plaintiff's admission therefore directly contradict any assertion that FTINC exercised improper controlled by assigning work outside the parameters of the Parties' negotiated Service Contract.

Further, Plaintiff's allegations and supporting exhibits are replete with Plaintiff describing himself as an autonomous professional with an independently established business and determining his own availability and workflow—i.e., an independent contractor. (Compl. ¶ 11) ("Plaintiff conducts his practice under the Evan. J. Cronin CPA & Tax Services, sometimes also referred to as Cronin Tax Services"); (Compl. ¶ 40) ("Plaintiff operates an independent tax practice . . . and uses his name, photograph, CPA credential, professional biography, and related identifiers in commerce in connection with the marketing of his services."); (Ex. E-2 to Compl. at 151) ("as a contractor managing my own practice in parallel" and "as an independent practitioner, I also don't work based on fixed hour commitments."); (Ex. F-1 to Compl. at 156) (adding "Independent Contractor to Fractional Tax, Inc." to his signature block). Plaintiff has repeatedly represented that he operates an independent CPA practice in both the Complaint and his communications with Defendants. (Compl. ¶¶ 10-11, 40; Ex. E-2 of Compl. at 151.) Moreover, Plaintiff performed certain specialized professional services that are distinct from FTINC's ordinary business operations including accounting, bookkeeping and other services. This further demonstrates that Plaintiff was not a Fractional Tax Defendant employee. (Ex. B-2(f) to Compl. at 94.)

The fact that FTINC required timekeeping is hardly sufficient to transform Plaintiff's status from that of independent contractor to employee. (Compl. at ¶ 183.) Moreover, Plaintiff's formulaic and conclusory allegations that FTINC and Terma controlled "the manner, means,

21

systems and continuation of Plaintiff's work" (Compl. at ¶ 183.) are contradicted by Plaintiff's own words (discussed above) confirming that he was always an independent contractor. The exhibits attached to the Complaint trump the allegations that are inconsistent with Plaintiff's conclusory allegations. Accordingly, Plaintiff falls outside of the IWPCA's definition of "employee" and, as a consequence, that claim (Count IX) should be dismissed with prejudice.

**IX. PLAINTIFF'S ILLINOIS WHISTLEBLOWER ACT CLAIM FAILS BECAUSE HE WAS AN INDEPENDENT CONTRACTOR AND NOT AN EMPLOYEE.**

Plaintiff seeks recovery against FTINC based on purported violations of the Illinois Whistleblower Act ("IWA"). However, an essential element of a claim under Section 15(b) or 20 of the IWA is that the plaintiff must have been an employee of the defendant. The IWA defines "employee" in a manner that is virtually identical to the IWPCA's definition. 740 ILCS 174/5; 820 ILCS 115/2. As discussed, Plaintiff was an independent contractor and not an FTINC employee. Accordingly, the IWA claim fails and must be dismissed.

**X. PLAINTIFF'S RETALIATORY DISCHARGE CLAIM LIKEWISE FAILS BECAUSE HE WAS AN INDEPENDENT CONTRACTOR.**

Lastly, Plaintiff alleges a common law retaliatory discharge claim, contending that the Service Contract was terminated because Plaintiff objected to the use of his name and likeness in client proposals and his threats of reporting FTINC regarding same. (Compl. ¶¶ 196-99.) As a threshold matter, courts have held that "an independent contractor cannot assert a claim of retaliatory discharge." *New Horizons Elecs. Mktg., Inc. v. Clarion Corp. of Am.*, 561 N.E.2d 283, 285 (2d Dist. 1990). As discussed above, Plaintiff was an independent contractor and his retaliatory discharge claim fails as a matter of law.

Moreover, Plaintiff's retaliatory discharge claim must plead and prove, among other things, that the purported discharge violated "a clearly mandated public policy." *Herberger v. Vill. of*

22

*Bourbonnais*, No. 25-cv-02045, 2025 U.S. Dist. LEXIS 202227, at \*18 (C.D. Ill. Oct. 14, 2025) (quoting *Sullivan v. Progressive Cas. Ins. Co.*, No. 03 C 8487, 2004 U.S. Dist. LEXIS 14322, at \*3 (N.D. Ill. July 27, 2004)). Illinois courts have "consistently sought to restrict the common law tort of retaliatory discharge." *Id.* at \*18 – 19 (quoting *Fisher v. Lexington Health Care, Inc.*, 722 N.E.2d 1115, 1121 (Ill. 1999)). Accordingly, to be actionable, a retaliatory discharge claim "must not be of a purely personal nature but must 'strike at the heart of a citizen's social rights, duties, and responsibilities.'" *Abrams v. Echlin Corp.*, 174 Ill. App. 3d 434, 438, 528 N.E.2d 429, 434 (1st Dist. 1988) (citation omitted). Moreover, an employee's cause of action for retaliatory discharge will fail where he does not identify a "'specific' expression" or "clear mandate of public policy that is violated by the employee's discharge." *Turner v. Mem'l Med. Ctr.*, 233 Ill. 2d 494, 503 (Ill. 2009).

Here, Plaintiff's claim is based on the contention that FTINC engaged in unauthorized use of his name and likeness. (Compl. ¶ 197). However, as discussed at length, FTINC's use of Plaintiff's likeness was contractually authorized by Plaintiff, himself, and such use hardly violates any public policy. Finally, Plaintiff's boilerplate allegations about "a clear mandate of public policy" are insufficient to state a viable claim. (Compl. ¶ 197). Accordingly, Plaintiff's retaliatory discharge claim is insufficiently pled and must be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat respectfully request that this Honorable Court enter an order as follows:

(i)     granting the Fractional Tax Defendants' Motion to Dismiss;

(ii)     dismissing with prejudice Counts I-III and V-XI of the Complaint as against the Fractional Tax Defendants; and

(iii)     providing for any other just and proper relief.

Dated: July 1, 2026

Respectfully submitted,

GOLDBERG SEGALLA LLP

By:   */s/ Patrycia Piaskowski*

Attorneys for Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax, USA, LLC; Chandler Murphy; and Nishchal Basnyat

Chad J. Layton, ARDC No. 6243339
Patrycia Piaskowski, ARDC No. 6346239
GOLDBERG SEGALLA LLP
222 West Adams Street, Suite 2250
Chicago, Illinois 60606
(312) 572-8400
clayton@goldbergsegalla.com
ppiaskowski@goldbergsegalla.com

24

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| EVAN J. CRONIN,<br><br>   Plaintiff,<br><br>  v.<br><br>UPWORK, INC.; UPWORK GLOBAL, LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>   Defendants. | Case No. 1:26-cv-03220<br><br>Judge Sara L. Ellis<br>Magistrate Judge Laura K. McNally |

**STATEMENT OF EFFORTS TO REACH AN ACCORD REGARDING DEFENDANTS TERMA PROJECT, INC., FRACTIONAL TAX, INC., FRACTIONAL TAX USA, LLC, CHANDLER MURPHY, AND NISHCHAL BASNYAT'S FEDERAL RULE 12(b)(6) MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Local Rule 37.2 and Judge Ellis' Case Procedures on Motion Practice, on June 11, 2025, counsel for Defendants Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat (collectively the "Fractional Tax Defendants") provided Plaintiff Evan J. Cronin ("Plaintiff") with a memorandum summarizing the arguments that they intended to raise in their Motion to Dismiss and citing to legal authority for the same.

On June 29, 2026, Chad J. Layton (counsel for the Fractional Tax Defendants) and Plaintiff engaged in a telephonic "meet-and-confer" conference. The parties were unable to reach an agreement regarding the issues. Accordingly, the Fractional Defendants have filed a Motion to Dismiss.

1

Dated: July 1, 2026            Respectfully submitted,

GOLDBERG SEGALLA LLP

By:   */s/ Patrycia Piaskowski*

Attorneys for Defendants
Terma Project, Inc.; Fractional Tax, Inc.;
Fractional Tax USA, LLC; Chandler Murphy;
and Nishchal Basnyat

Chad J. Layton, ARDC No. 6243339
Patrycia Piaskowski, ARDC No. 6346239
GOLDBERG SEGALLA LLP
222 West Adams Street, Suite 2250
Chicago, Illinois 60606
(312) 572-8400
clayton@goldbergsegalla.com
ppiaskowski@goldbergsegalla.com

2