**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>    Plaintiff,<br><br>    v.<br><br>UPWORK INC., UPWORK GLOBAL LLC, TERMA PROJECT, INC., FRACTIONAL TAX, INC., FRACTIONAL TAX USA, LLC, CHANDLER MURPHY, and NISHCHAL BASNYAT,<br><br>    Defendants. | Case No. 1:26-cv-03220<br><br>Hon. Sara L. Ellis<br><br>Hon. Laura K. McNally |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS UPWORK GLOBAL LLC
AND UPWORK INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION**

## TABLE OF CONTENTS

Page

I. Introduction.................................................................................................. 1

II. Relevant Background..................................................................................... 2

    A. Upwork Operates a Marketplace; It Is Not a Party to User-to-User Service Contracts. ................................................................................. 2

    B. Plaintiff Agreed to Upwork's User Agreement to Use the Marketplace. .............. 3

    C. The User Agreement's Arbitration Provision and Delegation Clause.................... 4

    D. Plaintiff's Claims Arise Out of or Relate to His Relationship with Upwork.......... 6

III. Legal Standard ............................................................................................. 7

IV. Argument ..................................................................................................... 8

    A. Plaintiff has a Contractual Duty to Arbitrate His Claims With Upwork in JAMS in Santa Clara, California.................................................................... 8

    B. The Parties Delegated Arbitrability to the Arbitrator. ........................................ 11

    C. The Court Should Stay the Claims Against Upwork. .......................................... 15

V. Conclusion ................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aste v. Metro. Life Ins. Co.*,
  728 N.E.2d 629, 632 (Ill. App. Ct. 1st Dist. 2000) ...................................................................9

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ...........................................................................................................7, 14

*Breckenridge v. Cambridge Homes, Inc.*,
  616 N.E.2d 615, 620 (Ill. App. Ct. 2d Dist. 1993) ................................................................11

*Bricker v. Heinz*,
  2025 IL App (4th) 250264-U, *appeal denied sub nom. Bricker,* 273 N.E.3d
  819 (Ill. 2025) .......................................................................................................................14

*Davis v. Fenton*,
  26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) ..............................................................................11

*Domer v. Menard, Inc.*,
  116 F.4th 686 (7th Cir. 2024) .................................................................................................9

*Doyle v. Holy Cross Hospital*,
  708 N.E.2d 1140 (Ill. 1999) ....................................................................................................9

*First Options of Chicago, Inc. v. Kaplan*,
  514 U.S. 938 (1995) ................................................................................................................8

*Franklin v. Nanavati*,
  2020 IL App (2d) 190710, 176 N.E.3d 919 .............................................................................8

*Gersten v. Intrinsic Techs., LLP*,
  442 F. Supp. 2d 573 (N.D. Ill. 2006) .....................................................................................10

*Gore v. Alltel Commc'ns, LLC*,
  666 F.3d 1027 (7th Cir. 2012) ...............................................................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
  586 U.S. 63 (2019) ........................................................................................................7, 8, 13

*Herman v. Rock Gate Cap., LLC*,
  No. 25 C 1088, 2026 WL 879746 (N.D. Ill. Mar. 30, 2026) (Ellis, J.) ....................................7

*Hopkins v. Dell Techs., Inc.*,
  No. 22-CV-2464-DWD, 2023 WL 3791722 (S.D. Ill. June 2, 2023) ......................................13

*Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*,
659 F.2d 836, 841 (7th Cir. 1981) ................................................................10

*Kemph v. Reddam*,
No. 13 CV 6785, 2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) ...............................12

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*,
174 F.3d 907 (7th Cir. 1999) ........................................................................14

*L.A. by & through Andrews v. Take-Two Interactive Software, Inc.*,
No. 22-CV-50071, 2022 WL 22909765 (N.D. Ill. Oct. 3, 2022) (Johnston, J.) ....................12

*Lee v. Uber Techs., Inc.*,
208 F. Supp. 3d 886 (N.D. Ill. 2016) ...............................................................12

*Matricciani v. Am. Homeowner Pres., Inc.*,
718 F. Supp. 3d 825, 836 (N.D. Ill. 2024) ...........................................................11

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983).......................................................................................14

*New Prime Inc. v. Oliveira*,
586 U.S. 105 (2019).....................................................................................7

*Rent-A-Center, W., Inc. v. Jackson*,
561 U.S. 63 (2010)....................................................................................7, 11

*Sgouros v. TransUnion Corp.*,
817 F.3d 1029 (7th Cir. 2016) .......................................................................8, 9

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
553 F. Supp. 3d 452 (N.D. Ill. 2021) (Gottschall, J.) ...............................................13

**Statutes**

9 U.S.C. § 3....................................................................................................2, 15

Illinois Consumer Fraud and Deceptive Business Practices Act
815 ILCS 505/2.........................................................................................2
815 ILCS 505/10a......................................................................................2

Illinois Right of Publicity Act
765 ILCS 1075/30......................................................................................2
765 ILCS 1075/40......................................................................................2
765 ILCS 1075/50......................................................................................2

Illinois Uniform Deceptive Trade Practices Act
    815 ILCS 510/2..................................................................................................................2
    815 ILCS 510/3..................................................................................................................2

Lanham Act, 15 U.S.C. § 1125(a) ...........................................................................................2

## I.   INTRODUCTION

Defendants Upwork Global LLC and Upwork Inc.[1] (together, "Upwork") respectfully submit this Memorandum of Law in support of Upwork's Motion to Compel Arbitration and Stay Action.

Upwork operates an online marketplace located at www.Upwork.com ("the Upwork Platform") that helps independent freelancers and clients find one another, contract with one another, and exchange payment for freelancer-provided services. Upwork itself does not perform freelancer services; it does not employ the freelancers who advertise their services on its platform; and it is not a party to the user-to-user service contracts that freelancers and clients enter through the marketplace. To use the Upwork marketplace, every user, including Plaintiff Evan J. Cronin ("Plaintiff"), must affirmatively agree to Upwork's Terms of Service, including the User Agreement. The User Agreement contains a mandatory arbitration provision (Section 14, *et seq.*) and a clear and unmistakable delegation clause that commits questions of arbitrability to the arbitrator. Plaintiff agreed to the User Agreement on two separate occasions: first to version 6.7 on October 17, 2024, and then to version 6.8 on March 4, 2025. Each version contains an arbitration provision and delegation clause.

Plaintiff claims that he is a CPA who used the Upwork Platform as part of the business development and marketing of his practice. Dkt. No. 1 ("Compl."), ¶¶ 40-41. He alleges that he entered into a contract with Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat (collectively, the "Fractional Tax Defendants") through a posting on Upwork. Compl., ¶¶ 42-44. According to Plaintiff, the Fractional Tax Defendants

---

[1] Upwork Inc. and Upwork Global LLC are not two separate entities; they are the same company. Declaration of Amy Le, attached hereto at Exhibit A ("Le Decl."), ¶ 5. In 2025, Upwork Inc. was statutorily converted from a corporation to a limited liability company and renamed as Upwork Global LLC. *Id.*

1

then misused his name, image, CPA credentials, and professional identity in client-facing solicitations. *Id.* ¶ 140. Plaintiff alleges that the architecture and authorship attribution mechanics of the Upwork Platform allowed those proposals to be displayed as authored by Plaintiff without pre-submission review or approval mechanism available to Plaintiff. *Id.* ¶¶ 53; 76. Every claim he asserts against Upwork, (1) a violation of the Illinois Right of Publicity Act, 765 ILCS 1075/30, /40 & /50; (2) contributory liability for false endorsement or false association under the Lanham Act, 15 U.S.C. § 1125(a); (3) the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 & /3; and (4) the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 & /10a — arises out of, or relates to, his User Agreement, his relationship with Upwork, and his use of Upwork's Services to contract with the Fractional Tax Defendants. *Id.* ¶¶ 107-145. Plaintiff has repeatedly conceded this point through prior filings with the Court. *See generally* Dkt. 36-1.

Critically, the Court need not reach the merits of Plaintiff's claims. Plaintiff entered into binding User Agreements that contain arbitration provisions and delegation clauses, wherein he agreed that all gateway questions — including any challenge to formation, scope, validity, or enforceability — must be decided by the arbitrator. Upwork respectfully requests that the Court compel Plaintiff to arbitrate his claims against Upwork in JAMS in Santa Clara, California, and stay this action under 9 U.S.C. § 3.

## II.     RELEVANT BACKGROUND

### A.     Upwork Operates a Marketplace; It Is Not a Party to User-to-User Service Contracts.

Upwork operates an online marketplace, the Upwork Platform, which helps users find one another, enter into service relationships, exchange services, and make and receive payment. Le Decl., ¶¶ 6-7. Upwork itself does not perform any freelancer services and it does not employ the individuals who advertise their services on the marketplace. *Id.*, ¶ 8. Upwork is not a party to the

service contracts that users enter into with each other, which includes any agreement between Plaintiff and the Fractional Tax Defendants. *Id*.

**B.      Plaintiff Agreed to Upwork's User Agreement to Use the Marketplace.**

Before users can create an account on the Upwork marketplace, they must agree to certain terms with Upwork (Upwork's Terms of Service), including the Upwork User Agreement. *Id*., ¶ 10. At all relevant times herein, when creating an account on the Upwork marketplace, users are presented with a hyperlink to the User Agreement and must check a box acknowledging that they "understand and agree to the Upwork Terms of Service, including the User Agreement," before they can proceed by clicking the "Create my account" button:



*Id*., ¶¶ 10-11, Ex. 1. It is not possible for a user to create an account without first checking the box

indicating the user's understanding and agreement. *Id*., ¶ 12. If a user attempts to proceed without checking the box, the webpage will display a message asking the user to accept the terms before proceeding.



*Id*., ¶ 13, Ex. 2.

Upwork's records reflect that on October 17, 2024, Plaintiff created an account on the Upwork platform and accepted version 6.7 of Upwork's User Agreement, *Id*., ¶ 14, Ex. 3, and that on March 4, 2025, Plaintiff accepted version 6.8 of Upwork's User Agreement, *Id*., ¶ 15, Ex. 4. Plaintiff admits he agreed to version 6.8. *See* Dkt. 36-1, at 8 ("Plaintiff's claims accrued, and his Notice and his counsel's demand were served, while Version 6-8 was in effect"). In addition, Plaintiff entered into a service contract with the Fractional Tax Defendants through the Upwork platform, thereby again acknowledging and agreeing to Upwork's Terms of Service, including the User Agreement. *Id*., ¶ 18.

**C.      The User Agreement's Arbitration Provision and Delegation Clause.**

The first pages of both version 6.7 and version 6.8 of the User Agreement that Plaintiff agreed to begin with a conspicuous "This is important" notice advising the user that the User Agreement is legally binding and that, among other things, Section 14 contains an arbitration agreement and a class-action waiver, and that the user must read it and agree to it if the user wishes to use Upwork:

4

> *This is important:* … You understand that by using the Upwork Site or Site Services (which generally means using in any way our work marketplace Upwork.com or our applications), and *by clicking accept when prompted on the Site*, you agree to be bound by all agreements which constitute Upwork's Terms of Service, and you agree that the 'Terms of Service' means every agreement linked herein and includes the Fee and ACH Authorization Agreement, Privacy Policy, Terms of Use, applicable Escrow Instructions and this User Agreement, *including Section 14 which contains an arbitration agreement* and class action waiver that applies to claims brought against Upwork in the United States. *You have an opportunity to opt out of arbitration as provided in Section 14* … If you want to use our work marketplace or any of our services (which we refer to altogether as Services), whether just by looking around or by registering an account, *you must first read and agree to this Agreement* (including the dispute resolution and arbitration provisions in Section 14).

Le Decl., ¶¶ 14-15, Exs. 3-4, at Intro (emphasis added). Notably, there was also a mechanism for Plaintiff to opt out of arbitration.

In both version 6.7 and version 6.8 of the User Agreement, the beginning of Section 14 states that all disputes between users and Upwork relating to users' relationship with Upwork are subject to arbitration:

> [U]nless you opt out as provided in Section 14.4.4 below, you, Upwork, and our Affiliates agree to resolve any and all claims, disputes, or controversies that arise out of or relate to this Agreement, the other Terms of Service, your relationship with Upwork (including without limitation any claimed employment with Upwork or one of our Affiliates or successors), the termination of your relationship with Upwork, or the Services (each a '**Claim**' and collectively, '**Claims**') through binding arbitration on an individual basis in accordance with this Section 14 (sometimes referred to as the 'Arbitration Provision')…
>
> **By agreeing to arbitrate disputes under this Agreement, THE PARTIES ARE EXPRESSLY GIVING UP ANY AND ALL RIGHTS TO A JURY TRIAL OR COURT TRIAL BEFORE A JUDGE. The parties instead elect to have Claims resolved by arbitration. The arbitrator's decision shall be final and binding on the parties, subject to review on the grounds set forth in the Federal Arbitration Act ('FAA').**

*Id*., ¶¶ 14-15, Exs. 3-4, § 14.1 (bold in original).

In both version 6.7 and version 6.8 of the User Agreement, the Arbitration Provision also

provides that "[e]xcept as otherwise provided in this Agreement, arbitration will be conducted in Santa Clara County, California in accordance with the JAMS Comprehensive Arbitration Rules and Procedures' Optional Expedited Arbitration Procedures then in effect." *Id*., ¶¶ 14-15, Exs. 3-4, § 14.4.1. In each version, the Arbitration Provision also includes information about where "[t]he applicable JAMS arbitration rules may be found," including a URL. *Id*.

The Arbitration Provision delegates the authority to decide arbitrability to an arbitrator. Both versions state:

> [T]he arbitrator shall have exclusive jurisdiction to decide all disputes arising out of or relating to the arbitrability of a Claim or the interpretation, enforcement, or application of this Arbitration Provision, ***including the enforceability, revocability, scope, breach, or validity*** of the Arbitration Provision or any portion of the Arbitration Provision, except as expressly provided below. ***All such matters shall be decided by an arbitrator and not by a court***. The parties expressly agree that, except as provided by the Class and Collective Waiver section below, the arbitrator and not a court will decide any question of whether the parties agreed to arbitrate, including but not limited to any claim that ***all or part of this Arbitration Provision, this Agreement, or any other part of the Terms of Service is void or voidable***.

*Id*., ¶¶ 14-15, Exs. 3-4, § 14.4.2 (emphasis added).

**D.      Plaintiff's Claims Arise Out of or Relate to His Relationship with Upwork.**

In his Complaint, Plaintiff alleges that he used the Upwork marketplace for business development and marketing, and maintained a freelancer profile reflecting his CPA credentials and professional background. Compl., ¶¶ 40-41. He alleges that he responded through Upwork to a job posting titled "Great CPA / EA needed for a growing Tax Firm," created by the Fractional Tax Defendants. *Id*. ¶ 42. He became associated with the Fractional Tax agency account on Upwork, *Id*. ¶ 53, and he purchased Upwork Freelancer Plus and Upwork Connects. *Id*. ¶ 135. He further alleges that the Upwork Platform's profile-attribution features displayed, maintained, or failed to correct materials associating him with communications he disputes. *Id*. ¶¶ 4, 75-77. He also admits he opened a support case with Upwork over the platform, and he sent a demand letter

6

to the email address identified in the User Agreement, *Id.* ¶¶ 66, 70.

### III.     LEGAL STANDARD

The FAA reflects "a liberal federal policy favoring arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted). This Court recently described the legal standard for a motion to compel arbitration as follows:

> Section 3 of the Federal Arbitration Act ('FAA') requires courts to stay a proceeding and to compel arbitration of any matter covered by a valid arbitration agreement. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). Agreements mandating arbitration are 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.' 9 U.S.C. § 2. Contract defenses, such as fraud, duress, and unconscionability, apply to agreements to arbitrate. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010). The party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000).

*Herman v. Rock Gate Cap., LLC*, No. 25 C 1088, 2026 WL 879746, at *3 (N.D. Ill. Mar. 30, 2026) (Ellis, J.)

A court typically determines the enforceability of an arbitration provision, but "parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center*, 561 U.S. at 68-69; *see also New Prime Inc. v. Oliveira*, 586 U.S. 105, 111-12 (2019) ("A delegation clause gives an arbitrator authority to decide even the initial question whether the parties' dispute is subject to arbitration."). "[P]arties may delegate threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). Where the parties have delegated arbitrability to the

arbitrator, the court's role is more limited still: the court enforces the delegation, and the arbitrator decides the rest. *Henry Schein*, 586 U.S. at 68. When the parties' contract delegates the arbitrability question to an arbitrator, "a court possesses no power to decide the arbitrability issue. That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id*.

## IV.     ARGUMENT

### A.      Plaintiff has a Contractual Duty to Arbitrate His Claims With Upwork in JAMS in Santa Clara, California.

Whether the parties formed an arbitration agreement is governed by ordinary state-law contract principles. *First Options of Chicago*, 514 U.S. at 944. Plaintiff pleads that he resides in Illinois and purchased Upwork's Freelancer Plus subscription on November 11, 2024, as well as an annual Freelancer Plus membership on December 16, 2024. Compl., ¶¶ 9, 135. Additionally, both versions 6.7 and 6.8 of the User Agreement that Plaintiff agreed to provide that "[t]his Agreement, the Site Terms of Use, the other Terms of Service, and any Claim will be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law provisions; provided, however, that *any Claims made by any Freelancer located within the United States* will be governed by the law of the state in which such Freelancer resided at the time the dispute arose." Le Decl., ¶¶ 14-15, Exs. 3-4, § 14.2 (emphasis). Given that Plaintiff claims that he resides in Illinois, including when he complained to Upwork regarding Fractional Tax Defendants' actions, and that he is a Freelancer, Illinois contract-formation principles govern. Compl., ¶¶ 9, 135, Ex. G-1.

In Illinois, the core requirements for the formation of a contract are an offer, acceptance, and consideration. *Franklin v. Nanavati*, 2020 IL App (2d) 190710, ¶ 26, 176 N.E.3d 919, 924; *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016) ("In Illinois, as "in virtually

all jurisdictions," contract formation "requires mutual assent.").

Here, the answer to the first gateway question—whether there is a "written agreement to arbitrate" between the parties—is "yes." In this case, there is no question that there was an offer (i.e., use of Upwork's platform in exchange for abiding by certain terms) and an acceptance (i.e., the Electronic Record of Contract). Le Decl., ¶¶ 14-15, Exs. 3-4. Further, there can be no dispute as to whether the agreement to arbitrate was supported by sufficient consideration. Plaintiff was provided with access to other users on Upwork's platform, dispute resolution, and escrow and other payment services, in exchange for his agreement to, among other things, abide by the User Agreement. Even Plaintiff's promise to be bound by the arbitration process itself serves as adequate consideration. *See Aste v. Metro. Life Ins. Co.*, 728 N.E.2d 629, 632 (Ill. App. Ct. 1st Dist. 2000) ("Under both Illinois and federal law, a mutual promise to arbitrate is sufficient consideration to support an arbitration agreement.") (citing *Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 637 (7th Cir.1999); *Doyle v. Holy Cross Hospital*, 708 N.E.2d 1140, 1145 (Ill. 1999)).

There is no question that the parties consented to arbitration of disputes. A contract is formed when a website puts a reasonably prudent user on inquiry notice of the terms of the contract. "Illinois contract law requires that a website provide a user reasonable notice that his use of the site or click on a button constitutes assent to an agreement." *Sgouros*, 817 F.3d at 1036. "One way" that a website can do that is by using "clickwrap" agreements. *Domer v. Menard, Inc.*, 116 F.4th 686, 694 (7th Cir. 2024). A website, for example, "might be able to bind users to a service agreement by placing the agreement, or a scroll box containing the agreement, or a clearly labeled hyperlink to the agreement, next to an 'I Accept' button that unambiguously pertains to that agreement." *Sgouros*, 817 F.3d at 1036.

Here, Plaintiff had notice of the User Agreement. The User Agreement was not buried in fine print or tucked away in the footer of the webpage. Nor was Plaintiff required to scroll to read it. Instead, Plaintiff checked a box to acknowledge that he "underst[ood] and agree[d] to the Upwork Terms of Service, including the User Agreement," the User Agreement was hyperlinked directly above the "Create my account" button, and then only after indicating his acceptance could Plaintiff click the "Create my account" button. Le Decl., ¶¶ 10-12, Ex. 1.

In his Complaint, Plaintiff does not dispute that he was aware of the Terms of Service, including the User Agreements. In fact, he makes multiple references to the Terms of Service and the User Agreement throughout his pleading. *See, e.g.*, Compl., ¶ 13 (describing how Upwork Global Inc. was identified in the Upwork User Agreement and operated the platform through which he provided services), Ex. F-1, at ECF PageID #155 (email from Plaintiff to Defendant Murphy alleging violations of the Upwork Terms of Service), Ex. G-1, at ECF PageID #165 ("I am submitting this statement to formally report a serious violation of Upwork's Terms of Service"). Additionally, because Plaintiff claims that the Fractional Tax Defendants violated the Upwork agreements and because Plaintiff attempted to seek relief through the dispute procedures outlined in the Terms of Service, Plaintiff is estopped from arguing that he did not agree to the arbitration provision in the User Agreement. *See Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 (7th Cir. 1981) ("Hughes, in the peculiar circumstances before us, is estopped from denying J.A. the benefit of the arbitration clause with regard to claims that are as intimately founded in and intertwined with the underlying contract obligations as Hughes' claims appear to be here."); *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006) ("[A] party may be estopped from asserting that an arbitration clause contained in a particular document is inapplicable when that same party simultaneously claims the direct benefit of that

contract.") (citations omitted).

The User Agreement, in turn, goes out of its way to make clear that it includes an arbitration provision, with multiple references to arbitration on the first page, beginning with the second sentence, following a header in bold, "**This is important**." Le Decl., ¶¶ 14-15, Exs. 3-4. If Plaintiff did not read the User Agreement, Plaintiff has only himself to blame. *See Davis v. Fenton*, 26 F. Supp. 3d 727, 738 (N.D. Ill. 2014) (compelling arbitration where the plaintiff argued that "no one at the Law Office explained to her … that there was an arbitration clause in the retainer agreement" because "[u]nder Illinois contract law, 'a party to an agreement is charged with knowledge of and assent to the agreement signed.'") (citing *Melena v. Anheuser–Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006)); *Matricciani v. Am. Homeowner Pres., Inc.*, 718 F. Supp. 3d 825, 836 (N.D. Ill. 2024) (electronic signature of acknowledgment constituted acceptance of agreement); *Breckenridge v. Cambridge Homes, Inc.*, 616 N.E.2d 615, 620 (Ill. App. Ct. 2d Dist. 1993) ("A party who has had an opportunity to read a contract before signing, but signs before reading, cannot later plead lack of understanding.")).

### B. The Parties Delegated Arbitrability to the Arbitrator.

The Court's consideration of the scope of the arbitration provision is limited in this instance by the presence of a delegation clause. The User Agreement expressly states that JAMS, and not a court, is to determine issues related to arbitrability: "The arbitrator shall have exclusive jurisdiction to decide all disputes arising out of or relating to the arbitrability of a Claim or the interpretation, enforcement, or application of this Arbitration Provision, including the enforceability, revocability, scope, breach, or validity of the Arbitration Provision…." Le Decl., ¶¶ 14-15, Exs. 3-4, § 14.4.2. This delegation is sufficiently clear and unmistakable. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66, 68, 72 (2010) (holding that agreement which "provided that '[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive

11

authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable,'" constituted a clear and unmistakable delegation of arbitrability questions to the arbitrator); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016) (delegation clause providing that " 'disputes arising out of or relating to interpretation or application of this Arbitration Provision, including the enforceability, revocability or validity of the Arbitration Provision or any portion of the Arbitration Provision[ ] ... shall be decided by an Arbitrator and not by a court or judge' " met the "clear and unmistakable" standard); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (reaching same conclusion regarding delegation clause providing that " 'any dispute ... under this loan agreement will be resolved by binding arbitration" and "defin[ing] 'dispute' as 'including any issue concerning the validity, enforceability, or scope of this loan or the Arbitration agreement.'").

In addition, if there is any dispute on arbitrability, the Court should compel Plaintiff to arbitrate the arbitrability of Plaintiff's claims against Upwork because the User Agreement incorporates the JAMS Comprehensive Arbitration Rules, which evidences the parties' clear and unmistakable intent to delegate arbitrability. The JAMS Rules themselves authorize the arbitrator to decide arbitrability. *See* JAMS Comprehensive Arbitration Rule 11(b) (available at https://www.jamsadr.com/rules-comprehensive-arbitration, last accessed May 18, 2026) ("Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter."). Moreover, incorporation of arbitral rules such as JAMS constitutes clear and

unmistakable evidence of an intent to delegate arbitrability. *See, e.g.*, *L.A. by & through Andrews v. Take-Two Interactive Software, Inc.*, No. 22-CV-50071, 2022 WL 22909765, at *3 (N.D. Ill. Oct. 3, 2022) (Johnston, J.) ("By incorporation of the JAMS Rules, the parties have delegated threshold questions of contract validity with regard to the EULA and arbitrability of any issues therein to an arbitrator."); *see also Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021) (Gottschall, J.) (collecting authorities and observing that "[e]very federal court of appeals to consider the question–twelve of thirteen–has 'found that the incorporation of the AAA Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").

"When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract," and the court "possesses no power to decide the arbitrability issue," even if it thinks the argument for arbitration is wholly groundless. *Henry Schein*, 586 U.S. at 68. The clear-and-unmistakable standard is satisfied either by an express delegation clause or by incorporation of arbitral rules that themselves vest such authority in the arbitrator. *Hopkins v. Dell Techs., Inc.*, No. 22-CV-2464-DWD, 2023 WL 3791722, at *6 (S.D. Ill. June 2, 2023) ("[T]he express delegation provision and incorporation of the AAA and JAMS Rules here provide clear and unmistakable evidence of the parties' intent to delegate the threshold issues of arbitrability, scope, and enforceability to the arbitrator. As such, the Court must refer to the arbitrator the question of the agreement's arbitrability and scope.").

Once the Court determines that Plaintiff assented to the User Agreement, the inquiry ends and arbitrability, including any challenge Plaintiff may attempt to formation as to a particular Upwork entity, scope, or enforceability — must be decided by the arbitrator. *Henry Schein*, 586 U.S. at 68-69.

13

But, even if the Court were to take a preliminary look at the scope of the arbitrable issues in this case (which would be improper, in light of the parties' delegation), it would easily find that Plaintiff's claims are covered. Plaintiff broadly agreed to arbitrate "all claims, disputes, or controversies that arise out of or relate to this Agreement, the other Terms of Service, your relationship with Upwork (including without limitation any claimed employment with Upwork or one of our Affiliates or successors), the termination of your relationship with Upwork, or the Services (each a 'Claim' and collectively, 'Claims')." Le Decl., ¶¶ 14-15, Exs. 3-4, at § 14.1. Phrases like "arising out of or relating to" are construed broadly. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999). Additionally, "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

There is simply no reasonable interpretation under which Plaintiff's claim against Upwork relating to Plaintiff's freelancing through Upwork's platform does not fall within the scope of arbitrable claims. Plaintiff's claims depend entirely on the contractual and business relationship governed by the Terms of Service. Plaintiff complains of the architecture of the Upwork Platform and its responses to his concerns regarding the Fractional Tax Defendants' compliance with Upwork's Terms of Use. Those allegations necessarily "relate to" Plaintiff's relationship with Upwork, the Services provided through the platform, and the rights and obligations arising from the Terms of Service. Courts routinely hold that arbitration provisions containing "arising out of or relating to" language encompass claims that bear a significant relationship to the contractual relationship between the parties. *Kiefer Specialty Flooring*, 174 F.3d at 910 ("[A] broad arbitration clause 'does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between parties having a significant relationship to the contract regardless

14

of the label attached to the dispute.'") (quoting *J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A.*, 863 F.2d 315, 321 (4th Cir. 1988)); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012) (holding "arising out of or relating to" language is "extremely broad and capable of an expansive reach[,]" and "necessarily create[s] a presumption of arbitrability"). Accordingly, even if the Court were to conduct a scope analysis (which it should not because arbitrability has been delegated to the arbitrator), Plaintiff's claims fall within the arbitration agreement's expansive language and reach.

### C. The Court Should Stay the Claims Against Upwork.

When there is a valid arbitration agreement, the action must be stayed pending completion of the arbitration under both State and Federal law. *AT&T Mobility*, 563 U.S. at 344; *Bricker v. Heinz*, 2025 IL App (4th) 250264-U, ¶ 49, *appeal denied sub nom. Bricker,* 273 N.E.3d 819 (Ill. 2025) ("remand[ing] for the court to allow arbitration and to stay the proceedings pending the outcome of any arbitration."). Here, the User Agreement is governed by the FAA. Le Decl., ¶¶ 14-15, Exs. 3-4, at §§ 14.1, 14.2. The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, ***upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration*** under such an agreement, shall ***on application of one of the parties stay the trial of the action*** until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

For reasons stated above, the Plaintiff's claims against Upwork are subject to binding arbitration and this User Agreement is governed by the FAA. Accordingly, pursuant to 9 U.S.C. § 3, the Court should stay this action.

## V.    CONCLUSION

For the foregoing reasons, Defendants Upwork Inc. and Upwork Global LLC respectfully request that the Court enter an order (1) compelling Plaintiff to arbitrate his claims against Upwork before JAMS in Santa Clara, California, pursuant to versions 6.7 and 6.8 of the Upwork User Agreement, and (2) staying this action as to Upwork (and, to the extent the Court deems appropriate, in its entirety) pending the completion of arbitration.


**DATED**: July 22, 2026                                                    **BLANK ROME LLP**

*s/ Allison Powers*
Allison Powers
Gabrielle Ganze
444 W. Lake Street, 16th Floor
Chicago, IL 60606
Tel.: (312) 776-2546
Fax: (312) 896-9181
Email: allison.powers@blankrome.com
Email: gabrielle.ganze@blankrome.com

*Counsel for Defendants Upwork Inc. and*
*Upwork Global LLC*

16