**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>Plaintiff,<br><br>v.<br><br>UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>Defendants. | Case No. 1:26-cv-03220<br><br>Hon. Sara L. Ellis<br><br>Magistrate Judge Laura K. McNally |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO THE FRACTIONAL TAX DEFENDANTS' MOTION TO COMPEL ARBITRATION (Dkt. 26)**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1
BACKGROUND ........................................................................................................2
A. The Four-Agreement January 7, 2025 Package ..........................................................2
B. The Pre-Suit Record..............................................................................................3
C. The Arbitration Demand and the Parties' Conferral ....................................................4
ARGUMENT ............................................................................................................5
I. This Court Decides Every Gateway Question; Article XI Delegates Nothing ....................5
II. The Four Non-Signatory Movants Cannot Enforce Article XI ........................................6
A. The Motion Concedes Non-Signatory Status and Rests on Pleading, Not Evidence...6
B. Third-Party-Beneficiary, Agency, and Estoppel Theories Fail Under Illinois Law ....7
C. "Closely Related" Status and Unilateral Consent Fail on This Record .......................9
III. The Motion Has Not Shown Article XI Reaches Every Claim .......................................10
IV. Any Referred Claim Must Be Stayed, Not Dismissed....................................................13
V. FTINC's Pre-Suit Conduct and the Unsupported Fee Request .......................................13
A. FTINC Abandoned the Arbitral Path While Holding Plaintiff to the Agreement......13
B. The Contractual Fee Predicate Has Not Been Established.......................................14
CONCLUSION.........................................................................................................15

# TABLE OF AUTHORITIES

## CASES

*A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054 (7th Cir. 2018) .....5, 7
*Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012).....9
*AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000).....12
*Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025) .....13, 14
*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) .....7
*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986).....5, 12
*Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014 (7th Cir. 2024) .....1, 7, 8, 9, 10
*Cristales v. Scion Group LLC*, 478 F. Supp. 3d 845 (D. Ariz. 2020).....5
*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) .....5
*Gore v. Alltel Communications, LLC*, 666 F.3d 1027 (7th Cir. 2012).....11, 12
*Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010).....5, 13
*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) .....5
*Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir. 1993).....9
*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907 (7th Cir. 1999).....11, 12
*Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 U.S. Dist. LEXIS 41713 (N.D. Ill. May 14, 2009) .....8
*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022) .....2, 5
*Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266 (7th Cir. 1996).....13
*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) .....11
*Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748 (7th Cir. 2017) .....7, 8
*Smith v. Spizzirri*, 601 U.S. 472 (2024) .....13
*Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171 (Ill. App. Ct. 2014) .....9, 10
*Sosa v. Onfido, Inc.*, 8 F.4th 631 (7th Cir. 2021).....1, 6, 7, 8
*Tinder v. Pinkerton Security*, 305 F.3d 728 (7th Cir. 2002) .....5
*Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634 (7th Cir. 2002) .....11
*Willis Capital, LLC v. Belvedere Trading, LLC*, 29 N.E.3d 1078 (Ill. App. Ct. 2015) .....14
*Zurich American Insurance Co. v. Watts Industries, Inc.*, 417 F.3d 682 (7th Cir. 2005).....5

## STATUTES AND RULES

9 U.S.C. § 3.....13, 15
9 U.S.C. § 4.....15
Fed. R. Civ. P. 8(d) .....6, 12

Plaintiff Evan J. Cronin respectfully submits this Response in Opposition to the Motion to Compel Arbitration (the "Motion") **(Dkt. 26)** filed by Defendants Terma Project, Inc. ("Terma"); Fractional Tax, Inc. ("FTINC"); Fractional Tax USA, LLC ("FTUSA"); Chandler Murphy ("Murphy"); and Nishchal Basnyat ("Basnyat") (collectively, the "Fractional Tax Defendants"). It is supported by the Declaration of Evan J. Cronin **(Dkt. 47-1)** and an Exhibit Compendium **(Dkt. 47-2)** filed herewith; Compendium exhibits are cited as "Resp. Ex."

## INTRODUCTION

The Motion seeks one order compelling arbitration of all ten counts against all five movants, dismissing the Complaint or staying this action, and awarding fees and costs. **(Dkt. 26 at 15.)** It rests on Article XI of the Service Contract, one of four agreements executed on January 7, 2025. **(Dkt. 26-1 at 5.)**

The Motion concedes the threshold fact: "The Fractional Tax Defendants acknowledge that only Plaintiff and FTINC are signatories to the Service Contract and the Content Agreement." **(Dkt. 26 at 5.)** Basnyat signed all four agreements solely on FTINC's behalf, and no other movant signed any of them. **(Compl., Dkt. 1 Exs. B-2(f)–B-2(g) at 91–108; Cronin Decl. ¶ 6.)** That does not foreclose enforcement by a non-signatory, but a non-signatory "typically has no right to invoke an arbitration provision contained in that contract" unless the movant establishes a recognized state-law basis for enforcement. *Sosa v. Onfido, Inc.*, 8 F.4th 631, 639 (7th Cir. 2021); *see also Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1019–25 (7th Cir. 2024). None of the four movants has done so here.

Article XI contains no express delegation provision. Nor has the Motion established that Article XI reaches Plaintiff's identity claims. The January 7 package allocated the use of Plaintiff's name and likeness to the separately executed Content Agreement, the only instrument expressly

governing that subject, which contains no arbitration provision. **(Dkt. 26-2 at 2–3; Resp. Ex. 1.)** The Service Contract does not incorporate the Content Agreement, and Article XI contains no "arising out of or relating to" language extending arbitration to disputes under the other January 7 instruments. Plaintiff's statutory and common-law identity claims arise from independent duties; Count VI's contractual name-and-likeness theory rests on the Content Agreement. The FAA requires enforcement of the agreement the parties made; it does not authorize an arbitration-preferring rule that enlarges Article XI beyond it. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). Plaintiff does not dispute that he and FTINC executed the Service Contract or that it contains Article XI. The disputed questions are whether each movant may enforce Article XI, which claims fall within its text, and whether FTINC preserved the right to compel; Plaintiff will comply with the Court's resolution of those questions. **(Compl., Dkt. 1 ¶ 227 at 56; Resp. Ex. 8.)**

FTINC's own pre-suit conduct bears on the last of those questions. FTINC continued to insist that Plaintiff remained bound by the January 7 agreements while simultaneously terminating the practical means of continued performance and refusing further substantive engagement with his claims — yet it never invoked Article XI or identified arbitration as the required forum. **(Resp. Ex. 5; Compl., Dkt. 1 ¶¶ 65, 100 at 18, 28; Ex. F-3 at 160–161; Cronin Decl. ¶ 11.)** The Court should weigh that course in determining whether FTINC implicitly abandoned the right it now asserts. The Motion should be denied.

## BACKGROUND

### A. The Four-Agreement January 7, 2025 Package

On January 7, 2025, Plaintiff and FTINC executed four separate agreements in one DocuSign envelope, each carrying its own signature page executed by Plaintiff and by Basnyat on FTINC's behalf: a Service Contract, a Non-Disclosure Agreement, a Non-Solicitation Agreement,

and the Content Assignment and Use of Name Approval Agreement (the "Content Agreement"). **(Compl., Dkt. 1 ¶ 44 at 11; Exs. B-2(a)–B-2(g) at 81–108, signature pages at 96, 101, 104, 108.)**

The Service Contract identifies its parties as Evan J Cronin CPA & Tax Services and FTINC, "each referred to herein as a 'Party' and, collectively, as the 'Parties.'" **(Dkt. 26-1 at 2.)** Article XI provides that "[i]n the event a dispute shall arise between the Parties to this Agreement," the dispute "shall be referred to United States Arbitration & Mediation for arbitration in accordance with United States Arbitration & Mediation Rules of Arbitration." **(Dkt. 26-1 at 5.)**

The terms were negotiated subject by subject: on January 6, 2025, Plaintiff sent Murphy five numbered proposed revisions — termination notice, payment and invoicing, non-solicitation, use of his name and likeness, and confidentiality — which Murphy, on FTINC's behalf, answered the next day in the same sequence with "the attached documents with our redlines." **(Resp. Ex. 1; Compl., Dkt. 1 ¶¶ 47, 164–165 at 12, 42; Exs. B-2(b)–B-2(c) at 83–86.)**

Those subjects were then distributed across the four agreements, which use different dispute-resolution language: arbitration in the Service Contract, a permissive Delaware judicial-forum clause in the Non-Solicitation Agreement, and no forum provision at all in the NDA or the Content Agreement. **(Resp. Ex. 2; Compl., Dkt. 1 Ex. B-2(g) at 100, 105–108.)**

### B. The Pre-Suit Record

On March 28, 2025, Plaintiff sent written notice objecting that proposals were "submitted using my full name, likeness, and identity" and demanding an itemized log of them. **(Compl., Dkt. 1 Ex. F-1 at 155–156.)** Murphy responded the same day, copying Basnyat and FTINC's legal counsel, addressing that objection under the "Content Assignment and Use of Name Approval

Agreement" and separately giving "formal 30 day notice of termination," effective April 28, 2025. **(Resp. Ex. 4; Compl., Dkt. 1 Ex. F-2 at 158.)**

On April 7, 2025, FTINC's then-counsel responded in writing. The letter stated that Plaintiff "had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." It characterized Plaintiff's claims as "frivolous," stated that FTINC "will no longer provide responses to your communications," warned that Plaintiff's conduct "may be construed by courts and law enforcement as extortion," and stated that, if he continued, FTINC "will be forced to report your actions to applicable law enforcement authorities." The letter also stated that FTINC had "closed all activities involving you on Upwork and removed you from the Company agency account," while maintaining that Plaintiff's contractual obligations "remain in full force." **(Resp. Ex. 5; Compl., Dkt. 1 ¶ 65 at 18; Ex. F-3 at 160–161.)**

**C. The Arbitration Demand and the Parties' Conferral**

FTINC did not invoke Article XI before suit. From Plaintiff's March 28, 2025 notice through the March 23, 2026 filing, Plaintiff received no arbitration demand and no communication identifying United States Arbitration & Mediation as the forum. **(Cronin Decl. ¶ 11.)**

After counsel raised Article XI's fee-shifting language on May 15, 2026, Plaintiff maintained throughout the conferral that he was asking this Court to resolve threshold arbitrability questions, not refusing arbitration, and would comply with any order to arbitrate. **(Resp. Exs. 6–9.)** The Motion was filed on June 15, 2026, the day of the final conference.

# ARGUMENT

## I. THIS COURT DECIDES EVERY GATEWAY QUESTION; ARTICLE XI DELEGATES NOTHING

Arbitration is a matter of contract on equal footing with other contracts, and courts "may not devise novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 418. A court may order arbitration of a particular dispute "only where the court is satisfied that the parties agreed to arbitrate that dispute," *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010), on a summary-judgment-like evidentiary standard, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). Under the movants' own authority, **(Dkt. 26 at 3–4)**, compulsion requires "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The burden rests on the movants, including as to whether a non-signatory may invoke the agreement. *A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018).

Whether Article XI reaches particular claims, and whether a non-signatory may enforce it, are questions for the Court unless the parties clearly and unmistakably delegated them. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019). The authority the movants themselves invoke states the same rule: absent language by which the parties "clearly and unmistakably provide otherwise," whether the parties agreed to arbitrate "is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986). Article XI contains no express delegation provision. Its only reference to any procedural rules is to "United States Arbitration & Mediation Rules of Arbitration" — a rule set the contract does not attach, identify by version, or quote. **(Dkt. 26-1 at 5; Cronin Decl. ¶ 20.)** In *Cristales v. Scion Grp. LLC*, a court

examining United States Arbitration & Mediation Rules 5(c) and 23(a) held that they "do not clearly and unambiguously refer to issues of arbitrability." 478 F. Supp. 3d 845, 853 (D. Ariz. 2020). The movants identify no different incorporated rule, and the Motion itself asks this Court — not an arbitrator — to decide every question it presents.

## II. THE FOUR NON-SIGNATORY MOVANTS CANNOT ENFORCE ARTICLE XI

### A. The Motion Concedes Non-Signatory Status and Rests on Pleading, Not Evidence

The corporate-parentage chain on which the Motion's enforcement theories depend is asserted by counsel in the Motion, unsupported by any declaration or corporate record. **(Dkt. 26 at 2 n.1.)** Ownership alone is not a basis to enforce Article XI: a business relationship between entities does not establish agency, and a parent does not become a third-party beneficiary of its subsidiary's contract absent an express provision saying so. *Sosa*, 8 F.4th at 639, 641.

The Motion's centerpiece is a block quotation introduced as language Plaintiff "concedes in the Complaint" and attributed to paragraph 20. **(Dkt. 26 at 8–9.)** Paragraph 20 is definitional and states that collective references "do[] not necessarily attribute all conduct to a single legal entity." **(Compl., Dkt. 1 ¶ 20 at 6.)** The quoted language is paragraph 160, thirty-five pages later, pleaded in Count VI — a count captioned "Against FTINC, and Terma in the Alternative . . ." — and governed by paragraph 106, which pleads certain Counts in the alternative under Federal Rule of Civil Procedure 8(d) and states that allegations in one Count "are not admissions in any other Count." **(Compl., Dkt. 1 ¶ 160 at 41–42; ¶¶ 152–161 at 40–42; ¶ 106 at 29.)** Count VI incorporates paragraphs 1 through 105 only. **(Compl., Dkt. 1 ¶ 152 at 40.)** Rule 8(d)(2)–(3) permits alternative and inconsistent pleading; an allegation in one such count is not a general admission. *Cf. Sosa*, 8 F.4th at 641 (movant relying on the complaint's allegations failed because they "fail to support a principal-agent relationship"). The Motion does not make that showing.

### B. Third-Party-Beneficiary, Agency, and Estoppel Theories Fail Under Illinois Law

Whether a non-signatory may enforce an arbitration agreement is a question of state contract law. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–32 (2009); *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748, 752–53 (7th Cir. 2017). The movants agree Illinois law governs. **(Dkt. 26 at 4 n.3.)** Such agreements bind or benefit non-signatories "only in a handful of limited circumstances, depending on the applicable state law." *A.D.*, 885 F.3d at 1059–60. In *Sosa*, the court examined all three theories under Illinois law and found none established. 8 F.4th at 638–42.

*Third-party beneficiary.* Illinois law imposes a "strong presumption against conferring contractual benefits on noncontracting third parties," overcome only where the implication is "so strong as to be practically an express declaration." *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1021–22 (7th Cir. 2024); *Sosa*, 8 F.4th at 639 (intent must appear in "an express provision in the contract identifying the third-party beneficiary by name or by description of a class"). Article XI runs the other way: it applies to "a dispute . . . between the Parties to this Agreement," and the Parties are the two contracting entities. **(Dkt. 26-1 at 2, 5.)** In *Coatney*, materially similar language — "you and Ancestry," "dispute[s] between us" — "indicate[d] that the signatories intended to bind themselves, but not others, to arbitration." 93 F.4th at 1025. The January 7 package shows what these drafters wrote when they meant to reach beyond FTINC: the Content Agreement's preamble defines the "Company" to include FTINC's "current or future subsidiaries . . . affiliates, successors, or assigns." **(Dkt. 26-2 at 2.)** The movants invoke that definition themselves, quoting the preamble to establish that Plaintiff "acknowledged that he would conceivably perform work for affiliates, successors, and assigns of FTINC." **(Dkt. 26 at 2.)** But the instrument they quote for affiliate coverage contains no arbitration provision, and Article XI names only the Parties.

Expectation does not supply what the text withholds. *Coatney*, 93 F.4th at 1025 (knowledge, expectation, or even intent "does not overcome that presumption").

*Agency*. Agency turns on whether the principal had the right to control the manner and method of the agent's work and whether the agent could affect the principal's legal relations; labels and allegations of affiliation do not suffice. *Sosa*, 8 F.4th at 640. The Motion labels them collectively as employees or agents "of Terma, FTUSA, and FTINC," **(Dkt. 26 at 9)**, without identifying which entity was the principal for which act, what control it exercised, or whether the conduct underlying any claim fell within an agency for FTINC. Basnyat's execution of the agreements establishes representative authority for that transaction, not a personal right to compel every claim against him. *Sosa*, 8 F.4th at 640–41; *Scheurer*, 863 F.3d at 750, 753.

*Equitable estoppel.* Illinois equitable estoppel requires reasonable, detrimental reliance, proved by clear and convincing evidence. *Sosa*, 8 F.4th at 641; *Scheurer*, 863 F.3d at 753. No movant identifies any statement or conduct by Plaintiff on which it reasonably and detrimentally relied. The unreported decisions the Motion collects apply a federal formulation under which estoppel follows from allegations of "substantially interdependent and concerted misconduct by both the non-signatory and one or more of the signatories to the contract." **(Dkt. 26 at 9)** (quoting *Leff v. Deutsche Bank AG*, No. 08 CV 733, 2009 U.S. Dist. LEXIS 41713, at *15–16 (N.D. Ill. May 14, 2009)). *Sosa* declined to adopt that formulation as Illinois law, observing that the standard is one of "federal common law" that "has never been applied by any Illinois court," and that the Illinois Supreme Court "has reaffirmed its longstanding detrimental reliance standard in equitable estoppel claims." 8 F.4th at 641–42.

### C. "Closely Related" Status and Unilateral Consent Fail on This Record

The Motion's remaining framework is that Terma and FTUSA are "closely related" parties under *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993), *Solargenix Energy, LLC v. Acciona, S.A.*, 17 N.E.3d 171 (Ill. App. Ct. 2014), and *Adams v. Raintree Vacation Exchange, LLC*, 702 F.3d 436 (7th Cir. 2012). **(Dkt. 26 at 7–9.)** In *Coatney*, the Seventh Circuit described the two circumstances those cases identify and declined to extend them. 93 F.4th at 1023.

The first circumstance is not established. The Motion has not shown that any non-signatory's identity is so intertwined with FTINC's that the two "cannot be distinguished." *Coatney*, 93 F.4th at 1023. Plaintiff does not deny operational overlap; the question is whether the entities were indistinguishable for purposes of the right asserted here. FTINC alone was the named counterparty, paid Plaintiff, and issued his 2025 Form 1099, **(Cronin Decl. ¶ 7)**, and FTINC's own pre-suit counsel wrote that Plaintiff had "no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." **(Resp. Ex. 5; Compl., Dkt. 1 Ex. F-3 at 160.)** A contemporaneous internal workflow email drew the same line between Fractional Tax and Terma personnel. **(Resp. Ex. 3; Compl., Dkt. 1 ¶ 57 at 16.)** *Hugel* did not turn on ownership share: the signatory's own corporations were bound to the forum he chose because he alone involved them in the underlying dispute, making it "foreseeable" that they would be bound. 999 F.2d at 209–10. The movants seek the reverse — a contract right for non-signatories, asserted against the counterparty. Nor does Adams bridge the gap. There the signatory had been merged out of existence, so enforcement "merely . . . substitute[d] one party for another." 702 F.3d at 442. No movant contends that any non-signatory succeeded to FTINC's rights.

The second circumstance — deep involvement in negotiating the contractual terms — fares no better. As to FTUSA, the Motion identifies no participation by FTUSA in negotiating,

approving, or executing any January 7 agreement, and FTUSA was never disclosed to Plaintiff during recruitment, onboarding, or contracting. **(Compl., Dkt. 1 ¶¶ 16, 45 at 5, 12; Cronin Decl. ¶ 19.)** As to Terma, the record goes further than the Motion claims: Murphy negotiated the January 7 package as Terma's Director of Operations, and Basnyat, Chief Executive Officer of both Terma and FTINC, executed all four agreements solely on FTINC's behalf. **(Compl., Dkt. 1 ¶¶ 17–18 at 5–6; Cronin Decl. ¶ 6.)** That involvement does not establish the right the movants assert here. Both circumstances *Coatney* describes are ones in which a non-signatory is "a closely related party to an agreement and foreseeably bound by its terms." 93 F.4th at 1023. In *Solargenix*, the non-signatory parent companies' involvement in negotiating the agreements made it foreseeable that they themselves would be bound by the forum-selection clause; it did not give them a right to enforce one against a signatory. *Solargenix*, 17 N.E.3d at 185. Nor does the drafting make enforcement by these movants foreseeable: the affiliate coverage the movants themselves invoke appears in the Content Agreement, not in Article XI. Nor can the movants cure that gap by consenting among themselves to arbitration. Their stated consent, **(Dkt. 26 at 9)**, shows only that they are willing to arbitrate; it does not establish a basis for any non-signatory to compel Plaintiff to do so.

## III. <u>THE MOTION HAS NOT SHOWN ARTICLE XI REACHES EVERY CLAIM</u>

The Motion's scope premise is unsupported by its own citations. It characterizes Plaintiff's identity claims as resting on misuse of his professional identifiers "in connection with the parties' performance of the Service Contract," citing fifteen paragraphs of the Complaint. **(Dkt. 26 at 11.)** None mentions the Service Contract. The only agreement identified is the Content Assignment, which paragraph 111 alleges "did not authorize third parties to submit third-party-authored, first-

person client-facing proposals under Plaintiff's displayed identity." **(Compl., Dkt. 1 ¶ 111 at 30; see Demonstrative Fig. 2, Dkt. 47-2 at 36 (illustrative aid).)**

The Motion calls Article XI "broad in scope." **(Dkt. 26 at 12.)** The clause supplies no such breadth. It provides for arbitration "[i]n the event a dispute shall arise between the Parties to this Agreement" — words identifying who arbitrates, not what is arbitrated. **(Dkt. 26-1 at 5.)** The breadth is borrowed from a parenthetical describing "a broad arbitration clause" as one that "embraces every dispute between parties having a significant relationship to the contract regardless of the label attached to the dispute." **(Dkt. 26 at 12)**; *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). The clause in *Kiefer* was of that kind: "[a]ny controversy or claims arising out of or relating to" the agreements, a formulation that has been "characterized as extremely broad and capable of an expansive reach." *Id.* at 909. Ordinary contract interpretation precedes any residual scope presumption. *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 640 (7th Cir. 2002). The same January 7 package used the "arising out of or relating to" formulation in the Non-Solicitation Agreement; Article XI does not. **(Resp. Ex. 2; Compl., Dkt. 1 Ex. B-2(g) at 100; see Demonstrative Fig. 1, Dkt. 47-2 at 35 (illustrative aid).)**

Nor has the Motion established that Article XI extends to disputes arising under the other agreements. Where the parties enter into two agreements and only one contains an arbitration clause, they "can be compelled to arbitrate only if (1) the clause itself is broad enough to encompass their dispute, or (2) the agreement containing the clause incorporates the other by reference." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012). Neither is met. Article XI is not drawn in those terms, and the Service Contract does not incorporate the Content Agreement. Incorporation requires "an express intent to incorporate." *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663, 665–66 (7th Cir. 2002) (agreements executed in one

transaction remained "separate, free-standing contracts," each delineating "rights and duties independent of the other"); *AGCO Corp. v. Anglin*, 216 F.3d 589, 594, 596 (7th Cir. 2000); *see Gore*, 666 F.3d at 1034–35 (distinguishing both as cases in which "the dispute at issue was one wholly arising out of a separate and independent agreement not containing an arbitration clause"). The parties knew how to allocate subjects and dispute-resolution mechanisms among the four instruments, and Article XI was not the mechanism they chose for name-and-likeness rights. Unlike the claim in *Gore*, which was "interlinked with both" agreements, *id.* at 1035, Counts I–III and V can be adjudicated without proof of a breach of the Service Contract.

Those counts arise from independent statutory or common-law duties, and Count VI's name-and-likeness theory pleads breach of the Content Agreement, though Count VI also alleges that the audit-related proposal implicated the Service Contract's restriction against services suggesting FTINC was a licensed CPA firm. **(Compl., Dkt. 1 Counts I–III, V at 29, 31, 33, 38; ¶ 56 at 16; ¶¶ 154–156 at 40; Ex. B-2(g) at 105–108; Ex. F-2 at 158.)** FTINC itself answered the identity objection under the Content Agreement, naming it in full. *Kiefer* held the tort claim there arbitrable because it arose from the same agreement that contained the arbitration clause; the movants have not shown that relationship here. 174 F.3d at 910. The same conduct may implicate a contractual limitation and independent identity-based duties without converting the latter into contract claims.

As to the remaining counts, the Motion recites their labels and describes each as connected to "the parties' performance" of the Service Contract. **(Dkt. 26 at 11–12.)** It does not explain why they fall within Article XI's text rather than the parties' broader working relationship. Those counts proceed under distinct legal theories, some pleaded in the Rule 8(d) alternative, **(Compl., Dkt. 1 ¶ 106 at 29)**. The presumption invoked from *AT&T Technologies*, 475 U.S. at 648–50, applies

only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand. *Granite Rock*, 561 U.S. at 301. It does not substitute for applying Article XI, claim by claim, to the disputes the movants seek to compel. Any order compelling arbitration should identify with specificity the claims and parties subject to Article XI.

## IV. ANY REFERRED CLAIM MUST BE STAYED, NOT DISMISSED

The Motion asks for dismissal or, alternatively, a stay. **(Dkt. 26 at 13–15.)**

Where a stay is requested, the court must stay rather than dismiss. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024); **see 9 U.S.C. § 3**.

## V. FTINC'S PRE-SUIT CONDUCT AND THE UNSUPPORTED FEE REQUEST

### A. FTINC Abandoned the Arbitral Path While Holding Plaintiff to the Agreement

Like other contractual rights, the right to arbitrate may be waived, and waiver includes both intentional relinquishment and implicit abandonment. *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 424, 426–27 (7th Cir. 2025). The question is whether a party acted inconsistently with it.

The Service Contract's no-waiver provision, Article X, states that no waiver "shall be binding unless executed in writing by the Party making the waiver." **(Dkt. 26-1 at 5.)** It does not foreclose the inquiry: under Illinois law a waiver-only-in-writing clause may itself be waived by the parties' words and deeds, proved by clear and convincing evidence. *Roboserve, Inc. v. Kato Kagaku Co.*, 78 F.3d 266, 277 (7th Cir. 1996).

FTINC responded through counsel on April 7, while the Service Contract remained operative through April 28. Plaintiff's access to Slack and the MyTax client portal had been revoked by March 29, and his FTINC email account was disabled on March 31. As set out above, the letter rejected Plaintiff's claims as frivolous, cut off further response, raised the prospect of a law-enforcement referral, and confirmed that FTINC had closed his Upwork activity — while

maintaining that his obligations "remain in full force" and reserving "all rights, claims, defenses, and remedies." Yet nothing in it mentioned Article XI, arbitration, or United States Arbitration & Mediation. **(Resp. Ex. 5; Compl., Dkt. 1 ¶¶ 65, 100 at 18, 28; Ex. F-3 at 160–161; Cronin Decl. ¶ 11.)**

The letter's closing reservation of rights is relevant but does not resolve whether FTINC's accompanying conduct was inconsistent with Article XI. Even assuming the reservation encompassed Article XI, waiver is not limited to express relinquishment; it may also arise from implicit abandonment through inconsistent conduct. *Al-Nahhas*, 129 F.4th at 426–27.

Plaintiff does not contend that FTINC waived Article XI through post-suit delay; the Fractional Tax Defendants asserted an arbitration position in the parties' Initial Joint Status Report. **(Dkt. 19 at 4.)** Nor does Plaintiff contend that FTINC failed to satisfy a procedural requirement of Article XI. Plaintiff relies on the course FTINC chose before suit: it held Plaintiff to the agreements while closing the operational relationship from its own side, declined further engagement, and never invoked Article XI or named the forum. That later assertion does not itself resolve whether FTINC had already abandoned the right, and the Court should weigh the reservation of rights together with, not apart from, the conduct that accompanied it.

### B. The Contractual Fee Predicate Has Not Been Established

Article XI does not shift fees because a motion was filed. It conditions recovery on a party's failure "to proceed with arbitration," an unsuccessful challenge to an award, or noncompliance with one. **(Dkt. 26-1 at 5; see Demonstrative Fig. 3, Dkt. 47-2 at 37 (illustrative aid).)**

Illinois strictly construes such a provision and gives it effect according to "the letter of the text." *Willis Capital, LLC v. Belvedere Trading, LLC*, 29 N.E.3d 1078, 1086 (Ill. App. Ct. 2015). The FAA likewise contemplates that an alleged "failure, neglect, or refusal" to arbitrate may itself

be in issue and requires that issue to be resolved before arbitration is compelled. **9 U.S.C. § 4**. The Motion's only fee authority establishes that fee-shifting provisions are not per se unconscionable, not that Article XI's stated predicate occurred. **(Dkt. 26 at 14.)**

No award exists, and the Motion has not shown that asking this Court to decide whether Article XI applies, who may invoke it, and which claims it reaches constitutes a failure to proceed with arbitration. Plaintiff stated the same position in the parties' Initial Joint Status Report, before any fee demand: he is "not refusing to proceed with arbitration if a valid arbitration obligation is determined by the Court." **(Dkt. 19 at 4.)** Counsel's own June 15 correspondence acknowledges that "Plaintiff may be willing to arbitrate if so ordered." **(Resp. Exs. 6, 8–9; Compl., Dkt. 1 ¶ 227 at 56.)** The request runs to five movants although the provision gives recovery only to "the other party"; the Parties are Plaintiff and FTINC. **(Dkt. 26-1 at 2.)**

## CONCLUSION

Plaintiff respectfully requests that the Court deny the Motion and fee request and deny enforcement of Article XI by Terma, FTUSA, Murphy, and Basnyat. If resolution of any threshold question concerning whether, by whom, or as to which claims Article XI may be enforced turns on a material factual dispute, Plaintiff requests targeted discovery directed to that issue; any referred claim should be specifically identified and stayed under 9 U.S.C. § 3.

**Dated: August 17, 2026**

**Respectfully submitted,**

*/s/ Evan J. Cronin*
Evan J. Cronin
Pro Se Plaintiff
211 W. Wacker Drive, Suite 120 #2217
Chicago, IL 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 17, 2026, I caused the foregoing Response in Opposition, together with the Declaration of Evan J. Cronin and the Exhibit Compendium filed herewith, to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Evan J. Cronin*
Evan J. Cronin
Pro Se Plaintiff
211 W. Wacker Drive, Suite 120 #2217
Chicago, IL 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com