**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>Plaintiff,<br><br>v.<br><br>UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>Defendants. | Case No. 1:26-cv-03220<br><br>Hon. Sara L. Ellis<br><br>Magistrate Judge Laura K. McNally |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS UPWORK GLOBAL LLC AND UPWORK INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (Dkt. 44)**

Plaintiff Evan J. Cronin respectfully submits this response in opposition to Defendants Upwork Global LLC and Upwork Inc.'s Motion to Compel Arbitration and Stay Action (Dkt. 44), supported by the accompanying table of contents, table of authorities, and the record cited herein.

# TABLE OF CONTENTS


INTRODUCTION .......... 1

BACKGROUND .......... 2

LEGAL STANDARD .......... 10

ARGUMENT .......... 10

I. Ground One: Upwork Is in Default Under § 3, Having Abandoned the Mandatory First Tier That Precedes Its Own Arbitral Forum .......... 10

A. Section 3 conditions the stay on the applicant's non-default, and this Court determines that condition .......... 10

B. Section 14.3 is the mandatory, bilateral antecedent tier that must precede Section 14.4 arbitration .......... 12

C. The clock ran from April 1, and Upwork's most favorable alternative changes nothing .......... 14

D. No promised response by May 31, "Solved" on June 2, and a cure demand ignored .......... 15

II. Upwork's Delegation Arguments Do Not Alter Section 3's Sequence .......... 17

A. Howsam, BG Group, and Bernal do not delegate the stay applicant's own default .......... 17

B. Plaintiff's challenge to Section 14.4.2's delegation sentence is for this Court .......... 19

C. JAMS Rule 11(b) does not answer Upwork's eligibility for a § 3 stay .......... 20

III. Ground Two: Upwork's Prior Material Breach Discharged Plaintiff's Reciprocal Section 14 Obligations Under California and Illinois Law Alike .......... 21

A. California: Section 14.3 is enforceable, and its nonperformance was material .......... 21

B. Illinois reaches the same result; no outcome-determinative conflict requires resolution .......... 21

C. Plaintiff's ability to file with JAMS does not cure Upwork's antecedent nonperformance .......... 23

D. The discharge reaches the delegation sentence and Section 14's waivers .......... 23

IV. The Class Action Waiver Dispute Is Reserved to This Court .......... 24

V. The Order Upwork Seeks, and the Discovery Alternative .......... 25

CONCLUSION .......... 25

# TABLE OF AUTHORITIES

## Cases

Aceves v. U.S. Bank, N.A., 192 Cal. App. 4th 218 (2011) ........23
A.D. v. Credit One Bank, N.A., 885 F.3d 1054 (7th Cir. 2018) ........4
Al-Nahhas v. 777 Partners LLC, 129 F.4th 418 (7th Cir. 2025) ........11, 18
Arthur Andersen LLP v. Carlisle, 556 U.S. 624 (2009) ........4
Bedgood v. Wyndham Vacation Resorts, Inc., 88 F.4th 1355 (11th Cir. 2023) ........15, 18
Bernal v. Kohl's Corp., No. 24-2806, 2026 WL 1193991 (7th Cir. May 1, 2026) ........10, 17, 17
BG Group plc v. Republic of Argentina, 572 U.S. 25 (2014) ........17, 17
Bricker v. Heinz, 2025 IL App (4th) 250264-U ........10
Bridgeview Health Care Center, Ltd. v. State Farm Fire & Casualty Co., 2014 IL 116389 ........23
Brown v. Grimes, 192 Cal. App. 4th 265 (2011) ........21, 24
Coinbase, Inc. v. Suski, 602 U.S. 143, 144 S. Ct. 1186 (2024) ........20
Copeland v. Baskin Robbins U.S.A., 96 Cal. App. 4th 1251 (2002) ........21
Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367 (1st Cir. 2011) ........19, 20
Faulkenberg v. CB Tax Franchise Systems, LP, 637 F.3d 801 (7th Cir. 2011) ........25
Gersten v. Intrinsic Technologies, LLP, 442 F. Supp. 2d 573 (N.D. Ill. 2006) ........5
Halcon International, Inc. v. Monsanto Australia Ltd., 446 F.2d 156 (7th Cir. 1971) ........11
Herman v. Rock Gate Capital, LLC, No. 25 C 1088, 2026 WL 879746 (N.D. Ill. Mar. 30, 2026) ........4, 10, 12, 16
HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41 (1st Cir. 2003) ........13, 19
Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79 (2002) ........17, 17, 18
Hughes Masonry Co. v. Greater Clark County School Building Corp., 659 F.2d 836 (7th Cir. 1981) ........5
Kawasaki Heavy Industries, Ltd. v. Bombardier Recreational Products, Inc., 660 F.3d 988 (7th Cir. 2011) ........15
Kemiron Atlantic, Inc. v. Aguakem International, Inc., 290 F.3d 1287 (11th Cir. 2002) ........13, 19
Lumbermens Mutual Casualty Co. v. Broadspire Management Services, Inc., 623 F.3d 476 (7th Cir. 2010) ........18
Marie v. Allied Home Mortgage Corp., 402 F.3d 1 (1st Cir. 2005) ........19, 20
Merritt Island Woodwerx, LLC v. Space Coast Credit Union, 137 F.4th 1268 (11th Cir. 2025) ........12, 15, 16, 18
Mohanty v. St. John Heart Clinic, S.C., 225 Ill. 2d 52 (2006) ........22
Morgan v. Sundance, Inc., 596 U.S. 411 (2022) ........1, 10, 14, 24
Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983) ........18
Platt Pacific, Inc. v. Andelson, 6 Cal. 4th 307 (1993) ........1, 20

PML Development LLC v. Village of Hawthorn Woods, 2023 IL 128770 ....22
Pre-Paid Legal Services, Inc. v. Cahill, 786 F.3d 1287 (10th Cir. 2015) ....12, 16, 17
Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967) ....16
Radiant Star Enterprises, L.L.C. v. Metropolis Condominium Ass'n, 2018 IL App (1st) 171844....21
Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63 (2010) ....20
Sink v. Aden Enterprises, Inc., 352 F.3d 1197 (9th Cir. 2003) ....16
St. Mary's Medical Center of Evansville, Inc. v. Disco Aluminum Products Co., 969 F.2d 585 (7th Cir. 1992)....12
Tinder v. Pinkerton Security, 305 F.3d 728 (7th Cir. 2002)....10, 25
Welborn Clinic v. MedQuist, Inc., 301 F.3d 634 (7th Cir. 2002)....13
William Blair & Co., LLC v. FI Liquidation Corp., 358 Ill. App. 3d 324 (1st Dist. 2005) ....22
Zurich American Insurance Co. v. Watts Industries, Inc., 417 F.3d 682 (7th Cir. 2005)....5, 10

**Statutes**

9 U.S.C. § 2....10
9 U.S.C. § 3.... passim
9 U.S.C. § 4....17, 25
710 ILCS 5/2(d) ....10
Cal. Civ. Code § 1439....23
Cal. Civ. Code § 1641 ....24

**Rules**

Fed. R. Civ. P. 23(a)(4), (g) ....24
N.D. Ill. Local Rule 7.1....1

Plaintiff Evan J. Cronin respectfully submits this Response in Opposition to the Motion to Compel Arbitration and Stay Action (the "Motion") **(Dkt. 44)** filed by Defendants Upwork Global LLC and Upwork Inc. (together, "Upwork").[1] It is supported by the Declaration of Evan J. Cronin **("Cronin Decl.")** and an Exhibit Compendium filed herewith, whose exhibits are cited as "Resp. Ex." Version 6.8 is not reproduced there; this Opposition cites Upwork's own filing at Dkt. 44-4 by PageID.

## INTRODUCTION

Upwork moves under 9 U.S.C. § 3 for an order compelling arbitration before JAMS in Santa Clara, California, and staying this action. **(Dkt. 44 at 1; Dkt. 44-1 at 16.)** Section 14 is a contract. The Supreme Court has made clear that the FAA's policy "is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022). An arbitration agreement is therefore "as enforceable as other contracts, but not more so," and a court "must hold a party to its arbitration contract just as the court would to any other kind," without devising "novel rules to favor arbitration over litigation." *Id.* California law supplies the same contract-law premise: "[p]rivate arbitration is a matter of agreement between the parties and is governed by contract law." *Platt Pac., Inc. v. Andelson*, 6 Cal. 4th 307, 313 (1993). With formation conceded, the dispute turns to the consequences of post-formation performance, which the FAA requires the Court to analyze under ordinary contract principles. The issue is whether a party may invoke a mandatory bilateral process, identify the outward performance through which it says it will perform its own obligation, provide none of that performance, ignore a finite opportunity to cure, and still demand every downstream performance from its counterparty. The Motion fails for two independent reasons: Upwork cannot satisfy the FAA's statutory non-default

[1] The Court authorized a response of up to 25 pages at the July 9, 2026 conference. Per Local Rule 7.1, this response includes a table of contents and table of authorities.

condition, and its uncured material first breach discharged Plaintiff's reciprocal performance under the integrated Section 14 bargain. Section 3 permits a stay only "providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. Upwork block-quotes that language on page 15 of its memorandum—and never mentions it again. It devotes roughly a third of its memorandum to propositions no one disputes.

The record documents what followed. Upwork received Plaintiff's Section 14.3 Notice on April 1, 2025—a communication its own memorandum calls a "demand letter." **(Dkt. 44-1 at 6–7.)** Its legal function acknowledged the timeline on April 29, invoked the sixty-day period on May 9, and promised a formal response within it. None came. On Monday, June 2—the first business day after the sixtieth—Upwork marked the support file "Solved" without any substantive disposition of the Claim, and a written cure demand lapsed unanswered. **(Resp. Exs. 7–8; Resp. Ex. 9 at 1; Cronin Decl. ¶¶ 16–18, 20.)** The central chronology is documented principally by Upwork's own communications and system records.

Section 3 conditions the stay on the applicant's non-default; this Court—not an arbitrator—determines that condition, and Upwork does not meet it (Parts I–II). Independently, that breach discharged Plaintiff's reciprocal Section 14 obligations, including the delegation sentence and the waivers (Parts III, IV). The Court should deny the motion on this record; alternatively, Plaintiff requests narrow threshold discovery (Part V).

## <u>BACKGROUND</u>

### A. Concessions and Reservations

To focus the issues: (1) Plaintiff does not dispute that he electronically accepted User Agreement Version 6.8 on March 4, 2025. **(Dkt. 44-1 at 4 ("Plaintiff admits he agreed to version**

**6.8"); Dkt. 44-4.)**[2] (2) Plaintiff does not dispute that Upwork Global LLC is the successor by statutory conversion to the Upwork entity that contracted under Version 6.8. (3) Plaintiff assumes arguendo that his claims would otherwise fall within Section 14.1's substantive scope. (4) Plaintiff does not concede—and expressly disputes—that: Upwork remains entitled to enforce Section 14 after abandoning Section 14.3; the § 3 default question is delegated to an arbitrator; the delegation sentence survived the breach and resulting discharge; the Class Action Waiver dispute may be referred to an arbitrator (see § 14.4.3); or arbitration may be compelled in Santa Clara County. (5) If arbitration is ever compelled, Plaintiff preserves all defenses and positions available in that forum.

One clarification concerns who is before the Court. The memorandum's first footnote states that the two movants "are not two separate entities; they are the same company," and that "Upwork Inc. was statutorily converted from a corporation to a limited liability company and renamed as Upwork Global LLC." **(Dkt. 44-1 at 1 n.1 (quoting Dkt. 44-2 ¶ 5).)** The instrument Upwork filed names the contracting Upwork party as *Upwork Global Inc.* **(Dkt. 44-4 at PageID #:686)**, and Upwork Inc.'s own filings with the Securities and Exchange Commission place that entity, and later Upwork Global LLC, in the California *subsidiary* position beneath Upwork Inc.[3] That record

[2]Version 6.8 was operative throughout: every pre-suit notice material to this Opposition occurred while it was in effect. **(Dkt. 44-2 ¶ 15.)** Upwork does not identify an exclusive governing version; its prayer requests arbitration "pursuant to versions 6.7 and 6.8." **(Dkt. 44-1 at 16.)** Version 6.8 provides that it "replaces all prior agreements regarding the arbitration of disputes." **(Dkt. 44-4 at PageID #:714.)** In any event, Section 14.3 and Section 14.4's conditional trigger are word-for-word identical in the two versions Upwork filed (see note 6), and the delegation sentence differs only in an introductory clause. Nothing in this threshold analysis turns on choosing between them; Plaintiff does not concede that the versions are identical for other purposes.

[3]Ex. 21.1 to Upwork Inc.'s Annual Report on Form 10-K for the fiscal year ended December 31, 2024 (filed Feb. 13, 2025) (No. 0001627475-25-000011) lists "Upwork Global Inc.," California, among the "Subsidiaries of Upwork Inc." Ex. 21.1 to the Form 10-K for the fiscal year ended December 31, 2025 (filed Feb. 13, 2026) (No. 0001627475-26-000012) lists "Upwork Global LLC," California, in that same subsidiary schedule. And Ex. 10.2 to Upwork Inc.'s Quarterly Report on Form 10-Q for the quarter ended September 30, 2025 (filed Nov. 4, 2025) (No. 0001627475-25-000058) defines "Upwork Inc." as "Parent" and "Upwork Global LLC" as "Subsidiary," is executed "[o]n behalf of Upwork Inc. and Upwork Global

is inconsistent with Le ¶ 5's assertion that Upwork Inc. itself converted into Upwork Global LLC. Plaintiff does not contend that a parent may never enforce Section 14; Section 14.1, which Upwork block-quotes, extends the covenant to "you, Upwork, and our Affiliates." But the memorandum develops no Affiliate-based theory and identifies no state-law basis for the parent to enforce Section 14; that showing is the movant's to make. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1060, 1063 (7th Cir. 2018) (party seeking to compel bears the burden of establishing the state-law exception under which an arbitration agreement is enforceable by or against a non-party). *Herman* supplies the method: presented with a non-signatory defendant, this Court asked whether "the relevant state contract law allows him to enforce the agreement." 2026 WL 879746 (quoting *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009)). Nothing here affects Upwork Global LLC's motion.

These concessions are not new: before Upwork moved, Plaintiff asked whether it would stipulate that Version 6.8 governs; Upwork declined to take a position on that or any other threshold item, calling the request "properly the subject of discovery." **(Dkt. 36-3 at PageID #:526, 541; Dkt. 36-4.)** Plaintiff said the same on the record: his June 30, 2026 motion "concedes that the parties agreed to arbitrate and that the Provision was validly formed, and asserts only that Upwork's post-formation non-performance discharged it." **(Dkt. 36-1 at 12–13.)** Upwork's memorandum nonetheless directs nineteen of the authorities it cites to propositions Plaintiff concedes or assumes arguendo: ten to contract formation and inquiry notice, three to the breadth

LLC" by Hayden Brown, identified as President and Chief Executive Officer of each, and records an employee's acceptance of "the transfer of my employment from Parent to Subsidiary." Copies are filed as Resp. Exs. 11–13. These are Upwork Inc.'s own public filings—statements of a party-opponent, Fed. R. Evid. 801(d)(2), whose contents can be accurately and readily determined from EDGAR, Fed. R. Evid. 201(b)(2). Plaintiff requests judicial notice of their existence and contents. "Affiliates" is not among the terms defined in Section 16 of the Version 6.8 Upwork filed, and the Site Terms of Use to which Section 16 refers the reader is not in this record.

of Section 14.1, and six to a delegation clause he does not contend is narrow. Upwork proves propositions Plaintiff concedes while largely bypassing the post-formation issues that decide this Opposition.

Upwork's estoppel authorities illustrate the mismatch. Both state the rule for non-signatories: estoppel is one of "five doctrines of contract law through which a non-signatory can be bound by arbitration agreements executed by others." *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 578 (N.D. Ill. 2006) (quoting *Zurich*, 417 F.3d at 687); *see Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 841 (7th Cir. 1981) (signatory estopped from denying a non-signatory the benefit of the clause its own claim invoked). Plaintiff does not contend that Section 14 is inapplicable to him; he performed Section 14.3 and claims its benefit. The doctrine targets a party that "cannot rely on the contract when it works to its advantage, and repudiate it when it works to [its] disadvantage." *Gersten*, 442 F. Supp. 2d at 579 (quoting *Hughes Masonry*, 659 F.2d at 839). On this record that describes Upwork.

### B. The Agreement Upwork Filed: Section 14's Sequential Design

Section 14.1 states Upwork's purpose—"If a dispute arises between you and Upwork or our Affiliates, our goal is to resolve the dispute quickly and cost-effectively"—and provides that covered Claims are resolved "through binding arbitration on an individual basis in accordance with this Section 14 (sometimes referred to as the 'Arbitration Provision')." **(Dkt. 44-4 at PageID #:711.)** The informal-resolution tier is inside that mechanism, not collateral to it: Upwork's own summary of Section 14 tells users that "we will both first try to resolve any dispute informally and, if you are in the United States, that we both agree to use arbitration instead of going to court or using a jury if we can't resolve the dispute informally." (Id.) Section 14.3, captioned "Informal Dispute Resolution," is the covenant itself:

> Before serving a demand for arbitration of a Claim, you and Upwork agree to first notify each other of the Claim. You agree to notify Upwork of the Claim by email to legalnotices@upwork.com, and Upwork agrees to provide to you a notice at your email address on file (in each case, a "Notice"). You and Upwork then will seek informal voluntary resolution of the Claim. . . . Both you and Upwork will have 60 days from the date of the receipt of the Notice to informally resolve the other party's Claim and avoid the need for further action.

**(Dkt. 44-4 at PageID #:712.)** Arbitration is the next tier, and only conditionally. Section 14.4—captioned "Binding Arbitration and Class Action/Jury Trial Waiver"—provides that "[i]n the unlikely event the parties are unable to resolve a Claim within 60 days of the receipt of the applicable Notice," the parties "agree to resolve the Claim by final and binding individual arbitration before an arbitrator from JAMS, instead of a court or jury." (Id.) The jury waiver is in that sentence, and on that condition. Section 14.4.2—the delegation clause on which the motion rests—is broad, but it is twice qualified by the drafters' own reservations:

> [T]he arbitrator shall have exclusive jurisdiction to decide all disputes arising out of or relating to the arbitrability of a Claim or the interpretation, enforcement, or application of this Arbitration Provision, including the enforceability, revocability, scope, breach, or validity of the Arbitration Provision or any portion of the Arbitration Provision, *except as expressly provided below*. All such matters shall be decided by an arbitrator and not by a court. The parties expressly agree that, *except as provided by the Class and Collective Waiver section below*, the arbitrator and not a court will decide any question of whether the parties agreed to arbitrate . . . .

**(Dkt. 44-4 at PageID #:713 (emphases added).)** Its severability sentence likewise yields "*except as set forth in Section 14.4.3 below*." **(Id. at PageID #:714 (emphasis added).)** Section 14.4.3, in turn, defines the "Class Action Waiver" and provides:

> Both you and Upwork agree to bring any dispute in arbitration on an individual basis only, and not on a class or collective basis on behalf of others. There will be no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action . . . ("Class Action Waiver"). Notwithstanding any other provision of this Agreement or the JAMS rules, disputes regarding the enforceability, revocability, scope, validity, or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator. If there is a final judicial determination that all or part of the Class Action Waiver is

> unenforceable or that an arbitration can proceed on a class basis, then the arbitration provision herein shall be considered null and void in its entirety . . . .

**(Id. at PageID #:714.)** Finally, Section 14.2 selects the governing law: "This Agreement, the Site Terms of Use, the other Terms of Service, and any Claim will be governed by and construed in accordance with the laws of the State of California," subject to a proviso for "Claims made by any Freelancer located within the United States," with the Arbitration Provision governed by the FAA. **(Id. at PageID #:712.)**[4]

### C. The April 1 Clock, Upwork's Written Receipts, and Documented Legal-Department Involvement

On March 28, 2025, Plaintiff opened Upwork Support Case No. 51489662, reporting that his name, image, and CPA credentials had been used in client-facing solicitations that he did not author or authorize; Upwork acknowledged in writing that "it appears that you were not the one who sent these services to clients." **(Compl. ¶¶ 66–68; Resp. Ex. 1 at 8; Cronin Decl. ¶ 7.)** On April 1, 2025, Plaintiff sent formal written Notice of the Claim from his Upwork-registered email account to legalnotices@upwork.com—the exact address Section 14.3 designates—and received Upwork's same-day acknowledgment: "this email will serve as your proof of receipt." **(Resp. Ex. 2; Cronin Decl. ¶ 9; Compl. ¶ 70.)** Section 14.3's sixty-day period therefore ran from April 1, 2025.

Plaintiff monitored the support case while awaiting a response and observed that Upwork's Counsel for Policy, Privacy, and Litigation and a paralegal on its legal team were carbon-copied on it no later than April 2, 2025—the day after the Notice. **(Cronin Decl. ¶¶ 8, 19.)** The April 16

[4] Plaintiff's causes of action arise under Illinois and federal law. Section 14.2 separately provides California law for the construction of "this Agreement," Illinois law for Claims brought by an Illinois-resident Freelancer, and the FAA for the Arbitration Provision. Plaintiff invokes California law only as contract law governing Upwork's Agreement, not as substantive law governing his pleaded Claims. Upwork invokes the Illinois branch for contract formation. **(Dkt. 44-1 at 8–9.)** Part III.B shows that both States reach the same result on the principles that decide this Motion, so the Court need not resolve that boundary.

print independently corroborates the surrounding record: both remained copied, the case remained "Open," and the displayed last activity remained April 2, 2025, at 5:55 PM. **(Resp. Ex. 1 at 1; Resp. Ex. 10.)** Upwork's legal function also addressed the applicable timing in writing. On April 16, Plaintiff submitted a Professional Statement through both channels, advising that "[f]urther communications will likely proceed through designated representation"; the dashboard logged four activity updates over April 16–17, none a communication to Plaintiff, and the next entry is the June 2 "Solved" closure. **(Resp. Ex. 3 at 9; Resp. Exs. 4–5; Resp. Ex. 9 at 1, 14–15; Cronin Decl. ¶¶ 10–13, 17.)** On April 29, 2025, as announced, Plaintiff's then-retained counsel sent a demand letter to the same address, setting a May 8 resolution date **(Resp. Ex. 6; Cronin Decl. ¶ 14)**, and Upwork's legal department responded in writing the same day:

> This is to confirm receipt of your Demand Letter. Our team is currently reviewing the matter, and we acknowledge the timeline outlined in your message. We are working toward a constructive resolution and will be in touch soon.

**(Resp. Ex. 7; Cronin Decl. ¶ 15.)** On May 9, 2025—one day after the resolution date counsel had set and Upwork had said it acknowledged—Anastasiia Dryha of Upwork's legal team, writing from an upwork.com domain address, went further:

> We are reaching out to inform you that we are currently working on this response and expect to provide it shortly. Please note that, according to the arbitration provisions applicable to this matter, we have 60 days from the receipt of your demand to provide our response. We will ensure that our formal response is provided within this period.

**(Resp. Ex. 7; Cronin Decl. ¶ 15.)** The May 9 representation came from Upwork's legal function, not from the ordinary support channel: Ms. Dryha, who sent it, is the paralegal identified above. **(Resp. Ex. 10; Cronin Decl. ¶ 19.)** The record does not establish Upwork's internal allocation of authority; it establishes that the legal function invoked the applicable arbitration provisions and stated how Upwork would respond within the asserted period. It does not show who later changed

the case status, or why. Neither representation was ever retracted or disavowed. **(Cronin Decl. ¶ 15.)**

What followed was nonperformance. No promised formal or substantive response to the Claim arrived by Saturday, May 31—the sixtieth day—or by Monday, June 2, the next business day, when Upwork changed Case No. 51489662 to "Solved"; no substantive communication accompanied the closure. **(Resp. Ex. 9 at 1; Cronin Decl. ¶¶ 17, 20.)** On June 6, 2025, Plaintiff's counsel sent a follow-up letter quoting the May 9 commitment and setting a cure deadline of June 11, 2025; the deadline passed without response. **(Resp. Ex. 8; Cronin Decl. ¶ 16.)** From the April 1 Notice through the filing of this action on March 23, 2026, Upwork delivered no substantive response, proposed no resolution, and requested no conference to resolve the Claim informally; after the cure deadline lapsed on June 11, 2025, it communicated nothing further concerning the Claim until this litigation. **(Cronin Decl. ¶¶ 18, 20.)** On that record, Upwork abandoned the first tier it had invoked.

### D. The Silence Audit: What Upwork's Sixteen Pages and Its Declaration Do Not Say

Upwork's omissions track the threshold issues Plaintiff actually raises. *First*, in sixteen pages it never cites Section 14.3, and while block-quoting Sections 14.1 and 14.4.2 **(Dkt. 44-1 at 5–6, 11)** it quotes around the conditional trigger that joins them—Section 14.4's opening sentence. **(Dkt. 44-4 at PageID #:712.)** *Second*, beyond noting that Plaintiff sent a demand letter to the designated address, it never addresses that communication's role under Section 14.3, the April 29 and May 9 writings, or the June 2 "Solved" closure. *Third*, Upwork's only fact-witness declaration, the Declaration of Amy Le, claims familiarity with Plaintiff's agreements, submissions, and user history and with the parties' prior communications **(Dkt. 44-2 ¶¶ 4, 16)**, yet disputes none of those events and addresses nothing after March 4, 2025.

## LEGAL STANDARD

As this Court recently stated, a court may compel arbitration where there is "(1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement," and "[t]he party seeking to avoid arbitration bears the burden of establishing why the arbitration agreement should not be enforced." *Herman v. Rock Gate Cap., LLC*, No. 25 C 1088, 2026 WL 879746, at *3 (N.D. Ill. Mar. 30, 2026) (Ellis, J.) (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005)). Such motions are evaluated under a summary-judgment-type standard: the opponent must "identify a triable issue of fact" on the matters he contests. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The Supreme Court has made clear that the FAA's policy "is about treating arbitration contracts like all others, not about fostering arbitration": if "an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it." *Morgan*, 596 U.S. at 418; *see* 9 U.S.C. § 2. *Bernal* likewise recites both principles: the familiar federal policy favoring arbitration, and the requirement that arbitration agreements be placed on the same footing as other contracts and enforced according to their terms. *Bernal v. Kohl's Corp.*, No. 24-2806, 2026 WL 1193991 (7th Cir. May 1, 2026). Neither principle authorizes preferential enforcement of a promise ordinary contract law has discharged.

## ARGUMENT

### I. GROUND ONE: UPWORK IS IN DEFAULT UNDER § 3, HAVING ABANDONED THE MANDATORY FIRST TIER THAT PRECEDES ITS OWN ARBITRAL FORUM.

#### A. Section 3 conditions the stay on the applicant's non-default, and this Court determines that condition.

Upwork invokes only § 3. **(Dkt. 44 at 1; Dkt. 44-1 at 15–16.)**[5] Section 3 speaks to "the court in which such suit is pending": upon being "satisfied that the issue . . . is referable to arbitration," that court "shall on application of one of the parties stay the trial of the action"—"providing the applicant for the stay is not in default in proceeding with such arbitration." 9 U.S.C. § 3. The proviso names its subject—the "applicant for the stay," here Upwork—and makes non-default Congress's condition on the judicial relief applied for, not a contract term the movant may route to an arbitrator.

The sequence matters: the Court cannot grant the stay and leave an arbitrator to decide afterward whether the applicant was statutorily eligible for it—that would exercise the very authority whose availability turns on the unresolved condition. Upwork's delegation arguments are addressed at Part II; none alters this sequence.

Binding precedent confirms that conduct-based § 3 default is a court-decided inquiry, although it has not addressed this precise pre-suit configuration. In *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025), the court held that the district court "correctly determined that it had the authority to decide" whether a party's conduct forfeited its arbitration right, explaining that § 3 "default" encompasses conduct-based forfeiture and that "the text of the FAA 'expressly gives the courts jurisdiction to determine the existence of a default.'" *Id.* at 424–26 (quoting *Halcon Int'l, Inc. v. Monsanto Austl. Ltd.*, 446 F.2d 156, 161 (7th Cir. 1971)). "The essential question is whether, based on the circumstances, the alleged defaulting party has acted

[5]Neither authority in Upwork's stay section reaches the proviso. *Bricker v. Heinz*, 2025 IL App (4th) 250264-U, is a nonprecedential order, and its stay holding rests on section 2(d) of the Illinois Uniform Arbitration Act, 710 ILCS 5/2(d)—a provision containing no counterpart to § 3's non-default condition. *Id.* ¶¶ 48–49. Upwork states in the same paragraph that "the User Agreement is governed by the FAA." **(Dkt. 44-1 at 15.)** And *Concepcion*, on the page Upwork pins, describes "[t]he overarching purpose of the FAA, evident in the text of §§ 2, 3, and 4," as "ensur[ing] the enforcement of arbitration agreements according to their terms." 563 U.S. at 344. That purpose presupposes a movant that followed the terms.

inconsistently with the right to arbitrate." *Id.* at 425 (quoting *St. Mary's Med. Ctr. of Evansville, Inc. v. Disco Aluminum Prods. Co.*, 969 F.2d 585, 587–88 (7th Cir. 1992)). Other circuits agree that § 3 default is adjudicated by the court whose stay is sought. *See Merritt Island Woodwerx, LLC v. Space Coast Credit Union*, 137 F.4th 1268, 1274 (11th Cir. 2025); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1295 (10th Cir. 2015) ("The question of default under § 3 is not reserved for a formal finding by arbitrators."). This Court applies the same allocation: "Courts, not arbitrators, decide whether a party has waived the right to compel arbitration." *Herman*, 2026 WL 879746 (citing *Al-Nahhas*, 129 F.4th at 424).

**B. Section 14.3 is the mandatory, bilateral antecedent tier that must precede Section 14.4 arbitration.**

Section 14.3 is no adjacent customer-service policy. It sits inside Section 14, operates "[b]efore serving a demand for arbitration," and precedes the arbitration obligation that Section 14.4 conditions on its performance. **(Dkt. 44-4 at PageID #:711–12; Background B.)** Its verbs are bilateral and mandatory: "you and Upwork agree to first notify each other"; "Upwork agrees to provide to you a notice"; "You and Upwork then will seek informal voluntary resolution"; "Both you and Upwork will have 60 days." **(Id. at PageID #:712.)** Where the Agreement confers discretion, it says so: "either of us may terminate this Agreement in our sole discretion at any time, without explanation" **(id. at PageID #:710 (§ 13.1))**; "[y]ou may opt out of the Arbitration Provision contained in this Section 14" **(id. at PageID #:714 (§ 14.4.4)).** In Section 14.3 the drafter wrote "agree" and "will." Each verb, with its sentence and Section 14.4's condition, is set out at Resp. Ex. 14, Figure 1 (demonstrative summary of the quoted text). Section 14.3 thus imposes mandatory bilateral antecedent obligations—a period for bilateral performance, not sixty days of

permissible silence—that the Agreement places before invocation of the arbitral forum.[6] Courts enforce such sequencing as written: where parties expressly sequence arbitration behind a mandatory antecedent step, they "clearly intended to make arbitration a dispute resolution mechanism of last resort," and a movant that skipped the step cannot invoke the FAA. *Kemiron*, 290 F.3d at 1291; *accord HIM Portland*, 317 F.3d at 42 (failure to perform the agreed first step "precludes it from compelling arbitration under the FAA"). Plaintiff performed the Notice step (Part I.C); the question is § 3's: whether the *applicant for the stay*, which left unperformed the tier it drafted, is "in default in proceeding with such arbitration."

Upwork may answer with *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634 (7th Cir. 2002), and Plaintiff addresses it directly. Welborn held that a movant's failure to supply backup information and negotiate in good faith before demanding arbitration did not forfeit arbitration, because those steps were not conditions precedent and because "breach of a contract containing an arbitration clause does not amount to a waiver of arbitration." *Id.* at 638. Plaintiff does not contend that breach of an unrelated contract term, merely because the contract also contains an arbitration clause, automatically forfeits arbitration. This case concerns alleged material nonperformance within the Arbitration Provision itself and its resulting effect on reciprocal downstream obligations. Four things distinguish this case. *First*, Welborn reached its condition-precedent holding expressly "[b]ased on Indiana law *and the general presumption in favor of arbitration*," observing that "[i]n a close case, this may make all the difference." *Id.* To the extent *Welborn* relied on an arbitration-specific presumption to resolve a close state-law contract

[6]Upwork's own drafting treats this stage as a requirement rather than an aspiration. Section 14.3 is word-for-word identical in the two agreements Upwork filed, Versions 6.7 and 6.8 **(Dkt. 44-3 at PageID #:676; Dkt. 44-4 at PageID #:712)**, though between those versions Upwork rewrote Section 14's downstream machinery, deleting the JAMS consumer-minimum-standards sentence and adding mass-arbitration procedures. Upwork revised the arbitral machinery while leaving untouched the antecedent tier on which that machinery is conditioned.

question, *Morgan* later clarified that federal policy does not authorize a special rule favoring arbitration over ordinary contract law. 596 U.S. at 418. *Second*, Welborn itself drew the line Plaintiff relies on: the no-waiver rule "do[es] not speak to the specific situation where the party seeking arbitration has allegedly breached a part of the arbitration clause itself," and "[o]ne could at least argue that when the party breaches that provision it is acting inconsistently with its right to arbitrate." *Id. Third*, the instruments differ: Welborn's clause made arbitration "the final step" of a billing-dispute procedure, whereas Section 14.4 conditions arbitration on Section 14.3's mandatory performance. *Fourth*, the Indiana rule Welborn applied is itself conditioned on the movant's own good faith: a party "cannot avoid arbitration because of the other party's failure to comply with the negotiation steps of a grievance procedure *as long as that other party acted in good faith to preserve its right to arbitration*." *Id.* Upwork promised a formal response, rendered none, closed the file, and communicated nothing for nine months.

### C. The clock ran from April 1, and Upwork's most favorable alternative changes nothing.

Plaintiff delivered the Section 14.3 Notice on April 1, 2025, to the exact address Section 14.3 designates, and Upwork's systems confirmed receipt the same day. **(Resp. Ex. 2.)** Upwork's memorandum describes that communication as a "demand letter" sent "to the email address identified in the User Agreement." **(Dkt. 44-1 at 6–7 (citing Compl. ¶¶ 66, 70).)** The sixty days ran from April 1: the sixtieth day fell on Saturday, May 31, 2025, and the period expired no later than Monday, June 2—the day Upwork marked the case "Solved." On April 29, Upwork Legal acknowledged counsel's stated timeline and represented that it was working toward a constructive resolution. On May 9, Upwork expressly invoked "the arbitration provisions applicable to this matter," asserted a sixty-day period, and promised that "our formal response" would be "provided within this period." **(Resp. Ex. 7; Background C.)** The April 1 automated reply establishes receipt of the contractual Notice. **(Resp. Ex. 2.)** The April 29 writing shows that Upwork Legal had

engaged with the Claim and acknowledged counsel's requested timetable. The May 9 writing separately shows that Upwork invoked a sixty-day period under the arbitration provisions and identified the formal response it said it would provide as part of its first-tier participation. **(Resp. Ex. 7.)** Nor did counsel's April 29 letter start a new clock: it was the "designated representation" announced on April 16 (Background C), pressing the same Claim through the same address, and Section 14.3 measures the sixty days from "the date of the receipt of the Notice." **(Dkt. 44-4 at PageID #:712.)** But the outcome does not depend on the start date: even if Upwork's May 9 reference to "receipt of your demand" is read as counsel's April 29 letter, those sixty days expired Saturday, June 28, 2025, and no formal response arrived then, by Monday, June 30, or at any time in the nearly nine months before this action was filed. On either start date the promised performance never came. Performance of each Section 14.3 act appears at Resp. Ex. 14, Figure 2, and the chronology at Figure 3.

**D. No promised response by May 31, "Solved" on June 2, and a cure demand ignored.**

For conduct-based default, courts ask whether, "under the totality of the circumstances, the party has acted inconsistently with the arbitration right." *Merritt Island*, 137 F.4th at 1274 (quoting *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1369 (11th Cir. 2023)); *accord Kawasaki*, 660 F.3d at 994. The documented outward conduct points in one direction. The drafter of a mandatory bilateral tier received the Notice; acknowledged the timeline in writing; invoked the arbitration provisions; promised a defined deliverable within the period; delivered no promised formal response by the sixtieth day; marked the support file "Solved" the next business day without that response or any substantive disposition; and ignored a written cure demand. Nothing of substance followed in the nearly nine months before this action. **(Background C; Cronin Decl. ¶¶ 15–16, 20.)** Taken together, those acts are inconsistent with the arbitration right Upwork now seeks to enforce—§ 3 "default in proceeding with such arbitration."

This Court's own decision in *Herman* maps the difference. The *Herman* plaintiff attacked the agreement's validity with fraud claims aimed at the contract generally, which this Court referred to the arbitrator under *Prima Paint* severability—a question not presented here. But when *Herman* measured the movants' conduct, this Court decided that question itself, finding no waiver because they "advanced their arguments about arbitration at an early stage in the litigation, without delay," demonstrating a "desire to arbitrate at the earliest possible juncture." 2026 WL 879746. Judged by the same measure, Upwork's pre-suit record is that showing inverted. (Parts I.C–D.)

Two anticipated responses fail. *First*, Upwork's standard requires it to show "a refusal to arbitrate by one of the parties." *Herman*, 2026 WL 879746, at *3. To the extent Upwork points to Plaintiff's filing of this action, sequence is dispositive: every act constituting the default preceded the Complaint by more than nine months, and Plaintiff's resort to court followed Upwork's abandonment (Part III). A stay applicant that failed to complete the bilateral effort required before Section 14.4 cannot treat the mere passage of sixty days as both satisfying its own antecedent obligation and triggering the later tier for its benefit, nor convert the counterparty's later lawsuit into the "refusal" that rescues its stay. *Cf. Merritt Island*, 137 F.4th at 1275. *Second*, any present willingness to proceed to JAMS comes too late: "post-filing conduct cannot cure the prior non-compliance." *Merritt Island*, 137 F.4th at 1276; *see Sink*, 352 F.3d at 1201 (default forfeits FAA relief); *Pre-Paid Legal*, 786 F.3d at 1294. Section 14.3 prescribes no "formal response"; the May 9 email matters because it identifies the outward performance Upwork itself said it would render within the bilateral process—and purely internal review is not the effort "you and Upwork then will seek" describes. The rule this record supports is narrow. Section 14.3 required affirmative bilateral performance; Upwork invoked that process, identified the performance it would render, and then rendered none—within either candidate period, during the finite cure opportunity, or at

any time before suit—closing the associated matter without substantive disposition. Under the totality of the circumstances, that uncured abandonment of its own defined performance establishes § 3 default. **(Resp. Ex. 8.)**

## II. UPWORK'S DELEGATION ARGUMENTS DO NOT ALTER SECTION 3'S SEQUENCE.

### A. Howsam, BG Group, and Bernal do not delegate the stay applicant's own default.

Under *Howsam v. Dean Witter Reynolds, Inc.*, "'procedural questions which grow out of the dispute and bear on its final disposition' are presumptively not for the judge, but for an arbitrator, to decide," including "allegation[s] of waiver, delay, or a like defense to arbitrability." 537 U.S. 79, 84 (2002) (citation omitted). *BG Group plc v. Republic of Argentina*, 572 U.S. 25, 34–36 (2014), extends that presumption to "procedural preconditions." And in *Bernal*, the Seventh Circuit affirmed the denial of a § 4 petition where the AAA had closed the claimants' cases after the business declined to register its clause: the forum's "exercise of discretion . . . flowed directly from the parties' agreement granting AAA that power, leaving nothing for the district court to compel under the Federal Arbitration Act."

None of those decisions resolves this motion. *First*, posture: *Howsam*, *BG Group*, and *Bernal* address who decides compliance with contractual or forum-administered procedural requirements associated with arbitration. This case presents a different question: whether the *applicant* for a federal § 3 stay satisfies a statutory condition Congress placed on that judicial remedy. The Tenth Circuit rejected the argument that *Howsam* assigns the meaning of statutory "default" to the arbitrator: *Howsam* "dealt with an NASD rule about time limits"—a rule of the forum's own making—while "[t]he same cannot be said . . . of the meaning of 'default' in a federal statute," which the parties "'would likely have expected a court to have decided.'" *Pre-Paid Legal*, 786 F.3d at 1295 (quoting *Howsam*, 537 U.S. at 83). The Seventh Circuit reads *Howsam*'s waiver

language the same way: it refers "only [to] waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration"—not to conduct-based default, which courts decide. *Al-Nahhas*, 129 F.4th at 426 (treating the corresponding *Moses H. Cone* language, 460 U.S. 1, 24–25 (1983), as dicta).

*Second*, forum: in *Bernal*, as in *Howsam*, an arbitral forum existed and acted, and the question was the effect of the forum's administration of its own rules. Here no arbitration was commenced, no arbitrator appointed, and no administrator or arbitrator ever applied a forum rule or exercised conferred authority; the only decisionmaker § 3 names is the court. The governing inquiry is not new; the application is. *Al-Nahhas* supplies the established, court-decided § 3 default inquiry—whether the party "acted inconsistently with the right to arbitrate." 129 F.4th at 425. What no Seventh Circuit case has yet decided is whether that inquiry reaches the stay applicant's pre-suit abandonment of its own mandatory first tier; the Eleventh Circuit has applied the inquiry to pre-suit conduct. *See Merritt Island*, 137 F.4th at 1274 (movant in § 3 default where it "acted inconsistently with its arbitration right by not trying to remedy the barrier to arbitration that it had caused" before suit); *Bedgood*, 88 F.4th at 1362–63 (pre-suit non-compliance rendered §§ 3 and 4 remedies unavailable). Those cases involved an administrator-created barrier absent here; Plaintiff cites them for the proposition that pre-suit conduct may constitute § 3 default, not as factual matches. *Bernal*'s own premise points the same way: the FAA obliges parties to arbitrate "according to the terms of their agreement"—terms Upwork wrote and did not perform.

*Third*, the ordinary precondition cases. Upwork may characterize this as an ordinary contractual-precondition dispute, and cases such as *Howsam* assign ordinary questions about the adequacy of procedural-precondition performance to the arbitrator. *See Lumbermens Mut. Cas. Co. v. Broadspire Mgmt. Servs., Inc.*, 623 F.3d 476, 480–81 (7th Cir. 2010) (adequacy of

claimant's disagreement notices was "a procedural question about a condition precedent to arbitration"); *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 383 (1st Cir. 2011) (assuming a good-faith-negotiation precondition, compliance was for the arbitrator). This case differs: neither opinion mentions § 3's non-default proviso. *Lumbermens* arose on the claimant's petition to compel, and its notice-sufficiency question "gr[e]w out of the dispute" and overlapped the price determination the accounting arbitrator would make, 623 F.3d at 480–81; in *Dialysis Access* the arbitration was already under way. Where the sequencing is express and its nonperformance undisputed, courts have applied it themselves. *Kemiron*, 290 F.3d at 1291; *HIM Portland*, 317 F.3d at 42. The Court is not asked to grade Plaintiff's Notice—Upwork's memorandum acknowledges the April 1 demand to the designated address—or to resolve anything intertwined with the merits; it is asked whether the stay applicant meets the statutory condition on the remedy it seeks, on an undisputed record of its own outward conduct.

**B. Plaintiff's challenge to Section 14.4.2's delegation sentence is for this Court.**

Upwork relies principally on Section 14.4.2 to route the remaining threshold issues to the arbitrator. Plaintiff does not pretend the clause is narrow: it reaches the Provision's "interpretation, enforcement, or application," and it expressly mentions "breach." **(Dkt. 44-4 at PageID #:713.)** Three distinct reasons limit its role here; the first is independent of any contract theory. *First*, the § 3 eligibility question presented here is not merely a contractual arbitrability dispute; it is a statutory condition on the judicial remedy Upwork seeks. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 n.10 (1st Cir. 2005) (§ 3's default language "perhaps gives courts a duty, which cannot be shifted by contract between the parties"). On Upwork's reading, the allegedly defaulting applicant could route its own statutory eligibility to the very forum whose antecedent tier it left unperformed.

*Second* and in the alternative—if the Court reaches the contract question at all—Plaintiff specifically challenges the delegation sentence of Section 14.4.2. Section 14.1 defines the Arbitration Provision as "this Section 14"—an integrated mechanism that includes Section 14.3. Upwork's material breach of Section 14.3 therefore discharged Plaintiff's reciprocal future performance obligations under that integrated Provision, including the delegation promise in Section 14.4.2 itself. (Part III, *infra*.) A challenge "directed specifically to" the delegation provision is for the court, *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71–72 (2010), and the severability principle "does not require that a party challenge *only* the arbitration or delegation provision": "where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 144 S. Ct. 1186, 1194 (2024) (quoting *Rent-A-Center*, 561 U.S. at 71). *Dialysis Access* does not answer this challenge: the primary ground turns on § 3, which assigns the applicant's eligibility to the Court, and the alternative ground is a discharge defense to the delegation sentence's continued enforceability. 638 F.3d at 383. *Third*, the clause's two express reservations and its severability sentence's yield to Section 14.4.3 (Part IV) refute Upwork's premise that once assent is shown "the inquiry ends" and everything else belongs to the arbitrator. **(Dkt. 44-4 at PageID #:713–14; Dkt. 44-1 at 13.)**

### C. JAMS Rule 11(b) does not answer Upwork's eligibility for a § 3 stay.

Upwork separately argues that incorporating the JAMS Comprehensive Rules delegates arbitrability because Rule 11(b) assigns jurisdictional disputes to the arbitrator. **(Dkt. 44-1 at 12–13.)** Incorporating a forum's rules is more contract, and it does not answer the antecedent statutory question whether § 3 authorizes the Court to grant this applicant a stay; that condition on judicial relief "cannot be shifted by contract between the parties." *Marie*, 402 F.3d at 14 n.10.

## III. GROUND TWO: UPWORK'S PRIOR MATERIAL BREACH DISCHARGED PLAINTIFF'S RECIPROCAL SECTION 14 OBLIGATIONS UNDER CALIFORNIA AND ILLINOIS LAW ALIKE.

### A. California: Section 14.3 is enforceable, and its nonperformance was material.

Section 14.2 selects California law for construction of the Agreement. **(Dkt. 44-4 at PageID #:712 (§ 14.2).)** The California Supreme Court has stated the governing contract principle directly: one contracting party may not "unilaterally convert the other contracting party's conditional obligation into an independent, unconditional obligation notwithstanding the terms of the agreement." *Platt Pac.*, 6 Cal. 4th at 314. That is the result Upwork seeks here: having delivered none of the outward bilateral performance it invoked and defined, it asks that Plaintiff's downstream Section 14 obligations—delegation included—be enforced as though unconditional. Section 14.3 separates outcome from effort: "voluntary" describes the resolution the parties "will seek," not the obligation to seek it. *Copeland* recognizes that a contractual obligation to undertake good-faith negotiations may be enforceable even though the parties do not promise any particular result. *Copeland v. Baskin Robbins U.S.A.*, 96 Cal. App. 4th 1251, 1257 (2002). Section 14.3 likewise makes the bilateral effort mandatory while leaving the result voluntary. After the written acknowledgments the outward record shows no formal response, no proposed resolution, and no requested conference. **(Cronin Decl. ¶¶ 15–16, 20.)** That failure left the bargained-for first tier—§ 14.1's mechanism for resolving disputes "quickly and cost-effectively" before arbitration—materially incomplete, defeating its essential purpose and discharging Plaintiff's reciprocal Section 14 duties as to this Claim. *Brown v. Grimes*, 192 Cal. App. 4th 265, 277–79 (2011).

### B. Illinois reaches the same result; no outcome-determinative conflict requires resolution.

Upwork contends that Illinois law governs under Section 14.2's proviso because Plaintiff is an Illinois Freelancer. **(Dkt. 44-1 at 8–9.)** The choice does not change the material-breach and discharge analysis. Illinois's first-to-breach rule "excuses the injured party from future

performance," and "the first breaching party cannot seek to enforce the contract against the injured party." *PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50; *accord Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 70 (2006); *Brown*, 192 Cal. App. 4th at 277–79. Only a material breach carries that consequence, and materiality turns on "whether the breach worked to defeat the bargained-for objective of the parties." *William Blair & Co., LLC v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 346 (1st Dist. 2005).[7] Section 14.3's object was a bilateral attempt before arbitration, and the failure described above left that tier materially incomplete.

Illinois's partial-breach doctrine, which *PML* adopted, confirms that result. After a material breach the injured party "reaches a fork in the road: it may either continue the contract (retain its benefits of the bargain and sue for damages) or repudiate the agreement (cease performing and sue for damages)." 2023 IL 128770, ¶ 52. The election is a question of fact. *Id.* ¶ 58. In *PML* the parties performed under the agreement for years; in *Dustman*, discussed there, the plaintiffs repeatedly demanded arbitration and participated in mediation. *Id.* ¶¶ 56, 59–66. Plaintiff did neither. Counsel's June 6 letter afforded one final, expressly finite opportunity to cure by June 11. **(Resp. Ex. 8.)** After that date Plaintiff demanded no further Section 14 performance, invoked no JAMS proceeding, and accepted no benefit under the later tiers. **(Cronin Decl. ¶¶ 18, 21.)** The unanswered deadline closed any cure window, and Plaintiff's conduct thereafter is consistent with the second branch of the fork *PML* describes. Continued maintenance of an Upwork account, or unrelated marketplace activity, establishes no election to keep the breached process operative: the

[7] *Radiant Star Enterprises, L.L.C. v. Metropolis Condominium Ass'n*, 2018 IL App (1st) 171844, is not to the contrary. There a party's alleged noncompliance with an arbitration award in one dispute was offered to bar arbitration of a later, unrelated dispute; the clause reached all controversies "arising among or between Owners under this Agreement," and section 22.17 expressly provided that "[n]o default under this Agreement shall entitle any party hereto to terminate, cancel or otherwise rescind this Agreement." *Id.* ¶¶ 55, 63, 66. Version 6.8 contains no comparable provision, and the nonperformance here occurred in the mandatory antecedent tier of the same noticed Claim.

breach did not terminate the User Agreement as a whole; it discharged Plaintiff's reciprocal Section 14 obligations as to this Claim. The two states align on the principles that decide this ground, and "[a] choice-of-law determination is required only when a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14.

### C. Plaintiff's ability to file with JAMS does not cure Upwork's antecedent nonperformance.

Plaintiff does not contend that Upwork prevented him from filing a JAMS demand, that JAMS was unavailable to him, or that Upwork was obliged to commence arbitration against itself. The question is whether Upwork may enforce his reciprocal obligation to invoke the later tier after materially failing to complete the antecedent one it invoked and promised to perform. California codifies the point: "Before any party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent thereto imposed upon himself . . . ." Cal. Civ. Code § 1439. Plaintiff awaited the response Upwork had committed in writing to provide, and Upwork cannot convert that reliance on its own promise into a failing by Plaintiff. *See Aceves v. U.S. Bank, N.A.*, 192 Cal. App. 4th 218, 225–27 (2011).

### D. The discharge reaches the delegation sentence and Section 14's waivers.

Section 14.1 integrates Sections 14.3 through 14.4.3 into one sequential design: the "Arbitration Provision" is "this Section 14." The discharge therefore reaches the terms Upwork invokes—the duty to arbitrate before JAMS, the delegation sentence, and Section 14's waivers. The jury-trial waiver was not separately bargained: it arises in the same conditional sentence as the arbitration obligation, on the same condition Upwork left unperformed. **(Dkt. 44-4 at PageID #:712.)** Upwork cannot treat its own antecedent performance as dispensable while demanding Plaintiff's reciprocal downstream performance under the same integrated Section 14 mechanism.

*See* Cal. Civ. Code § 1641; *Brown*, 192 Cal. App. 4th at 277–79. Upwork does not get a different law of contracts because the instrument it breached concerns arbitration. *Morgan*, 596 U.S. at 418. The severability sentence does not answer this discharge theory: by its terms it addresses text "deemed unenforceable," while Plaintiff challenges the continued enforceability of reciprocal future obligations after Upwork's material nonperformance—and Section 14.4.2's severability sentence itself yields "except as set forth in Section 14.4.3." **(Dkt. 44-4 at PageID #:714.)**

## IV. THE CLASS ACTION WAIVER DISPUTE IS RESERVED TO THIS COURT.

Both of the delegation clause's internal reservations appear inside Upwork's own block quotes, and its memorandum addresses neither. **(Dkt. 44-1 at 6, 11.)** Section 14.4.3 reserves "disputes regarding the enforceability, revocability, scope, validity, or breach of the Class Action Waiver" to "a civil court of competent jurisdiction and not . . . an arbitrator"—"[n]otwithstanding any other provision of this Agreement or the JAMS rules." **(Dkt. 44-4 at PageID #:714.)** Its final sentence confirms the allocation: a "final judicial determination" that the Waiver is wholly or partly unenforceable renders "the arbitration provision herein . . . null and void in its entirety." (Id.) Plaintiff disputes Upwork's right, after default and material breach, to enforce the Waiver here, and a dispute "regarding the enforceability . . . or breach of the Class Action Waiver" is for "a civil court" alone. The reservation does not require a pleaded class claim; the Complaint pleaded the dispute at the outset, contesting "the applicability . . . and enforceability of any arbitration provision, delegation clause, class-action waiver, or related contractual restriction." **(Compl. ¶ 227.)** Plaintiff does not presently assert class claims; the Complaint reserved leave to amend (id. ¶ 228). Plaintiff's self-representation does not alter that allocation: Rules 23(a)(4) and 23(g) govern the representation of absent persons, not a party's capacity to resist, in his own right, a term invoked against him. The order Upwork requests would compel arbitration "on an individual basis," giving the Waiver immediate operative effect; Upwork cannot seek that enforcement while

calling judicial review premature. Section 14.4.3 supplies the decisionmaker; Parts I and III supply the ground for nonenforcement. Plaintiff claims no such court-only reservation for the jury-trial waiver; it falls with the discharged Provision. (Part III.D.)

## V. THE ORDER UPWORK SEEKS, AND THE DISCOVERY ALTERNATIVE.

*First*, § 3 authorizes a stay, not an order compelling arbitration—yet the motion asks for an order compelling arbitration "before JAMS in Santa Clara, California." **(Dkt. 44-1 at 16.)** To the extent Upwork seeks compulsion under the FAA, § 4 does not permit this Court to order arbitration in Santa Clara. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011). *Second*, the request to stay the action "in its entirety" is conditional **(Dkt. 44-1 at 16)**; § 3 does not mandate staying the nonmoving defendants' claims. *Third*, under *Tinder* no genuine dispute appears as to the written communications or the nonreceipt, 305 F.3d at 735; if Upwork answers with evidence of internal activity, the remedy is development, not a stay: Plaintiff requests threshold discovery into the promised response, the "Solved" closure, and informal-resolution activity through June 28, 2025 **(Cronin Decl. ¶¶ 7–8, 17, 20, 26)**, with leave for a sur-reply.

## CONCLUSION

The Court should deny the Motion **(Dkt. 44)**: Upwork fails § 3's non-default condition, its uncured material breach discharged Plaintiff's reciprocal Section 14 obligations, and this Court cannot compel arbitration in Santa Clara. Section 14.4.3 reserves the Class Action Waiver dispute to this Court; on default or discharge the Waiver should not be enforced (Part IV). No relief should run to Upwork Inc. absent a demonstrated basis for its enforcement of Section 14. Alternatively, if the Court concludes that the threshold record requires further development, it should defer ruling or deny without prejudice pending the limited discovery described in Part V.

**Dated: August 21, 2026**

**Respectfully submitted,**

*/s/ Evan J. Cronin*
Evan J. Cronin
Pro Se Plaintiff
211 W. Wacker Drive, Suite 120 #2217
Chicago, IL 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 21, 2026, I caused the foregoing Response in Opposition, together with the Declaration of Evan J. Cronin and the Exhibit Compendium filed herewith, to be filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Evan J. Cronin*
Evan J. Cronin
Pro Se Plaintiff
211 W. Wacker Drive, Suite 120 #2217
Chicago, IL 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com