**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>Plaintiff,<br><br>v.<br><br>UPWORK, INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY, and NISHCHAL BASNYAT,<br><br>Defendants. | Case No. 1:26-cv-03220<br><br>Judge Sara L. Ellis<br>Magistrate Judge Laura K. McNally |

**DEFENDANTS TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; AND NISHCHAL BASNYAT'S REPLY IN SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION**

Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax USA, LLC; Chandler Murphy; and Nishchal Basnyat (the "Fractional Tax Defendants"), through their attorneys Goldberg Segalla LLP, state this Reply in Support of Their Motion to Compel Arbitration:[1]

**ARGUMENT**

The Seventh Circuit has quoted this salient point articulated by the U.S. Supreme Court:

> The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.

*Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 425-426 (7th Cir. 2025) (quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25, 103 S. Ct. 927 (1983).

[1] The Fractional Tax Defendants do not dispute this Court's authority to decide the arbitrability of Plaintiff's claims against them.

Here, the arbitration clause is broad and applies to any dispute "between the parties." Importantly, any dispute concerning the Service Contract and the Content Agreement – *which is between the exact same parties as the Service Contract* – are subject to arbitration. Federal law provides that all of Plaintiff's claims must be arbitrated. *Bd. Of Trs. V. Linder*, 2002 U.S. Dist. LEXIS 17403, *6 (N.D. Ill. 2002) (non-signatory defendants who consented to arbitration were entitled to arbitration given that the plaintiffs leveled the same allegations against all defendants).

## II. THE NON-SIGNATORIES ARE ENTITLED TO ARBITRATION.

### A. The Complaint, Exhibits And Relevant Facts Provide A Basis For Arbitrating The Claims Against All Of The Fractional Tax Defendants.

Plaintiff, of course, concedes that he and FTINC are parties to the Service Agreement, which includes the arbitration clause. For example, Plaintiff agrees that "he and FTINC executed the Service Contract. . . ." (Plaintiff's Response, Doc.# 47, pg. 2). Plaintiff further concedes that "[o]n January 7, 2025, Plaintiff and FTINC executed four separate agreements in one DocuSign envelope, each carrying its own signature page executed by Plaintiff and by Basnyat on FTINC's behalf: a Service Contract, a Non-Disclosure Agreement, a Non-Solicitation Agreement, and the Content Assignment and Use of Name Approval Agreement (the 'Content Agreement')." (*Id*. at pp. 2 – 3 of 15). And, of course, Plaintiff concedes that the Service Contract includes the arbitration provision at issue in this motion. (*Id.*)

The facts establish that the non-signatory Fractional Tax Defendants are closely related to the dispute and have a sufficiently close relationship with the signatories to provide a basis for arbitrating all claims against these Defendants. *See Coatney v. Ancestry.Com DNA*, 93 F.4th 1014, 1022 (7th Cir. 2024); *Hugel v. Corp. of Lloyd's*, 999 F.2d 206, 209 (7th Cir. 1993)).

Fractional Tax, Inc. is a named Defendant and entitled to enforce the arbitration agreement. This point is not in dispute. The allegations and facts in the Complaint and supporting exhibits

readily establish that the additional Fractional Tax Defendants are likewise entitled to arbitration:

- Plaintiff alleges that Fractional Tax USA, LLC ("FTUSA") "was associated with or operated [the Fractional Tax Defendants'] website and client portal, shared branding, infrastructure, and operational tools with FTINC and Terma [Project, Inc. ("Terma")] during the relevant period, and functioned as the client-facing entity through which the Fractional Tax enterprise conducted client relationships." (Complaint, Dkt. No. 1, ¶ 16).

- Plaintiff further alleges that Chandler Murphy ("Murphy") acted as an "operational liaison with Plaintiff and communicated with [him] through both Terma-branded and Fractional Tax-branded channels," and that she worked with him on onboarding and coordinating projects through Terma. (*Id.*, ¶¶ 17, 43).

- Plaintiff also alleges that Nishchal Basnyat ("Basnyat") was the Chief Executive Officer of Terma, made the recruitment post via Terma's Upwork account through which Plaintiff was recruited, and participated in communications related to "the entity structure" and Plaintiff's grievances against the Fractional Tax Defendants. (*Id.*, ¶¶ 18, 42).

- Plaintiff further alleges that "the Fractional Tax Defendants acted jointly and/or through agents and instrumentalities in connection with the conduct challenged in this Complaint, operating through overlapping branding, infrastructure, personnel, communications systems, and client-facing channels." (*Id.*, ¶¶ 22, 107, 118, 127, 146, 152, 162, 175, 182).

Plaintiff's own opposition brief undermines his position:

- Plaintiff concedes that "Basnyat's execution of the agreements establishes representative authority for that transaction. . . .") (pg. 8 of Plaintiff's response, Doc.# 47).

- Plaintiff agrees that he negotiated contract terms with Murphy, who acted on behalf of FTINC. (*Id*. at pg. 3).

- Plaintiff further acknowledges that Murphy helped negotiate the January 7 package as Terma's Director of Operations, and Basnyat, as Chief Executive Officer of Terma and authorized representative of FTINC, executed all four agreements. (*Id*. at pg. 10).

- Plaintiff "does not deny operational overlap" between Terma and FTUSA. (*Id*. at pg. 9).

- Plaintiff acknowledges that he "understood that Terma personnel performed recruiting, on boarding, and coordination functions in connection with [his] engagement by Fractional Tax, Inc. (pg. 1 of the Declaration of Evan J. Cronin in Support of Plaintiff's Response In Opposition To The Fractional Tax Defendants' Motion to Compel Arbitration, Dkt. 47-1).

- Chandler Murphy's email address included the term "@termaproject.com" and her email signature block included the name "Terma" in large font. (pg. 5 of Plaintiff's Exhibit Compendium, Dkt. 47-2).

Finally, the declarations of Defendants Nishchal Basnyat and Chandler Murphy[2] provide:

- FTINC is a wholly owned subsidiary of FTUSA, which is a wholly owned subsidiary of Terma. (¶ 3, Ex. 1).
- FTUSA owns and operates the website—fractionaltax.com—and some virtual infrastructure through which FTINC operates its business. (*Id.* at ¶ 4).
- Basnyat is the CEO of Terma, the sole board member of FTUSA, and the sole Director of FTINC. (*Id.* at ¶ 2).
- Murphy is the Director of Operations at Terma and her responsibilities in this capacity include directing FTUSA's and FTINC's operations, including onboarding independent contractors (such as Plaintiff). (*Id.* at ¶¶ 7-8; Ex. 2 at ¶¶ 2 - 3).
- The Service Contract and Content Agreement were signed by Plaintiff and Basnyat, in his capacity as FTINC's authorized representative, was negotiated by Murphy, in her capacity as DOO of Terma. (Ex. 1 at ¶¶ 5-9; Ex. 2 at ¶¶ 3 – 4).
- Terma's administrative assistant Doris Mutembei submitted proposals to clients on behalf of Plaintiff pursuant to the Content Agreement. (Ex. 1, ¶¶ 10 - 11).
- There was operational overlap between Terma Project, FTUSA as well as FTINC including in connection with Plaintiff's performance under the agreements. (Ex.s 1 and 2 generally).

These undisputed facts establish that all of the Fractional Tax Defendants are closely related to one another as well as Plaintiff's claims such that all of these parties are entitled to arbitration. Plaintiff's argument is undermined by his own theories of liability against the Fractional Tax Defendants, all of which hinge on factual allegations that those Defendants worked in concert with one another in various ways, leading to their alleged wrongful acts or omissions.

**B. The Non-Signatory Fractional Tax Defendants Are Incorporated By Reference Into The Service Agreement.**

The law of the Seventh Circuit provides that a non-signatory can invoke an arbitration agreement entered by others through the doctrine of "incorporation by reference." *Zurich Am. Ins.*

[2] The Fractional Tax Defendants offer these declarations in direct response to arguments raised in Plaintiff's opposition brief. The declarations of Nishchal Basnyat and Chandler Murphy are attached hereto as "Exhibit 1" and "Exhibit 2", respectively.

*Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005). Here, the Content Agreement states:

> *As a condition and requirement of engaging in work for Fractional Tax, Inc.*, a Delaware corporation, and its assets (namely fractionaltax.com, and its various social media channels) and any of its current or future subsidiaries (whether or not wholly-owned), affiliates, successors, or assigns (collectively, the "Company"), and in consideration of the privilege of providing services to the Company and my receipt of compensation, if any, now and hereafter paid to me by the Company, I hereby agree to the following. . . .

(Content Agreement, Exhibit B to Motion, Dkt. No. 26-2 at 2) (emphasis added). By signing the Content Agreement, Plaintiff acknowledged that he would be working for Fractional Tax, Inc. and any of its "subsidiaries, . . . affiliates, successors or assigns" – which includes all of the Fractional Tax Defendants. Moreover, the Content Agreement's use of the phrase "of engaging in work" is, of course, a direct reference to the Service Agreement, which defined the scope of the very work in which Plaintiff was to engage. (Service Contract, Exhibit A to Motion, Dkt. No. 26 – 1 at pp. 19 – 20). *See O'Brien v. Kawazove*, 27 Ill. App. 3d 810, 816, 327 N.E.2d 236, 240-41 (1st Dist. 1975) ("As a general rule, a contract need not be contained in a single writing; it may be collected from several different writings which do not conflict with each other and which, when connected, show the parties, subject matter, terms, and consideration.") Accordingly, the non-signatory Fractional Tax Defendants are entitled to invoke the arbitration provision in the Service Contract.

**C. Federal Law Requires This Honorable Court To Compel Arbitration.**

Federal case law squarely supports the Fractional Tax Defendants' right to arbitration. In *Adams v. Raintree Vacation Exch., LLC*, the Seventh Circuit set forth a test for determining whether non-signatory parties of a contract are "closely related" to a lawsuit, rendering it foreseeable that they would be bound by an arbitration clause. 702 F.3d 436, 440 (7th Cir. 2012) (explaining that "[h]aving agreed to arbitrate certain issues, a company shouldn't be allowed, by the facile device of suing an affiliate of the other signatory of the arbitration agreement, to litigate

them instead.") Acknowledging that this is a "vague standard," the Seventh Circuit "noted that 'it can be decomposed into two reasonably precise principles': 'affiliation' and 'mutuality,' either of which is sufficient to allow a nonparty to invoke a forum selection clause." *Stifel, Nicolaus & Co., Inc. v. Lac DU Flambeau Band of Lake Superior Chippewa Indians*, 807 F.3d 184, 212 (7th Cir. 2015) (quoting *Adams*, 702 F.3d at 439).

The *Adams* court explained that affiliation exists when a nonparty is "under common ownership (for example a parent and subsidiary) with—that is, an affiliate of—a party to a contract containing the clause." 702 F.3d at 439-40. Under the law, mutuality "applies when a nonparty is alleged to be a 'co-conspirator' or 'secret principal' with the party bound by the forum selection clause." *Pomerantz v. Hard Rock Café Franchise Grp., LLC*, No. 18 CV 5470, 2020 U.S. Dist. LEXIS 205239, at *16 (N.D. Ill. Nov. 3, 2009) (quoting *Adams*, 702 F.3d at 439-40).

The Seventh Circuit has since clarified "that the concept of 'affiliation' and 'mutuality' may not be as narrow as described in *Adams*, and that those 'situations simply represent[ed] the factual scenarios in which we have been called upon to apply' them." *Shanghai Daisy, LLC v. PositivEnergy, Inc.*, No. 19 C 5901, 2020 U.S. Dist. LEXIS 134892, at *16 n.3 (N.D. Ill. July 30, 2020) (quoting *Stifel*, 807 F.3d at 212-13) (holding that a non-signatory party was permitted to invoke a forum selection clause because he was "intimately involved in the negotiations leading to, and the documents embodying" the disputed issues as well as the forum selection clause). *See also Pomerantz,* 2020 U.S. Dist. LEXIS 205239, at *18 n.5 (holding that "the absence of an ownership link between IHC and Hard Rock[, the defendant entities,] would not necessarily preclude Hard Rock from enforcing the forum selection clause on affiliation grounds.")

Here, Plaintiff's own complaint and exhibits are replete with examples of ways in which the Fractional Tax Defendants are affiliated with one another: (i) Basnyat and Murphy recruited

and onboarded Plaintiff to his position at FTINC in their capacities as officers or agents of Terma; (ii) FTUSA operated certain infrastructure within which the alleged misconduct occurred; (iii) the Fractional Tax Defendants "acted jointly" and operated via overlapping infrastructure, personnel as well as client-facing channels; and (iv) Mutembei sent the proposals in the course of Plaintiff's business relationship with FTINC. The Fractional Tax Defendants are affiliated and "closely related" to the claims alleged by Plaintiff, making it foreseeable that they would invoke Article XI.

Plaintiff's own Complaint alleges that the parties have allegedly acted as, in essence, co-conspirators by acting "jointly and/or through agents and instrumentalities in connection with the conduct challenged in [his] Complaint, operating through overlapping branding, infrastructure, personnel, communications systems, and client-facing channels." (Complaint, ¶ 22).

Plaintiff's attempt to distinguish *Hugel* misses the mark. In that case, the Seventh Circuit agreed that the defendant could enforce an arbitration provision <u>*against*</u> the individual plaintiff who signed it as well as a closely related company and its subsidiary (for which the individual was president and chairman) who had not signed the agreement. *Hugel v. Corp. of Lloyd's,* 999 F.2d 206, 206-207 (7th Cir. 1993). The *Hugel* court explained that enforcement against the non-signatory defendants was proper, given that they were closely related to the dispute. *Id.* Here, the Fractional Tax Defendants seek to enforce the arbitration agreement <u>*against*</u> Plaintiff who, of course, signed the arbitration agreement. The Seventh Circuit's decision in *Hugel* squarely supports the right of the non-signatory Fractional Tax Defendants to <u>*invoke*</u> the arbitration provision, given the closeness of all of these Defendants to this dispute. *See also Pomerantz,* 2020 U.S. Dist. LEXIS 205239 (holding that a non-signatory defendant is entitled to enforce the forum selection clause under the mutuality principle). Plaintiff's contention that the movants need to

establish that the Fractional Tax Defendants are "indistinguishable" is undermined by the aforementioned cases.

Plaintiff again misses the mark by citing *Sosa v. Onfido, Inc.*, 8 F.4th 631, 635 - 36 (7th Cir. 2021) and *Scheurer v. Fromm Family Foods LLC*, 863 F.3d 748 (7th Cir. 2017). In both of those cases, plaintiffs only sued a single defendant who ***had not*** executed the arbitration agreement. Here, Plaintiff has sued the very entity that signed the Service Contract.

Finally, while the Fractional Tax Defendants agree with the legal principles stated in *Coatney v. Ancestry.com DNA, LLC*, 93 F.4th 1014, 1017 - 18 (7th Cir. 2024), the factual basis for its holding is distinguishable. In *Coatney*, the Seventh Circuit explained that an arbitration clause that was executed by guardians could not be enforced against the guardians' minor children. *Id.* The defendant could not compel arbitration against the plaintiffs themselves as they were not parties to the arbitration agreement. *Id.* at 1021 – 22. Here, the Fractional Tax Defendants seek to compel arbitration against Plaintiff who did execute the arbitration agreement.

## III. There Is A Clear Factual Basis For Compelling Arbitration.

In August of this year, the Seventh Circuit stated:

> In scope disputes, we compare the text of the arbitration clause with the factual allegations of the claims to be arbitrated. *See Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663-64 (7th Cir. 2002*); see also, e.g., Davitashvili v. Grubhub, Inc.*, 131 F.4th 109, 119 (2d Cir. 2025) (*quoting Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 36 (2d Cir. 2002)) (explaining the importance of grounding scope analysis "on the factual allegations in the complaint").

*Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, 2026 U.S. App. LEXIS 26271, *5 (7th Cir. August 27, 2026). The Seventh Circuit separately acknowledged this point in *Sosa v. Onfido, Inc.*, 8 F.4th 631, 641 (7th Cir. 2021) – one of the very cases on which Plaintiff relies. Federal law further provides that "[a] copy of a written instrument that is an exhibit to a pleading is a part of

the pleading for all purposes." FED. R. CIV. P. 10(c). *Cent. States v. Miller*, No. 20-cv-00593, 2020 U.S. Dist. LEXIS 273184, *10 (N.D. Ill. 2020) (*citing Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010) (explaining that, where the allegations of a complaint are contradicted by exhibits attached to the complaint, "the exhibits trump the allegations.") *See also Snyder v. Chevron En't Mgmt. Co.*, Case No. 3:23-CV-03738-NJR, 2024 U.S. Dist. LEXIS 252733, at *14 (S.D. Ill. Sep. 30, 2024); (a plaintiff is bound by the factual allegations of his complaint); *Phillips v. Avis, Inc.*, Case No. 95 C 1566, 1996 U.S. Dist. LEXIS 7342, at *4-5 (N.D. Ill. May 28, 1996) ("a party's assertion of fact in a pleading is a judicial admission by which it is bound throughout the course of the proceeding").

The allegations of the Complaint,[3] its exhibits and the evidence of record provide a more than sufficient basis for this Honorable Court to compel arbitration. Moreover, Plaintiff cannot – in an effort to avoid arbitration – distance himself from the factual allegations in his own Complaint and its supporting exhibits. Plaintiff's right to plead legal theories in the alternative does not save his case from arbitration. Clearly, the facts contained in the Complaint and its exhibits allege disputes that fall within the scope of the broad arbitration clause.

## IV. ALL CLAIMS ARE SUBJECT TO ARBITRATION

Given the circumstances of this case, all of Plaintiff's claims are subject to arbitration. Federal law provides that, to the extent there is any ambiguity as to the scope of an arbitration clause, courts "will construe it in favor of the party seeking arbitration." *Malik v. Prairie Raynor*

[3] Plaintiff misconstrues *Tinder* by suggesting that this Honorable Court should apply a summary-judgment-like evidentiary standard, here. In that case, the Seventh Circuit explained that "the party opposing arbitration must identify a triable issue of fact *concerning the existence of the agreement* in order to obtain a trial on the merits of the contract." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002) (emphasis added). Here, there is no such dispute as Plaintiff himself concedes the existence of the arbitration agreement. Moreover, the Seventh Circuit explained that "a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* As discussed in this brief, Plaintiff has failed in this regard.

*LLC*, 2025 U.S. Dist. LEXIS 121510, *8 (N.D. Ill. 2025) (quoting *Int'l Bhd. of Elec. Workers Loc. 2150 v. NextEra Energy Point Beach, LLC*, 762 F.3d 592, 594 (7th Cir. 2014)). "Ultimately, [the Court] will compel arbitration 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.* Under the law, "a broad arbitration clause 'does not limit arbitration to the literal interpretation or performance of the contract. It embraces every dispute between parties having a significant relationship to the contract regardless of the label attached to the dispute". *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) ("We have routinely held that a party may not avoid a contractual arbitration clause merely by 'casting its complaint in tort.'") (citation omitted). When determining arbitrability, courts turn to cases involving forum selection clauses, which "have been held to apply not merely to contract claims involving the terms of the contract in which the clause appears, but also to other claims . . . connected to the contract, such as tort claims arising from the contract." *Shanghai Daisy, LLC*, 2020 U.S. Dist. LEXIS 134892, at *13-14 (N.D. Ill. 2020) (citation omitted).

Here, while Plaintiff's claims against the Fractional Tax Defendants sound in a combination of tort, contract, and statutory causes of action, all of those claims ultimately boil down to Plaintiff's relationship with the Fractional Tax Defendants and relate to his work pursuant to the Service Contract. Critically, the parties' relationship arose from the Subject Agreements, rendering all claims subject to arbitration.

The fact that the Content Agreement incorporates the Service Agreement is another reason why all of Plaintiff's claims are subject to arbitration. Federal law further provides:

> When parties enter into multiple agreements, and "only one contains an arbitration clause, and the plaintiff brings a cause of action based, at least in part, on conduct contrary to the agreement that does not have the arbitration clause, the parties can be compelled to arbitrate

> only if (1) the clause itself is broad enough to encompass their dispute, or (2) the agreement containing the clause incorporates the other[(s)] by reference." *Gore*, 666 F.3d at 1033.

*APAC Customer Servs. v. Marrow*, No. 12 C 2217, 2012 U.S. Dist. LEXIS 58194, at *7-8 (N.D. Ill. Apr. 26, 2012). The law states that "[w]here the arbitration clause is broad, [the Court] presume[s] arbitrability of disputes. *Malik*, 2025 U.S. Dist. LEXIS 121510, at *8 ("where any ambiguity as to the scope of the clause exists, [the Court] will construe it in favor of the party seeking arbitration.") (*citing Int'l Bhd. of Elec. Workers Loc. 2150*, 762 F.3d at 594.

Here, as discussed above, the Content Agreement incorporates the Service Agreement by reference, explicitly stating that the execution of the Content Agreement is a condition and requirement of engaging in work for FTINC. Plaintiff could not have performed under the Service Contract – which includes the arbitration provision – without executing the Content Agreement. Plaintiff himself argues in his response brief: "Count VI's name-and-likeness theory pleads breach of the Content Agreement, though Count VI also alleges that the audit-related proposal implicated the Service Contract's restriction against services suggesting FTINC was a licensed CPA firm." (pg. 12 of 15, Response, Doc.# 47). In other words, Plaintiff himself acknowledges that even his name-and-likeness claim implicates the Service Contract. Moreover, the Content Agreement, which authorizes the use of Plaintiff's name and likeness, assigns this right to "the Company" which includes Fractional Tax, Inc. as well as its "current or future subsidiaries . . ., affiliates, successor or assigns," which includes the Fractional Tax Defendants. (pp. 1 – 2, Content Agreement, Ex. B to the Motion to Compel Arbitration, Dkt. 26).

The arbitration clause is broad and encompasses all claims asserted by Plaintiff. The language states that if "a dispute shall arise" then that dispute "shall be referred . . . for arbitration. . . ." (Art. XI at 4 of Service Contract, Ex. A, Dkt. 26). This broad language does not limit the

type of dispute that is subject to arbitration. The Service Contract does not expressly state that only certain disputes will be referred to arbitration, nor does that contract place any limitation whatsoever on which disputes must be arbitrated. Plaintiff's contention that the broad arbitration clause does not specifically identify "what is arbitrated" ignores the plain language that requires arbitration of "a dispute". Federal law does not require the specificity demanded by Plaintiff.

Plaintiff cites *Rosenblum* for the general proposition that agreements executed in a single transaction are separate contracts. While this general statement is true, *Rosenblum's* holding is not controlling here. In that case, the parties had executed two agreements only one of which included an arbitration clause. In *Rosenblum*, arbitration was not proper because the dispute arose "solely" under the agreement that did not require arbitration. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 659 (7th Cir. 2002). Alternatively, here, the Service Contract lies at the heart of most if not all of Plaintiff's claims.

Plaintiff also references a point, in *AGCO*, that the dispute arose out of a separate agreement that did not contain an arbitration clause. *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 - 94 (7th Cir. 2000). However, in *AGCO*, the arbitration agreement was limited by its terms to certain disputes. Here, the arbitration agreement broadly applies to any "dispute".

In short, Plaintiff's response arguments each fail and his claims must be arbitrated.

## V. THE FRACTIONAL TAX DEFENDANTS ARE ENTITLED TO LEGAL FEES.

### A. The Fractional Tax Defendants Did Not Waive Their Right To Arbitration.

Plaintiff's contention that the Fractional Tax Defendants waived their right to arbitration is wholly without merit. Federal law provides that "[a] 'waiver of arbitration is not lightly to be inferred.'" *Dickinson v. Heinold Sec., Inc.*, 661 F.2d 638, 641 (7th Cir. 1981) (citation omitted). "The essential question is whether, under the totality of the circumstances, the defaulting party

acted 'inconsistently' with the arbitration right." *Id.* (citations and internal quotations omitted). In deciding whether a waiver of the right to arbitration has occurred, the key inquiry is "whether, prior to seeking to compel arbitration, the party has placed substantive issues before the court." *Watkins v. Mellen*, 2016 IL App (3d) 140570, ¶ 15, 54 N.E.3d 879, 885 (Ill. App. Ct. 2016). *See also Herman v. Rock Gate Gap, LLC*, No. 25-cv-01088, 2026 U.S. Dist. LEXIS 70439, *13 (N.D. Ill. Mar. 30, 2026) (Judge Ellis concluding that the defendants who "advanced their arguments about arbitration at an early stage in the litigation, without delay and before the parties engaged in discovery" did not waive the right to compel arbitration).

Plaintiff does not argue that the Fractional Tax Defendants waived their right to arbitration through post-suit delay, conceding that these Defendants timely asserted their right to arbitration in the initial Joint Status Report. (pg. 14 of Plaintiff's Response, Dkt. 47). Instead, Plaintiff contends – without any case law support whatsoever – that the Fractional Tax Defendants' pre-suit conduct constitutes a waiver of its right to arbitration.

In support of his contention, Plaintiff cites *Al-Nahhas v. 777 Partners LLC*, 129 F. 4th 418 (7th Cir. 2025). However, in that case, the Seventh Circuit evaluated whether conduct occurring ***during litigation*** – such as participating in litigation or discovery, or delaying a request for arbitration – constituted a waiver. *Id.* at 426 – 27. No such conduct occurred, here. Moreover, federal case law provides that a party's ***pre-suit conduct*** does not waive the right to arbitration. *See Scaffidi v. Fiserv, Inc.*, No. 05-C-1046, 2006 U.S. Dist. LEXIS 50546, at *12-13 (E.D. Wis. July 20, 2006) (holding that the defendant did not waive its right to arbitrate by participating in the EEOC investigatory process or by engaging in preliminary settlement negotiations and "was under no obligation to make a pre-suit demand for arbitration"); *Cerna v. Prestress Servs. Indus., LLC*, No. 1:10-cv-188, 2011 U.S. Dist. LEXIS 53527, at *27 (N.D. Ind. May 18, 2011) (likewise holding

that a defendant is under no obligation to make a pre-suit demand for arbitration).

Here, Plaintiff is the party who filed the instant lawsuit. The Fractional Tax Defendants were not obligated to arbitrate its pre-suit decision to sever its business relationship with Plaintiff. The record clearly establishes that the Fractional Tax Defendants timely pursued arbitration once they were served with the lawsuit. There is simply no basis for concluding that the Fractional Tax Defendants waived their right to compel arbitration.

**B. There Is A Clear Basis For Awarding Legal Fees.**

Article XI of the Service Contract provides: "[i]n the event a party fails to proceed with arbitration . . . the other party is entitled to recovery of costs of suit *including a reasonable attorney's fee for having to compel arbitration. . . .*" (Service Contract, Exhibit A to Motion, Dkt. No. 26-1 at 5) (emphasis added). Federal law entitles the Fractional Tax Defendants to recover their legal fees for filing their Motion to Compel Arbitration. *Brne v. Inspired eLearning*, Case No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943, at *11-12 (N.D. Ill. Sept. 26, 2017). Plaintiff's arguments opposing these Defendants' right to legal fees all fail.

It is well-settled that, by filing his lawsuit and opposing the Motion to Compel Arbitration, Plaintiff has already "refused to arbitrate".[4] Plaintiff's willingness to "agree" to abide by this Court's order if arbitration is compelled does not mean that he is "agreeing" to arbitration as that concept is contemplated by the Service Contract or the law in this jurisdiction.

Here, on June 2, 2026, prior to filing their Motion to Compel Arbitration, the Fractional Tax Defendants asked Plaintiff to agree to refer the matter to arbitration and reminded him of the

---

[4] *Cater v. MyHeritage, Ltd.,* No. 25-cv-00224, 2026 U.S. Dist. LEXIS 65839 at *23 (N.D. Ill, Mar. 27, 2026) ("In filing their suit before a court and not before an arbitrator, and in arguing against their obligation to arbitrate in response to defendants' motion to compel arbitration, plaintiffs have shown a refusal to arbitrate."); *Bouie v. Credit Acceptance Corp.,* 2025 U.S. Dist. LEXIS 254522 at *5 (N.D. Ill. 2025) (same); *Hamera v. Best By Co.,* 790 F. Supp. 3d 664, 678 (N.D. Ill 2025) (same).

fee-shifting provision in the arbitration agreement. (See June 2, 2026 correspondence attached as "Exhibit 3"). Plaintiff refused, and the Fractional Tax Defendants were forced to incur legal fees by filing the instant motion. Accordingly, the Fractional Tax Defendants are entitled to legal fees.

## CONCLUSION

WHEREFORE, Defendants Terma Project, Inc.; Fractional Tax, Inc.; Fractional Tax USA, LLC; Chandler Murphy; and Nishchal Basnyat respectfully request that this Court enter an order:

i. granting the Fractional Tax Defendants' Motion to Compel Arbitration and ordering Plaintiff to submit his claims against the Fractional Tax Defendants to arbitration;

ii. staying this action, pending the outcome of arbitration;[5]

iii. awarding the Fractional Tax Defendants the legal fees and costs incurred in connection with filing their Motion to Compel Arbitration or, in the alternative, granting leave to seek such fees and costs from the arbitrator; and

iv. providing for any other just and proper relief.

Respectfully submitted,

By: /s/ *Chad J. Layton*

Goldberg Segalla LLP
Chad J. Layton, ARDC No. 6243339
Patrycia Piaskowski, ARDC No. 6346239
222 West Adams Street, Suite 2250
Chicago, Illinois 60606
(312) 572-8400
clayton@goldbergsegalla.com
ppiaskowski@goldbergsegalla.com

Attorneys for Defendants Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat

[5] In its opening brief, the Fractional Tax Defendants requested the dismissal or, in the alternative, a stay of this action, citing *Agha v. SoFi Lending Corp.*, 2024 U.S. Dist. LEXIS 47605, *11-12 (N.D. Ill. 2024) (stating that dismissal is proper because "there is no reason to hold on to the case.") (citation omitted). However, following review of *Smith v. Spizzirri*, 601 U.S. 472, 427 – 76 (2024), the Fractional Tax Defendants agree that a stay is proper.

## CERTIFICATE OF SERVICE

The undersigned states that a copy of the foregoing **Defendants Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat,** Reply In Support of Their Motion to Compel Arbitration was filed with the United States District Court, Northern District of Illinois, Eastern Division using the CM/ECF system on September 14, 2026, which will send notification of such filings to all parties of record.

*/s/ Chad J. Layton*
*Attorney for Defendants Terma Project, Inc., Fractional Tax, Inc., Fractional Tax USA, LLC, Chandler Murphy, and Nishchal Basnyat*