**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT COMPENDIUM

*in support of*

## PLAINTIFF'S MOTION TO DEEM WAIVED THE MATTERS FIRST RAISED IN DEFENDANTS UPWORK GLOBAL LLC AND UPWORK INC.'S REPLY (Dkt. 56) OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO THEIR MOTION TO COMPEL ARBITRATION AND STAY ACTION (Dkt. 44)

Evan J. Cronin — Plaintiff

*Respectfully submitted, October 10, 2026*

*3 exhibits • 23 pages • index follows*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT COMPENDIUM INDEX


| Exhibit | Document Description | Page |
|---|---|---|
| A | [Proposed] Plaintiff's Sur-Reply in Opposition to Defendants Upwork Global LLC and Upwork Inc.'s Motion to Compel Arbitration and Stay Action (Dkt. 44) | 3 |
| B | Conferral Correspondence Between Plaintiff and Counsel for Defendants Upwork Global LLC and Upwork Inc., September 21–23, 2026 | 14 |
| C | Cited Authorities Not Available on Westlaw or Lexis | 19 |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# A

**[Proposed] Plaintiff's Sur-Reply in Opposition to Defendants Upwork Global LLC and Upwork Inc.'s Motion to Compel Arbitration and Stay Action (Dkt. 44)**

**Date / Operational Origin:** Tendered with the Motion for the Court's review; to be filed as a separate docket entry only if leave is granted. Its numbered parts correspond to the matters identified in Part I of the Motion.

*— Document follows this cover page —*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EVAN J. CRONIN,

Plaintiff,

v.

UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,

Defendants.

Case No. 1:26-cv-03220

Hon. Judge Sara L. Ellis

Hon. Magistrate Judge Laura K. McNally

**[PROPOSED] PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS UPWORK GLOBAL LLC AND UPWORK INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (Dkt. 44)**

PROPOSED

## TABLE OF CONTENTS

**ARGUMENT..........1**

I. Factual Assertions Offered Without Evidence..........1

1. "Solved."..........1
2. "Communicated through the 60-day period."..........2

II. Grounds First Raised in the Reply..........2

1. Section 15.2..........2
2. Separability..........3
3. Election..........4
4. Survival (Section 13.3)..........5
5. Severability (Section 14.4.5)..........5
6. The class waiver..........6

**CONCLUSION..........8**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)..........6, 7

*INS v. Phinpathya*, 464 U.S. 183 (1984)..........2

*PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770..........4, 5, 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967)..........3

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)..........3

**Statutes**

9 U.S.C. § 3..........3, 6, 8

PROPOSED

Plaintiff Evan J. Cronin submits this sur-reply, with leave of Court, in further opposition to the Motion to Compel Arbitration and Stay Action (Dkt. 44) (the "Motion to Compel"). It answers only the matters first raised in the reply in support of the Motion to Compel (Dkt. 56) (the "Reply"), and the Reply's descriptions of the record and of Plaintiff's position that bear on them. Each numbered item stands on its own, and every citation is to the existing record. Defendants Upwork Inc. and Upwork Global LLC are referred to together as the "Upwork Defendants," and references to duties under the User Agreement concern Upwork Global LLC, as successor by conversion to Upwork Global Inc. (Dkt. 44-4 at 3; Dkt. 36-3 at PageID #:398; Dkt. 1 ¶ 13.)

## ARGUMENT

### I. Factual Assertions Offered Without Evidence

***1. "Solved."*** The Reply states that "[a] ticketing system's 'Solved' label is an administrative classification," citing only "*Id.*," which refers back to Plaintiff's own exhibits at Dkt. 51-2. (Dkt. 56 at 6–7.) The record shows what the label displayed, not what it meant inside Upwork. The case panel showed "Solved," with a last-activity entry of June 2, 2025, at 6:06 p.m. (Dkt. 51-2 at 60); Plaintiff did not mark the case solved; and the only message he received about the case around the time of the status change was an automated request to rate his support experience, which contained no promised response to the Claim (Dkt. 51-1 ¶ 17).

The record does not show who changed the status, whether a person or an automated rule did so, what "Solved" signifies in Upwork's support workflow, or why the status changed. Those records are not available to Plaintiff (*id.* ¶ 26), and the only declaration filed with the Motion to Compel says nothing about the Notice, the support case, or its closure (Dkt. 44-2).

Plaintiff's position rests on the outward record: the response promised on May 9 was not delivered before or after the status changed. (Dkt. 51-1 ¶¶ 17, 20.) The Reply's characterization of

PROPOSED

the label is not evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) ("Counsel's unsupported assertions in respondent's brief do not establish" the fact asserted). Yet the Reply relies on it against discovery: "Discovery cannot change the Agreement's text or convert an administrative label into repudiation." (Dkt. 56 at 15.)

If the Court is inclined to rely on that characterization, Plaintiff asks that the Court first permit limited discovery confined to the subject he identified before the Upwork Defendants filed the Motion to Compel (Dkt. 36-1 at 14; Dkt. 36-3 at PageID #:526): the status history of support case No. 51489662; whether a person or an automated rule set the status to "Solved," and which; the meaning of "Solved" in the support workflow; and any recorded reason for the change.

***2. "Communicated through the 60-day period."*** The Reply states that Upwork "communicated through the 60-day period." (Dkt. 56 at 12.) The exhibits show Upwork's automated receipt of the April 1, 2025 Notice, Upwork Legal's April 29, 2025 acknowledgment, and the May 9, 2025 email. (Dkt. 51-1 ¶¶ 9, 15; Dkt. 51-2 at 23–24, 54–55.) The 60-day period ran from receipt of the April 1 Notice, and its sixtieth day was May 31, 2025. (Dkt. 51 at 14.) The May 9 email came twenty-two days before that date. The Reply cites no later communication from Upwork about the Claim, and the record shows none of substance: the only later message was an automated request to rate the support experience. (Dkt. 51-1 ¶¶ 17, 20.)

## II. Grounds First Raised in the Reply

***1. Section 15.2.*** The Reply asserts that "[t]he May 9, 2025 email cannot modify the User Agreement," relying on Section 15.2's statement that "Email will not constitute a written instrument as contemplated by this Section 15.2." (Dkt. 56 at 12.) Plaintiff does not contend that the email modified the Agreement. He relies on it as Upwork's own statement of the performance it would provide within the Section 14.3 process: "We will ensure that our formal response is

PROPOSED

provided within this period." (Dkt. 51-2 at 55; Dkt. 51 at 14–16.) Section 15.2 governs when a "modification or amendment to the Terms of Service will be binding upon Upwork" (Dkt. 44-4 at 32); it does not address a contracting party's own written statement, invoking "the arbitration provisions applicable to this matter," of how and when it would perform the terms as written.

The Reply also quotes Section 15.2's sentence "We do not guarantee we will take action against all breaches of this User Agreement." (Dkt. 56 at 12.) That sentence follows "[o]ur failure to act with respect to a breach by you or others" and concerns enforcement against breaches by users. (Dkt. 44-4 at 32.) Plaintiff's theory concerns the contracting party's own obligation under Section 14.3 to "seek informal voluntary resolution of the Claim" (*id.* at 29), and he does not contend that any result was guaranteed (Dkt. 51 at 16, 21).

***2. Separability.*** The Reply asserts that, "[e]ven apart from the delegation clause, the separability doctrine forecloses using an alleged performance shortcoming in the dispute-resolution process to avoid an independently enforceable arbitration promise," and that *Prima Paint* "forecloses Plaintiff's attempt to avoid arbitration through a performance defense." (Dkt. 56 at 11; *see id.* at 3.)

*Prima Paint* draws the line elsewhere. It holds that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). What separability withholds from the court is a challenge to the contract in which the agreement to arbitrate is embedded, there a claim of "fraud in the inducement of the contract generally." *Id.* "But that agreements to arbitrate are severable does not mean that they are unassailable." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

PROPOSED

Plaintiff does not challenge the User Agreement as a whole or contend that it terminated. (Dkt. 51 at 22–23.) His theory concerns the performance of the agreement to arbitrate itself: Section 14.3 is part of Section 14, the "Arbitration Provision," and the promise to arbitrate operates "[i]n the unlikely event the parties are unable to resolve a Claim within 60 days of the receipt of the applicable Notice." (Dkt. 44-4 at 28–29.) Severing that agreement from the rest of the User Agreement does not exempt it from the rule that "the first breaching party cannot seek to enforce the contract against the injured party." *PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50.

***3. Election.*** The Reply asserts that Plaintiff "cannot claim discharge after electing to continue the process," because "his June 6 cure letter sought continued performance rather than repudiation," and that, "[u]nder PML's election framework, he cannot insist on continued performance and later claim that the process was discharged." (Dkt. 56 at 13.) Whether a party elected to continue performing is a question of fact. *PML*, 2023 IL 128770, ¶ 58.

The record does not show the election the Reply describes. The June 6, 2025 letter, which Plaintiff's then-counsel sent to Upwork Global Inc., set a June 11 deadline and closed: "Please note that nothing in this letter shall constitute an admission or waiver." (Dkt. 51-2 at 57–58; Dkt. 51-1 ¶ 16.) The deadline passed without a response (Dkt. 51-1 ¶ 18), and no later demand for performance followed; as the Reply itself states, Plaintiff "never filed a JAMS demand" and "sued rather than initiating arbitration." (Dkt. 56 at 13; *see* Dkt. 51-1 ¶ 21.) That course is consistent with treating further Section 14 performance as discharged, not with an election to continue it. *See PML*, 2023 IL 128770, ¶ 52.

In *PML*, by contrast, the party "continued to operate on the property, reaping significant economic benefits," and "sought and obtained mandamus orders extending its operations under the

PROPOSED

Agreement for several years in the future." *Id.* ¶ 59. A single letter that set a June 11 deadline and disclaimed waiver, followed by no resort to the later Section 14 tiers, does not establish an election as a matter of law.

***4. Survival (Section 13.3).*** The Reply asserts that "[t]he Agreement's survival and severability provisions independently foreclose Plaintiff's construction," because "Section 13.3 makes arbitration obligations survive termination." (Dkt. 56 at 14.) Section 13.3 provides that, "[a]fter this Agreement terminates," terms that "expressly or by their nature contemplate performance after this Agreement terminates or expires will survive and continue in full force and effect." (Dkt. 44-4 at 28.)

Plaintiff does not contend that the User Agreement terminated; his theory is that the contracting party's material nonperformance of Section 14.3 discharged his reciprocal Section 14 obligations as to this Claim, with the Agreement otherwise in force. (Dkt. 51 at 22–23.) A clause that keeps arbitration terms in effect after termination does not say that a party may enforce those terms after failing to perform its own part of them, and Section 13.3 preserves the obligations of both sides: termination "will not release you or Upwork from any obligations incurred prior to termination." (Dkt. 44-4 at 28.)

***5. Severability (Section 14.4.5).*** The Reply adds that "Section 14.4.5 preserves the Arbitration Provision if a portion is unenforceable" and that "Plaintiff's proposed discharge would nullify those provisions based on an alleged omission in a preliminary, voluntary process." (Dkt. 56 at 14.) Section 14.4.5 provides: "In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." (Dkt. 44-4 at 31.) It addresses what remains when contractual text is held unenforceable. Plaintiff's theory does not ask the Court to deem any portion of the Arbitration Provision unenforceable as written; it

PROPOSED

is that the contracting party's material nonperformance discharged his reciprocal Section 14 obligations as to this Claim. (Dkt. 51 at 22–24.) Discharge therefore does not "nullify those provisions." It applies the first-breach rule. *PML*, 2023 IL 128770, ¶ 50.

***6. The class waiver.*** The Reply asserts that "[n]o class-waiver dispute is presented: Plaintiff, who is pro se, has not pleaded a class claim or asked the Court to decide whether a class may proceed," and that, "[e]ven if the Court reached the issue, *Concepcion* confirms the Agreement may require individual arbitration." (Dkt. 56 at 11; *see id.* at 8–9.) Section 14.4.3 does not limit the Court's role to deciding whether a class may proceed. It provides that "disputes regarding the enforceability, revocability, scope, validity, or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." (Dkt. 44-4 at 31.) Nothing in that provision conditions a dispute about the Waiver's enforceability on whether a party has counsel, has pleaded a class claim, or has asked the Court to decide whether a class may proceed.

Plaintiff disputes that the Waiver may be enforced against him if the Upwork Defendants are in default under § 3 and/or his Section 14 obligations were discharged. (Dkt. 51 at 24–25.) That dispute was joined before Dkt. 44. Plaintiff's May 28, 2026 letter stated his position that, if Upwork "is in default under 9 U.S.C. § 3 and may not enforce the arbitral forum, the Class Action/Jury Trial Waiver does not survive as an independent litigation waiver in this Court." He then asked Upwork to stipulate that the waiver "cannot be enforced independently" in that event, and Upwork "declined to do so" and confirmed that it "will oppose" what became Plaintiff's Motion to Declare the Upwork Defendants in Default Under 9 U.S.C. § 3 and to Enjoin Enforcement of the Class Action/Jury Trial Waiver (Dkt. 36) (the "Default Motion"). (Dkt. 36-3 at PageID #:525, 540–42.) The Upwork Defendants then told the Court that they "will also oppose"



PROPOSED

the Default Motion's request for "preclusion or injunction against enforcement of the class action/jury trial waiver" (Dkt. 42 at PageID #:613), and the Reply contends that "the Agreement may require individual arbitration" (Dkt. 56 at 11).

That is a dispute regarding the Waiver's enforceability, and the absence of a pleaded class claim does not change that. Disputing the Waiver is not a request to certify a class, and Plaintiff need not plead class claims or seek certification to raise that dispute. He does not presently assert class claims; the Complaint disputed the enforceability of any class-action waiver a Defendant may assert and reserved the right to seek leave to amend. (Dkt. 1 ¶¶ 227–28; Dkt. 51 at 24.)

The dispute also concerns Plaintiff's own claims: the Agreement states that, "[b]y agreeing to arbitrate disputes under this Agreement, THE PARTIES ARE EXPRESSLY GIVING UP ANY AND ALL RIGHTS TO A JURY TRIAL" (Dkt. 44-4 at 29), and Plaintiff has demanded a jury (Dkt. 1 at 1, 56). Nor does Plaintiff invoke Section 14.4.3 to bring the default or discharge questions before the Court; those questions are the Court's on their own grounds. (Dkt. 51 at 17–20.)

The question that follows is whether the Upwork Defendants may enforce the Waiver in this Court if they have lost the right to compel arbitration. The Agreement introduces the Waiver with the parties' agreement "to bring any dispute in arbitration on an individual basis only," and then provides that there will be "no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action." (Dkt. 44-4 at 31.) Neither sentence answers that question; it is a question of the Waiver's "enforceability" and "scope," which the same subsection reserves to a civil court. Nor does *Concepcion* decide it. It held that the FAA preempts California's *Discover Bank* rule. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Plaintiff invokes no state rule against class waivers; he relies on the Agreement's own terms.

PROPOSED

## CONCLUSION

For these reasons, the Court should deny the Motion to Compel (Dkt. 44). It should also hold that Section 14.4.3 reserves the dispute over the Class Action Waiver to this Court and that, if the Upwork Defendants are in default under § 3 and/or Plaintiff's Section 14 obligations were discharged, neither the Class Action Waiver nor the jury trial waiver may be enforced against him in this Court. If the Court is inclined to rely on the Reply's characterization of the "Solved" status, it should first permit the limited discovery requested in Part I.1.

**Dated:** October 10, 2026

Respectfully submitted,

*/s/ Evan J. Cronin*
Evan J. Cronin
211 W. Wacker Drive, Suite 120 #2217
Chicago, Illinois 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com
Plaintiff, Pro Se

PROPOSED

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# B

**Conferral Correspondence Between Plaintiff and Counsel for Defendants Upwork Global LLC and Upwork Inc., September 21–23, 2026**

**Date / Operational Origin:** The September 22–23, 2026 email thread between Plaintiff and counsel for the Upwork Defendants, including Plaintiff's 10:22 a.m. CT email of September 23 stating his understanding of the telephone conference and their counsel's 11:43 a.m. CT reply confirming it, followed by their counsel's September 21, 2026 email (1:45 p.m. CT) as attached to Plaintiff's 10:22 a.m. email; printed from Plaintiff's mailbox on September 23, 2026.

*— Document follows this cover page —*

Evan J Cronin
CPA & Tax Services

Evan Cronin <evan@cronintaxservices.com>

# Cronin v. Upwork Inc., et al., No. 1:26-cv-03220 — Conferral re: Motion to Deem Waived the Matters First Raised in Upwork's Reply (Dkt. 56) or, in the Alternative, for Leave to File Surreply (Motion to Compel Arbitration, Dkt. 44)

5 messages

---

**Ganze, Gabrielle N.** <gabrielle.ganze@blankrome.com> Tue, Sep 22, 2026 at 3:15 PM
To: Evan J Cronin <legal@cronintaxservices.com>
Cc: "Powers, Allison" <allison.powers@blankrome.com>

Hi Evan,

Please confirm if you 10:00 am CT tomorrow works for you. Otherwise, I am available until noon as well. I will call you at (312) 725-9960.

Thank you,


***************************************************************************************************

This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the Blank Rome LLP or Blank Rome Government Relations LLC sender by return email, and delete or destroy this and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.

***************************************************************************************************


**invite.ics**
3K

---

**Evan J Cronin** <legal@cronintaxservices.com> Tue, Sep 22, 2026 at 3:30 PM
To: "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>
Cc: "Powers, Allison" <allison.powers@blankrome.com>

Hi Gabrielle,

10:00 a.m. CT tomorrow works. I will look for your call at (312) 725-9960.

Best,
Evan
[Quoted text hidden]
--

Evan J Cronin
Plaintiff, Pro Se
legal@cronintaxservices.com
+1 (312) 725-9960



This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this message and all copies of this message and all attachments. Any

[Quoted text hidden]

**Ganze, Gabrielle N.** <gabrielle.ganze@blankrome.com> Tue, Sep 22, 2026 at 3:32 PM
To: Evan J Cronin <legal@cronintaxservices.com>
Cc: "Powers, Allison" <allison.powers@blankrome.com>

Thank you Evan. I look forward to speaking with you then.

Gabrielle N. Ganze | BLANKROME
444 West Lake Street | Suite 1650 | Chicago, IL 60606
direct: +1.312.776.2575 | mobile: +1.773.419.5877
gabrielle.ganze@blankrome.com | bio
[Quoted text hidden]

---

**Evan J Cronin** <legal@cronintaxservices.com> Wed, Sep 23, 2026 at 10:22 AM
To: "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>
Cc: "Powers, Allison" <allison.powers@blankrome.com>

Gabrielle,

Thank you for speaking with me by telephone today at 10:02 a.m. regarding the motion I intend to file concerning the Upwork Defendants' Reply (Dkt. 56). My understanding of our call is that, after a candid discussion, we were unable to reach an accord, and that I may state the Upwork Defendants' position as set out in Ms. Power's September 21 email, a copy of which I have attached to this email.

Regards,
Evan

On Tue, Sep 22, 2026 at 3:32 PM Ganze, Gabrielle N.
[Quoted text hidden]

**Upwork Defendants Position (21 September 2026).pdf**
147K

---

**Ganze, Gabrielle N.** <gabrielle.ganze@blankrome.com> Wed, Sep 23, 2026 at 11:43 AM
To: Evan J Cronin <legal@cronintaxservices.com>
Cc: "Powers, Allison" <allison.powers@blankrome.com>

Evan,

Yes, that is correct.

Thank you,
[Quoted text hidden]

Evan J Cronin
CPA & Tax Services

Evan Cronin <evan@cronintaxservices.com>

## Cronin v. Upwork Inc., et al., No. 1:26-cv-03220 — Conferral re: Motion to Deem Waived the Matters First Raised in Upwork's Reply (Dkt. 56) or, in the Alternative, for Leave to File Surreply (Motion to Compel Arbitration, Dkt. 44)

**Powers, Allison** <allison.powers@blankrome.com> Mon, Sep 21, 2026 at 1:45 PM
To: Evan J Cronin <legal@cronintaxservices.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>, Clayton Layton <clayton@goldbergsegalla.com>, "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>

Mr. Cronin:

We write in response to your September 17, 2026 conferral concerning your proposed motion regarding Upwork's Reply (Dkt. 56). Upwork objects to both the primary relief you propose and your alternative request for leave to file a sur-reply.

None of the five matters identified in your email constitutes a new factual assertion, legal theory, or evidence first raised in the Reply. Rather, each responds directly to arguments, authorities, contractual provisions, or record materials raised in your Opposition. Therefore, it is inappropriate to ask the Court to strike our reply or seek leave for your anticipated sur-reply. Should you proceed with your unwarranted request, we ask that you include our position as follows in response to each point you have raised in your September 17 email:

First, the Reply's characterization of the June 2, 2025 "Solved" status responds to a fact and argument raised in your Opposition and reflected in your own exhibits. The Reply does not introduce a new fact concerning that status; it addresses the legal significance of the record you submitted.

Second, the statement that Upwork "communicated through the 60-day period" summarizes the chronology reflected in your own exhibits, including Upwork's communications during that period. It does not rely on new evidence.

Third, the Reply's position that there is no factual dispute warranting discovery is not inconsistent with the June 9, 2026 correspondence you identify. That earlier correspondence addressed your request for pre-motion stipulations, whereas the Reply addresses whether discovery is necessary to resolve the pending motion based on the record now before the Court. It is not given that Upwork did not dispute the chronology included in your opposition.

Fourth, the statements you identify concerning Section 14.3 address different issues and are not contradictory. The Reply distinguishes the sequence contemplated by Section 14.3 from the "contractual compulsion to negotiate" addressed by the authority cited in your Opposition.

Finally, the authorities and contractual provisions you identify—including PML, Section 15.2, Sections 13.3 and 14.4.5, and Prima Paint—were cited in direct response to arguments or authorities raised in your Opposition and concern provisions of the User Agreement already before the Court. Therefore, it is not proper to represent them as newly introduced evidence by Upwork.

Accordingly, Upwork does not agree that any portion of its Reply should be deemed waived or disregarded, and it opposes leave to file a sur-reply. Should you nevertheless file your proposed motion, please accurately state Upwork's opposition to both forms of requested relief and include the substance of this response in describing Upwork's position. We are available by phone should you wish to confer further on the topics included above.

Best,

Allison

**Allison N. Powers** (She/Her/Hers) | BLANKROME

444 West Lake Street | Suite 1650 | Chicago, IL 60606

direct: +1.312.776.2546 | mobile: +1.312.806.7405

allison.powers@blankrome.com | bio

[Quoted text hidden]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# C

**Cited Authorities Not Available on Westlaw or Lexis**

**Date / Operational Origin:** (1) *Phila. Indem. Ins. Co. v. Blast Fitness Grp., LLC*, No. 1:18-cv-03912, Dkt. 40 (N.D. Ill. Dec. 17, 2018) (minute entry), cited in Part III of the Motion. (2) *Tri-State Disposal, Inc. v. Village of Riverdale*, No. 1:18-cv-02138, Dkt. 25 (N.D. Ill. July 6, 2018) (defendants' motion to dismiss), excerpts (ECF pages 1, 8 and 12 of 22), cited in Part I.B of the Motion. Each is reproduced from the CM/ECF docket of that case, with its CM/ECF header, reduced in size without altering any text so that its header does not overlap the header added when this compendium is filed. Attached under the Court's Case Procedures (Motion Practice), which ask that copies be attached of cited authorities not available on Westlaw or Lexis.

*— Document follows this cover page —*

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.2**
**Eastern Division**

Philadelphia Indemnity Insurance Company

Plaintiff,

v.

Case No.: 1:18−cv−03912
Honorable Sara L. Ellis

Blast Fitness Group, LLC, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, December 17, 2018:

MINUTE entry before the Honorable Sara L. Ellis: Plaintiff's motion to strike arguments raised in Defendant's reply or for leave to file sur−reply [38] is granted in part. The Court will not consider any arguments raised for the first time in Defendant's reply brief. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-02138 |
| vs. | ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, a municipal corporation; LAWRENCE L. JACKSON, Mayor of the Village of Riverdale | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**DEFENDANTS', THE VILLAGE OF RIVERDALE AND LAWRENCE L. JACKSON'S, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, Lawrence L. Jackson ("Mayor") and the Village of Riverdale ("Village"), by their attorneys, Montana & Welch, LLC., and move this Court for entry of an order dismissing the Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In support thereof, Defendants state as follows:

## I. INTRODUCTION

Plaintiff's First Amended Complaint at Law alleges constitutional deprivations allegedly suffered by the Plaintiff, Tri-State Disposal, Inc. ("Tri-State") in relation to a Village of Riverdale ordinance ("the Ordinance") that granted a special use to Riverdale Materials, a non-party, to operate a metal recycling facility and transfer station in the Village of Riverdale. *See Exhibit A, Plaintiff's First Amended Complaint at Law, paragraphs 1-3.* Count I of the Plaintiff's First Amended Complaint claims a violation of procedural due process relating to the Ordinance, Count II of the Plaintiff's First Amended Complaint claims a violation of substantive due process relating to the Ordinance, Count III of the Complaint alleges a violation of the Equal Protection Clause,

invasion of its legally protected interest;" but Tri-State did not identify or plead in its First Amended Complaint what specific property interest it claims is constitutionally protected. *See Exhibit A, Count I, paragraphs 76, 77, 79 and Count II, paragraphs 93, 94, 96.*

"Property" under the Fourteenth Amendment's due process clause is individual entitlement grounded in state law which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.* 455 U.S. 422 (1982). Not only does Tri-State fail to plead what property interest it has been deprived of; Tri-State also fails to plead or reference any state law that provides a basis for its alleged property interest. Without pleading what property interest is constitutionally protected and the basis for that alleged property right Tri-State cannot allege a violation of its procedural or substantive due process rights. Based on its failure to adequately plead a protected property interest, this Court cannot proceed to the question of whether or not Tri-State's due process rights were violated[1]. Therefore, Counts I and II of Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Tri-State does not present a claim upon which relief can be granted.

**C. Requests for Declaratory Relief Should Be Dismissed Pursuant to Rule 12(b)(6)**

All Counts of the Plaintiff's First Amended Complaint at Law request that the Ordinance be declared null and void *ab initio* and that any operation at the site by Riverdale Materials be declared unauthorized. Clearly, Tri-State is seeking declaratory action from the Court, even though Tri-State has amended its Complaint to allege constitutional violations.

[1] If the Court finds a property interest has been plead or if the Plaintiff addresses what property interest it has plead in its response to this motion to dismiss, Defendants will argue in their reply that Tri-State, even if found to have a property interest, has no right to relief under procedural or substantive due process laws in this matter.

To establish retaliation in violation of the First Amendment, a government contractor must prove: (1) it engaged in activity protected by the First Amendment; (2) the defendants took an adverse action against it; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse action. *Lyons v. Vaught*, No. 16–1062, 2017 WL 5622816, at (8th Cir. Nov. 22, 2017). *Board of County Com'rs, Waubansee County Kan v. Umbehr* is analogous to this case, with the exception that Tri-State was never entitled to automatic renewal of its contract. In *Board of County Com'rs, Waubansee County Kan*, during the term of his at-will contract with the County to haul trash, respondent Umbehr was an outspoken critic of the Board of County Commissioners. *Board of County Com'rs, Waubansee County Kan v. Umbehr*, 518 U.S. 668 (1996). After the commissioners voted to terminate (or prevent the automatic renewal of) Umbehr's contract, allegedly because they took Umbehr's criticism badly, he brought suit against two commissioners under 42 U.S.C. § 1983. *Id.* The District Court granted Commissioners summary judgment, but the Tenth Circuit reversed in relevant part and remanded, holding that the First Amendment protects independent contractors from governmental retaliation against their speech, and that the extent of that protection must be determined by weighing the government's interests as a contractor against the free speech interests at stake in accordance with the balancing test applied in the government employment context under *Pickering v. Board of Ed. of Township High School Dist. 205*, *Will Cty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811. However, the Supreme Court explained that to prevail, Umbehr had to show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him. *Board of County Com'rs, Waubansee County Kan*, 518 U.S. 668, 685 (1996). If Umbehr could make that showing, the Board would then have a valid defense if it could show, by