**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT COMPENDIUM

*in support of*

## PLAINTIFF'S MOTION TO DEEM WAIVED THE MATTERS FIRST RAISED IN THE FRACTIONAL TAX DEFENDANTS' REPLY (Dkt. 55) OR, IN THE ALTERNATIVE, FOR LEAVE TO FILE A SUR-REPLY IN OPPOSITION TO THEIR MOTION TO COMPEL ARBITRATION (Dkt. 26)

Evan J. Cronin — Plaintiff

*Respectfully submitted, October 14, 2026*

*3 exhibits • 25 pages • index follows*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT COMPENDIUM INDEX


| Exhibit | Document Description | Page |
|---|---|---|
| A | [Proposed] Plaintiff's Sur-Reply in Opposition to the Fractional Tax Defendants' Motion to Compel Arbitration (Dkt. 26) | 3 |
| B | Conferral Correspondence Between Plaintiff and Counsel for the Fractional Tax Defendants, September 17–22, 2026 | 17 |
| C | Cited Authorities Not Available on Westlaw or Lexis | 21 |

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# A

**[Proposed] Plaintiff's Sur-Reply in Opposition to the Fractional Tax Defendants' Motion to Compel Arbitration (Dkt. 26)**

**Date / Operational Origin:** Tendered with the Motion for the Court's review; to be filed as a separate docket entry only if leave is granted. Its numbered parts answer the matters identified in Part I of the Motion and the Reply's related descriptions of the record, of Plaintiff's position, and of its authority.

*— Document follows this cover page —*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

EVAN J. CRONIN,

Plaintiff,

v.

UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,

Defendants.

Case No. 1:26-cv-03220

Hon. Judge Sara L. Ellis

Hon. Magistrate Judge Laura K. McNally

**[PROPOSED] PLAINTIFF'S SUR-REPLY IN OPPOSITION TO THE FRACTIONAL TAX DEFENDANTS' MOTION TO COMPEL ARBITRATION (Dkt. 26)**

PROPOSED

## TABLE OF CONTENTS

**ARGUMENT** .......... **1**

I. Evidence Offered for the First Time in Reply .......... 1

1. The declarations .......... 1
2. The positions the Reply attributes to Plaintiff .......... 3

II. Grounds First Raised in the Reply .......... 4

1. Incorporation by reference as a basis for the four other movants .......... 4
2. Incorporation by reference as a basis for reaching every claim .......... 6
3. Filing suit and opposing the Motion to Compel as the refusal .......... 9

**CONCLUSION** .......... **11**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000) .......... 6

*Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025) .......... 9

*Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943 (N.D. Ill. Sept. 26, 2017) .......... 10

*Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027 (7th Cir. 2012) .......... 6, 8

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993) .......... 2, 3

*Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, No. 24-1440 (7th Cir. Aug. 27, 2026) .......... 8

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) .......... 5, 6, 8

*Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002) .......... 2

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682 (7th Cir. 2005) .......... 4

**Statutes**

9 U.S.C. § 3 .......... 11

PROPOSED

Plaintiff Evan J. Cronin submits this sur-reply, with leave of Court, in further opposition to the Motion to Compel Arbitration (Dkt. 26) (the "Motion to Compel") filed by Defendants Terma Project, Inc. ("Terma"); Fractional Tax, Inc. ("FTINC"); Fractional Tax USA, LLC ("FTUSA"); Chandler Murphy; and Nishchal Basnyat (together, the "Fractional Tax Defendants"). It answers only the matters first raised in the reply in support of the Motion to Compel (Dkt. 55) (the "Reply"), and the Reply's descriptions of the record, of Plaintiff's position, and of its authority that bear on them. Each numbered item stands on its own, and every record citation is to material already on the docket.

PROPOSED

## ARGUMENT

### I. Evidence Offered for the First Time in Reply

***1. The declarations.*** The Reply calls the facts it draws from the Basnyat and Murphy declarations "undisputed" and says they "establish that all of the Fractional Tax Defendants are closely related to one another as well as Plaintiff's claims." (Dkt. 55 at 4.) The declarations say less than that. According to the Reply, Ms. Murphy's responsibilities include "directing FTUSA's and FTINC's operations." (*Id.*) The declarations say her responsibilities include "directing *certain* [FTUSA's and FTINC's] operations, *when necessary*." (Dkt. 55-1 ¶ 8; Dkt. 55-2 ¶ 3 (emphasis added).) And the only statement connecting Plaintiff to FTUSA's website is that some use of his name or likeness, or some of his work, "was likely featured on or likely used the fractionaltax.com website or an associated portal." (Dkt. 55-1 ¶ 6.)

Mr. Basnyat states that he executed the Service Contract and the Content Agreement "in my capacity as the sole Director and Secretary of Fractional Tax, Inc." (Dkt. 55-1 ¶ 5.) Neither declaration states that Terma, FTUSA, Mr. Basnyat, or Ms. Murphy was a party to the Service Contract or was intended to benefit from Article XI, that Terma or FTUSA paid Plaintiff, or that

any movant relied on anything Plaintiff said or did. (Dkt. 55-1; Dkt. 55-2.) FTINC's counsel wrote in April 2025: "As evident in the agreement you signed with the Company dated 01/07/2025, you had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." (Dkt. 1 at 160; Dkt. 47-2 at 18.) Mr. Basnyat and Ms. Murphy were copied on that letter. (Dkt. 47-2 at 19.)

Plaintiff's declaration, filed before the Reply, states that no signature on any of the four January 7, 2025 agreements was made on behalf of Terma or FTUSA, that FTINC paid all of his compensation for the engagement and issued his 2025 Form 1099, and that no Defendant disclosed to him the ownership relationships among the three entities before this action was filed. (Dkt. 47-1 ¶¶ 6–7, 19.)

The Reply faults Plaintiff for not identifying "specific evidence in the record demonstrating a material factual dispute for trial." (Dkt. 55 at 9 n.3.) The same footnote says Plaintiff "misconstrues Tinder" by suggesting a "summary-judgment-like evidentiary standard" (*id.*); the sentence it quotes from *Tinder* begins, "Just as in summary judgment proceedings." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The Motion to Compel, filed with the two agreements alone, offered no evidence of the movants' relationships to one another, to Plaintiff, or to his claims; it described them only through counsel and the Complaint's allegations. (Dkt. 26 at 2 nn.1–2, 5–9; Dkt. 26-1; Dkt. 26-2.) There was therefore no evidence for Plaintiff to dispute, and the Response answered what the Motion offered. (Dkt. 47 at 9–13.) The declarations filed with the Reply are the first evidence the movants offered on any of these points. (Dkt. 55-1; Dkt. 55-2.)

For its closely related theory, the Reply relies on *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993). (Dkt. 55 at 2.) It describes *Hugel* as allowing a defendant to "enforce an arbitration provision" against the plaintiff who signed it and two related companies that had not, refers to those companies as defendants, and concludes that *Hugel* supports the movants' right "to invoke the

PROPOSED

arbitration provision." (*Id.* at 7.) *Hugel* concerned a forum selection clause "designating England as the proper forum," not an arbitration provision. 999 F.2d at 207. The two companies were plaintiffs, and the court upheld the finding that they were "so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue." *Id.* at 206–07, 210. Lloyd's, which enforced the clause, was a party to the agreement containing it. *Id.* at 208, 210.

***2. The positions the Reply attributes to Plaintiff.*** The Reply presents four statements from Plaintiff's filings as concessions. (Dkt. 55 at 3.) In each, the words the Reply leaves out, italicized here, state Plaintiff's position.

(a) The Reply quotes the Response: "Basnyat's execution of the agreements establishes representative authority for that transaction. . . ." (Dkt. 55 at 3.) The full sentence reads: "Basnyat's execution of the agreements establishes representative authority for that transaction, *not a personal right to compel every claim against him*." (Dkt. 47 at 11 (emphasis added).)

(b) The Reply states: "Plaintiff 'does not deny operational overlap' between Terma and FTUSA." (Dkt. 55 at 3.) The full sentence reads: "Plaintiff does not deny operational overlap; *the question is whether the entities were indistinguishable for purposes of the right asserted here*." (Dkt. 47 at 12 (emphasis added).)

(c) The Reply states: "Plaintiff further acknowledges that Murphy helped negotiate the January 7 package as Terma's Director of Operations, and Basnyat, as Chief Executive Officer of Terma and authorized representative of FTINC, executed all four agreements." (Dkt. 55 at 3.) The Response reads: "Murphy negotiated the January 7 package as Terma's Director of Operations, and Basnyat, Chief Executive Officer of both Terma and FTINC, executed all four agreements

PROPOSED

*solely on FTINC's behalf*. . . . *That involvement does not establish the right the movants assert here*." (Dkt. 47 at 13 (emphasis added).)

(d) The Reply states: "Plaintiff acknowledges that he 'understood that Terma personnel performed recruiting, on boarding, and coordination functions in connection with [his] engagement by Fractional Tax, Inc.'" (Dkt. 55 at 3.) The Reply cites "pg. 1" of Plaintiff's declaration (*id.*), but the language is in paragraph 19, at page 7, which reads: "*I understood Terma Project, Inc. and Fractional Tax, Inc. to be separate companies*, and I understood that Terma personnel performed recruiting, onboarding, and coordination functions in connection with my engagement by Fractional Tax, Inc. . . . *I did not understand the two to be the same company, and I contracted with Fractional Tax, Inc. alone*." (Dkt. 47-1 ¶ 19, at 7–8 (emphasis added).)

PROPOSED

## II. Grounds First Raised in the Reply

***1. Incorporation by reference as a basis for the four other movants.*** The Reply asserts that a party that did not sign an arbitration agreement "can invoke an arbitration agreement entered by others through the doctrine of 'incorporation by reference.'" (Dkt. 55 at 4–5 (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005)).) *Zurich* lists incorporation by reference among five doctrines through which a party that did not sign "can be bound by arbitration agreements entered into by others." 417 F.3d at 687. The insurer seeking arbitration there did not argue incorporation by reference against Jones, a subsidiary that had not signed. *Id.* On the page the Reply cites, the court agreed that Jones's relationship with its parent, which had signed, was "insufficient for Jones to be bound," and it found "no grounds for compelling Jones to arbitrate." *Id.* at 688.

The Reply then asserts that the Content Agreement's phrase "of engaging in work" is "a direct reference to the Service Agreement," and that the four movants other than FTINC therefore

"are entitled to invoke the arbitration provision in the Service Contract." (Dkt. 55 at 5.) For its statement that the Service Contract "defined the scope of the very work in which Plaintiff was to engage," the Reply cites "pp. 19 – 20" of Dkt. 26-1 (*id.*), a six-page exhibit; the Service Contract describes the services at pages 3 and 4. (Dkt. 26-1 at 3–4.)

Each of the four January 7, 2025 agreements was signed by Plaintiff and, on behalf of FTINC alone, by Mr. Basnyat. (Dkt. 47-1 ¶ 6; Dkt. 55-1 ¶ 5.) The Reply describes the Content Agreement as "between the exact same parties as the Service Contract" (Dkt. 55 at 2), and those parties are Plaintiff and FTINC (Dkt. 26 at 5; Dkt. 26-1 at 2).

A reference to another agreement does not incorporate it. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664–66 (7th Cir. 2002). There, the agreement without an arbitration clause defined the agreement that contained one and required that it be executed, and the Seventh Circuit held that neither reference incorporated it: "Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate . . . ." *Id.* at 665–66. Under Illinois law, on which the Reply relies (Dkt. 55 at 5), that inquiry is confined to the four corners of the contract. *Rosenblum*, 299 F.3d at 664. The preamble on which the Reply relies does not name the Service Contract, Article XI, or arbitration. (Dkt. 26-2 at 2.)

The Reply also relies on the Content Agreement's definition of the "Company" to include FTINC's "current or future subsidiaries (whether or not wholly-owned), affiliates, successors, or assigns." (Dkt. 55 at 5, 11; Dkt. 26-2 at 2.) That definition sets the reach of an agreement that contains no arbitration provision, and it does not mention FTINC's officers, directors, or employees. (Dkt. 26-2 at 2; *see* Dkt. 47 at 5–6.)

PROPOSED

The Service Contract, executed the same day by the same parties, defines its "Parties" as Plaintiff and FTINC; Article XI applies "[i]n the event a dispute shall arise between the Parties to this Agreement"; and Article VIII provides that its provisions "shall not be binding upon or inured to the benefit of heirs, personal representatives, successors, and assigns of the Parties." (Dkt. 26-1 at 2, 5.) The same parties extended the Content Agreement to FTINC's affiliates, successors, and assigns and wrote Article XI for disputes between themselves. FTINC's counsel wrote in April 2025 that Plaintiff "had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." (Dkt. 1 at 160; Dkt. 47-2 at 18.) That letter defined "the Company" as Fractional Tax, Inc. and referred separately to "its affiliates." (Dkt. 47-2 at 18–19.)

***2. Incorporation by reference as a basis for reaching every claim.*** The Reply asserts that "the Content Agreement incorporates the Service Agreement by reference" and that this is "another reason why all of Plaintiff's claims are subject to arbitration." (Dkt. 55 at 10–11.) The rule the Reply quotes asks whether "the agreement containing the clause incorporates the other by reference." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *see* Dkt. 55 at 10–11. The agreement containing the clause is the Service Contract, and it does not mention the Content Agreement. (Dkt. 26-1; *see* Dkt. 47 at 14.) The Reply's proposition is the converse. *Rosenblum* rejected it where the agreement without an arbitration clause expressly defined the agreement containing one and required that it be executed: the clause did "not apply" to an action under the referring agreement. 299 F.3d at 664–66. The Content Agreement's preamble does not name the Service Contract. (Dkt. 26-2 at 2.)

The Reply distinguishes *AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000), on the ground that its arbitration agreement "was limited by its terms to certain disputes." (Dkt. 55 at 12.) *AGCO* called it a "broad arbitration provision" whose reach was "issues arising from transactions

PROPOSED

between" the parties to it, and held that it did not reach "issues arising out of" a separate agreement that had no arbitration clause. 216 F.3d at 594. Article XI has the same limit. (Dkt. 26-1 at 5.)

The preamble makes execution of the Content Agreement "a condition and requirement of engaging in work for" FTINC; it says nothing about Article XI, disputes, or arbitration, and the Content Agreement contains no arbitration provision. (Dkt. 26-2 at 2; Dkt. 47 at 5–6.) The Reply quotes the Response's statement that Count VI "also alleges that the audit-related proposal implicated the Service Contract's restriction against services suggesting FTINC was a licensed CPA firm," and reads it to mean that "even his name-and-likeness claim implicates the Service Contract." (Dkt. 55 at 11.) The sentence the Reply quotes begins, "Those counts arise from independent statutory or common-law duties," and the paragraph ends: "The same conduct may implicate a contractual limitation and independent identity-based duties without converting the latter into contract claims." (Dkt. 47 at 15.)

The Reply states that the Content Agreement "authorizes the use of Plaintiff's name and likeness" and "assigns this right to 'the Company.'" (Dkt. 55 at 11.) Mr. Basnyat states that the responsibilities of an administrative staff member of Terma and FTINC included "submitting proposals to clients on behalf of Fractional Tax, Inc.'s tax specialists, such as Evan J. Cronin, pursuant to the Content Agreement." (Dkt. 55-1 ¶ 11.) When Plaintiff objected on March 28, 2025 to proposals "submitted using my full name, likeness, and identity," Ms. Murphy answered the same day by reference to the "Content Assignment and Use of Name Approval Agreement." (Dkt. 47 at 6–7; Dkt. 47-2 at 15.)

Accepted for purposes of the Motion to Compel, those descriptions place the conduct at issue under an agreement that contains no arbitration provision, and the movants must still show why Article XI of the separate Service Contract reaches it. Their own witnesses describe Plaintiff's

PROPOSED

work as performed "under the Service Contract as well as the Content Assignment and Use of Name Approval Agreement" (Dkt. 55-1 ¶¶ 9–10; Dkt. 55-2 ¶ 4), two agreements, only one of which contains an arbitration clause. *See Gore*, 666 F.3d at 1033. The Reply instead states that "the Service Contract lies at the heart of most if not all of Plaintiff's claims." (Dkt. 55 at 12.)

The Reply's own authority is to the same effect. The Reply quotes *Metroplex* for the rule that courts "compare the text of the arbitration clause with the factual allegations of the claims to be arbitrated." (Dkt. 55 at 8.) *Metroplex*, decided after the Response was filed, affirmed the denial of a motion to compel arbitration, holding that "even where the arbitration clause is broad, a claim does not fall within the clause's scope unless it is strongly tied to the underlying contract." *Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, No. 24-1440, slip op. at 2, 5 (7th Cir. Aug. 27, 2026). Citing *Rosenblum*, it observed that courts should not "expand the operation of [an arbitration] clause beyond its express terms and beyond the intent of the parties." *Id.* at 7–8 (quoting *Rosenblum*, 299 F.3d at 664).

Applied claim by claim, that comparison does not tie the identity claims to the Service Contract: Counts I–III and V arise from independent statutory or common-law duties and can be adjudicated without proof of a breach of the Service Contract, and Count VI's name-and-likeness theory pleads breach of the Content Agreement. (Dkt. 47 at 15.) As to the remaining counts, the Motion to Compel describes Plaintiff's claims together as "connected to the work that the parties were performing pursuant to the Service Contract" (Dkt. 26 at 11; Dkt. 47 at 15), which does not show the tie *Metroplex* requires for each claim, and Article XI contains no "arising out of or relating to" language (Dkt. 26-1 at 5; Dkt. 47 at 5, 14).

The Reply opens with the statement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of

PROPOSED

the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability," which it describes as a "salient point" that the Seventh Circuit "has quoted." (Dkt. 55 at 1.) In the decision the Reply cites, the Seventh Circuit set out that passage as the appellants' "citation to Supreme Court dicta," said that the language "played no role in the Court's decision," and held: "The waiver language is, therefore, dicta." *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 425–26 (7th Cir. 2025).

***3. Filing suit and opposing the Motion to Compel as the refusal.*** The Reply asserts that "by filing his lawsuit and opposing the Motion to Compel Arbitration, Plaintiff has already 'refused to arbitrate'" (Dkt. 55 at 14), citing three decisions that, as the Reply describes them, held that plaintiffs who sued and opposed a motion to compel "have shown a refusal to arbitrate" (*id.* at 14 n.4). That is the third of the three elements the Motion to Compel recites for compelling arbitration: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." (Dkt. 26 at 4.) Article XI's fee sentence is drawn in different terms. It applies "[i]n the event a party fails to proceed with arbitration" and entitles "the other party" to fees "for having to compel arbitration." (Dkt. 26-1 at 5.) The Parties are Plaintiff and FTINC. (*Id.* at 2.)

Before this action was filed, no Defendant demanded arbitration. (Dkt. 47-1 ¶ 11.) In April 2025, FTINC's counsel wrote that FTINC "will no longer provide responses to your communications" and that the Illinois Right of Publicity Act "does not entitle you to internal Company records or information outside of formal legal proceedings"; the letter does not mention arbitration. (Dkt. 1 at 160–61; Dkt. 47-2 at 18–19.) The Reply maintains that a defendant is "under no obligation to make a pre-suit demand for arbitration." (Dkt. 55 at 14.) With no demand made, filing this action was not a failure "to proceed with arbitration." (Dkt. 26-1 at 5.)

PROPOSED

The Reply states that, when asked on June 2 to agree to refer the matter to arbitration, "Plaintiff refused." (Dkt. 55 at 14–15.) Plaintiff's June 9 answer, served within the time the June 2 letter set, reads: "Plaintiff does not refuse, and has never refused, to arbitrate." (Dkt. 47-2 at 26–27.) It explained that the request "assumes the very matters in dispute," and it stated: "Plaintiff's position is therefore precise: he submits those threshold questions to the Court, he does not concede arbitrability or the enforceability or scope of Article XI, and he will comply with any order of this Court directing arbitration of any claim or issue." (*Id.* at 27.)

Plaintiff had said the same on May 15, that he was "not refusing to proceed with arbitration if the Court orders any claim or issue to arbitration" (*id.* at 21), and he said it again on June 15, before the Motion to Compel was filed: "My position is not a refusal to arbitrate. My position is that the Court must first decide whether Article XI applies, who may invoke it, and what claims or issues, if any, it reaches." (*Id.* at 30.) The Reply does not dispute that the Court decides those questions: "The Fractional Tax Defendants do not dispute this Court's authority to decide the arbitrability of Plaintiff's claims against them." (Dkt. 55 at 1 n.1.) Asking the Court to decide questions within its undisputed authority is not a failure "to proceed with arbitration." (Dkt. 26-1 at 5; *see* Dkt. 47 at 5, 18.)

The Reply also cites *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943 (N.D. Ill. Sept. 26, 2017), for the proposition that "[f]ederal law entitles the Fractional Tax Defendants to recover their legal fees for filing their Motion to Compel Arbitration." (Dkt. 55 at 14.) *Brne* applied Texas and Illinois law to a provision requiring each party to bear its own attorney's fees, held that provision unconscionable as applied to a wage-act claim, and severed it; it made no fee award.

PROPOSED

## CONCLUSION

For these reasons, the Court should deny the Motion to Compel (Dkt. 26) and the request for fees. Any claim the Court refers to arbitration should be identified with specificity (Dkt. 47 at 16) and stayed under 9 U.S.C. § 3, as the Reply now agrees (Dkt. 55 at 15 n.5).

**Dated:** October 14, 2026

Respectfully submitted,

*/s/ Evan J. Cronin*
Evan J. Cronin
211 W. Wacker Drive, Suite 120 #2217
Chicago, Illinois 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com
Plaintiff, Pro Se

PROPOSED

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# B

**Conferral Correspondence Between Plaintiff and Counsel for the Fractional Tax Defendants, September 17–22, 2026**

**Date / Operational Origin:** The September 17–22, 2026 email thread between Plaintiff and counsel for the Fractional Tax Defendants: Plaintiff's September 17 email (5:14 p.m. CT) describing the motion he then intended to file; their counsel's September 21 response (8:03 a.m. CT) stating the Fractional Tax Defendants' position; Plaintiff's September 22 email (1:07 p.m. CT) and their counsel's reply (1:56 p.m. CT) arranging a call; and Plaintiff's 3:11 p.m. CT email stating his understanding of the telephone conference and their counsel's 3:14 p.m. CT reply confirming it. Counsel for the Upwork Defendants were addressees of or copied on each message. Printed from Plaintiff's mailbox on September 22, 2026, and reduced in size without altering any text so that the header added when this compendium is filed does not overlap it.

*— Document follows this cover page —*

Evan J Cronin
CPA & Tax Services

Evan Cronin <evan@cronintaxservices.com>

## Cronin v. Upwork Inc., et al., No. 1:26-cv-03220 — Conferral re: Motion for Leave to File Surreply (Fractional Tax Defendants' Motion to Compel Arbitration, Dkt. 26)

6 messages

**Evan J Cronin** <legal@cronintaxservices.com> Thu, Sep 17, 2026 at 5:14 PM
To: Clayton Layton <clayton@goldbergsegalla.com>, "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Counsel,

I intend to file a motion for leave to file a surreply addressed to the Fractional Tax Defendants' Reply (Dkt. 55) in support of their Motion to Compel Arbitration (Dkt. 26).

The proposed surreply addresses three main subjects: the declarations of Nishchal Basnyat and Chandler Murphy, which were filed with the Reply rather than with the Motion; the Seventh Circuit's published decision in *Metroplex Communications, Inc. v. Meta Platforms, Inc.*, No. 24-1440 (7th Cir. Aug. 27, 2026), which issued after my August 17 Response and which the Reply quotes at page 8; and the authority cited for the first time in support of the fee request. I am not asking the Court to strike the Reply or either declaration. In the alternative, the motion will ask that the Court resolve the Motion to Compel Arbitration without relying on that material.

I intend to file on Monday, September 21st. Please advise whether you will object to the motion and, if so, the basis for your objection. If you would prefer to discuss by phone, you can reach me at (312) 725-9960.

Regards,
Evan

--
**Evan J Cronin**
Plaintiff, Pro Se
legal@cronintaxservices.com
+1 (312) 725-9960

*This message and any attachments may contain confidential or privileged information and are only for the use of the intended recipient of this message. If you are not the intended recipient, please notify the sender by return email and delete or destroy this message and all copies of this message and all attachments. Any unauthorized disclosure, use, distribution, or reproduction of this message or any attachments is prohibited and may be unlawful.*

---

**Layton, Chad J.** <clayton@goldbergsegalla.com> Mon, Sep 21, 2026 at 8:03 AM
To: Evan J Cronin <legal@cronintaxservices.com>, "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Mr. Cronin:

To the extent that you are seeking leave of court to file a sur-reply that addresses the merits of the issues raised in the Fractional Tax Defendants' Motion to Compel Arbitration, I leave that to the sound discretion of the Court. However, if you are going to ask the Court to disregard facts and law that are included in our reply brief, the Fractional Tax Defendants object. The arguments raised in our reply brief are in direct response to arguments raised in Plaintiff's

opposition brief, and the Court should have the opportunity to decide this issue on the merits, by considering the full record.

If you prefer to discuss these issues, feel free to give me a call at your convenience. Thank you.

Chad J. Layton, Esq.

Partner

**DIRECT** 312.572.8422 | **CELL** 312.735.5367

**EMAIL** clayton@goldbergsegalla.com | website bio | goldbergsegalla.com

222 West Adams St., Suite 2250, Chicago, Il 60606-6627

**FAX** 312.572.8401

GOLDBERGSEGALLA25

25 Years of Moving You *Forward*

CALIFORNIA | CONNECTICUT | DELAWARE | FLORIDA | ILLINOIS | MARYLAND
MISSOURI | NEW JERSEY | NEW YORK | NORTH CAROLINA | PENNSYLVANIA

Privileged attorney-client communication / attorney's work product. This email message and any attachments are confidential. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system.

[Quoted text hidden]

---

**Evan J Cronin** <legal@cronintaxservices.com> Tue, Sep 22, 2026 at 1:07 PM
To: "Layton, Chad J." <clayton@goldbergsegalla.com>
Cc: "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Mr. Layton,

Thank you for your September 21 response. I would like to take you up on the offer to discuss.

Are you available this afternoon between 2:30 p.m. and 6:00 p.m., or tomorrow before noon?

My direct line is (312) 725-9960, or I can call you at 312.572.8422 — whichever you prefer.

Regards,
Evan

[Quoted text hidden]

---

**Layton, Chad J.** <clayton@goldbergsegalla.com> Tue, Sep 22, 2026 at 1:56 PM
To: Evan J Cronin <legal@cronintaxservices.com>
Cc: "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Evan:

Feel free to call my cell phone any time. Thanks.

[Quoted text hidden]

---

**Evan J Cronin** <legal@cronintaxservices.com> Tue, Sep 22, 2026 at 3:11 PM
To: "Layton, Chad J." <clayton@goldbergsegalla.com>
Cc: "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Chad,

Thank you for speaking with me by telephone today regarding the motion I intend to file concerning the Fractional Tax Defendants' Reply (Dkt. 55). My understanding of our call is that, after a candid discussion, we were unable to reach an accord, and that I may state the Fractional Tax Defendants' position as set out in your September 21 email.

Regards,
Evan

[Quoted text hidden]

---

**Layton, Chad J.** <clayton@goldbergsegalla.com> Tue, Sep 22, 2026 at 3:14 PM
To: Evan J Cronin <legal@cronintaxservices.com>
Cc: "Piaskowski, Patrycia" <ppiaskowski@goldbergsegalla.com>, Allison Powers <allison.powers@blankrome.com>, "Ganze, Gabrielle N." <gabrielle.ganze@blankrome.com>

Yes, that is accurate, Evan. And, yes, feel free to state my position as reflected in my September 21st email to you.

[Quoted text hidden]

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

*Cronin v. Upwork Inc., et al.* — Case No. 1:26-cv-03220
Hon. Judge Sara L. Ellis | Hon. Magistrate Judge Laura K. McNally

# EXHIBIT

# C

**Cited Authorities Not Available on Westlaw or Lexis**

**Date / Operational Origin:** (1) *Phila. Indem. Ins. Co. v. Blast Fitness Grp., LLC*, No. 1:18-cv-03912, Dkt. 40 (N.D. Ill. Dec. 17, 2018) (minute entry), cited in Part III of the Motion. (2) *Tri-State Disposal, Inc. v. Village of Riverdale*, No. 1:18-cv-02138, Dkt. 25 (N.D. Ill. July 6, 2018) (defendants' motion to dismiss), excerpts (ECF pages 1, 8 and 12 of 22), cited in Part I.B of the Motion. Each is reproduced from the CM/ECF docket of that case, with its CM/ECF header, reduced in size without altering any text so that its header does not overlap the header added when this compendium is filed. Attached under the Court's Case Procedures (Motion Practice), which ask that copies be attached of cited authorities not available on Westlaw or Lexis.

*— Document follows this cover page —*

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois − CM/ECF LIVE, Ver 6.2.2**
**Eastern Division**

Philadelphia Indemnity Insurance Company
Plaintiff,
v.
Case No.: 1:18−cv−03912
Honorable Sara L. Ellis
Blast Fitness Group, LLC, et al.
Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Monday, December 17, 2018:

MINUTE entry before the Honorable Sara L. Ellis: Plaintiff's motion to strike arguments raised in Defendant's reply or for leave to file sur−reply [38] is granted in part. The Court will not consider any arguments raised for the first time in Defendant's reply brief. Mailed notice(rj, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRI-STATE DISPOSAL, INC., an Illinois corporation, | ) | |
| Plaintiff, | ) | Case No. 1:18-cv-02138 |
| vs. | ) | Judge Sara L. Ellis |
| THE VILLAGE OF RIVERDALE, a municipal corporation; LAWRENCE L. JACKSON, Mayor of the Village of Riverdale | ) | Magistrate Judge Mary M. Rowland |
| Defendants. | ) | |

**DEFENDANTS', THE VILLAGE OF RIVERDALE AND LAWRENCE L. JACKSON'S, MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

NOW COME Defendants, Lawrence L. Jackson ("Mayor") and the Village of Riverdale ("Village"), by their attorneys, Montana & Welch, LLC., and move this Court for entry of an order dismissing the Plaintiff's First Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). In support thereof, Defendants state as follows:

## I. INTRODUCTION

Plaintiff's First Amended Complaint at Law alleges constitutional deprivations allegedly suffered by the Plaintiff, Tri-State Disposal, Inc. ("Tri-State") in relation to a Village of Riverdale ordinance ("the Ordinance") that granted a special use to Riverdale Materials, a non-party, to operate a metal recycling facility and transfer station in the Village of Riverdale. *See Exhibit A, Plaintiff's First Amended Complaint at Law, paragraphs 1-3.* Count I of the Plaintiff's First Amended Complaint claims a violation of procedural due process relating to the Ordinance, Count II of the Plaintiff's First Amended Complaint claims a violation of substantive due process relating to the Ordinance, Count III of the Complaint alleges a violation of the Equal Protection Clause,

invasion of its legally protected interest;" but Tri-State did not identify or plead in its First Amended Complaint what specific property interest it claims is constitutionally protected. *See Exhibit A, Count I, paragraphs 76, 77, 79 and Count II, paragraphs 93, 94, 96.*

"Property" under the Fourteenth Amendment's due process clause is individual entitlement grounded in state law which cannot be removed except for cause. *Logan v. Zimmerman Brush Co.* 455 U.S. 422 (1982). Not only does Tri-State fail to plead what property interest it has been deprived of; Tri-State also fails to plead or reference any state law that provides a basis for its alleged property interest. Without pleading what property interest is constitutionally protected and the basis for that alleged property right Tri-State cannot allege a violation of its procedural or substantive due process rights. Based on its failure to adequately plead a protected property interest, this Court cannot proceed to the question of whether or not Tri-State's due process rights were violated[1]. Therefore, Counts I and II of Plaintiff's First Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Tri-State does not present a claim upon which relief can be granted.

**C. Requests for Declaratory Relief Should Be Dismissed Pursuant to Rule 12(b)(6)**

All Counts of the Plaintiff's First Amended Complaint at Law request that the Ordinance be declared null and void *ab initio* and that any operation at the site by Riverdale Materials be declared unauthorized. Clearly, Tri-State is seeking declaratory action from the Court, even though Tri-State has amended its Complaint to allege constitutional violations.

---

[1] If the Court finds a property interest has been plead or if the Plaintiff addresses what property interest it has plead in its response to this motion to dismiss, Defendants will argue in their reply that Tri-State, even if found to have a property interest, has no right to relief under procedural or substantive due process laws in this matter.

To establish retaliation in violation of the First Amendment, a government contractor must prove: (1) it engaged in activity protected by the First Amendment; (2) the defendants took an adverse action against it; and (3) the protected conduct was a substantial or motivating factor in the defendants' decision to take the adverse action. *Lyons v. Vaught*, No. 16–1062, 2017 WL 5622816, at (8th Cir. Nov. 22, 2017). *Board of County Com'rs, Waubansee County Kan v. Umbehr* is analogous to this case, with the exception that Tri-State was never entitled to automatic renewal of its contract. In *Board of County Com'rs, Waubansee County Kan*, during the term of his at-will contract with the County to haul trash, respondent Umbehr was an outspoken critic of the Board of County Commissioners. *Board of County Com'rs, Waubansee County Kan v. Umbehr*, 518 U.S. 668 (1996). After the commissioners voted to terminate (or prevent the automatic renewal of) Umbehr's contract, allegedly because they took Umbehr's criticism badly, he brought suit against two commissioners under 42 U.S.C. § 1983. *Id.* The District Court granted Commissioners summary judgment, but the Tenth Circuit reversed in relevant part and remanded, holding that the First Amendment protects independent contractors from governmental retaliation against their speech, and that the extent of that protection must be determined by weighing the government's interests as a contractor against the free speech interests at stake in accordance with the balancing test applied in the government employment context under *Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811. However, the Supreme Court explained that to prevail, Umbehr had to show that the termination of his contract was motivated by his speech on a matter of public concern, an initial showing that requires him to prove more than the mere fact that he criticized the Board members before they terminated him. *Board of County Com'rs, Waubansee County Kan*, 518 U.S. 668, 685 (1996). If Umbehr could make that showing, the Board would then have a valid defense if it could show, by