**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>Plaintiff,<br><br>v.<br><br>UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>Defendants. | Case No. 1:26-cv-03220<br><br>Hon. Judge Sara L. Ellis<br><br>Hon. Magistrate Judge Laura K. McNally |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO THE FRACTIONAL TAX DEFENDANTS' MOTION TO COMPEL ARBITRATION (Dkt. 26)**

# TABLE OF CONTENTS

**ARGUMENT** .......... **1**

I. Evidence Offered for the First Time in Reply .......... 1

1. The declarations .......... 1
2. The positions the Reply attributes to Plaintiff .......... 3

II. Grounds First Raised in the Reply .......... 4

1. Incorporation by reference as a basis for the four other movants .......... 4
2. Incorporation by reference as a basis for reaching every claim .......... 6
3. Filing suit and opposing the Motion to Compel as the refusal .......... 9

**CONCLUSION** .......... **11**

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000) .......... 6

*Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418 (7th Cir. 2025) .......... 9

*Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943 (N.D. Ill. Sept. 26, 2017) .......... 10

*Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027 (7th Cir. 2012) .......... 6, 8

*Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993) .......... 2, 3

*Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, No. 24-1440 (7th Cir. Aug. 27, 2026) .......... 8

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657 (7th Cir. 2002) .......... 5, 6, 8

*Tinder v. Pinkerton Sec.*, 305 F.3d 728 (7th Cir. 2002) .......... 2

*Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682 (7th Cir. 2005) .......... 4

**Statutes**

9 U.S.C. § 3 .......... 11

Plaintiff Evan J. Cronin submits this sur-reply, with leave of Court (Dkt. 66), in further opposition to the Motion to Compel Arbitration (Dkt. 26) (the "Motion to Compel") filed by Defendants Terma Project, Inc. ("Terma"); Fractional Tax, Inc. ("FTINC"); Fractional Tax USA, LLC ("FTUSA"); Chandler Murphy; and Nishchal Basnyat (together, the "Fractional Tax Defendants"). It answers only the matters first raised in the reply in support of the Motion to Compel (Dkt. 55) (the "Reply"), and the Reply's descriptions of the record, of Plaintiff's position, and of its authority that bear on them. Each numbered item stands on its own, and every record citation is to material already on the docket.

## ARGUMENT

### I. Evidence Offered for the First Time in Reply

***1. The declarations.*** The Reply calls the facts it draws from the Basnyat and Murphy declarations "undisputed" and says they "establish that all of the Fractional Tax Defendants are closely related to one another as well as Plaintiff's claims." (Dkt. 55 at 4.) The declarations say less than that. According to the Reply, Ms. Murphy's responsibilities include "directing FTUSA's and FTINC's operations." (*Id.*) The declarations say her responsibilities include "directing *certain* [FTUSA's and FTINC's] operations, *when necessary*." (Dkt. 55-1 ¶ 8; Dkt. 55-2 ¶ 3 (emphasis added).) And the only statement connecting Plaintiff to FTUSA's website is that some use of his name or likeness, or some of his work, "was likely featured on or likely used the fractionaltax.com website or an associated portal." (Dkt. 55-1 ¶ 6.)

Mr. Basnyat states that he executed the Service Contract and the Content Agreement "in my capacity as the sole Director and Secretary of Fractional Tax, Inc." (Dkt. 55-1 ¶ 5.) Neither declaration states that Terma, FTUSA, Mr. Basnyat, or Ms. Murphy was a party to the Service Contract or was intended to benefit from Article XI, that Terma or FTUSA paid Plaintiff, or that

any movant relied on anything Plaintiff said or did. (Dkt. 55-1; Dkt. 55-2.) FTINC's counsel wrote in April 2025: "As evident in the agreement you signed with the Company dated 01/07/2025, you had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." (Dkt. 1 at 160; Dkt. 47-2 at 18.) Mr. Basnyat and Ms. Murphy were copied on that letter. (Dkt. 47-2 at 19.)

Plaintiff's declaration, filed before the Reply, states that no signature on any of the four January 7, 2025 agreements was made on behalf of Terma or FTUSA, that FTINC paid all of his compensation for the engagement and issued his 2025 Form 1099, and that no Defendant disclosed to him the ownership relationships among the three entities before this action was filed. (Dkt. 47-1 ¶¶ 6–7, 19.)

The Reply faults Plaintiff for not identifying "specific evidence in the record demonstrating a material factual dispute for trial." (Dkt. 55 at 9 n.3.) The same footnote says Plaintiff "misconstrues Tinder" by suggesting a "summary-judgment-like evidentiary standard" (*id.*); the sentence it quotes from *Tinder* begins, "Just as in summary judgment proceedings." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). The Motion to Compel, filed with the two agreements alone, offered no evidence of the movants' relationships to one another, to Plaintiff, or to his claims; it described them only through counsel and the Complaint's allegations. (Dkt. 26 at 2 nn.1–2, 5–9; Dkt. 26-1; Dkt. 26-2.) There was therefore no evidence for Plaintiff to dispute, and the Response answered what the Motion offered. (Dkt. 47 at 9–13.) The declarations filed with the Reply are the first evidence the movants offered on any of these points. (Dkt. 55-1; Dkt. 55-2.)

For its closely related theory, the Reply relies on *Hugel v. Corp. of Lloyd's*, 999 F.2d 206 (7th Cir. 1993). (Dkt. 55 at 2.) It describes *Hugel* as allowing a defendant to "enforce an arbitration provision" against the plaintiff who signed it and two related companies that had not, refers to those companies as defendants, and concludes that *Hugel* supports the movants' right "to invoke

the arbitration provision." (*Id.* at 7.) *Hugel* concerned a forum selection clause "designating England as the proper forum," not an arbitration provision. 999 F.2d at 207. The two companies were plaintiffs, and the court upheld the finding that they were "so closely related to the dispute that they are equally bound by the forum selection clause and must sue in the same court in which Hugel agreed to sue." *Id.* at 206–07, 210. Lloyd's, which enforced the clause, was a party to the agreement containing it. *Id.* at 208, 210.

***2. The positions the Reply attributes to Plaintiff.*** The Reply presents four statements from Plaintiff's filings as concessions. (Dkt. 55 at 3.) In each, the words the Reply leaves out, italicized here, state Plaintiff's position.

(a) The Reply quotes the Response: "Basnyat's execution of the agreements establishes representative authority for that transaction. . . ." (Dkt. 55 at 3.) The full sentence reads: "Basnyat's execution of the agreements establishes representative authority for that transaction, *not a personal right to compel every claim against him*." (Dkt. 47 at 11 (emphasis added).)

(b) The Reply states: "Plaintiff 'does not deny operational overlap' between Terma and FTUSA." (Dkt. 55 at 3.) The full sentence reads: "Plaintiff does not deny operational overlap; *the question is whether the entities were indistinguishable for purposes of the right asserted here*." (Dkt. 47 at 12 (emphasis added).)

(c) The Reply states: "Plaintiff further acknowledges that Murphy helped negotiate the January 7 package as Terma's Director of Operations, and Basnyat, as Chief Executive Officer of Terma and authorized representative of FTINC, executed all four agreements." (Dkt. 55 at 3.) The Response reads: "Murphy negotiated the January 7 package as Terma's Director of Operations, and Basnyat, Chief Executive Officer of both Terma and FTINC, executed all four agreements

*solely on FTINC's behalf. . . . That involvement does not establish the right the movants assert here.*" (Dkt. 47 at 13 (emphasis added).)

(d) The Reply states: "Plaintiff acknowledges that he 'understood that Terma personnel performed recruiting, on boarding, and coordination functions in connection with [his] engagement by Fractional Tax, Inc.'" (Dkt. 55 at 3.) The Reply cites "pg. 1" of Plaintiff's declaration (*id.*), but the language is in paragraph 19, at page 7, which reads: "*I understood Terma Project, Inc. and Fractional Tax, Inc. to be separate companies*, and I understood that Terma personnel performed recruiting, onboarding, and coordination functions in connection with my engagement by Fractional Tax, Inc. . . . *I did not understand the two to be the same company, and I contracted with Fractional Tax, Inc. alone.*" (Dkt. 47-1 ¶ 19, at 7–8 (emphasis added).)

## II. Grounds First Raised in the Reply

***1. Incorporation by reference as a basis for the four other movants.*** The Reply asserts that a party that did not sign an arbitration agreement "can invoke an arbitration agreement entered by others through the doctrine of 'incorporation by reference.'" (Dkt. 55 at 4–5 (citing *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 688 (7th Cir. 2005)).) *Zurich* lists incorporation by reference among five doctrines through which a party that did not sign "can be bound by arbitration agreements entered into by others." 417 F.3d at 687. The insurer seeking arbitration there did not argue incorporation by reference against Jones, a subsidiary that had not signed. *Id.* On the page the Reply cites, the court agreed that Jones's relationship with its parent, which had signed, was "insufficient for Jones to be bound," and it found "no grounds for compelling Jones to arbitrate." *Id.* at 688.

The Reply then asserts that the Content Agreement's phrase "of engaging in work" is "a direct reference to the Service Agreement," and that the four movants other than FTINC therefore

"are entitled to invoke the arbitration provision in the Service Contract." (Dkt. 55 at 5.) For its statement that the Service Contract "defined the scope of the very work in which Plaintiff was to engage," the Reply cites "pp. 19 – 20" of Dkt. 26-1 (*id.*), a six-page exhibit; the Service Contract describes the services at pages 3 and 4. (Dkt. 26-1 at 3–4.)

Each of the four January 7, 2025 agreements was signed by Plaintiff and, on behalf of FTINC alone, by Mr. Basnyat. (Dkt. 47-1 ¶ 6; Dkt. 55-1 ¶ 5.) The Reply describes the Content Agreement as "between the exact same parties as the Service Contract" (Dkt. 55 at 2), and those parties are Plaintiff and FTINC (Dkt. 26 at 5; Dkt. 26-1 at 2).

A reference to another agreement does not incorporate it. *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 664–66 (7th Cir. 2002). There, the agreement without an arbitration clause defined the agreement that contained one and required that it be executed, and the Seventh Circuit held that neither reference incorporated it: "Mere reference to another contract or document is not sufficient to incorporate its terms into a contract. There must be an express intent to incorporate . . . ." *Id.* at 665–66. Under Illinois law, on which the Reply relies (Dkt. 55 at 5), that inquiry is confined to the four corners of the contract. *Rosenblum*, 299 F.3d at 664. The preamble on which the Reply relies does not name the Service Contract, Article XI, or arbitration. (Dkt. 26-2 at 2.)

The Reply also relies on the Content Agreement's definition of the "Company" to include FTINC's "current or future subsidiaries (whether or not wholly-owned), affiliates, successors, or assigns." (Dkt. 55 at 5, 11; Dkt. 26-2 at 2.) That definition sets the reach of an agreement that contains no arbitration provision, and it does not mention FTINC's officers, directors, or employees. (Dkt. 26-2 at 2; *see* Dkt. 47 at 5–6.)

The Service Contract, executed the same day by the same parties, defines its "Parties" as Plaintiff and FTINC; Article XI applies "[i]n the event a dispute shall arise between the Parties to

this Agreement"; and Article VIII provides that its provisions "shall not be binding upon or inured to the benefit of heirs, personal representatives, successors, and assigns of the Parties." (Dkt. 26-1 at 2, 5.) The same parties extended the Content Agreement to FTINC's affiliates, successors, and assigns and wrote Article XI for disputes between themselves. FTINC's counsel wrote in April 2025 that Plaintiff "had no contractual relationship with Terma Project, Inc., only with Fractional Tax, Inc." (Dkt. 1 at 160; Dkt. 47-2 at 18.) That letter defined "the Company" as Fractional Tax, Inc. and referred separately to "its affiliates." (Dkt. 47-2 at 18–19.)

***2. Incorporation by reference as a basis for reaching every claim.*** The Reply asserts that "the Content Agreement incorporates the Service Agreement by reference" and that this is "another reason why all of Plaintiff's claims are subject to arbitration." (Dkt. 55 at 10–11.) The rule the Reply quotes asks whether "the agreement containing the clause incorporates the other by reference." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1033 (7th Cir. 2012); *see* Dkt. 55 at 10–11. The agreement containing the clause is the Service Contract, and it does not mention the Content Agreement. (Dkt. 26-1; *see* Dkt. 47 at 14.) The Reply's proposition is the converse. *Rosenblum* rejected it where the agreement without an arbitration clause expressly defined the agreement containing one and required that it be executed: the clause did "not apply" to an action under the referring agreement. 299 F.3d at 664–66. The Content Agreement's preamble does not name the Service Contract. (Dkt. 26-2 at 2.)

The Reply distinguishes *AGCO Corp. v. Anglin*, 216 F.3d 589 (7th Cir. 2000), on the ground that its arbitration agreement "was limited by its terms to certain disputes." (Dkt. 55 at 12.) *AGCO* called it a "broad arbitration provision" whose reach was "issues arising from transactions between" the parties to it, and held that it did not reach "issues arising out of" a separate agreement that had no arbitration clause. 216 F.3d at 594. Article XI has the same limit. (Dkt. 26-1 at 5.)

The preamble makes execution of the Content Agreement "a condition and requirement of engaging in work for" FTINC; it says nothing about Article XI, disputes, or arbitration, and the Content Agreement contains no arbitration provision. (Dkt. 26-2 at 2; Dkt. 47 at 5–6.) The Reply quotes the Response's statement that Count VI "also alleges that the audit-related proposal implicated the Service Contract's restriction against services suggesting FTINC was a licensed CPA firm," and reads it to mean that "even his name-and-likeness claim implicates the Service Contract." (Dkt. 55 at 11.) The sentence the Reply quotes begins, "Those counts arise from independent statutory or common-law duties," and the paragraph ends: "The same conduct may implicate a contractual limitation and independent identity-based duties without converting the latter into contract claims." (Dkt. 47 at 15.)

The Reply states that the Content Agreement "authorizes the use of Plaintiff's name and likeness" and "assigns this right to 'the Company.'" (Dkt. 55 at 11.) Mr. Basnyat states that the responsibilities of an administrative staff member of Terma and FTINC included "submitting proposals to clients on behalf of Fractional Tax, Inc.'s tax specialists, such as Evan J. Cronin, pursuant to the Content Agreement." (Dkt. 55-1 ¶ 11.) When Plaintiff objected on March 28, 2025 to proposals "submitted using my full name, likeness, and identity," Ms. Murphy answered the same day by reference to the "Content Assignment and Use of Name Approval Agreement." (Dkt. 47 at 6–7; Dkt. 47-2 at 15.)

Accepted for purposes of the Motion to Compel, those descriptions place the conduct at issue under an agreement that contains no arbitration provision, and the movants must still show why Article XI of the separate Service Contract reaches it. Their own witnesses describe Plaintiff's work as performed "under the Service Contract as well as the Content Assignment and Use of Name Approval Agreement" (Dkt. 55-1 ¶¶ 9–10; Dkt. 55-2 ¶ 4), two agreements, only one of

which contains an arbitration clause. *See Gore*, 666 F.3d at 1033. The Reply instead states that "the Service Contract lies at the heart of most if not all of Plaintiff's claims." (Dkt. 55 at 12.)

The Reply's own authority is to the same effect. The Reply quotes *Metroplex* for the rule that courts "compare the text of the arbitration clause with the factual allegations of the claims to be arbitrated." (Dkt. 55 at 8.) *Metroplex*, decided after the Response was filed, affirmed the denial of a motion to compel arbitration, holding that "even where the arbitration clause is broad, a claim does not fall within the clause's scope unless it is strongly tied to the underlying contract." *Metroplex Commc'ns, Inc. v. Meta Platforms, Inc.*, No. 24-1440, slip op. at 2, 5 (7th Cir. Aug. 27, 2026). Citing *Rosenblum*, it observed that courts should not "expand the operation of [an arbitration] clause beyond its express terms and beyond the intent of the parties." *Id.* at 7–8 (quoting *Rosenblum*, 299 F.3d at 664).

Applied claim by claim, that comparison does not tie the identity claims to the Service Contract: Counts I–III and V arise from independent statutory or common-law duties and can be adjudicated without proof of a breach of the Service Contract, and Count VI's name-and-likeness theory pleads breach of the Content Agreement. (Dkt. 47 at 15.) As to the remaining counts, the Motion to Compel describes Plaintiff's claims together as "connected to the work that the parties were performing pursuant to the Service Contract" (Dkt. 26 at 11; Dkt. 47 at 15), which does not show the tie *Metroplex* requires for each claim, and Article XI contains no "arising out of or relating to" language (Dkt. 26-1 at 5; Dkt. 47 at 5, 14).

The Reply opens with the statement that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability," which it describes as a "salient point" that the Seventh Circuit "has quoted." (Dkt. 55 at 1.) In the

decision the Reply cites, the Seventh Circuit set out that passage as the appellants' "citation to Supreme Court dicta," said that the language "played no role in the Court's decision," and held: "The waiver language is, therefore, dicta." *Al-Nahhas v. 777 Partners LLC*, 129 F.4th 418, 425–26 (7th Cir. 2025).

***3. Filing suit and opposing the Motion to Compel as the refusal.*** The Reply asserts that "by filing his lawsuit and opposing the Motion to Compel Arbitration, Plaintiff has already 'refused to arbitrate'" (Dkt. 55 at 14), citing three decisions that, as the Reply describes them, held that plaintiffs who sued and opposed a motion to compel "have shown a refusal to arbitrate" (*id.* at 14 n.4). That is the third of the three elements the Motion to Compel recites for compelling arbitration: "a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." (Dkt. 26 at 4.) Article XI's fee sentence is drawn in different terms. It applies "[i]n the event a party fails to proceed with arbitration" and entitles "the other party" to fees "for having to compel arbitration." (Dkt. 26-1 at 5.) The Parties are Plaintiff and FTINC. (*Id.* at 2.)

Before this action was filed, no Defendant demanded arbitration. (Dkt. 47-1 ¶ 11.) In April 2025, FTINC's counsel wrote that FTINC "will no longer provide responses to your communications" and that the Illinois Right of Publicity Act "does not entitle you to internal Company records or information outside of formal legal proceedings"; the letter does not mention arbitration. (Dkt. 1 at 160–61; Dkt. 47-2 at 18–19.) The Reply maintains that a defendant is "under no obligation to make a pre-suit demand for arbitration." (Dkt. 55 at 14.) With no demand made, filing this action was not a failure "to proceed with arbitration." (Dkt. 26-1 at 5.)

The Reply states that, when asked on June 2 to agree to refer the matter to arbitration, "Plaintiff refused." (Dkt. 55 at 14–15.) Plaintiff's June 9 answer, served within the time the June

2 letter set, reads: “Plaintiff does not refuse, and has never refused, to arbitrate.” (Dkt. 47-2 at 26–27.) It explained that the request “assumes the very matters in dispute,” and it stated: “Plaintiff's position is therefore precise: he submits those threshold questions to the Court, he does not concede arbitrability or the enforceability or scope of Article XI, and he will comply with any order of this Court directing arbitration of any claim or issue.” (*Id.* at 27.)

Plaintiff had said the same on May 15, that he was “not refusing to proceed with arbitration if the Court orders any claim or issue to arbitration” (*id.* at 21), and he said it again on June 15, before the Motion to Compel was filed: “My position is not a refusal to arbitrate. My position is that the Court must first decide whether Article XI applies, who may invoke it, and what claims or issues, if any, it reaches.” (*Id.* at 30.) The Reply does not dispute that the Court decides those questions: “The Fractional Tax Defendants do not dispute this Court's authority to decide the arbitrability of Plaintiff's claims against them.” (Dkt. 55 at 1 n.1.) Asking the Court to decide questions within its undisputed authority is not a failure “to proceed with arbitration.” (Dkt. 26-1 at 5; *see* Dkt. 47 at 5, 18.)

The Reply also cites *Brne v. Inspired eLearning*, No. 17-CV-02712, 2017 U.S. Dist. LEXIS 156943 (N.D. Ill. Sept. 26, 2017), for the proposition that “[f]ederal law entitles the Fractional Tax Defendants to recover their legal fees for filing their Motion to Compel Arbitration.” (Dkt. 55 at 14.) *Brne* applied Texas and Illinois law to a provision requiring each party to bear its own attorney's fees, held that provision unconscionable as applied to a wage-act claim, and severed it; it made no fee award.

## CONCLUSION

For these reasons, the Court should deny the Motion to Compel (Dkt. 26) and the request for fees. Any claim the Court refers to arbitration should be identified with specificity (Dkt. 47 at 16) and stayed under 9 U.S.C. § 3, as the Reply now agrees (Dkt. 55 at 15 n.5).

**Dated:** October 22, 2026

Respectfully submitted,

*/s/ Evan J. Cronin*
Evan J. Cronin
211 W. Wacker Drive, Suite 120 #2217
Chicago, Illinois 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com
Plaintiff, Pro Se