**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| EVAN J. CRONIN,<br><br>Plaintiff,<br><br>v.<br><br>UPWORK INC.; UPWORK GLOBAL LLC; TERMA PROJECT, INC.; FRACTIONAL TAX, INC.; FRACTIONAL TAX USA, LLC; CHANDLER MURPHY; and NISHCHAL BASNYAT,<br><br>Defendants. | Case No. 1:26-cv-03220<br><br>Hon. Judge Sara L. Ellis<br><br>Hon. Magistrate Judge Laura K. McNally |

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANTS UPWORK GLOBAL LLC AND UPWORK INC.'S MOTION TO COMPEL ARBITRATION AND STAY ACTION (Dkt. 44)**

## TABLE OF CONTENTS


**ARGUMENT** .......... **1**

I. Factual Assertions Offered Without Evidence .......... 1

1. "Solved." .......... 1

2. "Communicated through the 60-day period." .......... 2

II. Grounds First Raised in the Reply .......... 2

1. Section 15.2 .......... 2

2. Separability. .......... 3

3. Election. .......... 4

4. Survival (Section 13.3). .......... 5

5. Severability (Section 14.4.5) .......... 5

6. The class waiver. .......... 6

**CONCLUSION** .......... **8**


## TABLE OF AUTHORITIES


**Cases** — **Page(s)**

*AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) .......... 6, 7, 8

*INS v. Phinpathya*, 464 U.S. 183 (1984) .......... 2

*PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770 .......... 4, 5, 6

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967) .......... 3, 4

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) .......... 4

**Statutes**

9 U.S.C. § 3 .......... 3, 6, 8

Plaintiff Evan J. Cronin submits this sur-reply, with leave of Court (Dkt. 66), in further opposition to the Motion to Compel Arbitration and Stay Action (Dkt. 44) (the "Motion to Compel"). It answers only the matters first raised in the reply in support of the Motion to Compel (Dkt. 56) (the "Reply"), and the Reply's descriptions of the record and of Plaintiff's position that bear on them. Each numbered item stands on its own, and every citation is to the existing record. Defendants Upwork Inc. and Upwork Global LLC are referred to together as the "Upwork Defendants," and references to duties under the User Agreement concern Upwork Global LLC, as successor by conversion to Upwork Global Inc. (Dkt. 44-4 at 3; Dkt. 36-3 at PageID #:398; Dkt. 1 ¶ 13.)

## ARGUMENT

### I. Factual Assertions Offered Without Evidence

***1. "Solved."*** The Reply states that "[a] ticketing system's 'Solved' label is an administrative classification," citing only "*Id.*," which refers back to Plaintiff's own exhibits at Dkt. 51-2. (Dkt. 56 at 6–7.) The record shows what the label displayed, not what it meant inside Upwork. The case panel showed "Solved," with a last-activity entry of June 2, 2025, at 6:06 p.m. (Dkt. 51-2 at 60); Plaintiff did not mark the case solved; and the only message he received about the case around the time of the status change was an automated request to rate his support experience, which contained no promised response to the Claim (Dkt. 51-1 ¶ 17).

The record does not show who changed the status, whether a person or an automated rule did so, what "Solved" signifies in Upwork's support workflow, or why the status changed. Those records are not available to Plaintiff (*id.* ¶ 26), and the only declaration filed with the Motion to Compel says nothing about the Notice, the support case, or its closure (Dkt. 44-2).

Plaintiff's position rests on the outward record: the response promised on May 9 was not delivered before or after the status changed. (Dkt. 51-1 ¶¶ 17, 20.) The Reply's characterization of the label is not evidence. *See INS v. Phinpathya*, 464 U.S. 183, 188 n.6 (1984) ("Counsel's unsupported assertions in respondent's brief do not establish" the fact asserted). Yet the Reply relies on it against discovery: "Discovery cannot change the Agreement's text or convert an administrative label into repudiation." (Dkt. 56 at 15.)

If the Court is inclined to rely on that characterization, Plaintiff asks that the Court first permit limited discovery confined to the subject he identified before the Upwork Defendants filed the Motion to Compel (Dkt. 36-1 at 14; Dkt. 36-3 at PageID #:526): the status history of support case No. 51489662; whether a person or an automated rule set the status to "Solved," and which; the meaning of "Solved" in the support workflow; and any recorded reason for the change.

***2. "Communicated through the 60-day period."*** The Reply states that Upwork "communicated through the 60-day period." (Dkt. 56 at 12.) The exhibits show Upwork's automated receipt of the April 1, 2025 Notice, Upwork Legal's April 29, 2025 acknowledgment, and the May 9, 2025 email. (Dkt. 51-1 ¶¶ 9, 15; Dkt. 51-2 at 23–24, 54–55.) The 60-day period ran from receipt of the April 1 Notice, and its sixtieth day was May 31, 2025. (Dkt. 51 at 14.) The May 9 email came twenty-two days before that date. The Reply cites no later communication from Upwork about the Claim, and the record shows none of substance: the only later message was an automated request to rate the support experience. (Dkt. 51-1 ¶¶ 17, 20.)

## II. Grounds First Raised in the Reply

***1. Section 15.2.*** The Reply asserts that "[t]he May 9, 2025 email cannot modify the User Agreement," relying on Section 15.2's statement that "Email will not constitute a written instrument as contemplated by this Section 15.2." (Dkt. 56 at 12.) Plaintiff does not contend that

the email modified the Agreement. He relies on it as Upwork's own statement of the performance it would provide within the Section 14.3 process: "We will ensure that our formal response is provided within this period." (Dkt. 51-2 at 55; Dkt. 51 at 14–16.) Section 15.2 governs when a "modification or amendment to the Terms of Service will be binding upon Upwork" (Dkt. 44-4 at 32); it does not address a contracting party's own written statement, invoking "the arbitration provisions applicable to this matter," of how and when it would perform the terms as written.

The Reply also quotes Section 15.2's sentence "We do not guarantee we will take action against all breaches of this User Agreement." (Dkt. 56 at 12.) That sentence follows "[o]ur failure to act with respect to a breach by you or others" and concerns enforcement against breaches by users. (Dkt. 44-4 at 32.) Plaintiff's theory concerns the contracting party's own obligation under Section 14.3 to "seek informal voluntary resolution of the Claim" (*id.* at 29), and he does not contend that any result was guaranteed (Dkt. 51 at 16, 21).

***2. Separability.*** The Reply asserts that, "[e]ven apart from the delegation clause, the separability doctrine forecloses using an alleged performance shortcoming in the dispute-resolution process to avoid an independently enforceable arbitration promise," and that *Prima Paint* "forecloses Plaintiff's attempt to avoid arbitration through a performance defense." (Dkt. 56 at 11; *see id.* at 3.)

*Prima Paint* draws the line elsewhere. It holds that "in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). What separability withholds from the court is a challenge to the contract in which the agreement to arbitrate is embedded, there a claim of "fraud in the inducement of the

contract generally." *Id.* "But that agreements to arbitrate are severable does not mean that they are unassailable." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010).

Plaintiff does not challenge the User Agreement as a whole or contend that it terminated. (Dkt. 51 at 22–23.) His theory concerns the performance of the agreement to arbitrate itself: Section 14.3 is part of Section 14, the "Arbitration Provision," and the promise to arbitrate operates "[i]n the unlikely event the parties are unable to resolve a Claim within 60 days of the receipt of the applicable Notice." (Dkt. 44-4 at 28–29.) Severing that agreement from the rest of the User Agreement does not exempt it from the rule that "the first breaching party cannot seek to enforce the contract against the injured party." *PML Dev. LLC v. Village of Hawthorn Woods*, 2023 IL 128770, ¶ 50.

***3. Election.*** The Reply asserts that Plaintiff "cannot claim discharge after electing to continue the process," because "his June 6 cure letter sought continued performance rather than repudiation," and that, "[u]nder PML's election framework, he cannot insist on continued performance and later claim that the process was discharged." (Dkt. 56 at 13.) Whether a party elected to continue performing is a question of fact. *PML*, 2023 IL 128770, ¶ 58.

The record does not show the election the Reply describes. The June 6, 2025 letter, which Plaintiff's then-counsel sent to Upwork Global Inc., set a June 11 deadline and closed: "Please note that nothing in this letter shall constitute an admission or waiver." (Dkt. 51-2 at 57–58; Dkt. 51-1 ¶ 16.) The deadline passed without a response (Dkt. 51-1 ¶ 18), and no later demand for performance followed; as the Reply itself states, Plaintiff "never filed a JAMS demand" and "sued rather than initiating arbitration." (Dkt. 56 at 13; *see* Dkt. 51-1 ¶ 21.) That course is consistent with treating further Section 14 performance as discharged, not with an election to continue it. *See PML*, 2023 IL 128770, ¶ 52.

In *PML*, by contrast, the party "continued to operate on the property, reaping significant economic benefits," and "sought and obtained mandamus orders extending its operations under the Agreement for several years in the future." *Id.* ¶ 59. A single letter that set a June 11 deadline and disclaimed waiver, followed by no resort to the later Section 14 tiers, does not establish an election as a matter of law.

***4. Survival (Section 13.3).*** The Reply asserts that "[t]he Agreement's survival and severability provisions independently foreclose Plaintiff's construction," because "Section 13.3 makes arbitration obligations survive termination." (Dkt. 56 at 14.) Section 13.3 provides that, "[a]fter this Agreement terminates," terms that "expressly or by their nature contemplate performance after this Agreement terminates or expires will survive and continue in full force and effect." (Dkt. 44-4 at 28.)

Plaintiff does not contend that the User Agreement terminated; his theory is that the contracting party's material nonperformance of Section 14.3 discharged his reciprocal Section 14 obligations as to this Claim, with the Agreement otherwise in force. (Dkt. 51 at 22–23.) A clause that keeps arbitration terms in effect after termination does not say that a party may enforce those terms after failing to perform its own part of them, and Section 13.3 preserves the obligations of both sides: termination "will not release you or Upwork from any obligations incurred prior to termination." (Dkt. 44-4 at 28.)

***5. Severability (Section 14.4.5).*** The Reply adds that "Section 14.4.5 preserves the Arbitration Provision if a portion is unenforceable" and that "Plaintiff's proposed discharge would nullify those provisions based on an alleged omission in a preliminary, voluntary process." (Dkt. 56 at 14.) Section 14.4.5 provides: "In the event any portion of this Arbitration Provision is deemed unenforceable, the remainder of this Arbitration Provision will be enforceable." (Dkt. 44-

4 at 31.) It addresses what remains when contractual text is held unenforceable. Plaintiff's theory does not ask the Court to deem any portion of the Arbitration Provision unenforceable as written; it is that the contracting party's material nonperformance discharged his reciprocal Section 14 obligations as to this Claim. (Dkt. 51 at 22–24.) Discharge therefore does not "nullify those provisions." It applies the first-breach rule. *PML*, 2023 IL 128770, ¶ 50.

***6. The class waiver.*** The Reply asserts that "[n]o class-waiver dispute is presented: Plaintiff, who is pro se, has not pleaded a class claim or asked the Court to decide whether a class may proceed," and that, "[e]ven if the Court reached the issue, *Concepcion* confirms the Agreement may require individual arbitration." (Dkt. 56 at 11; *see id.* at 8–9.) Section 14.4.3 does not limit the Court's role to deciding whether a class may proceed. It provides that "disputes regarding the enforceability, revocability, scope, validity, or breach of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator." (Dkt. 44-4 at 31.) Nothing in that provision conditions a dispute about the Waiver's enforceability on whether a party has counsel, has pleaded a class claim, or has asked the Court to decide whether a class may proceed.

Plaintiff disputes that the Waiver may be enforced against him if the Upwork Defendants are in default under § 3 and/or his Section 14 obligations were discharged. (Dkt. 51 at 24–25.) That dispute was joined before Dkt. 44. Plaintiff's May 28, 2026 letter stated his position that, if Upwork "is in default under 9 U.S.C. § 3 and may not enforce the arbitral forum, the Class Action/Jury Trial Waiver does not survive as an independent litigation waiver in this Court." He then asked Upwork to stipulate that the waiver "cannot be enforced independently" in that event, and Upwork "declined to do so" and confirmed that it "will oppose" what became Plaintiff's Motion to Declare the Upwork Defendants in Default Under 9 U.S.C. § 3 and to Enjoin

Enforcement of the Class Action/Jury Trial Waiver (Dkt. 36) (the "Default Motion"). (Dkt. 36-3 at PageID #:525, 540–42.) The Upwork Defendants then told the Court that they "will also oppose" the Default Motion's request for "preclusion or injunction against enforcement of the class action/jury trial waiver" (Dkt. 42 at PageID #:613), and the Reply contends that "the Agreement may require individual arbitration" (Dkt. 56 at 11).

That is a dispute regarding the Waiver's enforceability, and the absence of a pleaded class claim does not change that. Disputing the Waiver is not a request to certify a class, and Plaintiff need not plead class claims or seek certification to raise that dispute. He does not presently assert class claims; the Complaint disputed the enforceability of any class-action waiver a Defendant may assert and reserved the right to seek leave to amend. (Dkt. 1 ¶¶ 227–28; Dkt. 51 at 24.)

The dispute also concerns Plaintiff's own claims: the Agreement states that, "[b]y agreeing to arbitrate disputes under this Agreement, THE PARTIES ARE EXPRESSLY GIVING UP ANY AND ALL RIGHTS TO A JURY TRIAL" (Dkt. 44-4 at 29), and Plaintiff has demanded a jury (Dkt. 1 at 1, 56). Nor does Plaintiff invoke Section 14.4.3 to bring the default or discharge questions before the Court; those questions are the Court's on their own grounds. (Dkt. 51 at 17–20.)

The question that follows is whether the Upwork Defendants may enforce the Waiver in this Court if they have lost the right to compel arbitration. The Agreement introduces the Waiver with the parties' agreement "to bring any dispute in arbitration on an individual basis only," and then provides that there will be "no right or authority for any dispute to be brought, heard or arbitrated as a class or collective action." (Dkt. 44-4 at 31.) Neither sentence answers that question; it is a question of the Waiver's "enforceability" and "scope," which the same subsection reserves to a civil court. Nor does *Concepcion* decide it. It held that the FAA preempts California's *Discover*

*Bank* rule. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 352 (2011). Plaintiff invokes no state rule against class waivers; he relies on the Agreement's own terms.

## CONCLUSION

For these reasons, the Court should deny the Motion to Compel (Dkt. 44). It should also hold that Section 14.4.3 reserves the dispute over the Class Action Waiver to this Court and that, if the Upwork Defendants are in default under § 3 and/or Plaintiff's Section 14 obligations were discharged, neither the Class Action Waiver nor the jury trial waiver may be enforced against him in this Court. If the Court is inclined to rely on the Reply's characterization of the "Solved" status, it should first permit the limited discovery requested in Part I.1.

**Dated:** October 22, 2026

Respectfully submitted,

*/s/ Evan J. Cronin*
Evan J. Cronin
211 W. Wacker Drive, Suite 120 #2217
Chicago, Illinois 60606
Tel.: +1 (312) 725-9960
Email: legal@cronintaxservices.com
Plaintiff, Pro Se